FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NOV 24 2009

JAMES N. HAITEN, Clerk



| | |
|---|---|
| GEOFFREY CALHOUN;<br>BENJAMIN CHEAVES;<br>JOHN CURRAN;<br>ALAN DALE;<br>MARK DANAK;<br>CHRISTOPHER DANIELS;<br>THOMAS FAST;<br>SEAN GABOYA;<br>THOMAS HAYES;<br>BRIAN HUGHES;<br>KENNETH KECK;<br>NICHOLAS KOPERSKI;<br>ROBERT MARLOW;<br>RAYMOND MATHESON;<br>ROBERT MCLENDON, III;<br>SAVERIO MONTELEONE;<br>MATTHEW PRESLEY;<br>M. DU-WAYNE RAY;<br>DAVID SHEPHERD;<br>ALLAN VIVES;<br>RAMEY & KELLEY, INC. D/B/A ATLANTA EAGLE,<br>a Georgia corporation; and<br>RAWHIDE LEATHER, INC., a Georgia corporation,<br><br>    Plaintiffs,<br><br>       v.<br><br>RICHARD PENNINGTON, Chief of Police<br>for the City of Atlanta, in his official and<br>individual capacities;<br>CITY OF ATLANTA; | 1 09-CV-3286<br><br>Civil Action<br>File No.: |

1

B. E. BRIDGES, individually and in his official capacity; )
MARLON O. NOBLE, individually;                          )
J. G. WATKINS, individually;                            )
"JOHN/JANE DOES" 1-45, individually,                    )
                                                        )
     Defendants.                                        )

---

## COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

---

1.    Plaintiffs Geoffrey Calhoun, Benjamin Cheaves, John Curran, Alan Dale, Mark Danak, Christopher Daniels, Thomas Fast, Sean Gaboya, Thomas Hayes, Brian Hughes, Kenneth Keck, Nicholas Koperski, Robert Marlow, Raymond Matheson, Robert McLendon, III, Saverio Monteleone, Matthew Presley, M. du-Wayne Ray, David Shepherd, Allan Vives, Ramey & Kelley, Inc. d/b/a Atlanta Eagle, and Rawhide Leather, Inc. (collectively, "Plaintiffs"), by their attorneys, for their Complaint against Defendants Richard Pennington, in his official and individual capacities, City of Atlanta, B.E. Bridges, in his individual and official capacities, Marlon O. Noble, J.G. Watkins, and "John/Jane Does" 1-45 (collectively, "Defendants"), allege as follows:

### NATURE OF THE ACTION

2.    This Complaint asserts a civil rights action pursuant to 42 U.S.C § 1983 for damages and declaratory and injunctive relief to redress Defendants'

2

violations of Plaintiffs' rights under the United States Constitution and Georgia Constitution to be free from unreasonable searches and seizures and to ask questions of and make comments to police officers regarding the discharge of their duties. This Complaint also seeks redress for the numerous state law torts committed by individual Defendants, including false imprisonment, assault, battery, and trespass.

3.     Defendants violated the Constitution and committed said torts when, without search or arrest warrants, officers of the Atlanta Police Department ("APD") raided the Atlanta Eagle ("the Eagle") and Rawhide Leather ("Rawhide") on September 10-11, 2009 (the "Raid"). During the Raid, officers of the APD detained all persons who were customers or employees at the Eagle and Rawhide (forcing most to lay flat on the ground, many to lay in spilled beer and broken glass, and restraining some with handcuffs); used excessive force, including shoving individuals to the floor and kicking others already on the floor; made threats of improper and excessive violence; made anti-gay slurs; searched all persons on the premises; seized the driver's licenses or other ID documents of persons on the premises; and entered the names of persons on the premises into a police computer and checked their names against a police database. These actions were taken without particularized reasonable suspicion or probable cause to

believe that any individual patron, let alone every person at the establishment, was involved in any criminal activity whatsoever.

4.    The only charges against anyone at the Eagle on the night of the Raid were filed against Eagle employees, for Atlanta City Code violations relating to allegedly unlicensed adult entertainment, because four dancers were observed, in the words of the arresting officers, allegedly "wearing underwear" and "dancing."

5.    Each and every patron of the Eagle and Rawhide Leather was detained, searched, and seized during the Raid.  Not a single patron was charged with any crime.

6.    Plaintiffs seek damages and declaratory and injunctive relief as set forth herein.

## JURISDICTION AND VENUE

7.    This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws and Constitution of the United States; pursuant to 28 U.S.C. § 1983; pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367; and pursuant to 28 U.S.C. § 2201, as an actual controversy exists within this Court's jurisdiction.  This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 2202.

