## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GEOFFREY CALHOUN, et al.,    )
                            )
     Plaintiffs,         )
                            )
v.                     )     **CIVIL ACTION FILE NO.**
                            )     **1:09-CV-3286-TCB**
RICHARD PENNINGTON et al    )
                            )
     Defendants.       )

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS

COMES NOW, Defendants in the above-styled case and files this response in opposition to Plaintiffs' motion to compel as follows:

### I.    INTRODUCTION

The Defendants first respond to the Plaintiffs' Motion to Compel by stating that despite the protestations and overwrought demands, that all of the reasonably relevant documents to which the Plaintiffs would be entitled under the Civil Practice Act have been produced or offered for production.

In this motion, Plaintiffs request that Defendants be compelled to file responses to Plaintiffs' various Requests for Document Production and Requests for Interrogatories.  The motion follows a complex format stating that Defendants

have failed to preserve evidence, failed to search for responsive items and failed to comply with the Court's orders.  While Plaintiffs' motion is impressively thick and filled with attachments, it does not place the factual content and the subject discovery requests and responses in their full context.  An examination of the circumstances surrounding this motion demonstrates that Plaintiffs' motion and the relief sought is unwarranted and unnecessary.  Therefore, Plaintiffs' motion should be denied.

## II.    STATEMENT OF THE CASE

Despite the strident protestations of Plaintiffs' counsel, the Defendants in this matter have not engaged in any willful conduct that would justify the relief requested. While Defendants concede that discovery in this matter has not progressed as smoothly as either side would have anticipated, this is not solely the responsibility of Defendants.

This case originally was filed on November 24, 2009 alleging constitutional violations relative to an event that occurred on September 10, 2009 at the Atlanta Eagle. Service was effectuated by consent of the City on January 4, 2010 and the appropriated waivers were filed thereafter. At the time of filing and service of the Complaint, the named defendants were the City, Chief Pennington and Officers Bridges, Noble and Watkins, along with Jane and John Does 1-45. The Answer to the original Complaint was filed March 1, 2010. The Complaint was amended on

March 17, 2010 and for the first time the current defendants were added as parties. Initial discovery to the individual defendants was served April 5, 2010.

Discovery that originally was undertaken by previous defense counsel in this case resulted in the intervention by the Court in the parties' discovery disputes. As noted by Plaintiffs, there was a teleconference with the Court on August 20, 2010 at a point in the litigation where new defense counsel had been substituted into the case. Neither of the two original attorneys who had worked the case was associated with the City's Law Department at that time, and newly substituted counsel was attempting to familiarize themselves with this case as well as some thirty other cases that had to be reassigned. The conference progressed as a fairly one-sided recitation by Plaintiffs' counsel of what he perceived to have been abuse of the discovery process and concluded with the Court's directive that Defendants cooperate fully with Plaintiffs' discovery requests, including, *inter alia,* permitting Plaintiffs' counsel to conduct site visits to review documents in the places where they were maintained.

Counsel conferred by telephone  after this teleconference to determine how best to proceed and at the behest of defense counsel, Plaintiffs' counsel and the defense counsel met on August 25, 2010, at the City's Law Department for their first in person conference. During this meeting, defense counsel sought to determine from plaintiffs' counsel the particular concerns of counsel regarding

discovery and the proposed methods that counsel intended to pursue relative to forensic and electronic discovery. This meeting was followed by a series of email communications that provided further clarification to defense counsel as to process for producing the required information.

The parties made arrangements to get the site visits underway, with the initial visit at APD Headquarters occurring on August 27. Prior to that site visit, the parties had been communicating regarding the logistics for providing access to cell phones, electronically stored data and emails. During the course of the initial site visit, it became obvious to defense counsel, based upon the manner in which the site visit was progressing, that the parameters of the Court's directive were so broadly drawn as to make it difficult for counsel to be certain that they were in compliance. As a result, defense counsel requested another teleconference with the Court and that conference occurred the same day.

During the August 27 conference, defense counsel advised the Court that that they felt they would be better able to comply with the Court's directive, if an order were to be issued that would provide better guidance. Again, it should be noted that newly assigned defense counsel was still in the process of becoming familiar with this case. Counsel also informed the Court of the difficulty in complying with the Plaintiffs' request for cell phones being turned over for as long as four (4) days per forensic examination. While the Court originally agreed to

enter an order summarizing the conference that was to be drafted by Plaintiffs' counsel, the Court later recanted and chose not to do so. The Court did, however, agree that cell phones could not be in Plaintiffs' control for longer than twenty-four (24) hours.

The parties then proceeded to complete the site visits at Headquarters and the Office of Professional Standards on August 27 and August 30 and on September 1. Thereafter, Plaintiffs' counsel having identified thousands of documents that he wanted copied, defense counsel proceeded to copy the requested documents and turn them over to Plaintiffs' counsel. At Plaintiffs' request, documents that were archived in storage were retrieved and produced for inspection. Cell phone content was retrieved, transferred to disc[1] and provided to Plaintiffs. During the site visits, Plaintiffs' counsel identified by serial number, the computer hard drives that he wanted his expert to inspect.

With regard to the larger body of electronic data stored on the City's servers, due to the unlimited nature of the Court's directive, Plaintiffs' counsel demanded that the entire universe of electronic files for seven thousand seven hundred (7,700) users, including lawyers, be downloaded and provided to him. His request was based upon deposition testimony of the IT staff that suggested this was a readily available universe of information that routinely is archived every 30 days. Upon

---

[1] Approximately 22 discs were provided to Plaintiffs' counsel.

defense counsel's objection and request that counsel limit the scope by naming the individuals whose files were essential, Plaintiffs' counsel insisted he was not limited by the Court's directive and demanded retrieval of the entire universe of information. To facilitate the retrieval process, the City's IT staff and Plaintiffs' expert engaged in a four and a half hour telephone conference with Plaintiffs' counsel to sort the logistics of the production. Following this conference, it was determined that the process of retrieval would require several thousand man hours as each of the 7,700 individual files would take four (4) hours to download. It was only after this determination that counsel agreed to specify certain files to be retrieved and in communication with defense counsel explained that it was never his intent to get all 7,700 files; that the testimony of the City's IT staff had led him to believe that the emails were conveniently accessible. These were then downloaded and provided by defense counsel. In addition, existing back-up tapes were provided to counsel pursuant to the Court's August 20, 2010 and subsequent directives.

