UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEOFFREY CALHOUN, et al.<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD PENNINGTON, Chief of Police for the City of Atlanta, in his official and individual capacities, et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>) Civil Action<br>) File No.:<br>) 1:09-CV-3286-TCB<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MOTION FOR ENTRY OF
CONSENT ORDER AND FOR SANCTIONS**

**INTRODUCTION**

Earlier today, Defendant City of Atlanta ("the City") wrote to the Court "to request the Court's assistance in evaluating the City's compliance with the Settlement Agreement and Order." To assist the Court in evaluating this matter, Plaintiffs respectfully submit the following discussion of the relevant issues regarding compliance with the settlement agreement.

75210161.3

Because Plaintiffs believe that the City has failed to fully implement actions required by the settlement agreement within 180 days (i.e., before June 6, 2011), Plaintiffs therefore move for entry of a consent order as previously agreed to by the City, requiring Defendant City of Atlanta to implement all the actions set forth in Exhibit A to the Settlement Order.

Plaintiffs also respectfully move the Court to sanction Defendant City of Atlanta and/or its counsel for falsely advising the Court in the "Status Report" filed on June 6, 2010 that "the City of Atlanta is in full compliance with the terms of Exhibit A." (Status Report, ECF No. 270, p. 1.)

## I. THE SETTLEMENT AGREEMENT

On December 8, 2010, the parties concluded a settlement of the above-styled action under which Defendant City of Atlanta agreed to take certain actions described in Exhibit A ("Reforms of the Atlanta Police Department") to this Court's Order of December 8, 2010 (the "Settlement Order"). (ECF Nos. 265, 265-1, Dec. 8, 2010.)

Of the eight actions required by Exhibit A to the Settlement Order, six of the requirements took effect immediately upon entry of the Settlement Order; one was to be completed "as soon as practicable" after the date of the December 8, 2010 Order (¶ 6, "Training," Reforms of the APD, ECF No. 265-1); and one had a

75210161.3

specific deadline of 180 days, which was later extended to June 27, 2011 by consent of the parties (¶ 8, "Investigation of Officer Conduct," Reforms of the APD, ECF No. 265-1; Motion to Amend, ECF No. 266; Consent Order, ECF No. 269.) In addition, and as a self-executing enforcement provision, Defendant City of Atlanta agreed "to the entry of a consent order requiring Defendant City of Atlanta to implement the actions set forth in the Exhibit A if these actions have not been not *fully implemented* within one hundred eighty (180) days of the entry of this Order." (Settlement Order, ECF No. 265, pp. 3-4.) (Emphasis added.)

## II. THE CITY'S FAILURE TO IMPLEMENT THE REQUIRED ACTIONS

The Settlement Order entered on December 8, 2010 required the City of Atlanta to implement certain specific reforms, many of which require the adoption, revocation, or revision of APD Standard Operating Procedures ("SOPs"). The City has not implemented most of these required changes.[1] Most egregiously, even the specific SOPs that were identified as unconstitutional in the Settlement Order have still not been changed as required by the terms of the settlement.

---

[1] In an attempt to demonstrate its alleged compliance with the Settlement Order, Defendant City of Atlanta provided Plaintiffs' counsel with a computer disc on June 8, 2011, containing the SOPs revised by the APD. The revised SOPs attached as exhibits to this motion are from the disc provided by the City.

1.  **"Revocation or Amendment of Unconstitutional Policies" (Paragraph 1 of the Reforms)**

Defendant City of Atlanta agreed that certain specific SOPs were unconstitutional and needed to be revoked or amended (including SOP 3020 § 4.3.1(2), SOP 3030, and SOP 3065), but these SOPs have still not been changed to comply with the settlement. Nor, it seems, has the City done anything to remedy the APD's unconstitutional practice of detaining and performing ID checks on all persons in a specific location without regard to individual suspicion, although the settlement agreement clearly articulated the constitutional standards for searches and seizures.[2] (Reforms of the APD, ECF No. 265-1, pp. 2-3.)

