# Lesson Plan Cover Sheet

**Course Title**

In-service 2013

**Lesson Title**

Search and Seizure refresher

**Unit Code**

**Hours**

1

**Prepared By and Date Completed/ Taught by:**

SPO J. T. Brooks   03/13/2013/ Sgt. K. Baldini, Inv. A. Webster, SPO J. T. Brooks

**Approved By**

**Revised By**

**Revised Date(s)**

# Lesson Plan Cover Sheet

**Instructional Method**

[X] Discussion  [X] Lecture  [ ] Practical Exercise

**Classroom Setting**

**Terminal Performance Objective**

At the conclusion of this block of instruction, the student will have an understanding of the importance of staying informed and knowledgeable in the area of Search and Seizure as it pertains to police officers. These situations are based upon Criminal Procedure and APD SOP .3020 and APD SOP .3030.

**Enabling Objectives**

a. Review definition of probable cause

b. Review definition of reasonable articulable suspicion.

c. Review different scenarios where search and seizure play a role in the decision

**Audio Visual Aids (See Appendix A)**

[X] Electronic Slide Show Presentation  [ ] Audio  [ ] Chalkboard
[ ] Flip Chart  [ ] Poster  [ ] Video
[ ] Other

I.  Introduction

   A.  Opening Statement

   B.  Performance Objectives

      1.  Terminal Performance Objective

      At the conclusion of this block of instruction, the student will have an understanding of the importance of staying informed and knowledgeable in the area of Search and Seizure as it pertains to police officers. These situations are based upon Criminal Procedure and APD SOP .3020 and APD SOP .3030.

      2.  Enabling Objectives

         a.  Review definition of probable cause

         b.  Review definition of reasonable articulable suspicion.

         c.  Review different scenarios where search and seizure play a role in the decision

   C.  Reason

   We as police officers need to stay abreast of changes that may have taken place when it comes to search and seizure legislation in the United States. Also police officers should be challenged on their working knowledge of proper criminal procedure on an annual basis. Having a good working knowledge of search and seizure procedures reduces the likelihood for officers to find themselves under criminal and civil prosecutions for violations of the 4th amendment.

II. Body

**Note: Show power point slide #1**

   A.  Probable Cause
   ***Berger v. New York 388 U.S. 41***
   That set of facts or circumstances which would lead a reasonable and prudent person to believe that a crime has been or is about to be committed and that the person in question is involved in a significant manner. It is more than mere suspicion but less than actual certainty.

**Note: Show power point slide #2**

   B.  Reasonable Suspicion
   ***Terry V. Ohio***
   In order to **COMPEL** a person to **STOP**, the officer must have a **REASONABLE AND ARTICULABLE** suspicion that the individual is involved in a crime.
      A formula to help you remember this requirement is

**R.A.S. CRIME = STOP**

When you conduct a *Terry* stop, you should be able to name the crime that you suspect the person committed or was about to commit.

According to the *Terry* decision a frisk is a carefully limited "pat-down" of the outer clothing for the officer's protection **where he has reason to believe he is dealing with an individual who is presently "ARMED AND DANGEROUS"**. The frisk is not a search; it is a carefully limited physical inspection of the outer clothing. . **Its only purpose is to protect the police officer and others in the area from possible harm** where he/she has a reason to believe that the person is presently armed and dangerous.

**R.A.S. ARMED & DANGEROUS = FRISK**

**Note: Show power point slide #3**

    C.    Discussion Exercises

        The discussion exercises are to be performed using the dry erase board. The discussion will start with the instructor giving the facts of the situation to the class.

**Note: Show power point # 5**

    1.  You respond to a call about a child being molested by her mother's boyfriend live in boyfriend. Upon arrival you speak with the 9 year old child who is claiming the mother's boyfriend touched her with his private parts and took a picture while touching her. The mother states that she thinks the camera the suspect used is in his car which is parked in the garage. You as the responding officer go into the garage and see a camera sitting on the passenger's seat of the vehicle, the vehicle is unlocked. Can you enter the vehicle and retrieve the camera to see if it contains the photo the child alleges the mother's boyfriend took?

        *Answer: No, first the suspect is not at the location and the girlfriend would be unable to give consent to enter a vehicle that does not belong to her. Secondly the vehicle is parked in the garage where the suspect resides so warrant to make entry into the vehicle would be required. A warrant would also need to be obtained to check the phone for the suspected photo that was taken.*

    2.  You are on a 911 call on a domestic 29. Upon walking into the house you smell a strong odor of unburned marijuana which you recognize through your experience and training. You determine that no physical altercation occurred prior to your arrival so no action is required at this time in regards to the domestic. You have looked around the room and do not see any marijuana in plain sight. You advise the caller that you smell something that smells like marijuana in the residence. They deny they have any marijuana in the house and act like they

are offended that you have made the accusation, the caller then asks to speak to your supervisor. What actions are you going to take at this point?

