IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GEOFFREY CALHOUN, et al.,

     Plaintiffs,

v.

RICHARD PENNINGTON, et al.,

     Defendants.

CIVIL ACTION FILE

NO. 1:09-cv-3286-TCB

## O R D E R

This case comes before the Court on the City of Atlanta's motion
[375] to reassign matters to the district court from the special master
and upon the special master's October 13 status report [391]. The City's
motion is denied and the special master's October 13 status report is
adopted as modified in this Order.

## I.    Background

This case arises from the illegal search and detainment of
Plaintiffs by the Atlanta Police Department ("APD") during a raid of the
Atlanta Eagle bar in September 2009. The Court entered a consent
judgment on December 8, 2010 (the "2010 Order") resolving the lawsuit

and settling Plaintiffs' claims by, inter alia, requiring payment of a monetary judgment and enjoining the APD to implement a number of reforms to their police operations.

A year later, the City had not complied with the 2010 Order. This resulted in post-judgment motions and another consent order entered by the Court on December 15, 2011 (the "2011 Order"). The 2011 Order restated the injunctive obligations of the City to reform the APD.

Four years later, Plaintiffs filed additional post-judgment motions for contempt against the City for failure to comply with the Court's previous orders and the ongoing injunction. On May 19, 2015, after a hearing on Plaintiffs' second motion for contempt, the Court granted the contempt motion and once again ordered the City to undertake certain reforms and also to pay Plaintiffs' attorneys' fees for bringing the contempt motion (the "2015 Order"). The 2015 Order did not modify the 2010 Order or 2011 Order.

On June 20, 2016, the parties made a joint motion [308] to appoint a special master pursuant to Federal Rule of Civil Procedure 53, which this Court granted [309] on June 22. This resulted in a consent order

[323] setting forth the role and function of the special master, which was modified by another consent order [339] (collectively, the "Special Master Orders").

The parties jointly agreed to appoint Joe Whitley as special master, who has been serving pursuant to the Special Master Orders and Rule 53. Under the Special Master Orders the special master presides over and investigates the City's compliance with the Court's orders. This includes reviewing implementation of training procedures, presiding over and resolving discovery disputes, making determinations and recommendations to the Court regarding the necessity of sanctions, and providing the Court with quarterly reports regarding the City's compliance. These powers are exercised consistent with the special master's appointment under the Special Master Orders and Rule 53.

The special master has performed this function for over a year. In his most recent compliance reports, dated July 14 [346] and October 13 [391], the special master indicates that while progress has been made, the City's compliance with the Court's orders is still a future prospect.

What is worse, it appears that the resolution of this case has all but stalled and relations between the parties have deteriorated.

On September 7, 2017, the special master moved [359] for the Court to renew and modify certain of the Special Master Orders. The City objected, and filed the instant motion [375] to disqualify the special master as well as an "emergency" motion to stay the special master's activities. The Court denied both the special master's motion and the City's emergency motion, and directed the special master to continue in his role while the Court reviewed the City's motion [375] to disqualify.[1] The special master responded [381] to the City's disqualification motion, filed his last quarterly compliance report dated October 13 [391], and provided the Court with recommendations for moving the case forward.

Other issues persist and will be addressed in subsequent orders. For now, the most pertinent issue before the Court is whether the special master will be disqualified. As explained below, the Court does not believe that the special master should be disqualified. Accordingly,

---

[1] Plaintiffs oppose disqualification [380].

the Court will not reassign matters now pending before the special

master to the Court. This Order also prescribes the next steps,

particularly as they relate to the Court's show-cause orders [347–48].

## II.   Disqualification of the Special Master

It is well-settled that acceptance of an appointment as a special

master entails accepting "the duties and obligations of a judicial

officer." *In re Gilbert*, 276 U.S. 6, 9 (1928); *see also Hoffman v. EMI*

*Resorts, Inc.*, 689 F. Supp. 2d 1361, 1374 (S.D. Fla. 2010). As judicial

officers, "[m]asters are subject to the Code of Conduct for United States

Judges, with exceptions spelled out in the Code." FED. R. CIV. P.

