**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| GEOFFREY CALHOUN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action |
| v. | ) | |
| | ) | File No. 1:09-CV-03286-TCB |
| RICHARD PENNINGTON, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## ORDER

---

This Court, having considered the parties' Joint Motion for Approval of Proposed Consent Order [Doc. 432], and for good cause shown, hereby finds that the requirements of the Court's July 25, 2017 Orders [Docs. 347-8] are fully satisfied, and further ORDERS the parties as follows:

## I.   TRAINING

**A.   Training**

1.     The City of Atlanta ("the City") shall conduct *Calhoun* "Approved Training" (as defined in Part B below) for all sworn employees within 90 days of the entry of this Order, and then every even-numbered year thereafter ("Training Year") by no later than the last day of August, through and including August, 2024.

**B.     Continuation of Reform**

1.      The requirements of Paragraph A1 shall not apply to sworn officers who work no hours in the month during which training is conducted, or who experience extenuating circumstances making them unavailable to timely complete the training, for example depart for military duty or become hospitalized.  The City will require such officers to complete the *Calhoun* training within 30 days of their return to active Atlanta Police Department ("APD") duty.

2.      The *Calhoun* Approved Training may be presented on-line rather than in-person, and shall instruct about current Fourth Amendment law regarding detentions, arrests, frisks and searches generally, the topics set forth in Exhibit A hereto ("Constitutional Principles"), and the topics set forth in Exhibit B hereto ("Calhoun SOP Topics").

3.      Plaintiffs approve the training video (contained on a thumb drive that is Exhibit C to this Order, the "Approved Training") with the exception of the Assessment Questions. Plaintiffs do not approve the Assessment Questions, but for purposes of compromise Plaintiffs stipulate that: 1) they will not argue that the Assessment Questions in the Approved Training violate subsection (A)(1) of Part I (Training) of this Order; and 2) the Approved Training may be used for full satisfaction of the training and recurrent training requirements of subsection (A)(1) of Part I (Training) of this Order.  The Parties further agree that:

(a)     the "fast forward" function of the Approved Training video will be disabled, so that trainees are unable to fast forward through any portion of the training that they have not yet viewed; and

(b)     for each embedded segment of Assessment Questions in the Approved Training, the segment's order of questions and the questions' order of answer choices will be randomized.

The City shall not change any material element of the structure, format, or content of the Approved Training or the Assessment Questions unless such changes are presented to and approved by Plaintiffs' counsel in writing prior to implementation; Plaintiffs' approval shall not be unreasonably withheld, delayed or conditioned.

4.     In addition to the training implemented pursuant to this Part I, the City may implement the Approved Training at any other time in its sole discretion, without prior consent of Plaintiffs.

## C.     Monitoring Facilitation

1.     Within two weeks (14 calendar days) of the City's completion of the Approved Training in 2018 or 2019, and by September 15 of a subsequent Training Year, the City shall provide Plaintiffs with a roster of all sworn employees of the Department as of the final day of August (except that for 2018 or 2019, the roster shall be for the month in which the Approved Training was conducted), which shall contain the date that each of those sworn employees completed the Approved Training, or as applicable pursuant to paragraph B1, above, the reason why timely completion did not occur.  In addition, the City shall provide a composite analysis for each test question showing the number of officers who initially answered each question correctly, the number who initially answered each question incorrectly, and the average number of attempts needed for officers to correctly respond to each question.

2.     For each such sworn officer unable to timely complete the *Calhoun* training for reasons described in paragraph A1, above, the City will inform Plaintiffs within 15 days of the sworn officer's completing the *Calhoun* training, indicating the date that the officer returned to active-duty and the date that the training was completed.

## II.    STANDARD OPERATING PROCEDURES (SOPS)

## A.     APD Standard Operating Procedures

1.     The City shall not maintain, adopt, or revise any APD Standard Operating Procedure ("SOP") inconsistent with the any of the Constitutional Principles set forth in Exhibit A hereto.

2.     The City shall not maintain, adopt, or revise any SOP inconsistent with any provision of this Order, any of the Calhoun SOP Topics set forth in Exhibit B hereto, or any of the "Calhoun SOPs" (as defined below), except as set forth in paragraph B3, below.

**B.      Continuation of Reform**

1.      As used herein, "Calhoun SOP" shall mean the SOPs listed on the attached Exhibit D and any SOP added to this list pursuant to the process described in this Part II(B).

