UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

|  |  |  |
|---|---|---|
| GEOFFREY CALHOUN, et al. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action |
| v. | ) | File No. 1:09-CV-3286-TCB |
| | ) | |
| | ) | |
| RICHARD PENNINGTON, et al. | ) | |
| | ) | |
| Defendants. | ) | |

_____

PLAINTIFFS' MOTION FOR ORDER AND/OR FOR CONTEMPT WITH
REGARD TO "CITIZEN COMPLAINT" REQUIREMENTS
OF 11/29/2018 ORDER [Doc. 434]

Plaintiffs file this Motion for an Order and/or Contempt to address and

correct Defendant City of Atlanta's significant non-compliance with the "Citizen

Complaint" requirements of Section III of the November 29, 2018, Order, Doc.

434 (the "Court Order").

The City of Atlanta has consistently failed to comply with the Court

Order's requirement to investigate and adjudicate all citizen complaints of police

misconduct within 180 days, and has repeatedly included inaccurate information

about how quickly the City is resolving those complaints in the records the City

is required to produce each month to the Plaintiffs. Plaintiffs have sought to persuade the City to comply with the Court Order by documenting the problems and requesting and encouraging compliance (several of Plaintiffs' memoranda and letters to that effect are attached as exhibits to this Motion) but despite reassurances that the City would review systemic non-compliance, the City has apparently not taken any steps to improve compliance.

In response to a January 6, 2022, memorandum from Plaintiffs about the City's failure to resolve Citizen Complaints within 180 days, the City's counsel promised that the Atlanta Police Department would "perform a comprehensive review … and provide an analysis concerning the cases that have not been closed within 180 days and any irregularities/inconsistencies in the spreadsheet[s]…"[1] Plaintiffs gave the City ample time to respond but never received the promised review, so on May 26, 2022, Plaintiffs once again sent the City a memo documenting ongoing and significant non-compliance, to which the City's attorney responded, "I am in receipt of your memo and will review said memo with my client."[2] Plaintiffs again gave the City time to conduct that review, but

---

[1] Email from City counsel to Daniel Grossman, February 21, 2022, at 11:50 AM. Exhibit 1.

[2] Email from City counsel to Daniel Grossman, June 2, 2022, at 1:33 PM. Exhibit 2.

again never received any information from the City. And rather than improving, the City's compliance got worse during the first six months of this year.

Plaintiffs believe they have given the City every possible chance to address these problems voluntarily but are convinced that the City will take effective action only with some intervention by the Court.

While Plaintiffs believe the non-compliance outlined below would justify a finding of contempt,[3] Plaintiffs seek no financial sanctions or modifications of the existing Consent Order, and do not believe the orders requested herein fall in the category of contempt sanctions, as they are non-punitive and focused only on encouraging and assisting the City to achieve compliance.

Plaintiffs are not seeking sanctions but have instead very patiently tried to work with the City -- because Plaintiffs' only objective has always been simply the City's compliance with the Court Order. Plaintiffs are not seeking to punish

---

[3]   It is well-established that "[c]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943, F.2d 1297, 1301 (11th Cir. 1991) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).  Given the relief sought herein, Plaintiffs submit that the Order sought need not meet the requirements for contempt.  However, those requirements are clearly met.  To hold a party in contempt, the court must find by clear and convincing evidence that (1) the injunction is valid; (2) the relevant terms of the injunction are clear; (3) the defendant has not complied with the injunction; and (4) the defendant is able to comply with the injunction." See, *F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010).

the City; Plaintiffs want only one thing -- for the City comply with the Court Order that was agreed to by the parties and entered by the Court – which is why Plaintiffs come to the Court seeking an order that does only three simple things:

(A) Reminds the City of its obligation to comply with all requirements of the November 29, 2018, Court Order;

(B) Requires the City to work collaboratively with Plaintiffs to develop a remediation plan designed to bring the City into compliance with the Citizen Complaint provisions of the Court Order; and

(C) Requires the City to produce certain minimal additional records, described below, in connection with such a remediation plan. [4]

Plaintiffs' hope is that these modest and non-punitive proposals will "light a fire under the City" to prompt compliance and make it easier for Plaintiffs to keep track of pending Citizen Complaints.

