# Exhibit 6

January 6, 2022, Memorandum from Plaintiff's counsel to City of Atlanta

MEMORANDUM

To: City of Atlanta *Calhoun* Counsel

From: *Calhoun* Plaintiffs' Counsel

Date: January 6, 2022

Re: Partial review of the City of Atlanta's compliance with the Citizen Complaint requirements during September-November 2021

---

This is a partial review of issues with the City of Atlanta's compliance with the Citizen Complaint requirements (Section III) of the November 29, 2018 Court Order during the months of September, October, and November 2021.

## I.   Summary of Non-Compliance

### A.   Violation of the 180 Day Rule

The City continues routinely to exceed the 180 Days mandated in the Court Order for resolution of Citizen Complaints.

Of the 144 OPS investigations of Citizen Complaints that were still open at the end of September and October of 2021, 45 investigations – about 1/3 – had *already* been open for more than 180 days at the end of the month, even according to the dates provided by the City, which are almost always inaccurate. (Data for the

month of November could not be evaluated because the spreadsheet provided by the City for that month was gibberish, as discussed below.)

      B.      <u>Provision of Inaccurate Data to Plaintiffs</u>

Despite Plaintiffs' previous complaints, the City continues to provide inaccurate data in the spreadsheets the City is required to provide under Section III(C)(1)(a) of the Court Order. In particular, for 26 of the 31 closed OPS files reported for these three months the City provided an inaccurate date for receipt of the Citizen Complaint. This date, naturally, is necessary to determine if a complaint is closed within 180 day as required by the Court Order, yet this crucial date was incorrect for 84% of the investigations reported by the City on these spreadsheets.

Moreover, in every single instance where an incorrect date was provided by the City, that date was after – and never once before – the actual date of the complaint, making it appear as if APD is adjudicating Citizen Complaints more quickly that the Department is actually doing so.

      C.      <u>Apparent Failure to Report "Command Complaints"</u>

It appears that what the City calls "Command Complaints" (i.e., Citizen Complaints made to a member of "APD Administration" and/or at an "APD Facility") continue to be unreported or underreported.

For example, according to the spreadsheets provided by the City, not a single Citizen Complaint was made to a member of APD Administration or at an APD Facility during the months of October and November of 2021, despite the fact that civilians often make complaints by calling or even visiting an APD precinct, and that the City itself reported twelve such complaints on the September spreadsheet. It is not credible that twelve Citizen Complaints were made at an APD Facility in September, but not a single such complaint was made in the two months of October and November.

And even the September spreadsheet is itself suspect, as all twelve of the "Command Complaints" it reports were made at one location: Zone 4. It is not credible that twelve civilians made complaints at the Zone 4 Facility in September, but not a single civilian made a complaint at any of the other five Zones or at any mini-precinct or other APD Facility

D.  <u>Failure to Investigate and Adjudicate All Citizen Complaints</u>

Review of the records produced for September through November indicated that the City is failing to "investigate and adjudicate" all Citizen Complaints as required by the Calhoun Order through inappropriate use of the so-called "RNO" procedure adopted by the City, a matter about which Plaintiffs have expressed concern in the past.

The Court Order provides the City with the ability efficiently to deal with matters that clearly require no OPS investigation by disposing of them without an OPS investigation. As just one example where this seems to have been done appropriately, RNO-21-236 concerned a complaint against private security guards who are obviously not under the jurisdiction of the APD and where the opening of an OPS investigation would not have been appropriate.

Plaintiffs are concerned, however, that certain Citizen Complaints that should be "investigated" and "adjudicated" by the APD pursuant to the *Calhoun* Court Order are being summarily dismissed instead, as indicated by the following examples:

1. RNO-21-238

RNO-21-238 involves a civilian who complained that she was unlawfully arrested by an Atlanta police officer. The complaint was treated as "RNO" because the employee who conducted the preliminary view of this complaint looked at the Body Worn Camera video of the incident and reported: "Review of BWC showed [complainant] Darlene Gavins approach her sister and came very close to her while talking loudly. The officer immediately grabbed her to detain her."