4

8.     Venue is proper pursuant to 28 U.S.C. § 1391, because at least one Defendant resides in this district and all Defendants reside in this State, and because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred within this district.

## PARTIES

9.     Plaintiff Geoffrey Calhoun is a resident of Georgia. He was a patron at the Atlanta Eagle the night of September 10-11, 2009. Herein, Calhoun and all individuals who are Plaintiffs and who were not working for the Eagle that night as owners, managers, employees, or independent contractors, are referred to as "Patron Plaintiffs," and each was at the Atlanta Eagle the night of September 10-11, 2009.

10.     Patron Plaintiff Benjamin Cheaves is a resident of Georgia.

11.     Patron Plaintiff John Curran is a resident of Georgia.

12.     Patron Plaintiff Alan Dale is a resident of Georgia.

13.     Patron Plaintiff Mark Danak is a resident of Georgia.

14.     Patron Plaintiff Christopher Daniels is a resident of Georgia.

15.     Patron Plaintiff Thomas Fast is a resident of Georgia.

16.     Patron Plaintiff Sean Gaboya is a resident of Georgia.

17.     Patron Plaintiff Thomas Hayes is a resident of Georgia.

18.     Patron Plaintiff Brian Hughes is a resident of Georgia.

19.     Patron Plaintiff Kenneth Keck is a resident of Georgia.

20.     Patron Plaintiff Nicholas Koperski is a resident of Georgia.

21.     Patron Plaintiff Robert Marlow is a resident of Georgia.

22.     Patron Plaintiff Raymond Matheson is a resident of Georgia.

23.     Patron Plaintiff Robert McLendon, III is a resident of Georgia.

24.     Patron Plaintiff Saverio Monteleone is a resident of New York.

25.     Patron Plaintiff Matthew Presley is a resident of Georgia.

26.     Patron Plaintiff Allan Vives is a resident of Georgia.

27.     Plaintiff M. du-Wayne Ray is a resident of Georgia.  He is an employee of Rawhide Leather and was working for Rawhide Leather on September 10, 2009 when the Raid began.  He is not an employee of Ramey & Kelley and does not work for the Eagle.

28.     Plaintiff David Shepherd is a resident of  Georgia.  Plaintiff Shepherd lives in a private apartment he rents at 306 Ponce de Leon Avenue, located in the same building as the Eagle.  Collectively, the Patron Plaintiffs and Plaintiffs Ray and Shepherd are referred to herein as the "Individual Plaintiffs."

29.     Plaintiff Ramey & Kelley, Inc. d/b/a Atlanta Eagle ("Ramey & Kelley") is a Georgia corporation which owns and operates the Atlanta Eagle (the

"Eagle"), a business licensed as a Night Club and located at 306 Ponce de Leon Avenue in Atlanta, Georgia.

30.    Plaintiff Rawhide Leather, Inc. ("Rawhide Leather") is a Georgia corporation which owns and operates Rawhide Leather, a retail store, on premises leased from Ramey & Kelley and located at 306 Ponce de Leon Avenue in Atlanta, Georgia. Collectively, Ramey & Kelley and Rawhide Leather are referred to as the "Corporate Plaintiffs."

31.    Defendant City of Atlanta is a municipal governmental entity and maintains an office at 55 Trinity Avenue SW, Atlanta, Georgia whose policies, practices and customs were a moving force in the constitutional and statutory violations set out herein.

32.    Defendant Richard Pennington ("Pennington") is Chief of Police of the Atlanta Police Department. He is sued in his individual capacity and in his official capacity as Chief of Police. At all times pertinent to this action, Pennington was acting under color of state law.

33.    Defendant B. E. Bridges is a supervisory officer of the Atlanta Police Department. He is sued in his individual and official capacities. At all times pertinent to this action, Bridges was acting under color of state law.

7

34.    Defendant Marlon O. Noble is an officer of the Atlanta Police Department. He is sued in his individual capacity. At all times pertinent to this action, Noble was acting under color of state law.

35.    Defendant J. G. Watkins is an officer of the Atlanta Police Department. He is sued in his individual capacity. At all times pertinent to this action, Watkins was acting under color of state law.

36.    Defendant "John/Jane Does" 1-45 are officers of the Atlanta Police Department. Each is sued in his or her individual capacity. Does 1-45 include all sworn or civilian employees of the Atlanta Police Department, and any other employees of the City of Atlanta, who were assigned to, or were present inside or outside the Eagle on September 10-11 or personally responsible for planning or executing the Raid. At all times pertinent to this action, each of Does 1-45 was acting under color of state law.