Plaintiffs' counsel also raised the issue of spoliation with the Court following the conference with the IT staff when it was discovered that back-up tapes were being re-used. However, the Court was persuaded that defense counsel had instituted measures to correct this situation. Immediately after the close of the teleconference with the IT staff, defense counsel issued a written directive to the

6

City's IT staff to discontinue overriding back-up tapes. In addition, the City's IT Department invested $80,000.00 for a new Symantec Netbackup Dedupe digital storage system that allowed the City to abandon the use of back-up tapes with software applications that more efficiently facilitates e-discovery.

In the last conversation that defense counsel had with Plaintiffs' counsel when he came to inspect retrieved archived documents, it appeared to defense counsel that the parties were continuing to make satisfactory progress in complying with the Court's directive. The next day, defense counsel was surprised to learn that Plaintiffs' counsel felt it necessary to file the motion that is now before the Court.

### III.   STATEMENT OF FACTS

At the time of the initial conference with the Court on August 20, 2010, Defense counsel Robert N. Godfrey and Tamara Baines had been involved in this case for only a few weeks at most. (Exhibit B, Affidavit of Robert N. Godfrey, ¶ 1; Exhibit C, Affidavit of Tamara Nikki Baines, ¶ 2).  As a result, as of the August 20 teleconference, there had been no time to assess the status of this case and counsel's participation was limited to listening to the assertions of Plaintiffs' counsel as to what had or had not been accomplished in discovery. Thus, when the Court issued its directive that defense counsel was required to cooperate fully in discovery with their defenses having been summarily dismissed,  defense counsel

essentially had to depend upon Plaintiffs' counsel to provide some specific direction as to what he saw as deficiencies.  (Exhibit C, Affidavit of Tamara Nikki Baines, ¶ 9).

Defense counsel invited Plaintiffs' counsel to confer and the resulting meeting concluded on a positive note and in the spirit of mutual cooperation on a going forward basis. (Exhibit B, Affidavit of Robert N. Godfrey, ¶ 2).  One of the major areas discussed during this meeting was the ongoing need for patience from plaintiffs' counsel as defense counsel attempted to familiarize themselves with the issues in dispute.  (*Id.*)

Upon initial investigation, counsel determined that over twenty thousand (20,000) documents had been produced by Defendants prior to August 20, based upon the Bates-stamped record available to counsel. (Exhibit B, Affidavit of Robert N. Godfrey, ¶ 10).  Since that time, in the full spirit of cooperation, defendants have produced and continue to produce an equivalent amount of documents that they believe to be responsive to Plaintiffs' requests. (*Id.*)  A summary of the document production by type and related Bates number is attached as Exhibit A.

Following the August 20 conference, defense counsel arranged an all hands meeting with the named defendants and their superiors to inform them of the court's directive. (Exhibit C, Affidavit of Tamara Nikki Baines, ¶ 9).  At that

meeting, defendants were provided with a questionnaire that sought relevant information regarding cell phones and social media pages. (*Id.*)  There was some concern expressed during that meeting when the officers were informed that their cell phones would be out of their possession for as long as four days, based upon the representation of Plaintiffs' counsel that this would be the amount of time needed for a forensic review. (Exhibit B, Affidavit of Robert N. Godfrey, ¶ 5; Exhibit C, Affidavit of Tamara Nikki Baines).   This issue was addressed to Plaintiffs' counsel for a possible compromise solution that ultimately had to be addressed by the Court in a subsequent teleconference. (Exhibit B, Affidavit of Robert N. Godfrey, ¶ 5).  During that latter conference on August 27, the Court limited the Plaintiffs to a 24 hour period for the forensic analysis. Defendants never refused to hand over the cell phones for review. (*Id.*)  Moreover, Defendants utilized the APD's technical staff to download a complete copy of everything currently on the telephones and deliver the downloaded information to Plaintiffs' counsel. (*Id.*)

After the meeting with the officers and their command staff, arrangements were then made to provide Plaintiffs' counsel with the access to Police Department files. (Exhibit B, Affidavit of Robert N. Godfrey, ¶ 3). Complete access to the files was provided in the company of defense counsel on August 27, August 30 and on September 1, 2010. (*Id.*)  Plaintiffs' counsel was permitted to look into any file

cabinet, desk or storage area that he desired and to designate for copying and production any individual file, file drawer or other set of files he desired. (*Id.*) These documents then were accumulated, copied, Bates stamped and scanned to disc for counsel's convenience. (*Id.*)   In addition, wherever counsel located documents that he wanted copied, he was provided those copies as well as duplicates in the overall scanned production.  (*Id.*)

In addition to reviewing documents, Plaintiffs' counsel identified computers throughout APD Headquarters that he wanted made available for a forensic analysis of the hard drive by his request. (Exhibit B, Affidavit of Robert N. Godfrey, ¶ 4).  Those computers remain in place and await the forensic analysis by the expert. What the parties agreed was to have the Plaintiffs' expert come in and clone the hard drive of each identified computer for off-site analysis. (*Id.*) This remains to be done. (*Id.*)

The electronic data that counsel requested the City to provide included back-up tapes from the City's servers as well as existing user files. (Exhibit B, Affidavit of Robert N. Godfrey, ¶ 8).  This would have been in addition to the files that would be recovered from the individual hard drives of the computers identified at the various APD offices that Defendants agreed to produce and also would have been a duplication of those files. (*Id.*)  As an initial matter, defense counsel sought some consideration from plaintiffs' counsel from the enormity of such a production

that would involve the files of 7,700 City users, including lawyers and individuals not remotely related to the claims in the case. (Exhibit B, Affidavit of Robert N. Godfrey, ¶ 7).  Defense counsel suggested that it would be more productive to attempt to limit the production to a specific set of users whose documents might prove relevant. (*Id.*) In response, counsel insisted that he was in no way limited by the Court's directive, that all objections had been overruled and that he intended for Defendants to provide him, in a readable medium, the entire universe of the 7,700 files. (*Id.*)

In an effort to reason with plaintiffs' counsel, defense counsel suggested that the City's IT staff and the Plaintiffs' expert be included in a teleconference to discuss the feasibility of the request and the logistics of the production. (Exhibit B, Affidavit of Robert N. Godfrey, ¶¶ 7, 8).  After a four and a half hour teleconference, Plaintiffs' counsel continued to demand the 7,700 files. (Exhibit B, Affidavit of Robert N. Godfrey, ¶ 7).