---

[2] The settlement agreement summarized the constitutional standards for, *inter alia*, reasonable articulable suspicion, demands for identification, frisks, warrantless arrests, probable cause, searches of the person, the "plain feel exception," and entrance, searches or arrests in the home, as articulated in *Illinois v. Warlaw*, 528 U.S. 119 (2000); *Brown v. Texas*, 443 U.S. 47 (1979); *United States v. Sharpe*, 470 U.S. 675, 682 (1985); *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cnty.*, 542 U.S. 177 (2004); *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979); *United States v. Watson*, 423 U.S. 411, 417 (1976). *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002); *United States v. Gonzalez*, 969 F.2d 999 (11th Cir. 1992); *Adams v. Williams*, 407 U.S. 143, 149 (1972); *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *United States v. Acosta*, 363 F.3d 1141, 1149 (11th Cir. 2004); *Minnesota v. Dickerson*, 508 U.S. 366 (1993); *Payton v. New York*, 445 U.S. 573 (1980); *Payton v. New York*, 445 U.S. 573, 586 (1980); *United States v. Satterfield*, 743 F.2d 827, 844 (11th Cir. 1984); *United States v. Blasco*, 702 F.2d 1315, 1325 (11th Cir. 1983); *United States v. Lynch*, 934 F.2d 1226, 1232 (11th Cir. 1991); *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991).)

### a. SOP 3020 (Searches)

The City specifically agreed to revoke or amend SOP 3020 § 4.3.1(2), which purports to authorize warrantless searches without requiring (or even mentioning) probable cause. (Reforms of the APD, ECF 265-1, ¶ 1.) Yet the "revised" SOP is nearly identical to the "old" SOP that the City was required to amend:

"Old" SOP:

4.3.1

2. To justify a warrantless search, two essential elements must exist:

    a. It must be established that the circumstances at the time of the search were sufficient to require immediate action, which necessitated not complying with the restrictions of the warrant requirement of the Fourth Amendment.

    b. The manner and scope of the search that was conducted must be reasonably related to the justification of the search.

(SOP 3020, effective April 1, 2007, Exhibit 1.)

"New" SOP:

4.3.1

2. To justify a warrantless search, two essential elements must exist:

    a. It must be established that the exigent circumstances at the time of the search were sufficient to require immediate action, which necessitated not complying with the restrictions of the warrant requirement of the Fourth Amendment.

75210161.3　　　　　　　　　　　　　5

> b. The manner and scope of the search that was conducted must be reasonably related to the justification of the search.

(SOP 3020, dated June 1, 2011, Exhibit 2.)

As a result of this failure to comply with the settlement agreement the APD's Standard Operating Procedure regarding warrantless searches still fails to inform police officers that <u>probable cause</u> is a necessary and required element of a lawful search. (*See* Reforms of the APD, ECF No. 265-1, ¶ 1(f).)

### b. SOP 3030 (Arrests)

The City agreed to amend SOP 3030 regarding arrests. (Reforms of APD, ECF No. 265-1, ¶ 1.) Yet the newly revised SOP still fails to instruct officers that it is unconstitutional to arrest a suspect inside his home without a warrant or exigent circumstances, as happened to Plaintiff David Shepherd during the "Eagle Raid." *See* "old" SOP (Exhibit 3) and "new" SOPs (Exhibit 4).

### c. SOP 3065 ("Field Interviews")

The City agreed to amend or revoke SOP 3065, which purports to authorize investigatory detentions, ID checks, and frisks without reasonable articulable suspicion. (Reforms of APD, ECF No. 265-1, ¶ 1; SOP 3065, Exhibit 5.) This unconstitutional SOP, however, is still in effect. *See* Exhibit 5.

SOP 3065 authorizes and instructs Atlanta police officers to detain, frisk ("from the rear with the suspect in a kneeling position"), and perform ID checks on "suspicious persons" in order to "remove the anonymity of potential criminals." (Exhibit 5, §§ 1, 2.) The words "reasonable suspicion" or "reasonable articulable suspicion" do not appear anywhere in this SOP, nor are police officers instructed that they may lawfully detain only persons whom they reasonably believe are involved in criminal activity. To the contrary, this SOP encourages officers to detain and question "potential criminals" who do not seem to belong in a particular place.[3] The May 24, 2011 Memorandum to Chief Turner recommending "Mandated Eagle Reform of Departmental SOPs" fails to mention SOP 3065 at all. (Exhibit 6.) This SOP remains in force and unchanged, despite the City's agreement to revoke or amend it.