> ***Answer: Notify a supervisor of the supervisor request and also advise the supervisor of what you believe is marijuana in the house. Contact a CID or Narcotics investigator to assist you with getting a search warrant to search the location for the suspected marijuana. (Remember smell of raw marijuana gives you PC, smell of burned marijuana is RAS)***

3. You receive an anonymous 911 call of 2 males selling drugs at Cameron Alexander and North Ave. The males are described as wearing white t-shirts with numbers on the back and blue jean shorts. As you arrive on the call you observe a group of males on the corner, 2 of the males match the 78 that you were given about the suspected 38 dealers. The males see you and begin to disburse from the area in several directions. As the males walk away you notice both males matching the 78 have a bulge in their shorts. What is required for you to approach the males and conduct a frisk of the subjects you see?

> ***Answer: RAS or RAS + A & D, APD SOP .3020 4.3.3, because you have located subjects that match the 78 does not give you a right to search them. You can ask them to speak with you but they have a right to walk away, if you do not have RAS that one of the subjects may be Armed and Dangerous. If you have RAS for A&D then you can conduct a pat down of the individuals for possible weapons.***

4. While on routine patrol you observe a black Chevrolet Caprice fail to stop for a stop sign. You conduct a traffic stop on the vehicle and upon approach you discover the driver is Jimmy Smith a known dope boy you have locked up several times. You know every time you have arrest him he has had a large amount of drugs with him. You ask him to step out of the vehicle and then ask to search his car. He gives you permission to search only the passenger compartment. He states he has personal items in the trunk which he does not want anyone to see. How can you legally get into the trunk you check for drugs?

> ***Answer: Call a narcotics dog to the scene to see if the dog gets a hit on the vehicle. If the dog does not get a hit, issue the citation and no further action can be taken. Also remember that the time waiting for a K9 unit must stay reasonable, approx. 20 minutes.***

**Note: Show power point slide #6**

5. You are dispatched on a fight between a male and a female outside a bar. You arrive on the call and see a female holding her face and observe physical injury. The female says the male who she lives with hit her. The alleged suspect is not cooperative. There is no one else outside the bar, nor did anyone state anyone else was there during the incident. The victim states that she does not want to press charges. Do you arrest the suspect?

*Answer: Yes. This falls under the warrantless arrest exceptions OCGA 17-4-20(Family violence, Miscarriage of Justice, Endeavoring to Escape, or crime was committed in the officer's presence) APD SOP .3030 4.1.4*

6. Establishing First Party on Arrest Warrants

OCGA 17-4-3 states that to arrest on a warrant, we may break open any door where the offender is concealed. That sounds like we can go anywhere and do anything in order to serve an arrest warrant, right? WRONG! This law was enacted in 1933 and has not been amended despite many higher court decisions to the contrary. In US v. Steagald, the court determined that if a fugitive is in a "third party" home, absent exigency or consent, a SEARCH warrant must be obtained.

The problem that we frequently encounter is that career criminals in Atlanta often do not have a stable residence that we would need to establish in order to make an entry into a home with the arrest warrant. (Live at, stay at, be at...).

To determine when a fugitive lives at a residence or is a third party visitor several factors should be examined. The court looks at the totality of the circumstances and decides accordingly.

What is the address listed on the arrest warrant? 150 Hutchinson St Apt. B??????? (That is an address that no longer exists) If the address on the arrest warrant no longer exists – that's just a clue that he might live somewhere else now...
- What info do you have from surveillance and other officers about where the suspect is living now?
- What is the veracity of your informant information?
- What addresses does police central list for your suspect?

Scenario: You are looking for a wanted suspect, Mary Jane Smoker (5'5" skinny 26 yrs old). You got a tip from your informant that she is staying at a friend's house, Tina Blunt (5'2", 265 lbs 44 yrs old), at 1234 Bolton Rd. You drive by Tina Blunts place and see a short heavy set female walk in the front door. Worrying that Mary Jane may be inside, you and 4 other officers go knock on the door. The short heavy set female opens the door and greets you. You ask her if Mary Jane is hiding in her house and she says "no." You ask her if you can look around and she says "no." You push the door open and continue talking with the female in the living room. You and the other officers start looking around and see some Marijuana and Crystal Meth on the kitchen table. You seize the suspected drugs and arrest Tina Blunt. Is the arrest valid? Is the search of the house valid?