53(a)(2)–(3) advisory committee's notes to 2003 amendments. "The

standard of [a master's] disqualification is established by 28 U.S.C.

§ 455." *Id.* "A master must not have a relationship to the parties,

attorneys, action, or court that would require disqualification of a judge

under 28 U.S.C. § 455, unless the parties, with the court's approval,

consent to the appointment after the master discloses any potential

grounds for disqualification." *Wachovia Bank, N.A. v. Tien*, 598 F. App'x

613, 616 (11th Cir. 2014) (quoting FED. R. CIV. P. 53(a)(2)). Thus, § 455

guides the Court's analysis of whether Special Master Whitley should be disqualified.

The City argues that pursuant to § 455(a),[2] the special master should be disqualified because "his impartiality might reasonably be questioned." [375] at 1. This argument is based on the special master's September 7 motion [359] for an order "renewing certain obligations set forth by consent procedures order." The City argues that the special master's request to modify the Special Master Orders evinces his bias.

The circumstances giving rise to the special master's motion came about after the Court ordered the City to show cause on two issues upon recommendation by the special master in his July 14 status report [346]. The Court ordered the City to show cause as to (1) why it should not be held in contempt of the Court's previous orders, see [347], and (2) why the City believes it is entitled to relief from the Court's previous orders, see [348]. The Court directed the special master to receive briefing and hold a hearing on the first contempt issue and to receive

---

[2] The City also raises a disqualification charge under 28 U.S.C. § 455(b)(1). Because this argument was raised for the first time in a reply, it will not be considered. *See United States v. Martinez*, 83 F.3d 371, 377 n.6 (11th Cir. 1996).

briefing on the second relief issue. The special master was instructed to provide a report and recommendation on both issues.[3]

A flurry of docket activity has ensued since this time, including the special master's motion about which the City complains. The City argues that by filing a motion to renew the special master procedures, rather than depending solely upon a report and recommendation, the special master has shown his hand as to how he would rule on the show-cause issues, and thus made a prejudgment against the City. In the City's words, "the Special Master is advocating a position on remedies in direct opposition to the position taken by the City, and premises the position upon his predetermination that the City is substantively not in compliance with the [Court's orders]." [375] at 5. The City believes the special master cannot now be impartial in making a recommendation to the Court on the show-cause issues.

"Under § 455(a), recusal is appropriate only if 'an objective, disinterested, lay observer fully informed of the facts underlying the

---

[3] Some deadlines for resolving these issues have passed. This Order revises the procedures and deadlines regarding the resolution of the show-cause orders [347–48]. *See infra* at 19–23.

grounds on which recusal was sought would entertain a *significant* doubt about the judge's impartiality.'" *United States v. Amadeo*, 487 F.3d 823, 828 (11th Cir. 2007) (emphasis added) (citation omitted in original) (quoting *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003)). "[A]ny doubts must be resolved in favor of recusal." *Patti*, 337 F.3d at 1321 (citation omitted).

But the evidence forming the basis of a recusal motion must be competent to that end. The actions of the special master the City complains about were judicial in nature, and "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). This is known as the "extrajudicial source doctrine," which the Supreme Court has held applies to § 455(a). *Id.* at 554. To the extent that there is any impropriety in a judicial ruling, the appropriate remedy is to appeal that ruling rather than to seek disqualification of the judge who rendered it. *See id.* at 555 ("Almost invariably, [judicial rulings] are proper grounds for appeal, not recusal.").

When a disqualification motion is asserted based on some expressed opinion of the judge, the Supreme Court has explained that

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment *impossible.*

*Id.* at 555 (emphasis added).