2.      Except as set forth in this Part II(B), the City shall retain without change the Calhoun SOPs.

3.      The City may modify the Calhoun SOPs to the extent that a change is made to the applicable legal principle through statutory change or legal interpretation by the United States Supreme Court, United States Court of Appeals for the Eleventh Circuit, the Supreme Court of Georgia or the Georgia Court of Appeals.

4.      If the City modifies any Calhoun SOP for any reason, within five business days (i.e., weekdays except federal holidays) the City shall inform Plaintiffs' counsel and provide a copy of the modified SOP to Plaintiffs' counsel.  This requirement shall be referred to as the "Five Day Reporting Requirement."

5.      If Plaintiffs reasonably believe that language in any SOP not listed on Exhibit D substantively implicates or is inconsistent with any provision of this Order, any of the Constitutional Principles set forth in Exhibit A, or any of the Calhoun SOP Topics set forth in Exhibit B, or any of the Calhoun SOPs, Plaintiffs may request in writing that the City add such an SOP to the list of Calhoun SOPs, which SOPs are subject to the Five Day Reporting Requirement.  If the City objects to adding an SOP to the list of Calhoun SOPs, the parties shall meet and confer.  If a dispute remains, the City will have 15 business days in which to add the SOP to the list of Calhoun SOPS or present the issue to the Court for resolution.  If the City does not timely object, the SOP shall be added to the list of Calhoun SOPs.

**C.      Monitoring Facilitation**

1.      By no later than midnight on the 28th day of February, until and including February 28, 2024, the City must provide Plaintiffs with a copy of every SOP in effect on December 31 of the immediately preceding year, except that the requirements of this Paragraph C(1) shall not apply to Confidential SOPs,.  The

SOPs shall be provided in both Microsoft Word and PDF (Adobe Acrobat) formats.  These files shall be named as follows: [SOP number] [SOP Title] [Year.Month.Day of Last Revision]

2.    Beginning April 15, 2019, by no later than midnight on the fifteenth days of the months of January, April, July, and October, until October 15, 2024 (hereafter the "Reporting Dates"), the City must provide Plaintiffs' counsel with the following information for the immediately preceding quarter, except that the requirements of this Paragraph C(2) shall not apply to Confidential SOPs:

(a)    A copy of every SOP that is subject to the Five Day Reporting Requirement, which is in effect on the final day of the immediately preceding quarter.  For example, on October 15, 2020 (the Reporting Date), the City must provide copies of all SOPs subject to the Five Day Reporting Requirement in effect on September 30, 2020.  The SOPs shall be provided in both Microsoft Word and Adobe Acrobat formats.  The titles of these SOPs shall contain: [SOP number] [SOP Name] [Year.Month.Day of Last Revision]."

(b)    As a separate document, a revision list indicating, in separately headed sections: (i) every SOP first implemented during the immediately preceding quarter;  (ii) every SOP revoked during the immediately preceding quarter; and (iii) every SOP other than those already identified in (i) or (ii) to which any change whatsoever has been made during the immediately preceding quarter.  The SOPs identified on these lists shall be denoted as follows: "[SOP Number] [SOP Name] [Year.Month.Day of Last Revision]."   For any category in which there are no applicable SOPs for the immediately preceding quarter, this shall be indicated affirmatively by the word "None."  This document must always be provided, even if no SOPs were implemented, revoked, or changed during the immediately preceding quarter.

(c)    For every SOP identified in Section (b)(iii), a separate blackline document in Microsoft Word format reflecting every change made to that SOP in the immediately preceding quarter. The

parties agree that this blackline document shall be created by comparing the version of the SOP in effect on the immediately preceding Reporting Date and the version of the SOP in effect on the current Reporting Date using Microsoft Word's blackline function or the equivalent thereof that is mutually approved by the parties.

3.      No more than once per calendar year, the City shall be entitled to a four-calendar-day extension of one Reporting Date, if the request for such extension is timely (i.e., communicated to Plaintiffs' counsel prior to midnight on the Reporting Date).

**D.      Sunset**

1.      Except for the provisions of Part IIA(1), the provisions in Part II shall expire six years following the entry of this Order.

## III.   CITIZEN COMPLAINTS

**A.      Citizen Complaints**

1.      APD shall investigate and finally adjudicate all citizen complaints of police misconduct of any kind within 180 days of the complaint.

**B.      Continuation of Reform**

1.      *Definitions*.  For purposes of this Part III, the following definitions shall apply:

(a)      "APD Administration" means any sworn member of the Atlanta Police Department whose rank is sergeant or higher.

(b)      "APD Facilities" means Atlanta Police zone precincts or mini-precincts, OPS building, Training Academy, Headquarters, or their functional equivalent.