## I.      The Citizen Complaint Requirements of the Court Order

---

[4] If the Court believes that a better mechanism for the production of these records is a continuing Rule 34 Request for Production, rather than an order pursuant to this filing, Plaintiffs will be glad to serve a Rule 34 request upon the City.

The November 29, 2018, Court Order requires the Atlanta Police Department to "investigate and finally adjudicate all citizen complaints of police misconduct of any kind within 180 days of the complaint."[5] This requirement is sometimes referred to as the "180 Day Rule."

The 180 day time limit in the Court Order follows the recommendation of the U.S. Department of Justice "Standards and Guidelines for Internal Affairs," which recommends that investigations be concluded in 180 days and explains that it is valuable "to complete investigations promptly out of respect to employees, recognizing that they suffer stress awaiting the disposition their case. It is also valuable to the development of public trust when citizens are notified that their complaints have been investigated promptly. There is value in taking swift corrective action to help a wayward employee avoid further problems." [6]

Atlanta police officers themselves want Citizen Complaints resolved within 180 days. As the former president of the Atlanta police union explains:

> Atlanta police officers want citizen complaints involving them to be resolved promptly, and certainly within the recommended 180 day time period. Officers do not want complaints hanging over their heads for an extended period, and certainly do not

---

[5] Court Order, § III(A)(1).

[6] U. S. Department of Justice, Office of Community Oriented Policing Services. Standards and Guidelines for Internal Affairs, § 3.6, p. 33. Available at https://cops.usdoj.gov/ric/Publications/cops-p164-pub.pdf

> want complaints to remain unresolved for more than six months. An open complaint interferes with an officer's ability to transfer to another unit or receive a promotion. An officer who is also placed on non-enforcement status (sometimes called administrative duty) as a result of the complaint loses his or her ability to gain income from working extra jobs and loses the job satisfaction of functioning as a police officer until the complaint is resolved. In addition, resolving civilian complaints promptly increases public trust in their police department and community engagement with policing, which encourages the public to cooperate with police in investigations and may reduce some of the hostility that officers sometimes face.[7]

Unfortunately, the City does not seem to take seriously its obligation to resolve Citizen Complaints within 180 days or to produce information required by the Court Order that is accurate and truthful.  Indeed, non-compliance with the 180-day requirement has only worsened and become more systemic.

## II.    The City's Failure to Comply with the "180 Day Rule"'

The following information reflects the status of the City's compliance with the 180 Day Rule over the past two years and Plaintiffs' communications with the City.[8]

---

[7] Declaration of Kenneth N. Allen, ¶ 3. Exhibit 3.

[8] For the sake of efficiency, Plaintiffs monitor the City's compliance with different aspects of the Court Order at various times, rather than comprehensively monitoring every aspect of the Court Order every month. As Plaintiffs have explained to the City:

Compliance During February 2021

A full 40% of the OPS investigations that were closed in February 2021 had been open for more than 180 days.[9]

About one-third of the OPS investigations that were still open at the end of February 2021 had already been open more than 180 days, [10] and that was according to City's own data, which almost always presents inaccurate dates for when Citizen Complaints were made and thus understates the amount of time investigations remain open, as discussed below at pages 11-17.

_____

Plaintiffs do not closely examine each document or record that is produced each month, nor do we monitor the City's compliance with every Section of the Order each month, or even with every particular requirement within a particular Section of the Order. Rather, in the interest of efficiency (i.e., to reduce the amount of attorney fees) we "spot check" the City's compliance.

Daniel Grossman Email to Joseph Siegelman, June 1, 2021, at 4:56 PM. Exhibit 4.

[9] April 1, 2021 Memorandum from Plaintiff's counsel to City of Atlanta, p. 2. Exhibit 5.

Throughout this Motion all references to "OPS investigations" refer to investigations of Citizen Complaints as defined in the Court Order. The Atlanta Police Department's Office Of Professional Standards ("OPS") also conducts investigations requested by the Atlanta Police Department rather than by a civilian, but those internal investigations are not subject to the 180 Day Rule in the Court Order and so they have been excluded from all statistics presented in this Motion.

[10] *Id.*, p. 1.