If the APD employee accurately described the BWC video – that is, if the video in fact showed that the complainant did nothing more that "approach her sister and came very close to her while talking loudly" – then the arrest was

unlawful, and certainly should have been investigated, since approaching someone and coming "very close to her while talking loudly," without more, is not a crime.[1]

Under the terms of the *Calhoun* Order this complainant had a right to have APD "investigate" and "adjudicate" whether the officer in fact had probable cause for her arrest. Moreover, the *Calhoun* Plaintiffs, in the interest of deterring future arrests without probable cause – which was a key issue in the *Calhoun* case itself and which this Court Order was designed to deter – have an interest in having allegations like these investigated and adjudicated to deter unlawful seizures in the future.

    2.    RNO-21-263

RNO-21-263 involves a complaint by a civilian that her car was illegally stopped by a police officer for having an expired automobile tag when her tag was not, in fact, expired. The notes by the officer who did the preliminary review of this complaint indicates that the officer who stopped the complainant had "made a mistake" and that the complainant's tag was not expired, but because a complete investigation was not conducted the nature of the officer's mistake is not described: it is not clear whether the decal on the tag was expired while the

---

[1] Needless to say, Plaintiffs' counsel have not formed any opinion about the lawfulness of this arrest, as such a determination can only be made after an investigation of the full circumstances of the encounter. It is the failure of APD to conduct such an investigation about which we are concerned.

5

registration was actually current (in which case there would have been no misconduct by the officer) or whether the officer mistakenly stopped a vehicle with a current decal (in which case the stop would have been improper).

        3.     RNO-21-266

RNO-21-266 involved the following Citizen Complaint:

> Officer filed false report. Officer said he came to my home on October 19th 2021 which stated there is a junk car in my yard. However, I have documents showing that the car was gone before the 19th. Therefore, that was a lie and the officer never came to my home… I have evidence that states there was no junk car in the yard on this date.

The complainant also stated that she felt "very uncomfortable that someone can come to my home, open my fence and walk around my front and back yard…"

Despite the potentially serious nature of this complaint – which alleges a truthfulness violation, for which the penalty is termination – the officer who reviewed this complaint concluded: "At this time I recommend this complaint not be opened."

No OPS file was opened and no investigation whatsoever was conducted, despite the *Calhoun* Court Order's mandate that "APD shall investigate and finally adjudicate <u>all</u> citizen complaints of police misconduct of any kind within 180 days" (emphasis added); APD did nothing at all to examine the evidence

6

mentioned by the complainant that might have established a truthfulness violation, nor did APD do anything to determine if the entry by a police officer onto the complainant's property could be justified as a lawful administrative inspection, or if a *Camara* warrant had perhaps been obtained, or if this was an unlawful warrantless search of the curtilage of her home in violation of the Fourth Amendment.

Given that both truthfulness violations and the unlawful warrantless search of a residence were central aspects of the police misconduct during the "Eagle Raid," and that the Calhoun Court Order was specifically designed to deter repetition of these types of misconduct, the failure of the APD to investigate these allegations – and its decision summarily to dismiss them instead – is of serious concern to the *Calhoun* Plaintiffs.

4.   RNO-21-271

RNO-21-271 involves a complainant who was given a traffic ticket and whose complaint asserted that "Dash cam shows that I did not do anything wrong" and that the officer "marked [the ticket] 'Raining' when it was sunny." APD chose not to investigate this complaint, and to summarily dismiss it, because: "this matter can also be reviewed in court."

7

While the complainant can naturally raise these issues in her criminal case (and may have done so), the purpose of that proceeding is to determine *her* guilt, while a Citizen Complaint to APD raises a very different question: whether the officer violated the law or APD SOPs.

Given that the complainant alleged serious violations (one or more truthfulness violations) and how easily those allegations could have been resolved (through review of the video/videos of the incident) the APD's decision not to investigate these allegations is of great concern and seems to violate the City's obligations under the *Calhoun* Court Order.