37.    Defendants Pennington and Bridges in their individual capacities, defendants Watkins, Noble, and Does 1-45 are referred to collectively herein as "Individual Defendants."

38.    Individual Defendants who were present at the Eagle on September 10-11, 2009, and who personally participated in the raid conducted that night, are referred to herein as the "Raiding Party."

39.    Because of improper actions taken by Defendants themselves,

including their specific refusal to provides names and badge numbers upon request

of Plaintiffs, it is impossible for Plaintiffs at this point to identify all Individual

Defendants by name, or to allege which particular Individual Defendants did

which particular acts.  Plaintiffs believe they will be able to identify Defendants

through Discovery, and that additionally, Individual Defendants are jointly and

severally liable for the wrongful acts described in this Complaint.

## ALLEGATIONS OF FACT

40.    On the evening of September 10, 2009, at some point before 11:00

PM, certain of the Defendants serving as undercover officers of the Atlanta Police

Department entered the Eagle without a search or arrest warrant.  On information

and belief, these officers were assigned by final decisionmakers for the City to

conduct an undercover investigation.

41.    These officers entered the Eagle pretending to be customers.

42.    While inside the Eagle, certain of the Defendant undercover officers

who later participated in the activities described below consumed alcoholic

beverages including Ketel One vodka, Tanqueray gin, Budweiser beer, and Amstel

Light beer.

9

43.     Later that evening, shortly after 11:00 PM, these Defendant undercover officers without displaying badges or identifying themselves as members of the Atlanta Police department, began screaming at patrons and employees to "hit the floor" and get down on the ground.

44.     Several plaintiffs were in terror and feared for their lives, believing that the Eagle was being robbed or invaded by criminals or gay-bashers who might kill or injure them.

45.     Shortly after the Defendant undercover officers inside the Eagle ordered everyone to lay on the floor, additional Defendant officers of the Atlanta Police Department, including members of the Red Dog Unit, forced their way into the Eagle, also without a search or arrest warrant, without requesting permission or consent to enter the premises, and outside the terms of the Eagle's invitation to the public.  The Red Dog Unit is a special force of police officers used to "provide aggressive police presence in areas that have a high incidence of street drug sales, use, and drug related crimes." City of Atlanta Police, About Red Dog Unit, http://www.atlantapd.org/index.asp?nav=RD&menu=42 (last visited Nov. 23, 2009).

46.     These additional Defendant officers, many of whom were dressed in black, paramilitary-style uniforms which are not recognizable as police uniforms to

those unfamiliar with the Red Dog Unit, stormed into the Eagle with a massive show of force but without verbally identifying themselves as police officers. They screamed at patrons and employees to lay flat on the floor with their faces against the floor and their hands behind their backs or in front of them and to "shut the fuck up."

47.    Police officers shoved some of the patrons, including some of the Patron Plaintiffs, to the ground, and pressed their boots into the back of certain patrons, and some patrons were handcuffed by the police.

48.    Certain patrons, including some of the Patron Plaintiffs, were made to lie on the floor in spilled beer and broken glass, and patrons who asked permission to move away from the broken glass were told to "stay down and shut the fuck up." Some of these patrons received cuts from the glass in which they were forced to lie.

49.    During the raid, patrons were forced to remain flat on the floor, even long after the police officers had searched them and found them to be unarmed.

50.    Some patrons, including some of the Patron Plaintiffs, who were told to move to another part of the Eagle were again made to lay flat on the ground, with their faces against the floor, even after they had been searched, found to be unarmed, and moved.

11

51.   Patrons, including Patron Plaintiffs were detained, either handcuffed, or flat on the ground with their faces against the floor, between thirty minutes and two-and-a-half hours after the raid began, until they were eventually released one by one or in small groups.

52.   Patrons, including some of the Patron Plaintiffs, who asked questions of the police officers, including asking for their names or badge numbers and/or why they were being detained, were told to "shut the fuck up," some were threatened with arrest for disorderly conduct, some were threatened with being handcuffed, some were threatened with violence and physical harm, and some were retaliated against by being forced to remain at the Eagle long after they had been searched.

53.   All persons at the Eagle complied fully, promptly, and peacefully with all demands made by the officers, no person at the Eagle offered any physical resistance to the officers whatsoever, and none was charged with obstructing the officers in any way.

54.   During the Raid, police officers kicked some patrons, including some of the Patron Plaintiffs, who were laying on the floor for no legitimate law enforcement purpose.

55.     During the Raid, police officers kicked down at least one door at the Eagle (in full sight and sound of nearby patrons) despite the offer by an Eagle manager to open the door for them.