The City's IT staff then undertook to analyze the feasibility of compliance and determined that it would require several thousand man-hours to comply. (*Id.*) Each of the 7,700 files would require a four (4) hour timeframe to be downloaded. Given this information, Plaintiffs' counsel finally agreed to provide a list of the individuals whose files he desired and this data was downloaded to a portable hard drive and given to Plaintiffs' counsel. (Exhibit B, Affidavit of Robert N. Godfrey,

¶ 8, 11).   At the same time this hard drive was hand-delivered to counsel, the existing back-up tapes were delivered. (*Id.*)   However, counsel did not take the back-up tapes with him and they remain available for production to him.  (*Id.*)

Plaintiffs' counsel and defense counsel were continuously in communication throughout the period prior to the filing of the motion to compel and defense counsel was attempting on almost a daily basis to satisfy the demands of Plaintiffs' counsel. (Exhibit B, Affidavit of Robert N. Godfrey, ¶ 9).  When it was determined that Chief Pennington's files were no longer in the active files at APD Headquarters, the archived files were immediately retrieved from storage and presented to Plaintiffs' counsel for unfettered inspection. (Exhibit B, Affidavit of Robert N. Godfrey, ¶ 3). The Pennington files were made available on the same day he appeared to inspect the downloaded cell phone records. (*Id.*)

In one conversation with Plaintiffs' counsel that occurred on the day of the site visit to the Atlanta Police Department's Office of Professional Standard (OPS"), when it appeared that the parties were done with the particulars of document production, defense counsel inquired as to what specifically was outstanding that counsel was seeking. (Exhibit B, Affidavit of Robert N. Godfrey, ¶ 9).  The response was that the previous responses to interrogatories and requests for production of documents needed to be supplemented. (*Id*.) Defense counsel agreed that that would be done and then inquired about the second set of discovery

requests. (*Id.*)  The response, as defense counsel understood it, was that the second requests were not significantly different from the first and that supplementing the original responses should suffice. (*Id.*) Those responses were in fact supplemented and served on counsel.

## IV.    ARGUMENT AND AUTHORITY

### A. THE MOTION TO COMPEL SHOULD BE DISMISSED FOR FAILURE TO ENGAGE IN A GOOD FAITH EFFORT TO RESOLVE DISCOVERY DISPUTES.

It is well-established that a "range of choice" exists in how a District Court may rule on a motion to compel.  *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989).  However, before filing a motion to compel further disclosures or discovery pursuant to Rule 37(a), the aggrieved party must attempt to confer with the unresponsive party in an effort to obtain the desired material without court action. All motions to compel must include a certification that such an effort has been made. Rule 37(d)(1)(B) has a similar requirement for a party who moves for Rule 37(b) sanctions due to an opponent's failure to serve interrogatory answers or to serve a response to a document request. Plaintiff's Motion to Compel should be dismissed for failure to engage and certify that, prior to filing this motion, counsel for Plaintiff has contacted counsel for Defendants in a good faith effort to resolve the matters in Plaintiff's Motion pursuant to Federal Rule Civil Procedure 37 (a)(1).

Fed. R. Civ. P. 37(a)(1) provides, in pertinent part:

> On notice to other parties and all affected persons, a party may move for
> an order compelling disclosure or discovery. The motion must include a
> certification that the movant has in good faith conferred or attempted to
> confer with the person or party failing to make disclosure or discovery in
> an effort to obtain it without court action.

All of Plaintiffs' attempts to engage in a good faith resolution of discovery issues occurred before the telephone conference with Judge Batten on August 20, 2010. During the time prior to the conference call, Plaintiffs' counsel was on notice that the attorney of record was no longer employed with the City and that new counsel was being substituted. Plaintiffs' counsel specifically requested the August 20, 2010 conference to address discovery issues related to the timeframe before the substitution of the current counsel for Defendants. Moreover, Defendants' counsel, Bob Godfrey, engaged in several conversations with Plaintiff's counsel, Dan Grossman, regarding compliance with previous discovery requests. At no time, between the timeframe of September 14, 2010 and prior to the filing of this instant motion, did Defendants' counsel assert that Defendants were not in compliance with production of discovery.

### B. THE CITY HAS COMPLIED WITH THE COURT'S AUGUST 20, 2010 TELEPHONE CONFERENCE DIRECTIVES.

Plaintiffs' counsel alleges that Defendants have failed to comply with the Court's directives from the August 20, 2010 telephone conference. Plaintiffs' counsel alleges that the Defendants are not in compliance with regards to the following: (1) production of individuals Defendants' mobile phones and photographs for inspection, (2) production of "existing" backup tapes, (3) inspection of original documents at the offices of the Atlanta Police Department, and (4) Production of 30(b)(6) witness. (Plaintiff's Motion to Compel Discovery and for Sanctions, pp. 5-8). However, review of the Court's directions and Defendants' actual responses do not support Plaintiff's contentions. Defendants will address the general issues as articulated in Plaintiff's instant motion and then address each of the specific issues articulated in Exhibit A to Plaintiff's instant motion.

First, the Court specifically directed Plaintiffs' counsel to inform Defendants' counsel of any perceived noncompliances with discovery:

> "Mr. Grossman, I'll allow you to point out to defendants' counsel any alleged noncompliances that you would like to see corrected in the form of supplemental responses." Court's August 20, 2010 Order, p. 9.