---

[3] The SOP attempts to shift the burden to the detained individual to present a "legitimate reason" for his presence at the location: Officers are instructed to "inquire as to what the person was doing and why he or she was observed at a particular location." (Exhibit 5, § 4.2.1.) The SOP also suggests that when an officer unlawfully stops a person without reasonable suspicion, the officer can somehow convert an unlawful "second tier" detention into a voluntary "first tier" citizen encounter after the fact: "After stopping a person and the officer finds that he or she has a legitimate reason for being at the location and the officer's suspicions have been satisfied, the officer will de-escalate the situation by courteously explaining what prompted the stop. Officers will tactfully alter the encounter into a less formal citizen contact and not detain the person any longer than necessary." (Exhibit 5, § 4.3.4.)

### d. APD's Unlawful Custom and Practice to Detain and ID Check All Persons at the Location of a Police Action

The Plaintiffs in this action obtained evidence of an unlawful APD custom and practice to detain all persons in a given location and perform ID checks without regard to individualized suspicion, the exercise of which formed the basis of this case. The commander of the APD section that conducted the Atlanta Eagle Raid, Major Debra Williams, stated: "Once we're inside a location based on any illegal activity, for the safety of not only the citizens of the city of Atlanta but for the safety of the patrons and the officers, we conduct warrant checks on all the patrons, on everyone." ProjectQAtlanta, *Public Forum About Atlanta Eagle Raid*, YOUTUBE, at 0:49 (Dec. 8, 2010), http://www.youtube.com/watch?v=wPz4e5uJWAo; *also available at* http://www.AtlantaEagleRaid.com. Deputy Police Chief Carlos Banda stated that it was APD policy to "do criminal history checks on everybody when we hit an establishment, no matter what it is....At this point, that's the policy." *Id.*, at 0:13.

Nowhere in the documents produced by the City is there any mention of any SOP revision, Command Memorandum, training material, or anything else to indicate that the APD has remedied this unconstitutional practice or instructed officers that it is unconstitutional to detain and search individuals simply because they are at a given location, without regard to individualized reasonable suspicion.

(Reforms of the APD, ECF No. 265-1, ¶1(a) (stating, "Police officers may not lawfully detain any individual without reasonable articulable suspicion, particularized to the person being detained...").)[4] The City's failure to revoke this policy or countermand this practice is a significant breach of the settlement agreement.

### 2. "Identification Requirement for APD Officers" (Paragraph 2 of the Reforms)

Defendant City of Atlanta agreed, as of the December 8, 2010 Settlement Order, to require all Atlanta police officers to identify themselves "upon request at some point before the end of an encounter with a civilian." The SOP regarding officer identification was revised by the APD, but the revision materially fails to comply with the terms of the settlement agreement.

The provision of the settlement agreement concerning officer identification was intended to remedy a "loophole" in the officer identification SOP in effect at the time of the Eagle Raid, which allowed Atlanta police officers to refuse to identify themselves if they felt it would "compromise their safety or the safety of others due to the nature of their assignment or the task." (Exhibit 7, APD SOP

---

[4] Even the newly added SOP paragraphs regarding identity checks (e.g. SOP 3020 § 4.3.13) fail to instruct officers that they may not lawfully detain or check the identification of persons simply because they are at the scene of a police action.

2010, effective December 10, 2007, § 4.2.23.)[5] To close this loophole, Paragraph 2 of the settlement agreement requires that "any Atlanta police officer who is in uniform or has displayed a badge or other indicia of police authority (such as a police vest, etc.), to identify herself or himself by name and badge number upon request at some point before the end of an encounter with a civilian." (Reforms of the APD, ECF No. 265-1, ¶ 2.) In other words, whenever an officer holds himself out to the public as a police officer (as opposed to working in a covert or undercover capacity) he is required, without exception, to identify himself or herself upon request.

Rather than amend the officer identification SOP pursuant to the terms of the Settlement Order, however, the City "revised" the SOP to incorporate the very same wording loophole that the City agreed to abandon as part of the settlement of this action.[6] (Exhibit 8, APD SOP 2010, § 4.2.23, Effective June 1, 2011; see also,

---

[5] 4.2.23   Giving Identification
Employees will identify themselves by name and assignment upon request while on duty or performing their official duties unless doing so would compromise their safety or the safety of others due to the nature of their assignment or the task. (Exhibit 8.)

[6] The "revised" SOP, containing the same language as the previous SOP, states:

4.2.23 Giving Identification

1.   Employees shall identify themselves by name, badge number,

Exhibit 6, Memorandum From Lt. Henrietta Smith to Chief George N. Turner, May 24, 2011, p. 1.)