*Answer: No! She denied consent and you did not have a search warrant to look for Smokey.*

III. Conclusion

A.  Summary

   In each of the practical exercises, our actions are based upon policy and precedent setting court cases. The Supreme Court and APD Policy are clear. The only 3 ways to encounter a person is by Consent, Reasonable Suspicion or Probable Cause and the latter two are the only ways that authorize us to seize a person. (APD SOP .3020 4.3.3)

   1.  Terminal Performance Objective

       At the conclusion of this course, the student will have a renewed foundation of basic search and seizure situations involved in daily patrol operations. These basic situations are based upon Recruit Mandate Criminal Procedure and APD SOP .3020. and APD SOP .3030.

   2.  Enabling Objectives

       a.  Review definition of probable cause

       b.  Review definition of reasonable articulable suspicion.

       c.  Review different scenarios where search and seizure play a role in the decision

B.  Questions

C.  Closing Statement

Appendix A
Power Point


Appendix B
Handouts
(Empty)

1. You are on patrol and see a male in the roadway, hindering the free flow of traffic. You approach the male and ask for ID and he shakes off his jacket and flees on foot. You give chase but lose the suspect in the woods. You return to your car and retrieve his jacket and find the suspect's Georgia ID card in one pocket and a Ziploc baggie of Marijuana in the other. You do a report and put the drugs in evidence. The next day at work you grab 6 buddies and go over to the address on the license to pick up the male. Can you arrest him?

2. You are on routine patrol in your marked patrol car. You run a car tag that is traveling in front of you. The car comes back to a w/f. You continue your investigation and run the owner's name for a wanted check. The owner of the car comes back wanted for FTA on Battery charges in Fulton County. Can you pull the car over and investigate further?

3. You receive an anonymous 911 call of 3 males selling drugs at Boulevard and Winton Terrace. The males are described as wearing white t-shirts and jean shorts. As you arrive on the call you observe a group of males on the corner. If you want to stop and/or frisk the males, what do you need?

4. You are on patrol and receive a 911 call of a suspicious vehicle parked in front of their neighbors house and the neighbors are not home. The caller gives a basic description of the car including the tag. As you arrive on the call, you see the vehicle with the described tag. Can you search the car for narcotics or tow the vehicle?

5. You are dispatched on a domestic to a residence. You arrive on the call and see the victim holding his/her face and observe physical injury. The house is in disarray. The victim says the suspect hit her. The alleged suspect is not cooperative. There is no one else at the house, nor did anyone state anyone else was there during the incident. The victim states that she does not want to press charges. Do you arrest the suspect?

6. <u>Scenario</u>: You are looking for a wanted suspect, Smokey Jones (6'0 skinny 26 yrs old). You got a tip from your informant that he is staying at a friends house, Fat Clint (5'2 265 lbs 44 yrs old), at 1234 Cascade Pl. You drive by Fat Clint's place and see a short heavy set man walk in the front door. Worrying that Smokey may be inside, you and 4 friends go knock on the door. The short heavy set man opens the door and greets you. You ask him if Smokey is hiding in his house and he says "no." You ask him if you can look around and he says "no." You push the door open and continue talking with the man in the living room. You and the other officers start looking around and see some cocaine on the kitchen table. You seize the cocaine and arrest Fat Clint. Is the arrest valid? Is the search of the house valid?

# SEARCH AND SEIZURE REFRESHER

2013 In Service

# Probable cause

- That set of facts or circumstances which would lead a reasonable and prudent person to believe that a crime has been or is about to be committed and that the person in question is involved in a significant manner.

# Reasonable suspicion

- In order to **COMPEL** a person to **STOP**, the officer must have a **REASONABLE AND ARTICULABLE** suspicion that the individual is involved in a crime.
- R.A.S. CRIME = STOP
- R.A.S. ARMED & DANGEROUS = FRISK

# Specific scenarios for discussion...

# 4 ways to get into a home...

- Warrant
- Emergency Circumstances (ex. Welfare check and you see a body, or door is ajar you smell gas)
- Consent (APD Form needs to be signed)
- Probable Cause exists but time and circumstances do not exist to get a warrant

# Warrantless arrest exceptions

- Crime is committed in presence of the officer
- Family violence/Vulnerable Adult
- Endeavoring to Escape
- Failure/Miscarriage of Justice