Under these rules, the City has not carried its burden of showing the special master's bias because the special master's motion is subject to the extrajudicial source doctrine. Though styled a "motion," it was effectively a sua sponte recommendation to the Court to temporarily extend and modify the procedures in the Special Master Orders. The motion had no binding effect until ruled on by the Court, the City had an opportunity to (and did) object to the motion, and the Court ultimately denied it. It would also be subject to the special master's final report and recommendation, and ultimately, the Court's scrutiny.

The appropriate remedy was for the City to appeal to the Court to intervene, which it did and the Court ruled in the City's favor because the relief sought by the special master was not necessary at the time.

9

Because the City can point to no other, extrajudicial evidence of the special master's bias, its bias charge cannot be sustained.[4]

Moreover, the special master's actions hardly demonstrate a deep-seated favoritism or antagonism against the City. And it is far from clear that the renewal motion rendered the special master's fair judgment "impossible." *Id.*

The City's allegations of bias are also contradicted by the special master's record in this case. The special master has ruled myriad times in the City's favor on issues brought before him. For example, the special master reported in favor of the City on a dispute over whether the City had complied with the Calhoun training requirements over Plaintiffs' objections that they had not approved the training. *See* [324] at 5–8; *see also* [325] at 7 (reporting the City's technical and substantial compliance with the Calhoun training requirement); [346] at 2 (charting five separate instances where the City's compliance issues are marked as "resolved"). The special master's practice has been to give the City

---

[4] The City also complains that the special master's motion sought to improperly modify the consent orders in this case. Because the Court denied the special master's motion, it considers this argument moot.

10

the benefit of the doubt by finding in certain instances that the City technically complied with the Court's orders contingent upon ongoing factual development. *See* [325] at 7 (regarding Calhoun training); *id.* at 17 (regarding amendments to APD standard operating procedures); [341] at 5–7 (regarding revocation or amendment of unconstitutional policies). It is only now that the City believes the special master could rule against it that it questions the special master's impartiality. The charges ring hollow, as the special master's reports to the Court have consistently demonstrated an even-handed demeanor toward both sides as they litigate issues related to compliance with the Court orders.

Allegations of bias are also inconsistent with the special master's desire that the parties be heard before ruling on pending issues. *See* [346-1] at 2; *see also* [381] at 3. These issues include the show-cause issues, which the City asserts the special master is now disqualified from presiding over because of his renewal motion.

Even if the special master's motion expressed a sense that the City was non-compliant prior to a fuller hearing on the issue, there is no rule against the special master forming an *impression*, contrasted with

a prejudgment, about the status of the case over which he is appointed. Judges do this every day. Nor is the special master forbidden from acting upon his impressions as he fulfills his role in moving the case forward. It just may not affect his judgment on the merits. Here, the special master's motion was an interim measure; it was neither intended to nor did supplant his ruling on the merits.

In response to the City's motion, the special master explains the motivation behind his filing the renewal motion: "[T]he limited procedural reforms sought by the Special Master were intended to provide a 'stop-gap' to certain procedures that were sun-setting but continue to be viewed by the Special Master as essential to the performance of his duties." [381] at 9. To the special master, there remained a number of miles to go and he was running out of track as he performed his monitoring, presiding, and adjudicating duties pursuant to the Court's orders; so, he sought the Court's intervention.[5] And while

---

[5] As the Court has noted, this intervention was premature. There appears to be a mistaken impression that the special master's term was limited to a twelve-month period. This is unsupported by the Special Master Orders. The only time-limited aspects of the special master's appointment are the dates by which he was to provide quarterly compliance reports, the last one of which was to be provided based on the City's reports to the special master due in September 2017. *See* [323]

the Court disagreed that the order sought by the special master was necessary, the request did not constitute or reflect prejudice against the City.