(c)      "Citizen Complaint" means a complaint that alleges one or more acts of police misconduct performed by a sworn member of the Atlanta Police Department, which is initiated by any

person other than City employees or officials acting in their
official capacity:

(1)　in a reasonably legible written communication, including
without limitation any signed or unsigned letter, form,
electronic communication or other document using
written words, in any format including hard, electronic or
otherwise, received by:

(i)　the APD Administration;
(ii)　an APD Facility;
(iii)　any sworn or unsworn on-duty OPS employee;
(iv)　the OPS website or functional equivalent; or
(v)　any online communication to APD through the
links described in Section 2(a) or its functional
equivalent.

or

(2)　in an audible oral communication, including without
limitation those made in-person, by telephone or via OPS
hotline, received by:

(i)　a member of the APD Administration at APD
Facilities; or
(ii)　any sworn or unsworn on-duty OPS employee.

2.　*Enhanced Accessibility*: APD shall enhance accessibility of the OPS
complaint process as follows:

(a)　The City shall include a prominent link informing persons
"How to Make a Complaint": on the index page (i.e., the "main
page," or any functional equivalent) of the City website; the
APD section of the City website;  the APD general information
website; on both the index page and the "Contact Us" page of
the APD web site, which link should be functional on all user
platforms, including desktops, mobile device platforms and any
functional equivalents.  This link shall lead users directly to a

page or form (or any functional equivalent) on which a Citizen Complaint can be submitted to APD.

(b)    Plaintiffs are allowed to submit "test" complaints to ensure the systems (electronic and non-electronic) are working properly.

(c)    On-duty uniformed sworn officers at an NPU meeting or city-recognized neighborhood association meeting will have "informational sheets" for distribution to any person alleging APD police misconduct, and the information shall instruct how to submit an OPS complaint via the OPS WEB site and OPS telephone hotline.

(d)    Informational sheets, as described in subparagraph c, will be available at all APD Facilities in a visible location that is accessible by the public without assistance from APD personnel.

3.    *Effective Date*. The provisions of this Part III Section A shall be implemented within 30 days of the entry of this Order. The provisions of this Part III Section B shall be implemented by the latter of 30 days after entry of this Order or January 15, 2019, with the exception of the Web page enhancement described in Paragraph 2(a), which shall be implemented within 90 days after entry of this Order.

## C.   Monitoring Facilitation

1.    For Citizen Complaints that are assigned an OPS Complaint number by APD, the City shall produce the following on a monthly basis, on or before the 15th day of the following month, beginning on the latter of 30 days after entry of this Order or January 15, 2019:

(a)    A spreadsheet indicating, with regard to each Citizen Complaint opened, open or closed during the immediately preceding month:

     (i)    the date the complaint was made;
    (ii)   the name of the person making the complaint;
   (iii)   the file number assigned to the complaint;

(iv)    the name(s) of the officer(s) against whom the complaint was made;

(v)    the law, rule, or SOP the officer was alleged to have violated;

(vi)    the date that the complaint was finally adjudicated;

(vii)    the final disposition of the complaint (i.e., whether the complaint was sustained, not sustained, unfounded, or exonerated) and

(viii)    the nature of any discipline imposed (e.g., oral admonishment, written reprimand, the duration of any suspension, dismissal, etc.).

(b)    Electronically searchable PDF files of all documents created or maintained in the ordinary course of business in conjunction with any of the citizen complaints listed in the afore-described spreadsheet whose investigation was closed during the previous month. Each OPS investigation file shall be provided as an individual PDF document, the file name of which shall be the OPS number of the investigation (e.g., 18-X-12345-XXX.pdf).

2.    For Citizen Complaints that are *not* assigned an OPS Complaint number by APD, the City shall produce to Plaintiffs' counsel the following on a monthly basis, on or before the 15th day of the following month, beginning on the latter of 30 days after entry of this Order or January 15, 2019:

(a)    A spreadsheet indicating, with regard to each Citizen Complaint opened, open or closed during the immediately preceding month:

(i)    the date the complaint was made;

(ii)    the name and contact information (if available) of the person making the complaint;

(iii)    the file number assigned to the complaint (if a file number is used or assigned);

(iv)    the name of the APD Administration individual who received the complaint (if the complaint was not received by OPS);

(v)    whether the complaint was oral or written;

(vi)   a factual summary of the conduct alleged by the complainant;

(vii)  the date that the complaint was finally adjudicated; and

(viii) the final disposition of the complaint (e.g., whether the complaint was sustained, not sustained, unfounded, exonerated, or some other disposition).