<u>Compliance During September, 2021</u>

Approximately 40% of the OPS investigations that were closed in September 2021 had been open more than 180 days.[11] Two of the investigations had been open for longer than a year, including a complaint that involved the warrantless search of a residence (one of the constitutional violations that occurred during the "Eagle Raid") and serious allegations of excessive force (which were sustained by OPS) that took 532 days to adjudicate.[12]

About 34% of OPS investigations that were still open at the end of September 2021 had already been open more than 180 days according to City's own (and consistently inaccurate) data.[13]

<u>Compliance During October, 2021</u>

Fully 50% of the OPS investigations that were closed in October 2021 had been open more than 180 days.[14]

---

[11] January 6, 2022, Memorandum from Plaintiff's counsel to City of Atlanta, p. 10. Exhibit 6.

[12] *Id.*, p. 10.

[13] *Id.*, p. 9.

[14] *Id.*, p. 12.

About 30% of investigations that were still open at the end of October 2021 had already been open more than 180 days according to City's own data.[15]

<u>Compliance During January-June, 2022</u>

Despite Plaintiffs attempts to encourage compliance, the City's violations of the 180 Day Rule *increased* during 2022: Approximately 61% of the OPS investigations that were closed between January 1 and June 30, 2022, had been open for more than 180 days. As seen in the following chart, of the 47 Citizen Complaints that were resolved during the first six months of this year, 29 took more than 180 days to resolve, sixteen took more than 300 days, seven took more than a year, and one took almost three years.

[Chart appears on next page]

---

[15] *Id.*, p. 11.

## Complaints Closed January - June, 2022

| OPS File No. | "Date Open" reported by City | Actual Date of Complaint | Days open according to City | Actual Days Open |
|---|---|---|---|---|
| 22C0005SOP | 01/06/2022 | 12/23/2021 | 8 | 14 |
| 22C0041SXM | 02/03/2022 | 2/2/2022 | 40 | 44 |
| 22C0014CTSY | 01/11/2022 | 1/10/2022 | 70 | 78 |
| 21C0523CTSY | 12/14/2021 | 12/14/2021 | 79 | 86 |
| 22C0032SOP | 01/28/2022 | 1/22/2022 | 91 | 101 |
| 21C0524CTSY | 12/15/2021 | 12/13/2021 | 97 | 106 |
| 21C0486MISC | 11/17/2021 | 11/16/2021 | 106 | 114 |
| 22C0096SOP | 03/16/2022 | 3/10/2022 | 106 | 118 |
| 22C0046CTSY | 2/2/2022 | 2/2/2022 | 113 | 127 |
| 21C0469MISC | 11/04/2021 | 11/1/2021 | 118 | 129 |
| 22C0051SOP | 1/29/2022 | 1/29/2022 | 117 | 131 |
| 21C0488SOP | 11/18/2021 | 10/23/2021 | 105 | 138 |
| 21C0457SOP | 10/22/2021 | 10/21/2021 | 131 | 140 |
| 21C0437SOP | 10/12/2021 | 10/2/2021 | 142 | 159 |
| 21C0416PE | 10/01/2021 | 9/29/2021 | 153 | 162 |
| 21C0407CTSY | 09/24/2021 | 9/17/2021 | 160 | 173 |
| 21C0471MISC | 11/04/2021 | 11/3/2021 | 176 | 181 |
| 21C0399MISC | 09/15/2021 | 9/8/2021 | 168 | 183 |
| 21C0400SOP | 09/15/2021 | 8/28/2021 | 169 | 194 |
| 21C0387MISC | 09/08/2021 | 8/24/2021 | 175 | 198 |
| 21C0470MISC | 11/04/2021 | 11/2/2021 | 203 | 218 |
| 21C0357SOP | 08/24/2021 | 7/22/2021 | 189 | 230 |
| 21C0360MISC | 08/30/2021 | 8/26/2021 | 242 | 250 |
| 21C0355PE | 08/24/2021 | 8/23/2021 | 248 | 253 |
| 21C0341MISC | 08/16/2021 | 8/9/2021 | 256 | 267 |
| 21C0260MISC | 06/17/2021 | 6/10/2021 | 257 | 273 |
| 21C0241UAF | 06/09/2021 | 6/7/2021 | 267 | 275 |
| 21C0427SOP | 10/05/2021 | 10/4/2021 | 268 | 275 |
| 20C0374SOP | 09/17/2020 | 7/24/2020 | 223 | 298 |
| 21C0240MISC | 6/6/2021 | 6/2/2021 | 327 | 302 |
| 21C0284SOP | 07/07/2021 | 7/2/2021 | 296 | 307 |
| 21C0318CTSY | 07/30/2021 | 7/26/2021 | 300 | 317 |
| 21C0317SOP | 07/29/2021 | 7/22/2021 | 301 | 322 |
| 21C0370SOP | 9/1/2021 | 8/18/2021 | 302 | 323 |
| 21C0319MISC | 07/30/2021 | 6/11/2021 | 244 | 326 |
| 21C0345MISC | 08/17/2021 | 8/13/2021 | 317 | 328 |
| 21C0530PE | 09/14/2021 | 8/11/2021 | 289 | 330 |
| 21C0239SOP | 06/07/2021 | 5/30/2021 | 326 | 338 |
| 21C0139MISC | 03/29/2021 | 3/26/2021 | 358 | 368 |
| 21C0099PE | 03/02/2021 | 2/16/2021 | 423 | 441 |
| 21C0156SOP | 04/09/2021 | 4/6/2021 | 447 | 456 |
| 21C0016SOP | 01/13/2021 | 11/9/2020 | 414 | 486 |
| 19C0308MISC | 6/25/2019 | 3/31/2019 | 475 | 586 |
| 20C0364SOP | 09/10/2020 | 9/8/2020 | 567 | 602 |
| 19C0460MISC | 08/29/2019 | 8/1/2019 | 974 | 1006 |
| 22C0146SOP | 04/26/2022 | No record provided * | 65 | * |
| 21C0514CTSY | 12/07/2021 | No record provided * | 170 | * |
| | | | | |
| * Relevant record not produced by City | | | | |