E. <u>Failure to Provide Court Ordered Information Regarding "RNO" Complaints</u>

Despite repeated reminders by Plaintiffs' counsel that the City's failure to include the date each "RNO" complaint was received in the Court-ordered spreadsheets is a clear violation of Section III(C)(2)(a)(i) of the Court Order, and prevents calculation of the number of days each investigation was open, all spreadsheets provided by the City for the period under review failed to include this information.[2]

---

[2] It should be noted that review of the "RNO" records provided by the City suggests that most of these complaints are resolved within 180 days, but the City's continuing failure to provide the records required by the Court Order makes monitoring of compliance with the 180 Day Rule more difficult, and is another example of the City's attitude toward compliance.

8

## II. Details of Non-compliance

### A. Violation of the 180 Day Rule

#### 1. September 2021

Of the 69 OPS investigations of Citizen Complaints that were still open on September 30, 2021, 22 investigations – about 1/3 – had already been open for more than 180 days at the end of the month, even according to the dates provided by the City, which are almost always inaccurate.[3]

---

[3] The following investigations in excess of 180 days, even by the City's own data, were still open at the end of September 2021:

19C0381MISC
19C0460MISC
19C0571SOP
20C0089PE
20C0195PE
20C0261MISC
20C0316DV
20C0353PE
20C0364SOP
20C0372PE
20C0498MISC
21C0010SOP
21C0048SOP
21C0070SOP
21C0099PE
21C0114MISC
21C0115MISC
21C0121MISC
21C0133MISC
21C0139MISC
21C0142MISC
21C0136MISC

Of the 18 OPS filed closed in September 2021, seven of the investigations (or almost 40%) exceeded the 180 Day requirement of the Court Order when the actual date of each complaint is used for the calculation.[4]

Two of the files were open for longer than a year, including one complaint involving serious and *sustained* allegations of excessive force and an unlawful warrantless search of a residence (one of the constitutional violations that occurred during the "Eagle Raid") that took 532 days to adjudicate.[5] When a complaint like that takes almost 18 months to resolve, rather than the six months required by the

---

[4] 20C0192UAF
21C0141SOP
20C0447CTSY
21C0022SOP
21C0060SOP
21C0057PE
20C0502CTSY
21C0190SOP
21C0185SOP
21C0163MISC
21C0117CTSY
21C0232MISC
21C0269MISC
21C0249SOP
21C0253MISC
21C0300SOP
21C0292CTSY
21C0028SOP

[5] See 20C0192UAF and 21C0141SOP.

10

*Calhoun* Court Order, not only is the complainant denied the prompt resolution of his or her complaint guaranteed by the Court Order in this case, but the *Calhoun* Plaintiffs and the public are denied the benefit of having Atlanta Police officers promptly reminded that unlawful acts – especially ones similar to those at the heart of the *Calhoun* case – will result in disciplinary action.

2.   October 2021

Even according to the dates provided by the City, which are almost always incorrect in the City's favor, a full one-third (23 of 75) of the Citizen Complaint OPS investigations that were still open on October 31, 2021 had already been open for more than 180 days at the end of the month.[6]

---

[6] The following investigations had already exceeded 180 days by the end of October 2021 according to the data provided by the City:

19C0381MISC
19C0460MISC
19C0571SOP
20C0089PE
20C0195PE
20C0261MISC
20C0316DV
20C0364SOP
20C0372PE
20C0498MISC
21C0010SOP
21C0016SOP
21C0048SOP
21C0070SOP
21C0099PE
21C0114MISC

11

Of the six OPS filed closed in October 2021, three of the investigations (or 50%) exceeded the 180 Day requirement of the Court Order when the actual date of the Citizen Complaint is used for the calculation.[7] One of those files was open for longer than a year (426 days)

3. November 2021

Because the data provided by the City regarding OPS files that were still open at the end of November 2021 was meaningless gibberish, it is impossible to determine how long these investigations had already been open at the end of November.

Of the six OPS filed closed in November 2021 for which an accurate complaint date could be located in the records provided by the City, one of the investigations (or 17%) exceeded the 180 Day requirement of the Court Order; it took the APD 279 days to resolve OPS file 21C0121MISC.