56.     Officers forcibly and without consent searched patrons, including some of the Patron Plaintiffs, as they lay on the floor, putting their hands in the patrons' pockets and removing keys, cash, wallets, cell phones, driver's licenses, and anything else in the patrons' pockets, or ordered patrons to empty the contents of their pockets onto the floor where they lay.

57.     Officers took identification documents from every Patron Plaintiff, either by forcibly taking the same without consent or by demanding that patrons hand over their identification documents. An officer entered ID information about each of the Patron Plaintiffs into a police computer and checked each of those names against a police database.

58.     The aforementioned practices in conducting the Raid were done pursuant to official policy or custom and usage, as admitted by Deputy Chief Carlos Banda, in his public statement that everything done at the Eagle was standard practice for Red Dog, which does everything "the same thing in each situation" and "[by the numbers] they do it all the same way, they don't vary [in how they do it]." Carlos Banda, Deputy Chief, Atlanta Police Dep't, Community

Forum at the Virginia-Highland Church (Oct. 5, 2009), *available at*
http://www.youtube.com/watch?v=cjTYf2WHWbw#t=08m43s.

59.    On information (*viz.* Richard Pennington, Chief, Atlanta Police Dep't,
Press Conference (Sept. 14, 2009)) and belief, at least twenty-one officers,
including nine undercover and twelve uniformed officers, were present inside the
Eagle on September 10-11, 2009, supported by numerous additional officers
outside the Eagle, three Atlanta Police prisoner transport vehicles, and numerous
police cars and other vehicles. The true number of officers inside and outside the
Eagle is not yet known by the Plaintiffs.

60.    Even after many of the Individual Plaintiffs and Plaintiff Ray were
told that they were free to go, and in fact ordered to leave the premises, the
Raiding Party Defendants impeded their ability to do so by continuing to block
their cars in the parking lot with police vehicles and refusing to move those police
vehicles when Plaintiffs pointed out that they could not leave.

61.    During the course of the raid, police officers searched the premises of
the Eagle, including cash registers, beer coolers, the manager's office, and other
private areas.

14

62.    Atlanta Police officers also entered the premises of the Rawhide Leather store, without a search or arrest warrant, and searched the premises of the Rawhide Leather store, including the cash register.

63.    Atlanta Police officers also entered private, nonpublic areas located in the same building as the Eagle without a search or arrest warrant, including the private office of Ramey & Kelley shareholders Richard Ramey and Robert Kelley, and the private residence of Plaintiff Shepherd, who lives in an apartment located at the same address as the Eagle.

64.    Atlanta Police officers searched Plaintiff Shepherd's home without a search or arrest warrant.

65.    Atlanta Police officers arrested Plaintiff Shepherd inside his home without a search or arrest warrant.

66.    No illegal drugs were found on anyone present at the Eagle, Rawhide Leather, or in the private home of Plaintiff Shepherd.

67.    No illegal drugs were found on the premises of the Eagle, Rawhide Leather, or in the private home of Plaintiff Shepherd.

68.    The only charges filed against anyone at the Eagle on the night of the raid were for Atlanta City Code violations relating to alleged unlicensed adult entertainment, because four dancers were observed, in the words of the arresting

15

officers, allegedly "wearing underwear" and "dancing." These charges are outstanding, and none of the Plaintiffs, with the exception of Plaintiff Shepherd, was the subject of such charges.

69.    Not a single patron of the Eagle or Rawhide Leather was charged with any crime.

70.    Contemporaneous with the filing of this Complaint, Plaintiffs are serving upon the City of Atlanta an Ante-Litem Notice pursuant to O.C.G.A. § 36-33-5, and anticipate amending this complaint to allege additional state law claims against the City of Atlanta.

### FIRST CLAIM FOR RELIEF
### (Unconstitutional Search and Seizure)
### Violation of the Fourth and Fourteenth Amendments to the United States Constitution Brought Under 42 U.S.C. § 1983
### (by all Plaintiffs against all Defendants)

71.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

### Unreasonable Seizure

72.    Defendants had no particularized and objective basis to believe that any of the Patron Plaintiffs they seized had committed or were committing any criminal offense.

73.    The detentions of the Individual Plaintiffs were unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

74.    Atlanta Police officers had no particularized probable cause to believe that any of the Patron Plaintiffs had committed or were committing any criminal offense.

75.    The seizure of the Individual Plaintiffs was excessive and unreasonable in duration and scope.

76.    The seizure of the Patron Plaintiffs and Plaintiff Shepherd constituted an arrest, for which probable cause was required.