In the instant case, Plaintiff has failed to engage in a good faith effort to address **any perceived problems with the current discovery responses as of August 20, 2010, before filing this motion** nor has Plaintiff filed the required certification of good faith as required pursuant to FRCP 37 or pursuant to the

Court's August 20, 2010 order.[2]  As such, Plaintiff's Motion to Compel should be dismissed.

## 1. Defendants are in compliance with the Court's August 20, 2010 directive regarding the requested photographs.

Plaintiffs' counsel alleges noncompliance with providing photographs of the officers. However, the court addressed this issue in its August 20, 2010 order:

> "It seems to me that what you [Plaintiffs' counsel, Dan Grossman] ought to do is look at those pictures first and see if they're sufficient, And I would think they probably would be. Be if you still feel that they're not sufficient, I'm going to find that they need--that these individual defendants need to go to Lambda Legal. But don't make them go if the pictures are good enough. Court's August 20, 2010 Order, p.14.

In this passage, the Court referenced Defendants' counsel proposal to have individual Defendants go to Lamda Legal in order to have their pictures taken.

> "I noticed [that] the City has made the offer …to have the remaining defendants travel to Lambda Legal and have their photographs taken at their convenience. That sounds about as reasonable as the Court could ever imagine. Court's August 20, 2010 Order, p.6.

As such, any issues regarding individual Defendant's photographs could have been easily resolved by Plaintiffs' request of Defendants' initial offer.

As established below, Defendants provided photographs to Plaintiffs, which Plaintiffs then complained as to the color and visual characteristics of the group of pictures, without specifying a single picture that did not meet his personal

---

[2] "I assume that counsel's seen my instruction to the parties and counsel that they need to try to resolve these disputes by agreements." See Court's Order, August 20, 2010, pg. 5.

preference. Instead of complying to the Court's August 20, 2010 order with regards to Lambda Legal taking the photographs, and without conferring with Defendants, Plaintiffs filed this motion stating that Defendants were not in compliance regarding production of photographs.

### 2. Defendants are in good faith compliance with the Court's August 20, 2010 and August 27, 2010 directives regarding the production of mobile phones.

The court's August 20, 2010 order granted that Defendants' would provide electronic mobile phones and Blackberries for Plaintiff's inspection. In the subsequent August 27, 2010, the court directed:

> The one thing I do want the Plaintiffs to do and to confer with the Defendants to make sure is done appropriately is to make arrangements for the inspection of these cell phones and other electronic devices over a period of days so that each individual defendant who produces his phone only has to be without his phone for one day. (Court's August 27, 2010 order, pg. 10).

Plaintiffs' and Defendants' counsel did confer, and decided to have the City's Homeland Security Department complete an initial analysis of Defendants' phones to capture all images and written communications. Then after examination of the initial analysis, Plaintiffs' counsel would identify any individual phone that they wanted for a forensic analysis. Here again, Plaintiffs' counsel has misconstrued the Court's directive. Defendants provided an initial report of 22 out

of the 34 individual officers named.[3] Instead of adhering to the joint agreement, Plaintiffs now file this instant motion, without providing any notice to Defendants of which phones would be required for forensic analysis.

### 3. Defendants are in compliance with the Court's August 20, 2010 directives regarding the inspection of site visits and production of documents.

Plaintiffs allege that all documents were not produced; however review of the record does not support this contention. In order to facilitate Plaintiffs' counsel request for original documents, the court ordered Plaintiffs' counsel to have complete access to inspect the site of police headquarters, including individuals' workspaces, OPS investigations headquarters, commanding officers' files, and other locations. As part of the site inspection, Plaintiff's counsel was allowed to note and mark documents to be copied. However, Plaintiffs counsel now alleges that Defendants compliance with the Court's order indicates Defendant's intentionally withheld documents. However, Plaintiff's allegations are confusing, when one reviews the Court's order.

> MR. GROSSMAN: I would like to mention the subject of paper files. The City has refused, in fact Ms. Baines refused…, to allow us to inspect and copy original documents. They are only willing to provide photocopies of the documents made by the defendants themselves.

---

[3] Additional cell phone reports have been provided to Plaintiffs' counsel for remaining officers.

MS. BAINES: Well, we produced a number of documents. It would be very difficult for us to take a lot of these original documents out of circulation to them make them available to the plaintiffs…

MS. BAINES (CON'T): Now, we will allow him… to check it against the originals, but we don't want to have these [original] documents leaked, to be taken off site.

THE COURT: All right. Now that …to me seems reasonable. I understand why you want to look at the …original document. And if she's telling you  we'll make you a copy of everything and then you can come down at that time when you pick up the copies or sometime shortly thereafter and compare them to the originals, to the extent you want to make sure that the copies are authentic, that seems reasonable.

Court's August 20, 2010 Order, pp. 17-18.

MR. GROSSMAN (Plaintiff's Counsel): We simply wanted access to look at the original documents in the place where they're stored in the ordinary course of business. And part of the reason we're concerned about is that Major Williams testified that the paper files of numerous people were never searched. So, we would like the opportunity to look at these files, where they're stored in the ordinary course of business, take a look at how they're stored, what kind of file numbering system there is. Removing them is less important than having a chance to inspect them so that we know we're getting everything that might exist.

THE COURT: Well, it doesn't sound to me like you want a document inspection. You want an inspection of the premises.

MR. GROSSMAN: We're not asking for that, Judge.

THE COURT (CONT'D): Ms. Baines, you just take them on a tour over there and show them where the documents are and let them see the actual original files to see how things are maintained. And they can take notes, but not—but not pictures, but they can take notes of what they see and that type thing.

MS. BAINES: All right, Your Honor.

Court's August 20, 2010 Order, pp. 17-19.

Plaintiffs admit that on August 27, August 30, and September 1, 2010, they were permitted to inspect the Atlanta Police Department offices in compliance with the Court's August 20, 2010 directives. (Plaintiff's Motion to Compel, pg. 7.) Not only did Defendants comply with the Court's order for site inspection, but in a good faith cooperation, allowed Plaintiff's counsel to mark any documents that he wanted copied and produced. Following counsel site visits, all documents marked were copied and produced to him. This allowance was not ordered in the Court's August 20 or August 27 orders, but constituted Defendants good faith compliance with any outstanding discovery issues.