### 3. "No Interference with Audio or Video Recordings" (Paragraph 3 of the reforms)

The City of Atlanta has complied with this provision of the Settlement Order.

### 4. "Documentation of Warrantless Seizures" and "Documentation of ID Checks" (Paragraphs 4 and 5 of the Reforms)

As of the date of the December 8, 2010 settlement, the City of Atlanta agreed to require officers performing certain types of warrantless searches and certain types of ID checks to "to fill out a written or electronic form before the end of his or her shift" documenting certain information. (Reforms of the APD, ECF No. 265-1, ¶ 4, 5; "The City of Atlanta shall require…") When Plaintiffs requested copies of any completed forms, the City of Atlanta admitted that "no such

---

assignment and department issued identification card upon request while on duty or performing their official duties unless doing so would compromise their safety or the safety of others due to the nature of their assignment or the task.

2. Sworn employees at the rank of Investigator or above shall provide, upon Request, the badge number that was initially assigned to them at the rank of Officer.

documents exist." (Exhibit 9, June 8, 2011 letter from Defendant's counsel Robert Godfrey to Plaintiffs' counsel Daniel Grossman, p.1.)

The City explained that "the implementation of the use of the forms in the field will follow the training as it is impracticable to have the officers begin to utilize the forms properly without the formal training required by the Order." *Id.* at 2. In other words, the City, without justification, delayed compliance with Paragraphs 4 and 5 of the Reforms until the completion of the training required by Paragraph 6. Nowhere in Exhibit A to the Settlement Order, however, did the City reserve the right to delay the implementation of these provisions. Moreover, while Plaintiffs understand that instruction is required before officers can begin using these forms, there is no reason this instruction needed to be delayed until completion of the full program of comprehensive training required by Paragraph 6. Rather, officers could have been instructed in the proper use of these simple forms at any point during the past six months (for example, during the "roll call training" that is provided on a regular basis) and the City's intentional failure to document warrantless seizures and ID checks as required by the settlement was a bad faith violation of the terms of the settlement agreement.

### 5. "Training" (Paragraph 6 of the Reforms)

The City of Atlanta agreed to conduct mandatory, in-person training for all sworn officers of the APD "as soon as practicable" following the December 8, 2010 settlement. (Reforms of the APD, ECF No. 265-1, ¶ 6.) Rather than conduct this training "as soon as practicable," however, the City did not even approve procurement of a training contract until May 20, 2011, a full 163 days (more than five months) after the date of the Settlement Order. (Exhibit 10, May 20, 2011 Procurement Order.) The training is not scheduled to begin until August 22, 2011, and according to the calendar produced by the City the training will not be completed until September 9, 2011—almost nine months after the date of the Settlement Order—even assuming the City meets its current schedule. (Exhibit 11, Proposed Training Schedule.)

Plaintiffs contend that the City of Atlanta has failed to comply with its agreement to conduct training "as soon as practicable," and that as a result of this failure Atlanta police officers may be continuing the same unconstitutional practices that gave rise to this litigation.

### 6. "Timely Resolution of Citizen Complaints" (Paragraph 7 of the Reforms)

The City of Atlanta agreed that "the Atlanta Police Department shall investigate and finally adjudicate all citizen complaints of police misconduct of

75210161.3                                13

any kind within 180 days of the complaint." (Reforms of the APD, ECF No. 265-1, ¶ 7.) While the plain language of Paragraph 7 imposes a "hard deadline" of 180 days to adjudicate citizen complaints of police misconduct, the SOP revisions suggest the APD's intention to disregard this 180-day limit. These revisions include a procedure to excuse or extend investigations that are not completed within 180 days:

> Section 4.2.2 Investigative Procedure
>
> (8) All complaints, regardless of the nature of the complaint, shall be investigated and adjudicated within one hundred and eighty (180) days of the complaint. In instances whereby an investigation is not completed within the aforementioned timeframes, a letter outlining the delay, the extension and the new deadline, must be forwarded to the OPS Commander. This documentation will become a part of the investigative file.

(Exhibit 12, SOP 2020, effective June 1, 2011.)

No procedure for excusing or extending this 180-day deadline is authorized under the settlement negotiated by the parties.