The special master's actions are no different than a judge issuing orders based on what he learned while presiding over a case. *Cf. In re Grand Jury Proceedings*, 559 F.2d 234, 237 (5th Cir. 1977) ("[Disqualifying prejudice] must stem from an extrajudicial source and that prejudice and bias must result in an opinion on the merits on some basis other than what the Judge was exposed to in his participation in this case."). A judge often makes procedural decisions based on his impression of the case, but this does not amount to bias. Similarly, Special Master Whitley sought to keep the case moving and maintain the status quo by modifying the procedures consistent with his view of the needs of the case. His decision was reviewable upon objection and driven by benign motivation. Thus, he should not be disqualified from continuing to serve as special master.

---

at 9. Otherwise, the special master continues to fulfill his role under the Special Master Orders and other orders of the Court until ordered to do otherwise. This remains the case, and though the special master's quarterly *reporting* duties have expired, his role continues. *See* [377].

The D.C. Circuit case cited by the City does not require a different conclusion. It is both non-binding and distinguishable. In *Cobell v. Norton*, 334 F.3d 1128 (D.C. Cir. 2003), the D.C. Circuit held that the district court abused its discretion by re-appointing a monitor as a special master over the Government-defendant's objection. The circumstances in *Cobell* are much more egregious than in this case. First, the *Cobell* master, unlike Special Master Whitley, was not initially appointed as a special master; he was simply a court monitor. *See id.* at 1133. The court of appeals took issue with the fact that the district court, over objection, elevated the monitor to the role of master—a role entirely uncontemplated by and inconsistent with his original appointment. *See id.* at 1143–44.

Contrastingly, Special Master Whitley's power has not been so aggrandized. He was appointed by consent of the parties, and from the outset he exercised the power of a master under Rule 53. His powers, while partly dealing with monitoring, also include presiding over and making rulings and recommendations pursuant to the Special Master Orders. The show-cause orders are just such an example because in his

14

July 14 status report, the special master made a recommendation to the Court to issue show-cause orders, and the Court adopted the recommendation. *See* [346] at 41–42. Indeed, the City has not argued that the special master lacked adjudicatory power ab initio; its argument for disqualification is primarily based on the special master's recent docket activity. Special Master Whitley, unlike the *Cobell* monitor, has been functioning as a judicial officer for the duration of his tenure. And no evidence from outside his judicial tenure has been proffered to disqualify him.

Another distinction between this case and *Cobell* is that the *Cobell* monitor's initial appointment was time-limited to one year. *Id.* at 1140. But the district court extended the monitor's service to a more indefinite term as special master over the Government's objection. *Id.* The D.C. Circuit's holding that the district court abused its discretion was derived both from the improper extension of the monitor's temporal service and the enlargement of his power beyond the scope of the consent order appointing him. No such arguments can be levied against

Special Master Whitley. He was appointed to an indefinite term, and his powers have not been enlarged since his appointment.

Finally, the impropriety alleged by the *Cobell* appellants surpasses that alleged by the City. The Government in *Cobell* complained about significant ex parte contact and communication by the monitor, which undermined his impartiality. That is, by virtue of extrajudicial activity the *Cobell* monitor had disqualified himself.

As already noted, the City cries foul regarding Special Master Whitley based only on judicial, on-the-record declarations. The City's arguments that the special master's ex parte contact disqualifies him is unavailing because, as permitted under § 455, the parties consented to a certain level of ex parte contact by the special master in the special master's initial appointment. *See* [308] at 4; [309] at 4. Thus, the parties considered that the special master's function would entail some limited ex parte contact, provided notice is given to the other side, in order to facilitate the unique circumstances of the special master's appointment. Moreover, the scale of ex parte contacts and enlarged and unchecked

16

investigatory power of the *Cobell* monitor does not compare easily to the special master's function in this case.

The City has not shown how the special master's activities in this case justify his disqualification. The City has pointed only to the special master's actions that were (a) within the context of on-the-record, judicial activities; (b) substantially justified in light of the special master's experience in his quasi-judicial role; and (c) consistent with the Special Master Orders and Rule 53. None of these actions support his disqualification.