(b)     Electronically searchable PDF files of all documents created or maintained in the ordinary course of business in conjunction with any of the citizen complaints listed in the afore-described spreadsheet, including any document with the name(s) of the officer(s) against whom the complaint was made (if available), whose investigation was closed during the immediately preceding month. Each Citizen Complaint file shall be provided as an individual PDF document.

## D.   Sunset

1.     Except for Parts III(A)(1) and (B)(1), the provisions in this Part III shall expire six years following the entry of this Order.

## IV.  STOP AND THINK FORMS

## A.   Stop and Think Forms

1.     *Documentation of Warrantless Seizures.*  With regard to any warrantless seizure (e.g. Terry stop), warrantless frisk, or warrantless search of a person conducted by an Atlanta police officer inside any residence or commercial building or structure, the City of Atlanta shall require the officer to fill out a written or electronic form before the end of his or her shift documenting the specific crime(s) of which the individual was suspected; indicating the specific facts giving rise to reasonable articulable suspicion regarding that crime; indicating whether the individual was frisked for weapons, and if so giving the specific facts giving rise to reasonable articulable suspicion that he was both armed AND dangerous; indicating whether the individual was searched for anything other than weapons, and if so giving the specific facts giving rise both to probable cause and exigent circumstances. The requirements of this paragraph shall not apply if the action is in immediate response to a non-police-officer-initiated 9-1-1 call. These

reports shall be a public record, routinely available for public inspection by electronic or other means, pursuant to the Georgia Open Records Act.

2. *Documentation of ID Checks.* With regard to any ID check over the ACIC/GCICINCIC system by an Atlanta police officer and involving persons within any residence or commercial building or structure, the City of Atlanta shall require the officer performing the check to fill out a written or electronic form before the end of his or her shift documenting the specific authority for the ID check (whether by consent or pursuant to a Terry stop or arrest), and in the case of checks pursuant to a Terry stop, to complete the form described above. The requirements of this paragraph shall not apply if the action is in immediate response to a non-police-officer-initiated 9-1-1 call. These reports shall be a public record, routinely available for public inspection by electronic or other means, pursuant to the Georgia Open Records Act.

**B.     Continuation of Reforms**

1. The forms required in paragraph A1 and A2 above shall be public records, routinely available for public inspection by electronic or other means, pursuant to the Georgia Open Records Act. For the purpose of public inspection under the Open Records Act, the Forms will be available after supervisor review and approval. In the event that the content of any Form completed by an officer before the end of her or his shift ("End of Shift Form") prior to supervisor review is not identical to the publicly available form, the City will retain for production to Plaintiffs' counsel, as set forth below, the End of Shift Form, an audit trail showing the history of transactions associated with the End of Shift Form, and the supervisor notes associated with the audit trail. Plaintiffs' counsel agree to keep confidential such End of Shift Forms, audit trails and supervisor notes.

2. *Training and Promotion of Compliance*

(a)     Within thirty days of entry of this Order, the City shall cause the Chief of Police to distribute a Memorandum to all sworn staff describing the Stop and Think Forms and their proper use, explaining the New Incident Report Form (discussed below), identifying the relevant SOPs, giving examples of when Stop and Think Forms should be completed, and identifying particular units in which the completion of Stop and Think

Forms may be required more often.  Prior to its distribution, the City shall provide Plaintiffs' counsel with a draft Chief of Police Memorandum for Plaintiffs' approval, which approval shall not be unreasonably withheld.

(b)   *Calhoun* Training shall include training on the Stop and Think Forms and their proper use, including a "flow chart" explaining when the Stop and Think Forms are required and not required, substantially in the form attached hereto as Exhibit E.

(c)   To prompt officers completing incident reports to also complete Stop and Think Forms when appropriate, the incident report form shall, by March 15, 2019, be modified to force completion of Stop and Think Forms unless the officer "unchecks" each of two provisions stating, in substantial effect, "You were in a commercial or residential building or structure" and "You were not immediately responding to a civilian 911 call."