And of the OPS investigations that were still open on April 30, 2022, a minimum of 50 investigations had already been open for more than 180 days even according to the dates provided by the City, which are almost always inaccurate.[16]

The chart above demonstrates not only the extent to which the City is simply ignoring the 180 Day Rule required by the Court Order but that the City is *aware* it is violating the Court Order: Even the inaccurate data the City has presented to Plaintiffs, without any additional analysis to correct it (see "Days open according to City" in the chart above), has indicated to the City how consistently it has been violating the Court Order.

### III.    The City has been Providing Inaccurate Information in the Court Ordered Spreadsheets Produced to Plaintiffs

To facilitate Plaintiffs' ability to monitor the City's compliance with the 180 Day Rule, the "Monitoring Facilitation" section of the Court Order requires the City to provide monthly spreadsheets reporting information about each Citizen Complaint received by the Atlanta Police Department.[17]

---

[16] May 26, 2022, Memorandum from Plaintiff's counsel to City of Atlanta, p. 3. Exhibit 7.

[17] Court Order, § III(C)(1), III(C)(2).

It would seem to go without saying that a court ordered requirement to provide information inherently obligates a party to provide *accurate* information, but the spreadsheets provided by the City consistently contain inaccurate data, most significantly with regard to the dates Citizen Complaints were made.

For each Citizen Complaint, the City spreadsheets are required to include the "date the complaint was made."[18] This date is one of the most important pieces of information on these spreadsheets because it is essential for determining if the complaint was resolved "within 180 days of the complaint" as required by the Court Order.[19]

When Plaintiffs have compared the actual dates complaints were made to the dates presented on the City's spreadsheets, Plaintiffs have found that the dates provided by the City were often dozens, and sometimes hundreds, of days later than the actual dates of the complaints. For example, one of Plaintiffs' letters to the City listed the exact number of days by which the City's date was later than the actual date for each of 87 OPS files.[20] That number was often in the double-digits and sometimes in the hundreds; the City understated the number

---

[18] Court Order § III(C)(1)(a)(i), III(C)(2)(a)(i).

[19] Court Order § III(A)(1).