---

21C0121MISC
21C0121MISC
21C0133MISC
21C0142MISC
21C0139MISC
21C0136MISC
21C0148MISC
21C0156SOP
21C0168MISC

[7] 20C0353PE – 426 days
21C0115MISC – 248 days
21C0151MISC – 240 days

12

B.  Provision of Inaccurate Data to Plaintiffs

1.  September 2021

The "Open Date" provided by the City was inaccurate for 15 of the 18 OPS investigations listed on the September 2021 spreadsheet.[8] In other words, a key date used to determine if the City is complying with the 180 Day Rule was incorrect for 83% of the investigations reported on the October spreadsheet. For one of the files, the City reported a "Date Open" of March 21, 2021, making it appear that the investigation had been concluded within 182 days, when in fact the Citizen Complaint had been made on December 9, 2019 and it took APD 662 days to adjudicate the complaint.[9]

2.  October 2021

The "Open Date" provided by the City was inaccurate for five of the six OPS investigations listed on the October spreadsheet, or 83%.[10]

---

[8] Only three files (21C0190SOP, 21C0163MISC, 21C0232MISC) had an accurate date.

[9] See page 31 of the PDF of OPS file 21-C-0141-S0P.

[10] Only the entry for File 21C0151MISC accurately listed the date the Citizen Complaint was received.

13

3.     November 2021

Of the seven OPS investigations listed on the November 2021 spreadsheet, the "Open Date" provided by the City was inaccurate for six of them, or 86%, and for the seventh the City failed to produce a record from which the date the City received the complaint could be determined, so it is possible that 100% of the investigations could have been reported with inaccurate information.[11]

The tab of the spreadsheet indicating which OPS files were still Open at the end of November 2021 was also inaccurate, in that it contains nothing but 404 lines of what is effectively gibberish: over 100 rows contain columns that are misaligned, so it is impossible to correlate or understand the "information" presented, and the remaining 281 rows contain nothing but conflicting names and file numbers with no other information whatsoever:

---

[11] The City provided an inaccurate "Date Open" for the following files:

21C0121MISC
21C0323CTSY
21C0336SOP
21C0337SOP
21C0358CTSY
21C0379CTSY

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 22 | 20C0315UAF | MASON | 20C0364SOP | Standard Operating Procedure | 09/10/2020 | JORDAN | LANGFORD | JOSEPH | KUBITZ | 2.33 Conformance to Directives | Forwarded |
| 23 | 20C0315UAF | SCOTT | 20C0364SOP | Standard Operating Procedure | 09/10/2020 | JORDAN | LANGFORD | JOSEPH | KUBITZ | 2.33 Conformance to Directives | Forwarded |
| 24 | **20C0315UAF** | CHRISTIAN | **20C0364SOP** | Standard Operating Procedure | **09/10/2020** | JORDAN | LANGFORD | RADCLIFF | HENRY | 2.33 Conformance to Directives | Forwarded |
| 25 | 20C0315UAF | KIMBERLY | 20C0364SOP | Standard Operating Procedure | 09/10/2020 | JORDAN | LANGFORD | RADCLIFF | HENRY | 2.33 Conformance to Directives | Forwarded |
| 26 | 20C0315UAF | RAWDON | 20C0372PE | Property and Evidence Handling | 10/01/2020 | QUENTA | BROWN | TERRENCE | EPPS | 2.30 Recovered Property | Forwarded |
| 27 | 20C0315UAF | WILLIE | 20C0372PE | Property and Evidence Handling | 10/01/2020 | QUENTA | BROWN | DENNIS | MCHALE | 2.30 Recovered Property | Forwarded |
| 28 | 20C0364SOP | JOSEPH | 20C0372PE | Property and Evidence Handling | 10/01/2020 | QUENTA | BROWN | JOSEPH | KUBITZ | 2.30 Recovered Property | Forwarded |
| 29 | **20C0364SOP** | RADCLIFF | **20C0498MISC** | Miscellaneous | 12/16/2020 | ISRALAH | RIVERS | Marlon | Sutton | 1.01 Appropriate Action Required | Forwarded |
| 30 | **20C0372PE** | DENNIS | 21C0010SOP | Standard Operating Procedure | **01/08/2021** | JAYLAN | AVERY | SHERROD | STANCIL | 2.33 Conformance to Directives | Forwarded |
| 31 | 20C0372PE | JOSEPH | 21C0010SOP | Standard Operating Procedure | 01/08/2021 | JAYLAN | AVERY | DARA | REEVES | 2.33 Conformance to Directives | Forwarded |
| 32 | 20C0372PE | TERRENCE | 21C0016SOP | Standard Operating Procedure | 01/13/2021 | LAKITA | SMITH | MELINA | LIM | 2.33 Conformance to Directives | Forwarded |
| 33 | **20C0498MISC** | Marlon | **21C0016SOP** | Standard Operating Procedure | **01/13/2021** | LAKITA | SMITH | JOHNNY | NGUYEN | 2.33 Conformance to Directives | Forwarded |
| 34 | **20I0023MISC** | RASHAD | **21C0048SOP** | Standard Operating Procedure | 01/25/2021 | Andrea | Jackson | MATTHEW | ELLSWORTH | 2.33 Conformance to Directives | Forwarded |
| 35 | **20I0061PS** | Frank | **21C0048SOP** | Standard Operating Procedure | 01/25/2021 | Andrea | Jackson | MATTHEW | ELLSWORTH | 2.33 Conformance to Directives | Forwarded |
| 36 | 20I0066FTA | IVORY | 21C0070SOP | Standard Operating Procedure | 02/05/2021 | Y | POSTELL-MAGWOOD | STEVE | AVERY | 2.33 Conformance to Directives | Forwarded |
| 37 | 20I0097PS | DENIS | 21C0099PE | Property and Evidence Handling | 03/02/2021 | SIMON | MCDANIEL | NICOLE | BROWN | 2.30 Recovered Property | Forwarded |
| 38 | 20I0162PS | JOHN | 21C0114MISC | Miscellaneous | 03/10/2021 | CARIDAD | GARCIA | ISABEL | ALMANZAR | 1.01 Appropriate Action Required | Forwarded |
| 39 | **20I0172PS** | KALEEM | **21C0133MISC** | Miscellaneous | **03/23/2021** | STEPHANIE | GROFF | CHRISTIAN | PENNICK | 1.14 Confidentiality of Department Business | Forwarded |
| 40 | **20I0180VA** | TORRANCE | **21C0133MISC** | Miscellaneous | **03/23/2021** | STEPHANIE | GROFF | TIFFANY | BUTLER | 1.14 Confidentiality of Department Business | Forwarded |
| 41 | 20I0219MISC | JOEL | 21C0133MISC | Miscellaneous | 03/23/2021 | STEPHANIE | GROFF | PATRICK | MARSCH | 1.14 Confidentiality of Department Business | Forwarded |
| 42 | 20I0225MISC | ANNIE | 21C0136MISC | Miscellaneous | 03/30/2021 | ERICA | CLAUSEN-LEE | MALIK | SHIELDS | 1.14 Confidentiality of Department Business | Forwarded |
| 43 | 20I0225MISC | THOMAS | 21C0139MISC | Miscellaneous | 03/30/2021 | MORRIS | SHILOH | Demetrius | Johnson | 2.02 Courtesy | Forwarded |

| | | | | |
|---|---|---|---|---|
| 389 | 21I0500VA | AARON | 21I0501VA | FORREST |
| 390 | 21I0501VA | FORREST | 21I0502VA | EDY |
| 391 | 21I0502VA | EDY | 21I0504VA | DARRYL |
| 392 | 21I0504VA | DARRYL | 21I0505VA | JEREMIAH |
| 393 | 21I0505VA | JEREMIAH | 21I0506SOP | DEMETRIUS |
| 394 | 21I0506SOP | DEMETRIUS | 21I0508PS | ALEXANDER |
| 395 | 21I0508PS | ALEXANDER | 21I0508PS | MASON |
| 396 | 21I0508PS | MASON | 21I0509VA | SAMEEH |
| 397 | 21I0509VA | SAMEEH | 21I0510VA | KENNETH |
| 398 | 21I0510VA | KENNETH | 21I0511VA | KIMBERLY |
| 399 | 21I0511VA | KIMBERLY | 21I0512VA | WILSON |
| 400 | 21I0512VA | WILSON | 21I0515VA | ELIAS |
| 401 | 21I0515VA | ELIAS | 21I0516VA | JOSHUA |
| 402 | 21I0516VA | JOSHUA | 21I0517VA | KETTLY |
| 403 | 21I0517VA | KETTLY | 21I0518VA | EDSON |
| 404 | 21I0518VA | EDSON | 21I0519VA | TAUREAN |
| 405 | 21I0519VA | TAUREAN | 21I0520VA | CHRISTOPHER |
| 406 | 21I0520VA | CHRISTOPHER | 21I503AT | CHRISTOPHER |
| 407 | 21I503AT | CHRISTOPHER | HOLD | GARY |
| 408 | HOLD | GARY | | |
| 409 | | | | |