77.    The arrest of the Patron Plaintiffs and Plaintiff Shepherd was unreasonable.

78.    Atlanta Police officers intended to confine the Individual Plaintiffs, committed acts resulting in their confinement, and the Individual Plaintiffs were aware of their confinement.  The Individual Plaintiffs reasonably did not believe that they were free to leave.

### Excessive Force

79.    Atlanta police officers used and directed excessive force against the Patron Plaintiffs when they were not authorized to utilize any force.

80.    Defendants' use of excessive force was unreasonable.

17

## Unreasonable Search

81.    Atlanta police officers had no reasonable belief that any of the
Individual Plaintiffs was armed and dangerous.

82.    The pervasive searches of the Patron Plaintiffs and Plaintiff Shepherd
were unreasonable.

83.    Atlanta police had neither a warrant, nor probable cause plus exigent
circumstances, authorizing a search of any of the Patron Plaintiffs or Plaintiff
Shepherd.

84.    The searches of the Patron Plaintiffs and Plaintiff Shepherd, including
forcible and unconsented searching of the contents of their pockets, and seizing
personal articles including keys, cash, wallets, and driver's licenses and other
identification documents, were unreasonable.

85.    The search of the personal residence of Plaintiff Shepherd and the
business premises of Plaintiff Ramey & Kelley, and Plaintiff Rawhide Leather was
unreasonable.

86.    Defendants acted with reckless, deliberate and callous indifference to
the constitutionally protected rights of the Plaintiffs.

87.    It was clearly established on September 10, 2009 that detaining,
arresting, or searching the Patron Plaintiffs, about whom officers had no

18

reasonable suspicion or probable cause, simply because they were present at a particular bar, would violate the Patron Plaintiffs' clearly-established constitutional rights. The Defendants had fair warning that their conduct would violate the Constitution, and no reasonable officer could have believed that the detention, arrest, or search of the Patron Plaintiffs was legal.

88.    It was clearly established on September 10, 2009 that entering or searching the Eagle or the Rawhide Store in the absence of a warrant or probable cause plus exigent circumstances would violate the Corporate Plaintiffs' clearly-established constitutional rights. The Defendants had fair warning that their conduct would violate the Constitution, and no reasonable officer could have believed that the warrantless entry and search of the Eagle or the Rawhide Store was legal.

89.    It was clearly established on September 10, 2009 that entering or searching Plaintiff Shepherd's private home in the absence of a warrant or probable cause plus exigent circumstances would violate Plaintiff Shepherd's clearly-established constitutional rights. The Defendants had fair warning that their conduct would violate the Constitution, and no reasonable officer could have believed that the warrantless entry and search of Plaintiff Shepherd's private home was legal.

19

90. It was clearly established on September 10, 2009 that arresting Plaintiff Shepherd within his private home in the absence of a warrant, or probable cause plus exigent circumstances, would violate Plaintiff Shepherd's clearly-established constitutional rights. The Defendants had fair warning that their conduct would violate the Constitution, and no reasonable officer could have believed that the warrantless arrest of Plaintiff Shepherd in his private home was legal.

91. It was clearly established on September 10, 2009 that conducting warrantless raids using mass detentions and searches of patrons and bar premises, seizure of patrons' identity documents, and running warrant checks on all patrons would violate the Plaintiffs' clearly-established constitutional rights. The Defendants had fair warning that their conduct would violate the Constitution and any reasonable officer would have known of the binding legal precedent that clearly established these rights.

92. The Defendants' actions at the Eagle were conducted pursuant to an Atlanta Police Department policy, practice and/or custom with the force of law (A) to conduct warrantless raids using mass detentions; (B) to search and seize everyone located at the scene of a "raid," or at a place where police believe a crime has been committed, without regard to particularized reasonable suspicion or

probable cause; (C) to search all individuals found at the scene of a "raid," or at a place where police believe a crime has been committed, and to seize their identification documents and to run warrant checks on them without regard to particularized reasonable suspicion or probable cause or exigent circumstances; (D) to apply force and tactics of forceful control (including forcing individuals to lay flat on the ground and/or otherwise restraining them) to persons found at the scene of a "raid," or at a place where police believe a crime has been committed, without regard to a particularized reasonable belief that any individuals are armed and dangerous.

93.    A real and actual controversy exists, necessitating declaratory and injunctive relief from this Court, in that Defendant City of Atlanta continues to maintain the legality of the aforementioned policies, practices and/or customs. Patron Plaintiffs continue to be specially subject to such raids.