### 4.  The City's 30 (b)(6) witness was sufficient.

Lastly, Plaintiff's counsel goes to extreme lengths to suggest that Defendants' 30(b)(6) witness, Debra Williams, was not prepared and that costs and/or sanctions should be awarded. It is incredulous to believe that the witness was not prepared sufficiently when her testimony is so heavily relied upon to buttress the averments of Plaintiff's instant motion. Specifically, Plaintiffs' counsel quotes at length testimony obtained from Williams that alerted him to perceived issues of noncompliance. Moreover, Williams' deposition occurred on August 5 and August 10, 2010, more than 10 days before the August 20, 2010 conference with Judge Batten regarding discovery issues. The August 20, 2010 conference is void of any objection or dissatisfaction with testimony Williams provided as the

City's 30 (b)(6) witness. Moreover, Plaintiffs' counsel contends that he was provided another witness from the City's Department of Technology, Jeremy Johnson, to answer questions regarding the City technical infrastructure. Plaintiffs' counsel, remarkably, now characterizes the City's production of these witnesses as noncompliance, although he is notably silent on this issue in both the August 20 and August 27, 2010 record from the court.

## C. SPECIFIC ALLEGED FAILURES TO COMPLY

The specific issues raised in the motion to compel were set forth separately within Appendix A to the motion (Doc. 236-1). Those issues will be addressed in the order presented in Appendix A.

### 1.  First Request for Production No. 2

This request sought disciplinary files for the Defendant officers. In response, the City produced two sets of documents which it believed satisfied the request. The entire personnel file of each of the Defendants was produced with the presumption that all personnel related matters would be captured within the personnel files, including pre-employment investigations that normally are retained in all City employees' personnel files. The City also produced any investigative files relating to complaints against the officers that were maintained separately by the Office of Professional Standards (OPS). The OPS files were updated and supplemented after the August 20, 2010 court directive. It was later determined

that there also existed separate background investigation files for the officers that were maintained by the recruitment arm of the APD. However, the information in those files do not relate to disciplinary concerns relative to an APD officer's performance as an employee with the City of Atlanta. Moreover, as many of the officers have been employed by the City for more than ten or twenty years, the information in those files would relate to whatever was uncovered as part of a background investigation that may be decades old. Even so, those files were located, copied and produced in a supplemental production as document nos. 36501-41111.[4],[5]

### 2.  First Request for Production No. 2

This request sought training records of the officers. Once again the records were presumed to have been a part of the officers' personnel files, as they are for other City employees, including other public safety personnel such as firefighters. In fact there were training records within the personnel files that were produced, although those records reflect general training requirements for all City employees and did not include records from the officers' training period at the Training Academy. As with the background investigation files, many of the officers training records may be decades old due to the amount of time they have been employed.

---

[4] The files of the following defendants could not be found: George Turner, Herman Glass, Cayenne Mayes, Scott Perry and Debra Williams.
[5] Defendants made a supplemental production after the filing of the motion to compel.

The records of the officers from the Training Academy have been produced in a supplemental production as document nos. 33885-36400.

### 3.  First Request for Production No. 5

This request asked for all personnel records of the officers and in response the personnel files were produced with the presumption that the personnel files contained all relevant documents. Since the August 20th directive from the Court, as noted above, background investigation and training files have been produced as a supplement to the original production.

### 4.  First Request for Production No. 6

This request asked for all documents concerning OPS investigations of the officers. As noted above, all OPS files were produced as document nos. 5856-20043. In addition, the OPS file for the Atlanta Eagle investigation was produced as document nos. 4608-5255. When these files originally were produced, they included both open and closed investigations. As such, while the closed investigations would have been complete files, the open investigations, including the Atlanta Eagle file, may not have been complete at the time. In an open investigation, other documents and electronic media may have been created after the date of the original production. At the site visit to OPS on September 1, it was determined that some of the open files had additional information that had not been

supplemented. Since that time those files have been updated in a supplemental

production as document nos. 31500-33605, 36499 and 36500.

### 5.  Second Request for Production No. 7

This request was for recordings of telephone communications among APD

officers during the raid. Counsel is correct that this information could not be

produced because the custodian of the recordings within APD had deleted the data.

The retention system that was used for audio recording retained the audio version

of the calls for a period of 180 days. As such, calls related to the September 10,

2009 operation at the Atlanta Eagle would have dropped from the system on or

around March 10, 2010. While it is factually accurate that the data was lost after

the litigation hold memorandum was issued to preserve electronic data, the

responsive data was no longer in existence as of April 5, 2010, the date of service

of the second production request and the Court's August 20th directive. However,

the City was able to capture the record of all communications during the time

frame surrounding the Atlanta Eagle operation in a digital printout that was

produced to counsel on the same day that was provided the telephone dumps, email

dumps and back-up tapes.

### 6.  Second Request for Production No. 21

This request was for photographs or text messages created during the Atlanta

Eagle operation. Following the Court's August 20th directive, counsel met and

conferred about the logistics of producing the cell phones of the officers for forensic inspection by Plaintiffs' expert. Defense counsel was advised that the expert was located in Minnesota and the telephones would need to be out of the officers' possession for a minimum of four (4) days to facilitate delivery analysis and return delivery. Because many of the officers rely solely on their personal cell phones for communication with superiors and with friends and family, it would have been burdensome to comply with the production as it was set by Plaintiffs' counsel. During the August 27th conference with the Court, the Court agreed and directed that telephones not be kept from the officers for more than twenty-four hours. At no time have the Defendants refused to comply with this directive. In an effort to assist Plaintiffs' counsel with this process, the City organized and carried out a telephone dump of the officers' cell phones that transferred to a readable disc all information then existing on the phones. Counsel was provided this information and was asked to review the information as a first step to determine which of the phones he specifically wanted for further forensic analysis based on what the initial data suggested. There has been no follow-up request from counsel other than what is contained in the motion. Defendants continue to be ready and willing to provide the telephones for forensic analysis as directed in the August 27th conference.