Information provided by the APD also seems to indicate that despite the terms of the settlement certain complaint files remain open after 180 days. (Exhibit 13, Open Records Act Request; Exhibit 14, summary of complaint files provided by City of Atlanta pursuant to Open Records Act (indicating complaints open more than 180 days).) Plaintiffs are unable to determine compliance with this

part of the agreement, however, because the City failed to provide a complete list of all open complaints as Plaintiffs requested. (Exhibit 15, Letter from D. Grossman to R. Godfrey, June 6, 2011.)

Plaintiffs respectfully request that the Court order the City to produce the information from which compliance or non-compliance can be determined.

### 7. "Investigation of Officer Conduct" (Paragraph 8 of the Reforms)

The parties agreed to extend the deadline for compliance with this requirement until June 27, 2011. (Motion to Amend, ECF No. 266; Consent Order, ECF No. 269.)

## III. THE CITY OF ATLANTA'S DISHONESTY TO THE COURT

On June 6, 2010, the City of Atlanta filed a "Status Report" in which the counsel for the City represented to the Court that "the City of Atlanta is in full compliance with the terms of Exhibit A." (Settlement Order, ECF No. 270, at 1.) As set forth above, that statement appears to be knowingly false and dishonest, and represents a material misrepresentation. The City had not "fully implement[ed]" the terms of the settlement when it filed its "Status Report" on June 6, 2010: unconstitutional SOPs that were required to be revoked or amended still have not been changed; the documentation of warrantless seizures and ID checks still has

not been done; and training that was supposed to be conducted "as soon as practicable" has not been conducted at all.

Plaintiffs respectfully move the Court to sanction Defendant and/or its counsel for making this false statement to the Court. Plaintiffs also respectfully request the Court to consider any other actions that this Court deems advisable to address counsel's breach of their duty of candor to this Court.[7]

The actions of Defendant's counsel also run afoul of Rule 3.3 of the State Bar of Georgia's Rules of Professional Conduct, which requires that a lawyer show candor to the tribunal. GEORGIA RULES OF PROF'L CONDUCT R. 3.3 (2001). Rule 3.3 states that "[a] lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal." *Id.*

The City's statement that it was "in full compliance with the terms of Exhibit A" was materially false, misleading, and dishonest and an appropriate sanction should be imposed to insure the integrity of the judicial process.

---

[7] The Status Report purports to be endorsed by all counsel for Defendants, including attorneys from the firm of Greenberg Traurig, but the Greenberg Traurig

## CONCLUSION

For the foregoing reasons, Plaintiffs move for entry of a consent order pursuant to the terms of the Settlement Agreement, and move the Court to sanction Defendant and/or its counsel for making a false statement to the Court.

This 16th day of June, 2011.

/s/ *Daniel J. Grossman*
Daniel J. Grossman, GA State Bar No. 313815
1579 Monroe Dr., Suite F-138
Atlanta, GA 30324
Telephone: (404) 654-0326
Facsimile: (404) 897-1884

Gregory R. Nevins, GA State Bar No. 539529
Elizabeth L. Littrell, GA State Bar No. 454949
Lambda Legal Defense & Education Fund
730 Peachtree St. NE, Suite 1070
Atlanta, GA 30308
Telephone: (404) 897-1880
Facsimile: (404) 897-1884

Gerald R. Weber, Jr., GA State Bar No. 744878
Southern Center for Human Rights
83 Poplar St. NW
Atlanta, GA 30303
Telephone: (404) 688-1202
Facsimile: (404) 688-9440

ATTORNEYS FOR PLAINTIFFS

---

firm was charged with only one aspect of the Settlement Agreement (the investigation required by Paragraph 8).

75210161.3    17

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEOFFREY CALHOUN, et al. | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) Civil Action<br>) File No.:<br>) 1:09-CV-3286-TCB<br>) |
| RICHARD PENNINGTON, Chief of Police for the City of Atlanta, in his official and individual capacities, et al. | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2011 I electronically filed **Plaintiffs' Motion for Entry of Consent Order and for Sanctions** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record:[8]

/s/ *Daniel J. Grossman*
Daniel J. Grossman, GA State Bar No. 313815
1579 Monroe Dr., Suite F-138
Atlanta, GA 30324
Telephone: (404) 654-0326
Facsimile: (404) 897-1884

---

[8] Counsel hereby certifies that this document has been prepared in Times New Roman font (14 point), in accordance with Local Rule 5.1C.