## III.   Reassignment from the Special Master to the Court

Because the Court denies the City's motion to disqualify the special master, it follows that there is no reason based on 28 U.S.C. § 455 for the Court to reassign matters from the special master.

The City also asserts that reassignment is warranted pursuant to Federal Rule of Civil Procedure 1, which states that the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of

17

every action and proceeding." The Court is not persuaded by this argument.

First, the City does not cite any authority that ties the admonition in Rule 1 to a justification for reassignment of a case from a special master to the Court when the special master has achieved more than a year's experience presiding over the case.

Second, the Court does not believe that the City has adequately explained how it would be any more just or speedy or inexpensive for the Court, rather than the special master, to administer this case. This is especially true when the City consented to the special master's appointment and the attendant procedures authorizing his activities in this case.

The Court is satisfied that the special master has done an excellent job. Over the past year he and his authorized staff have spent hundreds of hours overseeing, refereeing, and managing this languishing case. He has reviewed a raft of documents, including primary evidence and briefing, regarding the City's compliance. His reports and recommendations to the Court—totaling nearly two-

hundred pages at last count—have been an exceptional resource that keeps this case in forward motion. It would be a waste of judicial resources to reassign matters from him now, and in fact, would likely be *inconsistent* with Rule 1 to do so.

This case has already gone seven years past judgment, and in light of the City's contemptuous noncompliance to date, much of this derives from the City's own malfeasance. Consequently, it is plenty just for the City to continue to pay for compliance monitoring until it demonstrates that compliance has been achieved, rather than shifting the burden to the Court and thereby diverting the Court's attention from its service to other parties.

## IV.   Conclusion

The City's motion [375] to reassign matters from the special master is denied. The special master will continue to perform his role and exercise authority consistent with the Special Master Orders and Rule 53. The Court also adopts the special master's October 13, 2017 status report [391] as modified below. The Court's previous orders are

modified only to the extent described herein, and otherwise retain full force and effect.

**Show-Cause Orders**

(1)    Time limits provided in paragraphs 2–5 below shall not begin until the Court rules on the special master's report and recommendation [387] regarding the 180-day rule.

(2)    Within thirty-five days of the Court's order on [387], the parties shall meet in person for a settlement conference and discuss resolution of any issues presented by the show-cause orders [347–48] and to outline and prepare a consolidated status report.

(3)    Within thirty-five days of the settlement conference the parties will file a consolidated status report that sets forth the following:

- The results of the settlement conference;

- Any pending motions or other matters to be addressed in a hearing before the special master;

- A joint executive summary regarding the outstanding motions or other matters that need to be addressed, including the parties' positions on each of the motions or other matters;

- The parties' joint, or separate, arguments/proposals for a resolution of outstanding motions or other matters, with citations to legal authority as appropriate;

- A proposal regarding the conduct of a hearing before the special master on the outstanding motions or other matters, including the extent to which discovery is necessary as to the show-cause hearings;

- A statement regarding the parties' positions on whether further briefing on the show-cause issues is needed before the hearing and how such briefing should be conducted;

- If discovery or factual presentation is necessary, a proposal regarding the conduct and procedures for

discovery that minimizes wasted time and resources; and

- Proposed times for a hearing before the special master.

(4)     The special master shall hold a hearing within sixty days of when the parties file the consolidated status report described in paragraph 3. The special master has discretion regarding the conduct and procedures for the hearing but should consider the parties' proposals in the consolidated status report.

(5)     Within sixty days of the hearing in paragraph 4, the special master shall issue a report and recommendation as to the resolution of the issues identified in the parties' consolidated status report.

**Special Master Orders**

(1)     The Special Master Orders shall remain in full effect. *See* [377]. The Court will decide whether to renew the reporting obligations of the special master after it receives the report

and recommendation from the special master on the show-cause issues in paragraph 5 above.

IT IS SO ORDERED this 28th day of November, 2017.

Timothy C. Batten, Sr.
United States District Judge