3.   *Monitoring Facilitation*

(a)   On the 15th day of each month, beginning the latter of 30 days after entry of this Order or January 15, 2019, the City shall provide Plaintiffs' counsel with the following information for the immediately preceding month: (i) each Stop and Think Form (in the form of an individual PDF document for each Stop and Think Form) and the corresponding incident report (in the form of an individual PDF document for each incident report); (ii) each End of Shift Form that differs from the corresponding publicly available Stop and Think Form (in the form of an individual PDF document for each such End of Shift Form) and the corresponding audit trail and supervisor notes (in the form of an individual PDF document for each End of Shift Form, or other format acceptable to Plaintiffs); (iii) all criminal trespass warnings recorded electronically (in the form of an Excel spreadsheet with a row for each criminal trespass warning and a column for each field in the criminal trespass warning template); (iv) copies of all criminal trespass warnings that were created in paper form (in the form of an individual PDF

document for each paper criminal trespass warning); and (v) all Field Interview Forms, as currently contained in the Field Contact Module referenced in SOP 3065 § 4.4.1, or any functional equivalent (in the form of an Excel spreadsheet with a row for each Field Interview Form and a column for each field in the Field Interview Form template). Plaintiffs will not assert any violation or contempt with regard to any missing or improperly-completed Stop and Think Form completed before March 1, 2019. The parties understand that the Plaintiffs' counsel will also request in discovery GCIC/ACIC/NCIC records from time to time, and data from individual APD incident reports (in the form of an Excel spreadsheet with a row for each incident report and a column for each field in the incident report template).

(b)    For a six-month period beginning on or about April 15, 2019, the parties will have monthly meetings to address whether the procedures set forth above are sufficient or necessary to promote reasonable compliance by APD police officers with the Stop and Think Form requirement.   Such meetings may continue thereafter on an as needed basis.

## C.    Sunset

1.    The provisions in Part IV shall expire six years following the entry of this Order.

# V.    IDENTIFICATION

## A.    Identification Requirement for APD Officers

1.    The City of Atlanta shall require all Atlanta police officers who are in uniform, other than a rain slicker or traffic direction vest, to wear a conspicuously visible nametag, and to require any Atlanta police officer who is in uniform or has displayed a badge or other indicia of police authority (such as a police vest, etc.), to identify himself by name and badge number upon request at some point before the end of an encounter with a civilian.

**B.     Continuation of Reform**

1.      APD's Standard Operating Procedure SOP.2130 pertaining to Dress Code (or any future functional equivalent) shall include a section requiring that any Atlanta police officer who is in uniform must, at all times, wear a conspicuously visible nametag, and emphasizing that the only exception to this requirement is a rain slicker or traffic direction vest. No APD SOP shall supersede or contradict this section of SOP.2130.

2.      APD's Standard Operating Procedure SOP.2010 pertaining to Work Rules (or any future functional equivalent) shall include a section requiring any Atlanta police officer who is in uniform or has displayed a badge or other indicia of police authority (such as a police vest, etc.), to identify himself by name and badge number upon request at some point before the end of an encounter with a civilian.

3.      APD recruits shall be trained on the name tag and identification requirements.

4.      All APD supervisors who identify a police officer in uniform, whether on duty or off duty, without a conspicuously visible nametag, shall initiate an OPS investigation, discipline, or issue a written reprimand where deemed appropriate.

**C.     Monitoring Facilitation**

The City shall make available for review by Plaintiffs' counsel, by the 15th day of each month (beginning no less than 30 days after the entry of this Order), all videos and photographs (including BWC, handheld, dashcam) of operations by officers in "tactical" and "SWAT-type" gear or uniforms conducted the immediately preceding calendar month, except for such videos and photographs that are exempt from public disclosure under the Georgia Open Records Act (OCGA §50-18-72) or other applicable Federal or State law, which videos and photographs shall be made available when they are no longer exempt.  Plaintiffs' counsel agree to keep confidential information received pursuant to this Paragraph C.  The City understands that Plaintiffs' counsel may also be requesting videos in discovery under the Federal Rules of Civil Procedure.

**D.    Sunset**

    1.    The provisions in Part V(B) "Continuation of Reform" and Part V(C) "Monitoring Facilitation" shall expire six years following the entry of this Order.

## VI.   NO INTERFERENCE WITH AUDIO OR VIDEO RECORDINGS

The City of Atlanta shall prohibit Atlanta police officers from interfering in any way with a citizen's right to make video, audio, or photographic recordings of police activity, as long as such recording does not physically interfere with the performance of an officer's duty.

## VII.   DISCOVERY

    1.    Plaintiffs are granted the right to conduct post-judgment discovery to monitor compliance with this Order pursuant to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Georgia, and all Standing Orders of this Court.

    2.    The Parties agree that the City's compliance with the document production requirements set forth in this Order should facilitate Plaintiffs' ability to monitor the City's compliance with the Order and accordingly reduce Plaintiffs' discovery requirements.