[20] Clayton Skinner February 11, 2021 Letter to the City, pp. 15-19. Exhibit 8.

of days one file was open by 294 days, another by 329 days, another by 403, another by 559, and one by an astounding 1,461 days.[21] And while sometimes the City's inaccurate date is later than the real date by just a few days, even that discrepancy sometimes makes the difference between investigations complying with or violating the 180 Day Rule.[22]

It should also be noted that the effect of this inaccurate information is not evenly distributed, in which case some inaccurate dates would lengthen and others shorten the time an OPS file remained open; instead, the inaccurate data provided by the City *always undercounts* the number of days a file is open. As Plaintiffs pointed out to the City in January 2022:

> Moreover, in every single instance where an incorrect date was provided by the City, that date was after – and never once before – the actual date of the complaint, making it appear as if APD is adjudicating Citizen Complaints more quickly that the Department is actually doing so.[23]

---

[21] *Id.*

[22] The City spreadsheets also frequently contain an inaccurate date for when an investigation is resolved, but with a few notable exceptions this discrepancy is typically just a few days.

[23] January 6, 2022, Memorandum from Plaintiff's counsel to City of Atlanta, p. 2. Exhibit 6.

And over the past year the inaccuracies in the City's spreadsheets have gotten worse, not better, with regard to the percentage of dates that are inaccurate. The City's spreadsheets for September and October 2021 each provided an inaccurate complaint date for 83% of the Citizen Complaints reported by the City. [24] (One complaint that the City's spreadsheet listed as taking 182 days to resolve actually took 662 days when the correct date is used for the calculation.[25]) At least 86% of the investigations reported on the City's spreadsheet for November 2021 had an inaccurate complaint date, and the information regarding files that were still open at the end of November was not merely inaccurate but effectively gibberish, making it impossible for Plaintiffs to calculate how many of those investigations were already in violation of the 180 Day Rule.[26] And despite Plaintiffs' exhortations to the City to begin providing accurate information, compliance got even worse in 2022: an astounding 97% (33 out of 34) of the dates on the spreadsheets for January through April 2022 were

---

[24] January 6, 2022, Memorandum from Plaintiff's counsel to City of Atlanta, p. 13. Exhibit 6.

[25] *Id.*, referencing OPS File No. 21C0141SOP.

[26] January 6, 2022, Memorandum from Plaintiff's counsel to City of Atlanta, p. 14. Exhibit 6.

inaccurate, whether by just a few days or a much more significant amount, and every single inaccurate date was "in the City's favor."[27]

The City's failure to provide accurate information presents significant problems both for investigations that have closed and also those that are still open. For closed investigations, Plaintiffs are given a copy of the investigation file and can therefore determine the actual date the complaint was made, but this requires closely reading each investigation file, which is a time-consuming and therefore expensive practice. By contrast, if the spreadsheets contained reliably accurate information Plaintiffs could monitor compliance simply by creating a spreadsheet column that calculates how long an investigation remained open, which was one of the intended purposes of the spreadsheets in the first place.

Investigations that are still open present an even more serious problem. Because Plaintiffs are not provided any documentation regarding investigations that are still open, Plaintiffs have no way to know the date these complaints were actually made, and therefore no way to monitor whether the City is on track with compliance or if investigations have already been open more than, or close to, 180 days.

---

[27] May 26, 2022, Memorandum from Plaintiff's counsel to City of Atlanta, pp. 3-4. Exhibit 7.

One very notable example of this is OPS File 21C0141SOP. Month after month, as this investigation remained open, the City's spreadsheets reported "3/31/2021" as the "Open Date" for this file.[28] When Plaintiffs reviewed these spreadsheets it therefore appeared that the City was on track to comply with the 180 Day Rule in connection with this investigation. In October 2021 the City sent Plaintiffs a spreadsheet indicating that this file had been closed and making it appear as if the investigation had been resolved in 182 days.[29] When Plaintiffs examined the actual investigation file, however, Plaintiffs discovered that the complaint had in fact been made on December 9, 2019, and not on March 31, 2021, as previously represented.[30] In other words, all the time the City's spreadsheets indicated that this complaint was on track for 180 Day Rule

---

[28] Exhibit 9 is an excerpt of the spreadsheet produced by the City to report Citizen Complaints that were still open in August, 2021, showing the 3/31/2021 date. The same date also appeared on all previous spreadsheets reporting open complaints. Highlighted by Plaintiffs.