Even when the two obviously misaligned columns (A and B) are manually realigned by raising them one row (see C and D) so that the column headings are in line, the information is still conflicting gibberish:

15

| | A | B | C | D | E | F | G | |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | |
| 2 | | | Inc: IA No | Off: First name | Inc: IA No | Inc: Sub-Classification | Inc: Open date | Cit: F |
| 3 | Inc: IA No | Off: First name | 20C0195PE | KEITH | 19C0381MISC | Miscellaneous | 07/30/2019 | MELI |
| 4 | 20C0195PE | KEITH | 20C0195PE | MARCUS | 19C0381MISC | Miscellaneous | 07/30/2019 | MELI |
| 5 | 20C0195PE | MARCUS | 20C0195PE | MARKENS | 19C0460MISC | Miscellaneous | 08/29/2019 | Lisa |
| 6 | 20C0195PE | MARKENS | 20C0195PE | JEREMIAH | 19C0571SOP | Standard Operating Procedure | 10/15/2019 | ERIC |
| 7 | 20C0195PE | JEREMIAH | 20C0195PE | MONETA | 20C0089PE | Property and Evidence Handling | 02/13/2020 | OSCA |
| 8 | 20C0195PE | MONETA | 20C0195PE | BRETT | 20C0089PE | Property and Evidence Handling | 02/13/2020 | OSCA |
| 9 | 20C0195PE | BRETT | 20C0195PE | CODY | 20C0195PE | Property and Evidence Handling | 04/09/2020 | TRAC |
| 10 | 20C0195PE | CODY | 20C0195PE | DREW | 20C0195PE | Property and Evidence Handling | 04/09/2020 | TRAC |
| 11 | 20C0195PE | DREW | 20C0195PE | SHERROD | 20C0195PE | Property and Evidence Handling | 04/09/2020 | TRAC |
| 12 | 20C0195PE | SHERROD | 20C0261MISC | Anthony | 20C0195PE | Property and Evidence Handling | 04/09/2020 | TRAC |
| 13 | 20C0261MISC | Anthony | 20C0313MISC | David | 20C0195PE | Property and Evidence Handling | 04/09/2020 | TRAC |
| 14 | 20C0313MISC | David | 20C0313MISC | JERMAINE | 20C0195PE | Property and Evidence Handling | 04/09/2020 | TRAC |
| 15 | 20C0313MISC | JERMAINE | 20C0313MISC | SHEDARREN | 20C0195PE | Property and Evidence Handling | 04/09/2020 | TRAC |
| 16 | 20C0313MISC | SHEDARREN | 20C0315UAF | Darline | 20C0195PE | Property and Evidence Handling | 04/09/2020 | TRAC |
| 17 | 20C0315UAF | Darline | 20C0315UAF | CHRISTOPHER | 20C0195PE | Property and Evidence Handling | 04/09/2020 | TRAC |
| 18 | 20C0315UAF | CHRISTOPHER | 20C0315UAF | BENJAMIN | 20C0195PE | Property and Evidence Handling | 04/09/2020 | TRAC |
| 19 | 20C0315UAF | BENJAMIN | 20C0315UAF | JASON | 20C0261MISC | Miscellaneous | 06/13/2020 | QUIN |
| 20 | 20C0315UAF | JASON | 20C0315UAF | Chad | 20C0316DV | Domestic(Not Criminal) | 07/27/2020 | HEIDI |
| 21 | 20C0315UAF | Chad | 20C0315UAF | MASON | 20C0364SOP | Standard Operating Procedure | 09/10/2020 | JORD |