94.    Plaintiffs are entitled to damages, declaratory relief and injunctive relief as set forth herein.

### SECOND CLAIM FOR RELIEF
**(Unconstitutional Search and Seizure)**
**Violation of the Georgia Constitution, Art. I, Sec. 1, ¶¶ XIII, XVII**
**(by all Plaintiffs against Individual Defendants)**

95.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

96.    The Individual Defendants, by the foregoing actions, committed unreasonable seizures, used excessive force, and conducted unreasonable searches in violation of Georgia Constitution, Art. I, Sec. 1, ¶¶ XIII, XVII.

97.    Plaintiffs are entitled to damages, declaratory relief and injunctive relief as set forth herein.

## THIRD CLAIM FOR RELIEF
**(Unconstitutional Denial and Suppression of the Right of Free Speech and the Right to Question the Conduct of Police Officers)**
**Violation of the First and Fourteenth Amendments to the United States Constitution Brought Under 42 U.S.C. § 1983**
**(by Individual Plaintiffs against all Defendants)**

98.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

99.    By responding to Individual Plaintiffs who unobtrusively asked for names, badge numbers, or other information about the officers' execution of their duties with force, threats, and other acts of retaliation, the Defendants violated the rights of the Individual Plaintiffs under the United States Constitution verbally to question, challenge, or criticize the police in a manner that does not obstruct the officers.

100.    Defendants acted with reckless, deliberate and callous indifference to the constitutionally protected rights of the Individual Plaintiffs.

101.  It was clearly established on September 10, 2009 that preventing persons from exercising their First Amendment right verbally to question, challenge, or criticize the police in a manner that does not obstruct the officers, or punishing them for doing so, violated those Individual Plaintiffs' clearly-established constitutional rights.  The Defendants had fair warning that their conduct would violate the Constitution, and no reasonable officer could have believed that under these circumstances it was legal to prevent persons from exercising their First Amendment rights or punish them for doing so.

102.  The Defendants' actions at the Eagle were conducted pursuant to an Atlanta Police Department policy, practice and/or custom with the force of law to prevent persons from exercising their First Amendment right verbally to question, challenge, or criticize police officers in a manner that does not obstruct legitimate law enforcement activity, and/or punish them for doing so.

103.  A real and actual controversy exists, necessitating declaratory and injunctive relief from this Court, in that defendant City of Atlanta continues to maintain the legality of the aforementioned policy, practice and/or custom.

104.  The Individual Plaintiffs are entitled to damages, declaratory relief and injunctive relief as set forth herein.

## FOURTH CLAIM FOR RELIEF
### (Unconstitutional Denial and Suppression of the Right of Free Speech and the Right to Question the Conduct of Police Officers)
### Violation of Georgia Constitution, Art. I, Sec. 1, ¶¶ V, IX
### (by the Individual Plaintiffs against the Individual Defendants)

105.   The Individual Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

106.   By responding to Individual Plaintiffs who unobtrusively asked for names, badge numbers, or other information about the officers' execution of their duties with force, threats, and other acts of retaliation, the Defendants violated the rights of the Individual Plaintiffs under the Georgia Constitution verbally to question, challenge, or criticize the police in a manner that does not obstruct legitimate law enforcement activity.

107.   The Individual Plaintiffs are entitled to damages, declaratory relief and injunctive relief as set forth herein.

## FIFTH CLAIM FOR RELIEF
### (False Imprisonment)
### (by Individual Plaintiffs against the Individual Defendants)

108.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

109.  By unlawfully detaining Individual Plaintiffs and depriving them of their personal liberty, the Defendants are guilty of false imprisonment, a tort for which an action for damages will lie under O.C.G.A. § 51-7-20.

110.  All of the Individual Defendants combined and conspired to accomplish the unlawful objective of falsely imprisoning the Patron Plaintiffs and Plaintiff Shepherd by unlawful means.

111.  The false imprisonment was the act of the several Defendants jointly, and Defendants are jointly and severally liable for the entire damages pursuant to OCGA § 51-7-22.

112.  The Individual Defendants, with malice and oppression, falsely imprisoned and/or combined and conspired to falsely imprison the Patron Plaintiffs and Plaintiff Shepherd, and did so under color of legal process.

113.  Individual Plaintiffs are entitled to damages as set forth herein.

## SIXTH CLAIM FOR RELIEF
### (Assault)
### (by Individual Plaintiffs against Raiding Party Defendants)

114.  The Individual Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

115.  When the Raiding Party Defendants entered the Eagle, shouted to the Patron Plaintiffs to get on the floor, and threatened them with violence (including

threatening to hit a patron on the head with a barstool) they committed unlawful acts that would lead a person reasonably to apprehend a violent injury. Such acts are civilly actionable as an assault under the laws of Georgia.