### 7.  Second Request for Production Nos. 23 and 24

These requests were for boots and clothing worn by undercover officers during the operation. The intent of the request as represented by Plaintiffs' counsel was for the Plaintiffs' to identify the officers who were inside the club during the operation because their identities were unknown to Plaintiffs.  In a supplemental response to discovery, the City has identified every participant in the operation, including the specific location of each officer within the club and each officer's area of responsibility during the operation. Some of the officers named as defendants had zero involvement with the operation for a number of reasons. In addition, photographs of clothing for John Brock (20953-20957). The boots worn by the uniformed officers involved in the operation are standard and pictures of the boots worn by James Menzoilan  have been produced as document nos. (36490-36498).

### 8.  Second Request for Production No. 28

This request was for files maintained regarding the Plaintiffs. There was confusion regarding the Index to which Major Williams testified and counsel had difficulty determining where this index was maintained and by whom. The index was located within the City's Department of Information Technology ("DIT") and produced as document nos. 40679-40952.

### 9.  Second Request for Production Nos. 30 and 31

These requests were for training materials for APD officers generally and specifically for the Red Dog Unit. All documents identified by counsel during site visits have been produced. Other responsive documents that have been produced are identified as document nos. 20957 (APD Policy Manual CD);  21251-21555 (Law Enforcement Standards); 26085-26392 (Warrants and Tactical Information); 26398-30398  APD  Tactical  Plans);  33885-36400  (Training  Academy  Files); 41112-41133 (Confidential SOPs).

### 10. Second Request for Production Nos. 35-37

These requests were for similar facts operations conducted by the Red Dog units. The specific objection to what has been produced relates to warrant execution by the narcotics Unit at residential addresses and ID checks (presumably for underage drinking) at businesses selling alcohol. Neither narcotics nor underage drinking was involved in the Atlanta Eagle operation. The operation was directed toward sexual intercourse and other lewd activities occurring in a business establishment in violation of State law and City ordinances. Defendants have produced what it believes to be responsive to the original request that now is being re-defined by the instant motion.

### 11. First Individual Request for Production Nos. 1 and 2

These requests seek communications between the officers regarding the Atlanta Eagle operation. As noted above, Plaintiffs have been provided with cell phone dumps from the officers' phones; the defendants have agreed to further forensic examination of the phones; the emails of the defendants have been produced from the City's servers; and, the Plaintiffs have identified every computer hard drive they want to conduct forensic analysis on but have not yet done so. In addition, when plaintiffs expressed their disbelief of the officers responses, defense counsel offered the officers for deposition for determination under oath of the existence of responsive information that would have included a process wherein the officers logged on to social media pages during the deposition for Plaintiffs' review. Plaintiffs originally agreed to this process but have not followed through.

### 12. Individual Request for Production No. 3

This request seeks photos of the officers. Aside from the fact that this request is inconsistent with the Plaintiffs' representation that they can only identify the officers by their clothing, photographs of many [all] of the defendants have been provided in one form or another as document nos. 20044-20079, 20852-20853, 25924-25974, 26393-26397, 36415-36489.

**13. Individual Request for Production Nos. 4 and 5**

These are the same requests for clothing and boots addressed previously.

**14. Second Individual Request for Production No. 1**

This request seeks access to the officers' online accounts. As indicated, counsel advised that responses were not required and none was provided based on this representation. At the time of service of this request, the parties already had agreed that the officers would be deposed and would log on during the depositions to their online accounts.

**15. First Continuing Interrogatories No. 1**

This request seeks the identity of the officers involved in the Atlanta Eagle operation. The City believes it adequately identified all officers involved in the operation as well as each officer's involvement. If further clarification is required it can be provided and could easily have been addressed during the depositions of the officers to which the parties had agreed. As indicated, the officer whose name was not included, Officer Bashir, was not technically a part of the operation and only drove the transport vehicle, as counsel obviously is aware, based upon his own representations. Omission of Officer Bashir's name was not an attempt to be less than fully responsive and her limited participation has been known to counsel for Plaintiffs. If it now is necessary to supplement the response further that is easily remedied.

**16. First Continuing Interrogatories No. 2**

This request is for the identity of electronic devices used in connection with the operation. The City has provided the cell phone dumps that include the identifying information for those devices, which included the PDAs of command staff from the involved units. In concert with Plaintiffs' counsel during the site visits, the computers logically utilized in the offices of the APD units involved in the operation were identified and await Plaintiffs' expert's analysis.

**17. First Continuing Interrogatories No. 7**

This request seeks the identity of other operations by APD in which more than ten civilians were detained at a place of public accommodation. The City's response was believed to be responsive when made (See document nos. 20958-21049). The essence of the request, because no record is maintained by the number of civilians involved, is that every warrant and every Narcotic and Vice operation would have to be included. Moreover, while plaintiffs use the term "raid" that term is not defined and is not a term utilized routinely by APD. However, during the site visits with counsel, every document considered by him to have been responsive was identified copied and produced. The operations that he identifies on page 11 of Exhibit A were not specifically requested until the filing of the motion to compel. Documents related to those operations, to the extent that they exist, will be produced.

### 18. First Continuing Interrogatories No. 8

This request seeks documents related to "raids" by the Red Dog Unit. Again, the documents identified by counsel during the site visits were copied and produced.

### 19. First Continuing Interrogatories No. 10

This request seeks information about complaints related to the Atlanta Eagle. Any such complaints would have been included as part of the OPS file regarding the investigation of the operation (See document nos. 36401-36405).

### 20. First Individual Continuing Interrogatories Nos. 9 and 10

These Requests seek information about complaints or disciplinary sanctions relative to each of the officers. The City has produced, as indicated above, OPS files, personnel files and background investigation files that would include the requested information.

### D. THE MOTION FOR SANCTIONS IS PREMATURE AND NOT WARRANTED.

Courts have broad discretion to impose sanctions. This power derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases. *Flury v. Daimler Chrysler Corp.* 427 F.3d 939, 944 (2005); *See also Chambers v. NASCO, Inc*., 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 (1991). Accordingly, sanctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process.