    3.    The City shall comply within 20 days with any request made by Plaintiffs' counsel for discovery.  Any such request from Plaintiffs' counsel shall be accompanied by an explanation of the reason for additional information or documents to monitor compliance with this Order.  Any records or documents that would not be subject to disclosure under the Georgia Open Records Act shall be used by Plaintiffs' counsel solely for the purpose of monitoring the City's compliance with this Order and shall not be disclosed to the public.

    4.    In any instance in which the City objects to or seeks clarification of a discovery request, the City shall present such objections or requests for clarification in writing to Plaintiffs' counsel within 5 working days of receipt of the request, including the specific bases for each objection or the nature of any ambiguity.  Within 5 working days thereafter the parties shall meet and confer and attempt to resolve the dispute.  Plaintiffs' counsel will waive attorneys' fees for the first hour of such a meeting.  If a dispute remains, the City must, within 10

working days of the parties' meeting, do the following: (1) produce complete, responsive records or (2) petition the Court for relief.

5.     The provisions in this Part VII shall expire six years following the entry of this Order.

## VIII.  IMPORTANCE OF MONITORING FACILITATION

The parties agree that enforcement of this Order is dependent upon the timely, full and accurate production of the records and information required to be provided under this Order, and the City acknowledges and understands that failure of the City to comply will be raised with this Court.

## IX.   ATTORNEY FEES

1.     The City shall pay Plaintiffs' counsel their reasonable attorney fees and reimburse any costs they reasonably expend in ensuring compliance with the Orders of this Court.  The City shall pay these sums directly to Plaintiffs' counsel upon receipt (i.e., within thirty calendar days) of each itemized accounting of reasonable time and expenses.

2.     If the City believes any element of such itemized accounting to be unreasonable, the City shall present such objections, including the specific bases for each objection, in writing to Plaintiffs' counsel within 5 calendar days of receipt of such accounting.  Within 5 calendar days thereafter, the parties shall meet and confer and attempt to resolve the dispute.  If a dispute remains, the City must, within 10 business days of the date it raised its objections, do one of the following: (1) pay Plaintiffs' counsel's accounting as presented; or (2) petition the Court, in a writing served on Plaintiffs' counsel, for relief.

3.     The parties recognize that the Plaintiffs' counsel are entitled to compensation for their reasonably expended monitoring hours under 42 U.S.C. § 1988.  The City also acknowledges that certain aspects of the monitoring regime and mechanisms may require Plaintiffs' counsel to expend significant and compensable time.

4.     The provisions in this Part IX ("Attorney Fees") shall expire six years following the entry of this Order.

16

## X.   STATEMENT

This Consent Order represents the desire and agreement of the parties to focus on ensuring compliance by the City in the future, rather than litigating Plaintiffs' allegations of the City's non-compliance.  The parties view this Consent Order as their good-faith effort to both advance compliance with Orders of this Court and as an important tool advancing APD's work to ensure both public safety and respect for citizens' constitutional rights.

## XI.   THIS ORDER SUPERCEDES PREVIOUS ORDERS

This Order shall supersede this Court's Orders of December 8, 2010, December 15, 2011, May 19, 2015 and all orders subsequent to May 19, 2015. Nothing in this Order shall preclude any party from filing a motion to modify any part of this Order.

**IT IS SO ORDERED** this 29th day of November, 2018.

_____
Timothy C. Batten, Sr.
**United States District Judge**

# EXHIBIT A

# EXHIBIT A
# Constitutional Principles

a)  Police officers may not lawfully detain any individual without reasonable articulable suspicion, particularized to the person being detained (i.e., a "particularized and objective basis for suspecting the particular person") that the individual is involved in specific and identifiable criminal activity.

A police officer may conduct a brief, investigatory stop of a person when the officer has a reasonable, articulable suspicion that that person is involved in criminal activity (A "Terry stop"). While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the Terry stop. The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch' " of criminal activity by the person. *Illinois v. Warlaw*, 528 U.S. 119, 122 (2000) (citations omitted). The officer must have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. *Brown v. Texas*, 443 U.S. 47, 51 (1979). Also, the officer's action must be " 'justified at its inception, and . . . reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).

b)  Police officers may not lawfully take or demand identification, or require an individual to identify himself, without reasonable suspicion, based on objective criteria, that the individual is engaged or had engaged in criminal conduct.