[29] Exhibit 10. Highlighted by Plaintiffs.

[30] See Exhibit 11, which is the "Complaint Summary" completed by OPS Investigator William J. Lyons on 12/9/2019, which stated: "On Monday, December 9, 2019 Ms. Celeste M. Jones contacted the Atlanta Police Department Office of Professional Standards to file a complaint against an officer that she and her daughter encountered on November 19, 2019…" This document has been redacted to protect privacy.

compliance it had already been open for more than a year and a half. By the time the file was finally closed it had been open for 662 days.

While an extreme example, this file is not an isolated instance; Plaintiffs can present similar examples from many other investigations upon request. One of Plaintiffs' requests for assistance, therefore, is to ask the Court to require the City to produce copies of the "opening document" for each new Citizen Complaint on the 15th of the following month, so that Plaintiffs can track the *actual* length of time Citizen Complaints remain open and provide early warning of complaints that are approaching the 180 day mark.[31]

### IV. The City's Failure to Report "Command Complaints" as Required by the Court Order

The Court Order requires the City to report complaints made by civilians at APD Facilities such as Zone headquarters (which the City refers to as

---

[31] These "opening documents" take various forms, depending on how the civilian presents his or her complaint to the APD. Complaints made by telephone are typically reported on a Complaint Summary similar to the one in Exhibit 11. Complaints presented via the APD Website generate a form similar to that in Exhibit 12 (from File 21C0470MISC), although the exact format of this document has changed slightly over time as the City revises the functionality of its website. Citizen Complaints are also occasionally made by letter or email; for example, Exhibit 13 is the original emailed complaint in File 21C0319MISC (which was received by APD on 6/11/21 but reported on the City's spreadsheet as 7/30/21, 49 days later). Plaintiffs have redacted these exhibits to protect private information and have highlighted them in places.

"Command Complaints") so Plaintiffs can monitor whether these complaints are being resolved within 180 days as required.[32] Unfortunately, it is apparent that the City is not recording or tracking many of these complaints.

The following is a summary of the "Command Complaints" reported from January 2021 through June 2022:

| | Zone 1 | Zone 2 | Zone 3 | Zone 4 | Zone 5 | Zone 6 | Titanz | Total |
|---|---|---|---|---|---|---|---|---|
| January 2021 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| February 2021 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 |
| March 2021 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 |
| April 2021 | 0 | 0 | 2 | 1 | 0 | 0 | 0 | 3 |
| May 2021 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| June 2021 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| July 2021 | 0 | 0 | 1 | 2 | 0 | 0 | 0 | 3 |
| August 2021 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 |
| September 2021 | 0 | 0 | 0 | 12 | 0 | 0 | 0 | 12 |
| October 2021 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| November 2021 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| December 2021 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| January 2022 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| February 2022 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| March 2022 | 1 | 0 | 0 | 14 | 0 | 0 | 1 | 16 |
| April 2022 | 0 | 0 | 0 | 9 | 0 | 0 | 0 | 9 |
| May 2022 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| June 2022 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total | 1 | 0 | 3 | 41 | 0 | 0 | 1 | |

(Copies of the actual monthly spreadsheets produced by the City, from which this analysis was prepared, are attached as Exhibit 14.)

These figures very strongly suggest that the City is not recording all complaints made by civilians who telephone, write to, or walk into an APD

---

[32] Court Order, § III(B)(1).

Facility. It is not credible, for example, that during this year-and-a-half period 41 civilians made a complaint at the Zone 4 headquarters but only three civilians made a complaint at Zone 3, only one at Zone 1, and that not a single civilian made a single complaint at Zone 2, Zone 5, or Zone 6 during those 18 months. Similarly, it is not credible that 12 complaints were made at an APD Facility in September 2021, and 16 in March 2022, but that not a single complaint was made at any APD Facility during the months of January, May, June, October, November, and December 2021, or January, February, May, or June 2022.[33]

And, in fact, we know that civilians *do* present complaints at all APD Zones. According to the former president of the Atlanta police union, "Civilians present complaints at all APD facilities that are available to the public 24 hours a day, which includes all six Zone headquarters and the Airport precinct, both by walk-in and telephone contact."[34]

The monitoring of these "Command Complaints" was actually one of the many reasons the Court Order exists in the first place: the Court Order was

---

[33] This issue was discussed in Plaintiffs' January 6, 2022 Memorandum to the City at pages 2-3 (Exhibit 6) and Plaintiffs' May 26, 2022 Memorandum to the City at pages 4-6 (Exhibit 7).