| 22 | 20C0315UAF | MASON | 20C0315UAF | SCOTT | 20C0364SOP | Standard Operating Procedure | 09/10/2020 | JORD |
| 23 | 20C0315UAF | SCOTT | 20C0315UAF | CHRISTIAN | 20C0364SOP | Standard Operating Procedure | 09/10/2020 | JORD |
| 24 | 20C0315UAF | CHRISTIAN | 20C0315UAF | KIMBERLY | 20C0364SOP | Standard Operating Procedure | 09/10/2020 | JORD |
| 25 | 20C0315UAF | KIMBERLY | 20C0315UAF | RAWDON | 20C0364SOP | Standard Operating Procedure | 09/10/2020 | JORD |
| 26 | 20C0315UAF | RAWDON | 20C0315UAF | WILLIE | 20C0372PE | Property and Evidence Handling | 10/01/2020 | QUEN |
| 27 | 20C0315UAF | WILLIE | 20C0364SOP | JOSEPH | 20C0372PE | Property and Evidence Handling | 10/01/2020 | QUEN |
| 28 | 20C0364SOP | JOSEPH | 20C0364SOP | RADCLIFF | 20C0372PE | Property and Evidence Handling | 10/01/2020 | QUEN |
| 29 | 20C0364SOP | RADCLIFF | 20C0372PE | DENNIS | 20C0498MISC | Miscellaneous | 12/16/2020 | ISRAL |
| 30 | 20C0372PE | DENNIS | 20C0372PE | JOSEPH | 21C0010SOP | Standard Operating Procedure | 01/08/2021 | JAYLA |
| 31 | 20C0372PE | JOSEPH | 20C0372PE | TERRENCE | 21C0010SOP | Standard Operating Procedure | 01/08/2021 | JAYLA |
| 32 | 20C0372PE | TERRENCE | 20C0498MISC | Marlon | 21C0016SOP | Standard Operating Procedure | 01/13/2021 | LAKIT |
| 33 | 20C0498MISC | Marlon | 20I0023MISC | RASHAD | 21C0016SOP | Standard Operating Procedure | 01/13/2021 | LAKIT |
| 34 | 20I0023MISC | RASHAD | 20I0061PS | Frank | 21C0048SOP | Standard Operating Procedure | 01/25/2021 | Andre |
| 35 | 20I0061PS | Frank | 20I0066FTA | IVORY | 21C0048SOP | Standard Operating Procedure | 01/25/2021 | Andre |
| 36 | 20I0066FTA | IVORY | 20I0097PS | DENIS | 21C0070SOP | Standard Operating Procedure | 02/05/2021 | Y |
| 37 | 20I0097PS | DENIS | 20I0162PS | JOHN | 21C0099PE | Property and Evidence Handling | 03/02/2021 | SIMO |
| 38 | 20I0162PS | JOHN | 20I0172PS | KALEEM | 21C0114MISC | Miscellaneous | 03/10/2021 | CARI |
| 39 | 20I0172PS | KALEEM | 20I0180VA | TORRANCE | 21C0133MISC | Miscellaneous | 03/23/2021 | STEPH |
| 40 | 20I0180VA | TORRANCE | 20I0219MISC | JOEL | 21C0133MISC | Miscellaneous | 03/23/2021 | STEPH |
| 41 | 20I0219MISC | JOEL | 20I0225MISC | ANNIE | 21C0133MISC | Miscellaneous | 03/23/2021 | STEPH |
| 42 | 20I0225MISC | ANNIE | 20I0225MISC | THOMAS | 21C0136MISC | Miscellaneous | 03/30/2021 | ERICA |

Plaintiffs strongly encourage the City carefully to review all future records produced under the *Calhoun* Court Order to ensure that the information is usable and accurate.

#####

16