116. All of the Raiding Party Defendants combined and conspired to accomplish the unlawful objective of assaulting the Individual Plaintiffs by unlawful means.

117. The Raiding Party Defendants, with malice and oppression, assaulted and/or combined and conspired to assault the Individual Plaintiffs, and did so under color of legal process.

118. The Individual Plaintiffs are entitled to damages as set forth herein.

## SEVENTH CLAIM FOR RELIEF
### (Battery)
### (by Individual Plaintiffs against Raiding Party Defendants)

119. The Individual Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

120. The Raiding Party Defendants intended to make harmful or insulting or provoking contact with the Individual Plaintiffs. The Raiding Party Defendants' acts of shoving the Individual Plaintiffs to the ground, kicking them, putting their boots on their back, and putting their hands inside the Individual Plaintiffs'

pockets were offensive, unlawful touchings that would have been offensive to an ordinary person. Such acts constitute battery under the laws of Georgia.

121. The Raiding Party Defendants' acts of shoving the Individual Plaintiffs to the ground, kicking them, putting their boots on their back, and putting their hands inside the Individual Plaintiffs' pockets were illegal attempts to commit a physical injury upon the Individual Plaintiffs and are actionable under O.C.G.A. § 51-1-14.

122. By shoving the Individual Plaintiffs to the ground, kicking them, putting their boots on their back, and forcing them to lay in broken glass, the Raiding Party Defendants intentionally caused physical injury to the Individual Plaintiffs, in violation of O.C.G.A. § 51-1-13.

123. All of the Raiding Party Defendants combined and conspired to accomplish the unlawful objective of committing a battery on the Individual Plaintiffs by unlawful means.

124. The Raiding Party Defendants, with malice and oppression, committed a battery on and/or combined and conspired to commit a battery on, the Individual Plaintiffs, and did so under color of legal process.

125. The Individual Plaintiffs are entitled to damages as set forth herein.

## EIGHTH CLAIM FOR RELIEF
### (Trespass and Damage to Property)
### (by Plaintiffs Shepherd, Ramey & Kelley, and Rawhide Leather
### against Individual Defendants)

126.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

127.   Defendants stormed into the Eagle, Rawhide Leather, and the private home of Plaintiff Shepherd with a warrant, probable cause plus exigent circumstances, or consent, and damaged property including unlawfully kicking in a door at the Eagle, and these acts constitute a trespass in violation of O.C.G.A. § 51-10-3.

128.   All of the Individual Defendants combined and conspired to accomplish the unlawful objective of trespassing on the premises of the Atlanta Eagle.

129.   The Raiding Party Defendants combined and conspired to accomplish the unlawful objective of trespassing on the premises of Rawhide Leather and the private home of Plaintiff Shepherd.

130.   The Individual Defendants, with malice and oppression, trespassed upon and/or combined and conspired to commit trespass.

131.   Plaintiff Shepherd, Plaintiff Ramey & Kelley, and Plaintiff Rawhide Leather are entitled to damages as set forth herein.

28

## NINTH CLAIM FOR RELIEF
### (Computer Invasion of Privacy Brought Under O.C.G.A. § 16-9-93(c)) (by Patron Plaintiffs and Plaintiffs Ray and Shepherd against all Individual Defendants)

132.   Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

133.   Defendants, knowing that they lacked the authority to do so, committed Computer Invasion of Privacy against Patron Plaintiffs and Plaintiff Shepherd by entering their personal information in a police computer and checking it against a police database with the intention of examining personal information about Patron Plaintiffs and Plaintiff Shepherd.

134.   All of the Individual Defendants combined and conspired to accomplish the unlawful objective of committing Computer Invasion of Privacy against the Patron Plaintiffs and Plaintiff Shepherd by unlawful means.

135.   Patron Plaintiffs and Plaintiff Shepherd are entitled to damages as set forth herein.

## PRAYER FOR RELIEF

On the basis of the foregoing, Plaintiffs respectfully pray that this Court:

1.      Award Plaintiffs all actual damages, including damage to property, physical pain and injury, mental anguish and emotional distress.