*Flury v. Daimler Chrysler Corp.,* 427 F.3d 939, 944 (11th Cir. 2005); *see also*

*Gratton v. Great American Communications,* 178 F.3d 1373, 1374 (11th Cir.1999).

"A judge's decision as to whether a party or lawyer's actions merit imposition of sanctions is heavily dependent on the court's firsthand knowledge, experience, and observation. At times the actions of the individual or party involved may be judged over the course of time." *Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996). As the Court noted in its August 27, 2010 teleconference:

> I agree with Mr. Godfrey that this is not the day to say I want sanctions because you haven't finished what you've set out to do, Mr. Grossman. What I want you to do is to finish doing what you set out to do and what I authorized and allowed you to do, and then after doing that if you are able to show that you were put through a lot of unnecessary trouble and expense because of the City's failure to comply with the Discovery Rules and/or the orders of this court, then you can apply for sanctions at that time. (Court's August 27, 2010 order, pg. 9).

The Court further reiterated:

> That's how we're going to resolve this and I expect that to be done amicably. Now, if it's not, Mr. Grossman, you can file whatever motion you think is appropriate if after all of your work is done in this discovery process, you just have a laundry list of things that the City failed to do. I'm just saying there's no reason to file it now. (Court's August 27, 2010 order, pg. 9).

Discovery does not end in this case until March 2011. Defendants respectfully request that the court consider their actions as of August 20, 2010, at which time Defendants' substituted counsel was in good faith cooperating with Plaintiffs' counsel and attempting to cure all discovery defects which had occurred

prior to their appearance on the case. Moreover, there is no evidence of spoliation and such allegation is also premature. Plaintiffs have gone to extreme lengths to create the inference that spoliation has occurred, without proof.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 Fed.Appx. 298, 301, 2009 WL 226308, 2 (11th Cir.  2009) citing *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999).

The "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation-most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir.1998); *accord Silvestri,* 271 F.3d at 591. "Notice does not have to be of actual litigation, but can concern 'potential' litigation. Otherwise, any person could shred documents to their heart's content before suit is brought without fear of sanction." *Bayoil, S.A. v. Polembros Shipping Ltd.,* 196 F.R.D. 479, 483 (S.D.Tex.2000)(citing *ABC Home Health Serv., Inc. v. IBM Corp.,* 158 F.R.D. 180, 182 (S.D.Ga.1994)).

To determine whether spoliation sanctions are warranted, a court must consider the factors identified in *Flury v. Daimler Chrysler Corp.,* 427 F.3d 939. *Graff v. Baja Marine Corp.*, 310 Fed.Appx. 298, 301, 2009 WL 226308, 2 (C.A.11 (Ga. (C.A.11 (Ga.),2009)*Griffin v. GMAC Commercial Fin., L.L.C.,* No. 1:05-CV-199-WBH-GGB, 2007 WL 521907, at *3 (N.D.Ga. Feb. 15, 2007).

In determining whether a spoliation sanction is warranted, this court must consider the following factors: (1) whether plaintiff was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether defendant acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence provided by the spoliator were not excluded. *Flury v. Daimler Chrysler Corp.,* 427 F.3d 939, 945 (11th Cir.2005). "With regard to the fourth factor, [the] law does not require a showing of malice in order to find bad faith. The court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party." *Flury,* 427 F.3d at 946 (citations omitted; *See also Griffin v. GMAC Commercial Finance, L.L.C.*, 2007 WL 521907, 3 (N.D.Ga.) (N.D.Ga.,2007)

Resolution of motions for sanctions "turns, in part, on when defendant knew, or should have known, that plaintiff was likely to bring a lawsuit against it for which the destroyed documents might be relevant." Moreover, the relevant time period for acquisition of this knowledge is circumscribed by defendant's document

retention policy, *Cf. United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.2002)(holding that defendants did not engage in spoliation of evidence where records were intentionally destroyed in accordance with a document retention policy and state regulations before litigation commenced). Moreover, an individual "[d]efendant cannot be held accountable for information it received after the documents were destroyed." *Griffin v. GMAC Commercial Finance, L.L.C.*, 2007 WL 521907, 4 (N.D.Ga.) (N.D.Ga.,2007).

In the instant motion, Plaintiff alleges that some individual Defendants deliberately deleted mobile data from their phone. (Plaintiffs' Motion to Compel, pp. 9-14.) Plaintiffs' allegations are unsubstantiated. First, examination of the expert's report proffered by Plaintiffs' merely asserts that there may be missing information, not a deliberate deletion as asserted by Plaintiffs. Defendants' have offered Plaintiffs counsel the opportunity to conduct forensic analysis and take individual Defendants' depositions to inquire into any perceived allegation regarding substantive and evidentiary issues related to the trial. In fact, Defendants' counsel coordinated and scheduled dates for Plaintiffs' counsel to conduct the depositions; however, to date Plaintiffs' counsel has not conducted the depositions. Furthermore, Plaintiffs' counsel alleges that the individual Defendants have failed to produce all electronic devices without evidence of such. Again, the Court stated:

> I do think the individual defendants have got to provide their own phones that they had…either had with them on the night of the raid or that they have used to transmit any messages, texts, or emails or any other type of electronic message touching upon the raid. And, of course, its going to be your [Mr. Grossman] during your deposition to ask them under oath if they have done that.(Court's August 20, 2010 Order, pg 22.)

Moreover, Defendants have produced all backup tapes and archived records in existence as of the August 20, 2010 conference call pursuant to the Court's order. To allege that evidence was deleted and request sanctions based on speculation and limited analysis, without an adequate determination on the merits including deposition and continuing discovery, is premature, unreasonable, and unjust.

 Secondly, Plaintiffs' allege that their December 17, 2009 Preservation letter, should have put the individual officers on notice, and that Defendants are in violation of the Court's directive. However, the individuals alleged to have deleted phone communications within the instant motion, were not joined as parties until the Amended Complaint filed on March 17, 2010 and were not served with discovery until April 5, 2010. As such, each individual officer was not on notice that he/she would be joined in an individual capacity or that their personal cellphones would be subjected to discovery requests.  Their continued use of their cell phones and routine deletion due to capacity for six months after September 2009 operation are clearly excusable.