When a police officer is conducting a Terry stop on the basis of reasonable articulable suspicion that a person is engaged or has engaged in criminal activity, the officer may demand that a person identify himself or display identification. *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177 (2004); *Brown v. Texas,* 443 U.S. 47 (1979). In the absence of a lawful Terry stop, a police officer may not lawfully take identification or demand an individual to identify himself.

c) Police officers may not lawfully frisk an individual for weapons without a reasonable belief, directed at the particular person to be frisked, that the person is both armed and presently dangerous.

During a lawful Terry stop, a police officer for his own protection and safety may conduct a patdown of a person to find weapons that he reasonably believes or suspects are then in the possession of the person he has stopped. Police may not conduct a generalized "cursory search for weapons" or any search whatever for anything but weapons. The "narrow scope" of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place. *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979).

d) A warrantless arrest is constitutionally valid only when there is probable cause to arrest. *United States v. Watson*, 423 U.S. 411, 417 (1976). Probable cause exists if, "at the moment the arrest was made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the suspect] had committed or was committing an offense." *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002); *United States v. Gonzalez,* 969 F.2d 999, 1002 (11th Cir. 1992). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). "[P]robable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

e) An arrest requiring probable cause is defined using an objective standard: whether the suspect is "'subjected to restraints comparable to those associated with a formal arrest.' " *United States v. Acosta*, 363 F.3d 1141, 1149 (11th Cir. 2004) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 441 (1984)).

f) In the absence of a lawful arrest, voluntary consent, or the exception commonly known as "the plain feel exception," a police officer may not

lawfully search an individual for anything other than weapons without either a search warrant or probable cause plus exigent circumstances.

As to the "plain feel exception," if in conducting a lawful Terry patdown for weapons a police officer in lawfully patting down a suspect's outer clothing feels an object whose contour or mass makes its identity immediately apparent as contraband, it may be seized without a warrant. *Minnesota v. Dickerson*, 508 U.S. 366, 37-376 (1993).

g) Police officers may not lawfully arrest an individual in his or her home without either an arrest warrant or probable cause plus exigent circumstances. *Payton v. New York*, 445 U.S. 573 (1980).

h) A police officer may not enter a suspect's home without a search warrant or voluntary consent unless probable cause and exigent circumstances exist, and any resulting search and seizure is prohibited under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 586 (1980). Exigent circumstances exist "when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *United States v. Satterfield,* 743 F.2d 827, 844 (11th Cir. 1984). Situations in which exigent circumstances exist include: "danger of flight or escape; danger of [physical] harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and 'hot pursuit' of a fleeing suspect." *United States v. Blasco*, 702 F.2d 1315, 1325 (11th Cir. 1983). "The mere presence of contraband, however, does not give rise to exigent circumstances." *United States v. Lynch*, 934 F.2d 1226, 1232 (11th Cir. 1991). Rather, "the appropriate inquiry is whether the facts ... would lead a reasonable, experienced [officer] to believe that evidence might be destroyed before a warrant could be secured." *United States v. Tobin*, 923 F .2d 1506, 1510 (11th Cir. 1991).

# EXHIBIT B

## EXHIBIT B
## Calhoun SOP Topics

*a)  Identification Requirement.*

All Atlanta police officers who are in uniform, other than a rain slicker or traffic direction vest, must wear a conspicuously visible nametag, and to require any Atlanta police officer who is in uniform or has displayed a badge or other indicia of police authority (such as a police vest, etc.), to identify himself by name and badge number upon request at some point before the end of an encounter with a civilian.

*b)  Interference with Audio and Video Recordings.*

The City shall prohibit Atlanta police officers from interfering in any way with a citizen's right to make video, audio, or photographic recordings of police activity, as long as such recording does not physically interfere with the performance of an officer's duty.

*c)  Documentation of Warrantless Seizures (e.g. Terry Stops), Warrantless Frisks, Warrantless Searches of a Person, and ID Checks over the ACIC/GCICINCIC System.*

With regard to any warrantless seizure (e.g. Terry stop), warrantless frisk, or warrantless search of a person conducted by an Atlanta police officer inside any residence or commercial building or structure, an officer must fill out a written or electronic form before the end of his or her shift documenting the specific crime(s) of which the individual was suspected; indicating the specific facts giving rise to reasonable articulable suspicion regarding that crime; indicating whether the individual was frisked for weapons, and if so giving the specific facts giving rise to reasonable articulable suspicion that he was both armed AND dangerous; indicating whether the individual was searched for anything other than weapons, and if so giving the specific facts giving rise both to probable cause and exigent circumstances. The requirements of this paragraph shall not apply if the action is in immediate response to a non-police-officer-initiated 9-1-1 call. These reports shall be a public record, routinely available for public inspection by electronic or other means, pursuant to the Georgia Open Records Act.