[34] Declaration of Kenneth N. Allen, ¶ 4. Exhibit 3.

entered, with the consent of the parties, partly to settle a compliance dispute about this very issue.

The original December 15, 2010, Court Order in this action contained a 180 Day Rule that was worded identically to the 180 Day Rule in the present Court Order. [35] But from the entry of the 2010 Court Order through the Special Master proceeding the City did not report or track complaints made at APD facilities *at all*, because the City contended that the language in the 2010 Court Order requiring the APD to "investigate and finally adjudicate all citizen complaints of police misconduct" somehow did not require APD to investigate *all* citizen complaints of police misconduct, but only those complaints the City chose to investigate. This dispute between the parties ultimately required the Special Master to recommend and the Court to order that the word "complaint" had its ordinary meaning and that the phrase "all complaints" therefore meant all complaints.[36]

To eliminate any possibility of future dispute between the parties on this subject the November 29, 2018, Court Order defined "Citizen Complaint" to

---

[35] December 15, 2010, Court Order, Doc. 280, § 7, p. 10.

[36] January 5, 2018, Order adopting Special Master Joe Whitley's Report and Recommendation. Doc. 401.

include any "audible oral communication, including without limitation those made in-person, by telephone or via OPS hotline, received by … a member of the APD Administration at APD Facilities."[37] In other words, any civilian complaint made at an APD Facility, such as a Zone, to any APD officer whose rank is sergeant or higher, is a "Citizen Complaint" that must be investigated and adjudicated within 180 days.

Yet, as demonstrated above, despite the clarity of this command the City has failed to track or report many of these complaints, leaving Plaintiffs unable to determine if they are being resolved within 180 days or even if they are being investigated and adjudicated at all.

## V.    Requests for the Court's Assistance

As Plaintiffs' repeated efforts to encourage the City to comply with the Citizen Complaint requirements of the Court Order have not succeeded in resolving these issues, Plaintiffs respectfully ask the Court's assistance in the following ways:

### A.  Reminder of the City's Obligation to Comply with the Court Order

Plaintiffs ask the Court to remind Defendant City of Atlanta that it must comply with all provisions of the Court's Order. Plaintiffs fully recognize that

---

[37] Court Order, § III(B)(1)(c)(2)(i).

such a reminder is redundant and unnecessary – the obligation to comply with the order of a Court is already clear – but given the dynamics of the situation and the parties, Plaintiffs believe that, as strange as this request may seem, it could be helpful.

B.  Development of Remediation Plan

Plaintiffs ask the Court to order that the City work collaboratively with Plaintiffs to develop a remediation plan within a reasonable period of time, such as three months, that is designed to bring the City into compliance with the Citizen Complaint requirements. That process would involve examining how Citizen Complaints are currently being handled to determine why they are not being resolved within 180 days and using that information to develop a plan to bring the City into compliance, which would likely include a focus on training, supervision, discipline according to the existing APD SOPs, and procedures.

C.  Monthly Production of Citizen Complaint Documents

To help Plaintiffs monitor ongoing compliance, Plaintiffs ask the Court to order the City to produce, along with the other records required to be produced on the 15th of every month, a copy all Citizen Complaints made during the previous calendar month in whatever form the complaint was made (which could be a copy of a website submission, email, letter, or the OPS Complaint Summary documenting a telephone call or walk-in contact, some examples of

which appear as Exhibits 11, 12, 13).[38] Producing this document will allow

Plaintiffs to determine when a complaint is made and track how long complaints

remain open, to determine if there is a trend toward or away from compliance

with the 180 Day Rule and to encourage the City to complete investigations that

may be approaching the 180 day deadline.[39]

## VI.   Conclusion

Plaintiffs only interest since the entry of the November 29, 2018, Court

Order has been the City's full compliance with all aspects of the Order.[40]

---

[38] Plaintiffs want to stress that we do not seek any items from open investigations *other* than the record of the initial complaint. Plaintiffs recognize that investigation files are constantly-evolving works in progress, and also that the City may have a legitimate interest in keeping confidential the contents of investigations that are still ongoing. Plaintiffs seek only the initial communication by which a civilian has presented a complaint to the City.