29

2.    Award Plaintiffs nominal damages for violations of Plaintiffs' constitutional rights;

3.    Award Plaintiffs punitive damages to the extent permitted by law;

4.    Declare that Defendants violated Plaintiffs' legal and constitutional rights by: (a) conducting a warrantless raid in the absence of both probable cause and exigent circumstances; (b) entering and searching the business premises of Plaintiffs Ramey & Kelley and Rawhide Leather without either a warrant, or probable cause plus exigent circumstances; (c) entering and searching the private home of Plaintiff Shepherd without either a warrant, or probable cause plus exigent circumstances; (d) arresting Plaintiff Shepherd inside his private home without either a warrant, or probable cause plus exigent circumstances; (e) searching Patron Plaintiffs and Plaintiff Shepherd without reasonable belief that any of them was armed and dangerous; (f) conducting a warrantless search of Patron Plaintiffs without reasonable suspicion to believe that any of them was involved in criminal activity; (g) detaining Patron Plaintiffs without probable cause to believe that any of them was involved in criminal activity; (h) arresting Patron Plaintiffs without probable cause to believe that any of them was involved in criminal activity; (i) forcing Patron Plaintiffs to remain face-down and flat on the floor of the Eagle without probable cause, or an reasonable basis to suspect a threat to officer safety

combined with reasonable suspicion; (j) impeding the departure of Patron

Plaintiffs and Plaintiff Ray by releasing them, telling them to leave, but blocking

their cars in the parking lot with police vehicles; and (k) responding to Plaintiffs'

unobtrusive communications with police with violence, threats, or retaliatory

action;

     5.     Enjoin Defendants: (a) to delete and expunge from any and all police

records or databases any information about Patron Plaintiffs obtained at the Atlanta

Eagle on September 10-11, 2009, or any record of Patron Plaintiffs' presence at the

Atlanta Eagle on September 10-11, 2009, after trial in this action and any trial

involving the Raid or arrests made during the Raid; (b) from conducting

warrantless raids in the absence of both probable cause and exigent circumstances,

(c) from stopping or detaining any individual in connection with enforcement of

the criminal law without reasonable suspicion to believe the particular individual is

engaging or has engaged in criminal conduct (consistent with *Terry v. Ohio,* 392

U.S. 1 (1967); *Brown v. Texas*, 443 U.S. 47 (1979); and other controlling law);

(d) from demanding the name or identification documents of any individual in

connection with the enforcement of the criminal law without reasonable suspicion

to believe the individual is engaging or has engaged in criminal conduct

(consistent with *Brown v. Texas*, 443 U.S. 47 (1979) and other controlling law);

(e) from conducting a warrantless search of any person, unless incident to lawful arrest, without both probable cause to believe he or she personally is involved in criminal activity and exigent circumstances which preclude the obtaining of a warrant; (f) from "frisking" or "patting down" individuals stopped pursuant to a lawful investigatory detention (a "Terry Stop") without a reasonable suspicion that the individual is armed and dangerous (consistent with *Terry v. Ohio,* 392 U.S. 1 (1967) and *Ybarra v. Illinois*, 444 U.S. 85 (1979), and other controlling law); (g) from handcuffing any person without probable cause, or an articulable basis to suspect a threat to officer safety combined with reasonable suspicion; (h) from requiring any person to lay flat on the ground without probable cause, or an articulable basis to suspect a threat to officer safety combined with reasonable suspicion; and (i) from preventing persons from verbally questioning, challenging, or criticizing the police in a manner that does not obstruct legitimate law enforcement activity, and  punishing persons for such communications that do not obstruct the execution of proper law enforcement function (consistent with *City of Houston v. Hill*, 82 U.S. 451 (1987); *Skop v. City of Atlanta*, 485 F.3d 1130 (11th Cir. 2007); *Davis v. Williams*, 451 F.3d 759 (11th Cir. 2006) and other controlling law);

32

6.    Award attorney's fees under 42 U.S.C. § 1988 and any other applicable provision of law;

7.    Award such other and further relief as the Court deems just and proper.


A JURY TRIAL IS REQUESTED.


Respectfully submitted,


By: _____
Gregory R. Nevins, GA State Bar No. 539529
Elizabeth L. Littrell, GA State Bar No. 454949
Graham S. Lee, GA State Bar No. 304877
Lambda Legal Defense and Education Fund, Inc.
730 Peachtree St. NE, Suite 1070
Atlanta, GA 30308
Telephone: (404) 897-1880
Facsimilie: (404) 897-1884


Daniel J. Grossman
GA State Bar No. 313815
1579 Monroe Dr., Suite F-138
Atlanta, GA 30324
Telephone: (404) 654-0326
Facsimilie: (404) 897-1884

Lisa L Kung, GA State Bar No. 430302
Gerald R. Weber, Jr., GA State Bar No. 744878
Southern Center for Human Rights
83 Poplar St. NW
Atlanta, GA 30303
Telephone: (404) 688-1202
Facsimilie: (404) 688-9440


ATTORNEYS FOR PLAINTIFFS