A party seeking an adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind" and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004).

In order to establish bad faith, one must establish that the alleged acts were intentional or willful to demonstrate relevance. By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions. *Id.* at 431.

The court in *Zubulake*, specifically stated:

> In the context of a request for an adverse inference instruction, the concept of "relevance" encompasses not only the ordinary meaning of the term, but also that the destroyed evidence would have been favorable to the movant. "This corroboration requirement is even more necessary where the destruction was merely negligent, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him." This is equally true in cases of gross negligence or recklessness; only in the case of *willful* spoliation does the degree of culpability give rise to a presumption of the relevance of the documents destroyed." (internal citation omitted).

*Zubulake v. UBS Warburg LLC* , 229 F.R.D. 422, 431 (S.D.N.Y. 2004).

Although Plaintiffs have cited the *Zubulake* decision extensively throughout their brief, Plaintiffs have failed to meet the legal requirements for imposing sanctions under the decision.  Defendants' counsel issued a litigation hold memo in December 2009 which the Court found to be appropriate and necessary under the law as memorialized in the transcribed minutes from the August 20, 2010 telephone conference.   Any allegations of deletion of data can be addressed directly with each Defendant during deposition cross-examination.  This will allow them an opportunity to explain any discrepancies under oath.

### E.   COSTS FOR FORENSIC EXAMINATION AND COLLECTION OF DATA

Plaintiffs are asking the Court to compel the Defendants to bear the cost of attempting to retrieve data that has not been determined to exist. This request is premature. The federal courts are often confronted with a party's complaint that its opponent must have documents that it claims not to have. Such suspicion is, however, insufficient to warrant granting a motion to compel. *Alexander v. FBI,* 194 F.R.D. 305, 311 (D.D.C.2000). *See Bethea v. Comcast,* 218 F.R.D. 328 (D.D.C. 2003) (applying principle to demand to search opponent's hard drive).  In the context of computer systems and computer records, inspection or seizure is not permitted unless the moving party can "demonstrate that the documents they seek to compel do, in fact, exist and are being unlawfully withheld." *Id.* As indicated by this court and other courts, a party's suspicion that another party has failed to

respond to document requests fully and completely does not justify compelled inspection of its computer systems. *See id.; see also Medical Billing Consultants, Inc. v. Intelligent Medical Objects, Inc.,* No. 01 C 9148, 2003 WL 1809465, at *2 (N.D.Ill. Apr.4, 2003).

Per discussions with Plaintiffs' counsel regarding the electronic data, Defendants have previously agreed to allow Plaintiffs' expert to clone the hard drive for every key employee's terminal identified by Plaintiffs' counsel, and to examine and extract related data. Plaintiffs have never attempted to arrange this inspection. The offered inspection would be the Plaintiffs' opportunity to establish if any discoverable data exists to be restored and the potential costs involved.

In the alternative, Defendants will agree to share the cost of a neutral third-party to assess the probability of success and the associative costs of electronic restoration. Any cost-shifting order for forensic examination and collection prior to this step would be unjustified and premature.

## F. PLAINTIFFS HAVE NOT MET THE LEGAL STANDARD TO SUPPORT A RULING OF CIVIL CONTEMPT.

Defendants have not intentionally violated an order of nor been disrespectful of this Court. Defendants have made and continue to make every effort to comply with the Court's orders. Thousands of pages of documents have been produced pursuant to the Court's order. Since the Court's order, Plaintiffs' counsel has received volumes of responsive documents as well as responsive electronic data.

Plaintiffs' counsel has failed to communicate to Defendants any dissatisfaction with these responses.  The first notice Defendants received regarding Plaintiffs' concerns with the latest produced information was via the instant motion to compel.

"The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *United States v. Ayres,* 166 F.3d 991, 994 (9th Cir.), *cert. denied,* 528 U.S. 880 (1999) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir.1993)). This clear and convincing evidence must show the alleged contemnor "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Local Union 58*, 340 F.3d at 379 (*quoting Cincinnati Bronze,* 829 F.2d at 591)). "Clear and convincing evidence is not a light burden and should not be confused with the less stringent, proof by a preponderance of the evidence." *Id.* Defendants are making every attempt to provide Plaintiffs with the requested information.  There is no clear and convincing evidence that the Defendants have violated a specific order of this Court; therefore, a finding of civil contempt is unwarranted.

## V.    CONCLUSION

Therefore, based on the foregoing, the Defendants respectfully submit that this Court should deny Plaintiff's Motion to Compel and Motion for Sanctions. Defendants further submit that they would be receptive to the appointment of a Court Appointed Monitor for the remaining discovery matters should the Court decide that additional oversight of the discovery process is warranted.

### Certification

Counsel for Defendants certifies that this brief has been prepared with Times New Roman font, 14 point, and therefore it complies with the requirements of L.R. 5.1(C).

Respectfully submitted this 22nd day of October, 2010.

s/Jerry L. DeLoach
JERRY L. DeLOACH
Deputy City Attorney
Georgia Bar No. 081763

s/Robert N. Godfrey
ROBERT N. GODFREY
Sr. Assistant City Attorney
Georgia Bar No. 298550

Attorneys for Defendant

CITY OF ATLANTA LAW DEPARTMENT
Suite 4100, 68 Mitchell Street, S.W.
Atlanta, Georgia  30303-3520
(404) 330-6655 (telephone)
rgodfrey@atlantaga.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

GEOFFREY CALHOUN, et al.,          )
                                   )
     Plaintiffs,                  )
                                   )
v.                                 )          **CIVIL ACTION FILE NO.**
                                   )          **1:09-CV-3286-TCB**
RICHARD PENNINGTON et al           )
                                   )
     Defendants.                  )

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on October 22, 2010, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.


*s/ Robert N. Godfrey*
ROBERT N. GODFREY