With regard to any ID check over the ACIC/GCICINCIC system by an Atlanta police officer and involving persons within any residence or commercial building or structure, the officer performing the check must fill out a written or electronic form before the end of his or her shift documenting the specific authority for the ID check (whether by consent or pursuant to a Terry stop or arrest), and in the case of checks pursuant to a Terry stop, to complete the form described above. The requirements of this paragraph shall not apply if the action is in immediate response to a non-police-officer-initiated 9-1-1 call. These reports shall be a public. record, routinely available for public inspection by electronic or other means, pursuant to the Georgia Open Records Act.

*d) Citizen Complaints.*

APD shall investigate and finally adjudicate all citizen complaints of police misconduct of any kind within 180 days of the complaint.

*e) Aiming Weapon.*

An officer is prohibited from pointing or aiming a weapon at a person unless the discharge of the weapon would be justifiable.

*f) Greenberg Traurig LLP Report*

The results of the "Investigation of Officer Conduct" as reflected in "Greenberg Traurig, LLP's APO.SOP 20.20 § 3.4.1 Final Report Regarding The Planning, Execution, And Subsequent Conduct Related To The 'Eagle Raid'" presented on June 27, 2011.

# EXHIBIT C

# **EXHIBIT C**

**VIDEO:**

**"APPROVED TRAINING"**

# EXHIBIT D

## Exhibit D- Calhoun SOPs

## All SOP Sections below refer to the Sections in effect on November 28, 2018*

### SOP 2010 – Work Rules

Section 4.2.22 (3) – Nametags

Section 4.2.23 (1) – Nametags

Section 4.6.9 (2) – Pointing of firearms

### SOP 2011– General Conduct

Section 4.4.1 – Interfering with citizen's right to record

### SOP 2130 – Dress Code

Section 4.1.2 – Nametags

### SOP 3020 – Search and Seizure

Section 4.1.6 –Taking or demanding identification

Section 4.3.1 (1) – Constitutional preference for searches pursuant to warrant

Section 4.3.1 (2) – Justification for warrantless search

Section 4.3.1 (3) – Warrantless search, plain view doctrine

Section 4.5.1 – Stop and frisk

Section 4.5.2 – Exigent circumstances

Section 4.5.11– Documentation of ID Checks

## SOP 3020 – Search and Seizure

Section 5.9 – Definition of "probable cause"

Section 5.10 – Definition of "reasonable articulable suspicion"

Section 5.15 – Definition of "stop and frisk"

## SOP 3030 – Arrest Procedures

Section 4.1.4 (1)(a-e) – Arrest without a warrant

Section 4.1.7 (6) – Documentation

Section 5.4 – Definition of "probable cause"

## SOP 3060 – Report Writing

Section 4.7– Documentation of ID Checks

## SOP 3065 – Field Interviews

Section 4.1.1 – Stops

Section 4.3.4 – De-escalation after stop

**\*The following SOPs were in effect on November 28, 2018:**

**SOP 2010 – Work Rules (Effective Date September 15, 2015)**
**SOP 2011– General Conduct (Effective Date September 15, 2015)**
**SOP 2130 – Dress Code (Effective Date December 15, 2017)**
**SOP 3020 – Search and Seizure (Effective Date October 15, 2018)**
**SOP 3030 – Arrest Procedures (Effective Date September 1, 2017)**
**SOP 3060 – Report Writing (Effective Date June 1, 2015)**
**SOP 3065 – Field Interviews (Effective Date June 1, 2015)**

# EXHIBIT E



## IS THE DEMOGRAPHIC MODULE NEEDED?

**STEP 1**

Were you inside of a **RESIDENCE** or **COMMERCIAL BUILDING** or **STRUCTURE**



**IF NO STOP** | **STOP** | IF **YES**

**STEP 2**

Were you **IMMEDIATELY** responding to a **CIVILIAN** 911 call?



**IF YES STOP** | **STOP** | IF **NO**

**STEP 3**

While inside of the **LOCATION**, did you **CONDUCT** any of the following

   

**WARRANTLESS SEIZURE (TERRY STOP)** | **WARRANTLESS SEARCH** | **WARRANTLESS FRISK** | **GCIC NCIC ACIC SEARCH**



**IF NO STOP** | **STOP** | IF **YES**

## COMPLETE THE DEMOGRAPHIC MODULE

**EVEN IF YOU COMPLETED AN INCIDENT REPORT**