[39] As noted above, at supra note 4, Plaintiffs will be glad to serve a Rule 34 request upon the City if the Court believes that a better mechanism for the production of these records than an order pursuant to this filing.

[40] Stop & Think Forms: Plaintiffs would also like to advise the Court that there have also been serious and continuing issues of the City's non-compliance with the Stop & Think requirements of Section IV the Court Order. Plaintiffs have reported these concerns to the City through detailed memoranda, letters, emails, and conferences, and the City has repeatedly assured Plaintiffs that these problems will be addressed and resolved by training the City will soon provide to APD officers. Plaintiffs therefore believe it would be premature to address these concerns to the Court at this time. Plaintiffs intend to carefully monitor the City's compliance with the Stop & Think requirements after the training has been

Plaintiffs believe – and hope – that the assistance requested herein will encourage the City to comply with the Citizen Complaint requirements in the Court Order.

Because the City's repeated violations of the 180 Day Rule are undeniable (for every single violation cited in this Motion, Plaintiffs can provide the Court with copies of the investigation file pages demonstrating the actual dates the complaint was made and closed), but even more importantly, because the relief requested by Plaintiffs is not only modest but completely non-punitive, Plaintiffs encourage the City not to expend public resources with an adversarial, defensive, or litigious response to this filing. We hope, instead, that the City will respond simply by consenting to these modest requests and saying, "We will commit to do better in the future."

---

completed; Plaintiffs will ask the City to provide information and records voluntarily, or obtain them through discovery if necessary, to assess the City's compliance, and Plaintiffs hope that the City will come into full compliance with these requirements, making the Court's involvement unnecessary. At this time, therefore, we request nothing in connection with these issues from the Court, and ask only for the City's very best efforts at promoting compliance with the Stop & Think SOPs through the tools of training, supervision, and discipline that are the means by which every police department encourages officers to comply with departmental directives.

Respectfully submitted this 14th day of August, 2022.[41]

**ATTORNEYS FOR PLAINTIFFS**

**Daniel J. Grossman**
GA State Bar No. 313815
Law Office of Daniel J. Grossman
5101 Old Highway 5, #701
Lebanon, GA 30146
Telephone: (404) 654-0326
Email: Dan@DanGrossmanLaw.com

**Gregory R. Nevins**
GA State Bar No. 539529
Lambda Legal Defense & Education Fund, Inc.
730 Peachtree St. NE
Atlanta, GA 30308
Telephone: (404) 897-1880
Email: GNevins@lambdalegal.org

**Gerald R. Weber, Jr.**
GA State Bar No. 744878
Southern Center for Human Rights
60 Walton St NW
Atlanta, GA 30303-2149
Telephone: (404) 688-1202
Email: gweber@schr.org

**Clayton Skinner**
GA State Bar No. 360849
The Skinner Law Firm
P.O. Box. 570773
Atlanta, GA 30357
Telephone: (706) 215-5006
Email: clay@vpsouth.com

---

[41] Counsel hereby certifies that this document has been prepared in Book Antiqua font (13 point) in accordance with Local Rule 5.1(C)

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

| | |
|---|---|
| GEOFFREY CALHOUN, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action |
| v. | ) File No. 1:09-CV-3286-TCB |
| | ) |
| RICHARD PENNINGTON, et al. | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing PLAINTIFFS' MOTION FOR ORDER AND/OR FOR CONTEMPT WITH REGARD TO "CITIZEN COMPLAINT" REQUIREMENTS OF 11/29/2018 ORDER [Doc. 434] to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are on CM/ECF.

So certified this August 14, 2022.

By:  **Daniel J. Grossman**
GA State Bar No. 313815
Attorney for Plaintiffs
Law Office of Daniel J. Grossman
5101 Old Highway 5, #701
Lebanon, GA 30146
Telephone: (404) 654-0326
Email: Dan@DanGrossmanLaw.com