## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

_____

|  |  |  |
|---|---|---|
| GEOFFREY CALHOUN, et al. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action |
| v. | ) | File No. 1:09-CV-3286-TCB |
| | ) | |
| | ) | |
| RICHARD PENNINGTON, et al. | ) | |
| | ) | |
| Defendants. | ) | |

_____

### PLAINTIFFS' RESPONSE TO THE CITY OF ATLANTA'S
### JANUARY 18, 2023 STATUS REPORT TO THE COURT (DOC. 484)
### AND SECOND MOTION FOR CONTEMPT

Plaintiffs file this Response and Motion to raise serious concerns about the

accuracy of the January 18, 2023 Status Report [Doc. 484] filed by Defendant City

of Atlanta and as their Second Motion for Contempt.[1] Despite being given a full

_____

[1]The Court noted in its September 20, 2022 Order that "If Plaintiffs remain dissatisfied with the City's efforts at compliance, they should submit a second motion for contempt after the 120-day period." (Doc. 479, p.4) Plaintiffs will not here duplicatively repeat the facts set forth in Plaintiffs' original Motion (Doc. 473) and supplemented by the additional facts in Plaintiffs' Reply (Doc. 477) but ask the Court to consider those facts, along with the facts below, in considering this Second Motion for Contempt.

120 days to remedy its non-compliance, not only has the City's level of non-compliance remained the same, and may have gotten worse, but the City made little attempt after this Court's September 20, 2022 Order to resolve Citizen Complaints in order to bring itself into compliance.

Of the OPS files closed in October, 2022, only 39% (7 of 18) were closed within 180 days; 61% of the files closed in that month (11 of 18) were in violation of the 180 Day Rule.[2] Of the OPS files closed in November, 2022, only 20% (3 of 15) were in compliance with the 180 Day Rule; a full 80% (12 of 15) were in violation of the Court Order.[3]

Even more telling of the City's attitude toward compliance is this: With a significant number of cases open and in need of resolution, and despite this Court's September 20, 2022 Order requiring the City to make efforts to bring itself into compliance, the City made little effort to resolve open files. At the end of November, 2022, 103 Citizen Complaint OPS files remained open and in need of resolution. Of those 103 complaints, during the entire month of December the City closed one file. **One**.[4]

---

[2] Exhibit A. OPS is the Atlanta Police Department Office of Professional Services.

[3] Exhibit A.

[4] Exhibit A; Exhibit G. According to the spreadsheet produced to Plaintiffs by the City, the only file closed by OPS during December, 2022 was File Number

In addition, despite the Court's specific warning to the City to begin reporting Citizen Complaints made at APD Facilities, the City failed to report a single such complaint. And despite this Court's explicit admonition to the City to begin providing accurate information, throughout the entire 120 day remediation period granted by this Court the City continued to provide almost uniformly false and inaccurate data, including in the Status Report filed with this Court a few days ago. At this point, it appears that nothing other than coercive sanctions will motivate the City to comply with its obligations.

## I.    CONCERNS ABOUT THE CITY'S STATUS REPORT

While disturbed by the 55% compliance rate that was self-reported by the City of Atlanta (which falls far short of the 75% compliance rate the Court noted would "certainly be considered inadequate." Doc 479, p. 3, fn. 1), Plaintiffs are even more concerned about whether that self-reported percentage is even correct; about the accuracy of the information in the City's Status Report generally; and about the current status of the City's compliance with the Court's Orders. In particular, the following issues will be discussed below:

---

21C0048SOP. When this file was finally closed last month it had been open a shocking 716 days, just fourteen days short of two full years. Exhibit A.

A.  The obvious inaccuracies of the numbers and statistics presented to the Court in the City's Status Report;

B.  The distinct possibility that these numbers may be even more grossly inaccurate than is apparent on the face of the Status Report since the City has continued to submit false information despite the Court's warning;

C.  The credibility of the City's claim that 55% of open Citizen Complaints are "on track to close within the 180-day deadline";

D.  The complete omission of certain categories of Citizen Complaints from the City's Status Report;

E.  The City's complete failure to record or report Citizen Complaints made at APD Facilities during the 120 day remediation period provided by the Court, despite the Court's specific admonition on that subject; and

F.  The City's disingenuous attribution of late resolutions of Citizen Complaints to external factors such as the FMLA that provide no excuse for non-compliance.

A.  <u>Obvious Inaccuracies in the City's Status Report</u>

Simply by examining the Exhibit attached to the City's Status Report it becomes obvious that every single number in the Status Report is inaccurate. The Exhibit presented by the City records the same OPS file numbers multiple times (as if each were a separate Complaint), and as a result all the numbers and percentages in the City's Status Report are inaccurate. Plaintiffs are attaching an annotated copy of the City's Exhibit in which each duplicate entry is highlighted in blue (Exhibit B) and also a chart with the duplicate entries removed (Exhibit C). When each Citizen Complaint is correctly reported only once (rather than

some being reported two, three, and as many as eight times) all the numbers

presented to the Court by the City change:

|  | Number Presented by City in Status Report | Actual Number |
|---|---|---|
| Total Complaints Analysed in Status Report | 152 | 89 |
| Complaints Currently Open Less than 180 Days | 83 | 51 |
| Complaints Currently Open More than 180 Days | 69 | 38 |
| Complaints "Not closed because of Delayed File" | 49 | 29 |
| Complaints "Not closed because of Change of Personnel" | 9 | 5 |
| Complaints "Not closed because of Lost File" | 2 | 1 |
| Complaints "Not closed becaue of FMLA" | 9 | 4 |

  If nothing else, this calls into question both the City's diligence and candor.

It took Plaintiffs' counsel only a few minutes to remove the duplicate entries and

correctly summarize the information presented by the City.  If the City's

attorneys had paid even minimal attention to the accuracy of their own Exhibit

they would have noticed the same issue and corrected their Status Report before

presenting it to the Court. While this problem was easily noticed and corrected

by Plaintiffs, it unfortunately typifies the attitude toward compliance of the City

and its counsel.

B. <u>Inaccuracy of Information Reported to the Court</u>

While the City's submission of carelessly-prepared and inaccurate information is concerning, the numbers presented by the City may well be misleading to the Court in a much more substantive way: The dates of Citizen Complaints, from which the City calculated the compliance percentages it reported to the Court, may well be false, which would make those percentages false as well.

As described in Plaintiffs' original Motion (Doc. 473), the City of Atlanta has consistently reported inaccurate information about the date that Citizen Complaints were made. Dates provided by the City are often dozens of days later than the actual date a Citizen Complaint was made, making it appear that Citizen Complaints are being resolved much more quickly than they really are. (See, Plaintiffs' Motion, Doc. 473, pp. 11-17).

After the Court's admonition to the City in September, 2022 ("Additionally, the Court cautions the City to provide accurate dates and information relating to the citizen complaints."[5]) Plaintiffs expected the City to begin reporting only accurate information, but the dates presented by the City *after* the Court's Order remained inaccurate. In fact, the City reported incorrect

---

[5] September 20, 2022 Court Order, Doc. 479, fn 2.

complaint dates for *every single Citizen Complaint* listed on the spreadsheets produced by the City on November 15, 2022 and December 15, 2022. A full 100% of the complaint dates were incorrect -- short by 1 to 50 days -- as seen in the following chart:

| OPS File Number | Date of Complaint Reported by City | Actual Date of Complaint | Page in OPS File with Date of Complaint | Difference Between Actual Date and Date Reported by City |
|---|---|---|---|---|
| | | | | |
| | **Analysis of 11-15-2022 Spreadsheet Produced by City** | | | |
| | | | | |
| 21C0198SOP | 05/06/2021 | 4/12/2021 | p. 25 | 24 |
| 21C0376MISC | 09/02/2021 | 9/1/2021 | p. 315 | 1 |
| 21C0406SOP | 09/23/2021 | 9/16/2021 | p. 16 | 7 |
| 21C0463CTSY | 10/27/2021 | 10/26/2021 | p. 11 | 1 |
| 21C0477PE | 11/16/2021 | 11/5/2021 | p. 15 | 11 |
| 22C0004SOP | 01/05/2022 | 1/3/2022 | p. 18 and p. 21 | 2 |
| 22C0003MISC | 01/05/2022 | 12/28/2021 | p. 13 and p. 15 | 8 |
| 22C0012SOP | 01/11/2022 | 1/1/2022 | p. 14 | 10 |
| 22C0121MISC | 03/29/2022 | 3/4/2022 | p. 20 | 25 |
| 22C0130MISC | 04/06/2022 | 4/5/2022 | p. 8 | 1 |
| 22C0155MISC | 04/29/2022 | 4/22/2022 | p. 6 | 7 |
| 22C0212CTSY | 06/24/2022 | 6/9/2022 | p. 19 and p. 20 | 15 |
| 22C0232MISC | 07/06/2022 | 6/30/2022 | Letter from ACRB to Chief | 6 |
| 22C0247SOP | 07/15/2022 | 7/6/2022 | p. 6 | 9 |
| 22C0296MISC | 08/18/2022 | 8/14/2022 | p. 14 and p. 17 | 4 |
| 22C0314MISC | 09/07/2022 | 7/19/2022 | p. 6 and p. 9 | 50 |
| 22C0318MISC | 09/08/2022 | 8/31/2022 | p. 13 and p. 15 | 8 |
| 22C0333SOP | 09/15/2022 | 9/12/2022 | p. 13 | 3 |
| | | | | |
| | | | | |
| | **Analysis of 12-15-2022 Spreadsheet Produced by City** | | | |
| | | | | |
| 19C0381MISC | 07/30/2019 | 7/29/19 | pp. 12-13 | 1 |
| 19C0571SOP | 10/15/2019 | 9/6/19 | p. 30 | 39 |
| 21C0070SOP | 2/5/21 | 1/26/21 | p. 3 | 10 |
| 21C0375CTSY | 09/02/2021 | 8/27/21 | p. 9 | 6 |
| 22C0099SOP | 03/14/2022 | FILE NOT PRODUCED | FILE NOT PRODUCED | FILE NOT PRODUCED |
| 22C0105MISC | 03/16/2022 | FILE NOT PRODUCED | FILE NOT PRODUCED | FILE NOT PRODUCED |
| 22C0288MISC | 08/16/2022 | 8/9/22 | p. 9 | 7 |

Determining the earlier/actual date a Citizen Complaint was received by the City is a simple task, and one the City itself could have easily performed. Doing so requires nothing more than looking at the original Citizen Complaint document that is found in each OPS investigation file, yet the City consistently presented false information.  The inaccuracy of complaint dates infects all complaints without regard to how the complaint was made --whether by telephone call to OPS, email to APD Administration, or submission to the APD website.

For example, on the spreadsheet submitted to Plaintiffs on November 15, 2022 -- two months after the Court admonished the City to provide accurate information -- the City reported a complaint date of November 16, 2021 for OPS File 21C0477PE, but that Citizen Complaint was actually received by the City eleven days earlier, in a telephone call to OPS on November 5, 2021, as clearly indicated on OPS's own Complaint Summary found on page 15 of that file:



**ATLANTA POLICE DEPARTMENT**

*OFFICE OF PROFESSIONAL STANDARDS*

***Response Complaint Summary / Preliminary Investigation Summary***

"Received; Not Opened (RNO)" Number or Control Number: _____

REQUIRED INFORMATION

Date of Response Call/Complaint Receipt: **November 5, 2021**

Approximate Time of Call/Visit/Electronic Submission (if Applicable): 9:30  AM

Incident Date and Approximate: **October 29, 2021**  at 11:30 PM

Incident Location: **267 Marietta Street NW, Atlanta, GA**

Was ID provided? Yes☐ No ☒)

Complaint Received Via: ☒Telephonic, ☐APD Website/Email, ☐In-Person, ☐ACRB ☐Other

(The full page is attached as Exhibit D.)

Similarly, in November, 2022, the City reported that the complaint in OPS

File 22C0121MISC was made on March 29, 2022, when in reality that complaint

was received by the City in an email dated 25 days earlier, on March 4, 2022:

**From:** Mia Levinson <████████████@█████████>
**Sent:** Friday, March 4, 2022 11:29 AM
**To:** Malecki, Peter <PMalecki@AtlantaGa.Gov>
**Subject:** [EXTERNAL] Patrol Car Z6 Complaint

Good Morning Captain Malecki,

My name is Mia Levinson, I got your email from an officer over the phone and I have a complaint about one of your officers.

I was at Chastain Park walking my dog, and on the way back to my house, a patrol car was blocking

(The full page is attached as Exhibit E. Plaintiffs have redacted the complainant's email address here and in the exhibit.)

Also, in November, 2022, the City reported that the complaint in OPS File

22C0198SOP was made on May 6, 2021, when that complaint was actually

received through the APD website 24 days earlier, on April 12, 2021:

**From:** gsmith3436████████████@gmail.com>
**Sent:** Monday, April 12, 2021 6:17 PM
**To:** apdwebmaster <Apdwebmaster@AtlantaGa.Gov>
**Subject:** [EXTERNAL] Comments to the Chief

Yes my name is Garry  Smith my phone number is████████████ve been harassed by your police officer twice over here off of the Lindbergh and Piedmont Target on the Home Depot both managers of store said they have no problem with me being there I go there do all my business there I have lots of clients in the area I live in the area because the owner of the land I guess if they work on these businesses are on said that I banned from the property but no one can tell me why two years ago I walk my dog over there who died a few months ago she pooped on the ground I cleaned it up with my poop bags as always but one of the security guards about two years ago had a problem They've never told me why I couldn't come onto property I've called 911 twice to your police officer said they need to give me something in writing but the same police officer a white police officer who tries to be very tough comes up to me today so I'm going to arrest you I said for what he said they said you can't be here I said tell me why they can't tell him why he says well

(The full page is attached as Exhibit F. Plaintiffs have redacted the complainant's email address and phone number here and in the exhibit.)

Despite this Court's warning in September, 2022, every single Citizen Complaint file closed in October and November, 2022 was reported inaccurately. The chart above provides the page number within each OPS file where the initial Citizen Complaint document is located so the Court can use those page references, if it chooses, to confirm that the date of each of these Citizen Complaints were falsely reported by the City on its monthly spreadsheets.[6]

Given the City's repeated history of presenting inaccurate complaint dates, both before and after the Court's September 20, 2022 Order, Plaintiffs are concerned that the "Open Dates" in the Exhibit to the Status Report, from which the City calculated its compliance statistics, may be incorrect as well, which would render the entire Status Report inaccurate and misleading.[7]

---

[6] If the Court wishes to conduct this exercise Plaintiffs will gladly provide the full OPS files to the Court, either *in camera* (since they currently contain private information that would need to be redacted) or on the public docket after redaction, at the Court's preference. Plaintiffs will also file the original monthly Excel spreadsheets produced by the City if requested.

[7] Plaintiffs intend to serve discovery to obtain documents indicating the actual dates of the Citizen Complaints in the City's Status Report and inform the Court if any of the dates in the Status Report are inaccurate.

C. <u>The credibility of the City's claim that 55% of open Citizen Complaints are "on track to close within the 180-day deadline"</u>

The City has told the Court that "55% …of the open citizen complaint files are on track to close within the 180-day deadline" (City Status Report, Doc 484, p. 2). The City would clearly like the Court to interpret this as a 55% compliance rate, but it is misleading for the City to ask the Court to count each of those files as compliant.

For nearly five years – and every month since the entry of the 2018 Order – the City has reported Citizen Complaints that remained open at the end of the previous month.  Many of those complaints had been open less than 180 days when first reported.  These the City would count as "on track to close within the 180-day deadline" under the logic in its Status Report – but they remained open longer than 180 days before finally being closed.

Moreover, even *after* the Court's September 20, 2022 Order, in which the Court granted the City a 120 day remediation period to come into "substantial compliance with the consent order" (Doc 479, p. 3), the City still failed to complete investigations that had been open less than 180 days when the Court entered its Order.  These investigations *could* have been closed in compliance with the 180 Day Rule, but were not timely closed.

To illustrate, each of the following files had been open less than 180 days when the Court issued its September 20, 2022 Order. If the City had prepared a "Status Report" on that date in the same way it just presented the Status Report to this Court, it would have reported each of these files as being "on track to close within the 180-day deadline." However, as shown below, each of them in fact remained open more than 180 days, rendering them all non-compliant.

| | |
|---|---|
| 22C0121MISC | Closed at 237 days (actual number) (City number, 216) |
| 22C0130MISC | Closed at 210 days (actual number) (City number, 208) |
| 22C0155MISC | Closed at 196 days (actual number) (City number, 185) |
| 22C0162SOP | Closed at 228 days (actual number) (City number, 176) |
| 22C0126MISC | Still open on 12/31/2022, beyond 180 days |
| 22C0156SOP | Still open on 12/31/2022, beyond 180 days |
| 22C0125MISC | Still open according to Status Report, beyond 180 days |
| 22C0138MISC | Still open according to Status Report, beyond 180 days |
| 22C0154SOP | Still open according to Status Report, beyond 180 days |
| 22C0175MISC | Still open according to Status Report, beyond 180 days |
| 22C0183SOP | Still open according to Status Report, beyond 180 days |
| 22C0187MISC | Still open according to Status Report, beyond 180 days |
| 22C0192UAF | Still open according to Status Report, beyond 180 days |
| 22C0213MISC | Still open according to Status Report, beyond 180 days |
| 22C0223MISC | Still open according to Status Report, beyond 180 days |
| 22C0224MISC | Still open according to Status Report, beyond 180 days |
| 22C0225PE | Still open according to Status Report, beyond 180 days |
| 22C0235MISC | Still open according to Status Report, beyond 180 days |
| 22C0244MISC | Still open according to Status Report, beyond 180 days |
| 22C0245MISC | Still open according to Status Report, beyond 180 days |
| 22C0248PE | Still open according to Status Report, beyond 180 days |

Given this consistent pattern, many of the Citizen Complaints described by the City as "on track to close within the 180-day deadline" will likely not, in fact,

be resolved within that 180 day deadline.  The City simply cannot justify treating these still-open complaints as compliant, as it is not possible to know or predict how long it will take the City to resolve any particular Citizen Complaint until that complaint is actually resolved.  Given the City's history in this regard, and the uncertainties of predicting future resolution, compliance rates cannot be calculated based upon the repeatedly-disproven assumption that currently open files will be timely completed.

The only thing that can be determined with any certainty from the City's Status Report is that the City's *minimum* deficiency rate is *at least* 43%, based on the numbers self-reported by the City, and it will likely turn out to be much higher in reality if the complaint dates presented by the City are inaccurate (as they have been in the past) and if currently-open investigations, which the City asks the Court to assume are "on track" for timely completion, remain open more than 180 days (as they have in the past).

D. <u>Omission of Certain Citizen Complaints from Status Report</u>

Plaintiffs are also concerned by the following fifteen Citizen Complaints that were still open beyond 180 days on December 31, 2022, but were omitted from the Status Report filed on January 18, 2023. If any of those files were still

open on January 18, 2023, they should obviously have been included in the City's

Status Report.

| | FILES OPEN 12/31/2022 BUT NOT INCLUDED IN STATUS REPORT | | | | | | DAYS OPEN ACCORDING TO CITY DATA |
|---|---|---|---|---|---|---|---|
| Inc: IA No | Inc: Sub-Classification | Inc: Open date | Cit: First name | Cit: Last name | Off: First name | Off: Last name | |
| 20C0195PE | Property and Evidence Handling | 04/09/2020 | TRACY | RICHARDSON | MARCUS | FORTSON | 996 |
| 21C0456MISC | Miscellaneous | 10/22/2021 | CHRISTOPHE | SHARMA | WILLIS | GRAHAM | 435 |
| 21C0527MISC | Miscellaneous | 12/21/2021 | ABIGAIL | SEITZ | JEMAR | MCGEE | 375 |
| 22C0011CTSY | Courtesy | 01/10/2022 | TAKIAH | RIGGINS | CEDRIC | LOWE | 355 |
| 22C0025SOP | Standard Operating Procedure | 01/26/2022 | STANLEY | RUCKER | JUWAN | LAMAR | 339 |
| 22C0026UAF | Unauthorized Force | 01/26/2022 | ZANA | BARROWS | CHRISTOPHE | THORNTON | 339 |
| 22C0030MISC | Miscellaneous | 01/27/2022 | CHRISTIAN | HALL | | | 338 |
| 22C0057SOP | Standard Operating Procedure | 02/17/2022 | AMAL | ABDULMALIK | BENJAMIN | JONES | 317 |
| 22C0091SOP | Standard Operating Procedure | 03/09/2022 | DAMON | JAMES | TYLIEF | JOSEY | 297 |
| 22C0101MISC | Miscellaneous | 03/14/2022 | ENTRENDA | DILLON | DAVEON | COLEMAN | 292 |
| 22C0106MISC | Miscellaneous | 03/17/2022 | SHANNON | GREEN | KANNON | PARKER | 289 |
| 22C0156SOP | Standard Operating Procedure | 04/29/2022 | REBECCA | WORRELL | MICHAEL | MCECKRON | 246 |
| 22C0222SOP | Standard Operating Procedure | 06/29/2022 | TENYA | PIERCE | ISHMAEL | SUTTON | 185 |
| 22C0223MISC | Miscellaneous | 06/30/2022 | KHADIJAH | ROBINSON | JOSHUA | ZACHERY | 184 |
| 22C0224MISC | Miscellaneous | 06/29/2022 | XAVIER | WILLIAMS | GREGORY | CARTER | 185 |

It is, of course, possible that all these files were not improperly omitted

from the Status Report, but were instead hurriedly closed (and not fully

investigated) in the first 18 days of 2023 for the purpose of eliminating them from

the Status Report, since including these fifteen non-compliant files would raise

the City's deficiency rate from the 45% reported by the City to 58% (not even

taking into account the other issues raised herein).

E.  The City's Continued Failure to Report Command Complaints

Plaintiffs have long been disturbed by the City's failure to record or report

Citizen Complaints made at APD Facilities such as Zone Headquarters (referred

to by the City as "Citizen Complaint to Command") as required by the

November 29, 2018 Court Order. This Court's September 20, 2022 Order

indicated that the Court shared this concern: "[Plaintiffs] further assert that the

City is failing to track or report certain complaints made at APD facilities.

Continued failure to report these complaints will constitute noncompliance

warranting contempt and/or sanctions." (September 20, 2022 Court Order, Doc.

479, p. 4, fn. 2.)

Despite this unequivocal warning by the Court in September, the City

failed to record or report a single Citizen Complaint to Command in the

spreadsheets produced to Plaintiffs for the months of October, November, and

December, 2022. For each month following the Court's September 20, 2022 Order,

the City provided nothing but blank spaces:

## Atlanta Police Department

### Office of Professional Standards

**Citizen Complaint to Command - Total File Numbers of October 2022  Total = 0**

| Zone | Complaint Date | Complaint | Complaint Rec'vd By | Resolution Date | Incident Number | Summary | Complaint Type |
|------|----------------|-----------|---------------------|-----------------|-----------------|---------|----------------|
|      |                |           |                     |                 |                 |         |                |

## Atlanta Police Department

### Office of Professional Standards

**Citizen Complaint to Command - Total File Numbers of  November 2022  Total = 0**

| Zone | Complaint Date | Complaint | Complaint Rec'vd By | Resolution Date | Incident Number | Summary | Complaint Type |
|------|----------------|-----------|---------------------|-----------------|-----------------|---------|----------------|
|      |                |           |                     |                 |                 |         |                |

## Atlanta Police Department

### Office of Professional Standards

**Citizen Complaint to Command - Total File Numbers of December 2022  Total = 0**

| Zone | Complaint Date | Complaint | Complaint Rec'vd By | Resolution Date | Incident Number | Summary | Complaint Type |
|------|----------------|-----------|---------------------|-----------------|-----------------|---------|----------------|
|      |                |           |                     |                 |                 |         |                |

This non-counting of one entire category of complaints also further exacerbates the inaccuracy of the deficiency rate reported by the City.

16

F.  <u>The City's Attempt to Blame Non-Compliance on External Factors</u>

Plaintiffs are also concerned by the City's attempt to suggest that its violation of the 180 Day Rule was the unavoidable result of external factors.

It is difficult to imagine that six months does not provide sufficient time to account for issues such as "a delay in scheduling witnesses" or "a change in personnel" (see Status Report, Doc. 484, p. 3).

Moreover, it is disingenuous for the City to pretend that many investigations "<u>could not be closed</u> due to Family Medical Leave Act (FMLA) absence from duty or pending criminal charges <u>which preclude</u> the finalization of the file." (Status Report, Doc. 484, p. 2, emphasis added.) How can the 84 days of leave provided by the FMLA[8] explain why files remained open 310 days (File 22C0098SOP), 560 days (File 21C0285PE), 573 days (File 21C0268SOP), and 679 days (File 21C0114MISC)?

Nor do pending criminal charges "preclude" the resolution of a Citizen Complaint; in fact, the U.S. Department of Justice "Standards and Guidelines for Internal Affairs" sets forth reasons that administrative investigations should *not*

---

[8] The FMLA provides that "eligible employee shall be entitled to a total of 12 workweeks of leave." 29 U.S. Code § 2612(a)(1).

be held in abeyance during criminal proceedings.[9] More importantly, consistent with the DOJ recommendations neither the 2010 nor 2018 Court Orders (which were each heavily negotiated by the parties and agreed to by the City) exempt investigations involving a related criminal proceeding from the 180 Day Rule; these complaints,  like all others, must be resolved within 180 days.

## II.      THE NECESSITY FOR SANCTIONS AND REMEDIAL MEASURES

In its Status Report, the City disingenuously "joins Plaintiffs' request that no financial sanctions be imposed for the Court's review of this matter," (Status Report, Doc. 484, p. 4), ignoring Plaintiffs' subsequent assertion that "Plaintiffs did not fully understand the need for coercive sanctions when originally making this Motion, which is why Plaintiffs did not originally seek them, but the City's Response has made the need clear." (Plaintiffs' Reply Brief, Doc. 477, p.2).

---

[9] "The time delay has a negative impact on the memory and availability of witnesses. It means that a cloud lingers over the employee for a long time. The longer eventual administrative discipline, retraining, or corrective action is postponed, the less effective and meaningful it will be. Moreover, a lengthy delay undermines public trust and confidence that the agency is efficient and is taking speedy action to remedy police misconduct, thereby increasing public cynicism about law enforcement taking care of its own."

U. S. Department of Justice, Office of Community Oriented Policing Services. Standards and Guidelines for Internal Affairs, § 2.4, p. 24, available at https://cops.usdoj.gov/ric/Publications/cops-p164-pub.pdf

In light of the City's continuing compliance failures over the past 120 days Plaintiffs believe the need for sanctions is even more acute than it was before, and request the relief requested in Plaintiffs' original Motion (Doc. 473)[10] and the additional sanctions and remedies set forth below.

In the City's Response to Plaintiffs' original Motion, the City took the position that an historical 40%-60% deficiency rate in resolving Citizen Complaints within 180 days was "minor or trivial" and would qualify as "substantial compliance." The Court disagreed and gave the City 120 days to come into compliance, but at the end of those 120 days the City's Status Report shows that it is still in the very same 40%-60% deficiency range: the City *admits* a deficiency rate of 45% (Status Report, Doc. 484, p. 2) and is likely to have an actual deficiency rate close to or above 60% as discussed above. In other words, after the four month grace period granted by this Court, the City now has the same degree of non-compliance, and possibly worse, as when the Court issued its September 20, 2022 Order.

---

[10] This Court, in its September 20, 2022 Order, put the City on explicit notice of its need to comply with the 2018 consent order or risk imposition of this relief, noting that "continued failure by Defendants to comply with the consent order will likely result in the Court fully granting Plaintiffs' requested relief." (Doc. 479 p. 4.)

But perhaps nothing demonstrates the City's disregard for its obligations under this Court's orders, and its lackadaisical and indifferent approach to the 180 Day Rule in particular, than the fact that with 103 Citizen Complaint files open and in need of resolution on November 30, 2022, during the entire month of December the City closed just *one* file.[11]

As Plaintiffs first suggested last September, it seems that "only coercive sanctions will impel the City to begin fulfilling its obligations." (Plaintiffs' Reply, Doc. 477, p.13). But despite the seriousness of the situation, Plaintiffs remain more concerned with compliance than punishment, and so suggest the following remedial and coercive sanctions and remedies to further compliance:

A. <u>Sanctions for Violation of the 180 Day Rule</u>

The City's failure to improve its compliance during the 120 remediation period afforded by the Court merits financial sanctions as a coercive remedy, but because Plaintiffs remain sensitive to the unfairness severe financial sanctions would impose on the taxpayers of Atlanta for conduct attributable to a small number of City employees and the City's Law Department, Plaintiffs propose a two part remedy: The present imposition of moderate financial sanctions

---

[11] Exhibit A; Exhibit G.

(sufficient to trigger the attention of the political leadership of the City of Atlanta, who have the ability to influence the City employees who can implement compliance, but not large enough to have any meaningful effect upon the City's budget) combined with the imposition but immediate suspension of significant financial sanctions, which would remain suspended as long as the City attains and remains in substantial compliance with the November 29, 2018 Court Order. This solution gives the City a strong incentive to come into compliance in the future, without imposing significant sanctions for systemic problems in the past.

To provide specificity with which compliance can be measured, Plaintiffs also propose the following:

1. Timely Resolution of Citizen Complaints

   Citizen Complaints currently open: The City should be required to conclude all investigations listed in its Status Report within the next two months (by March 31, 2023), or within 180 of the date of the complaint, whichever comes last.

   Future Citizen Complaints: From April 1, 2023 forward the City will be expected to resolve all Citizen Complaints within 180 days.

2. Benchmarks for Compliance with the 180 Day Rule

   The 180 Day/Six Month period set forth in the 2018 Court Order provides ample time to resolve Citizen Complaints, which is presumably why the City agreed to that deadline first in 2010 and again in 2018[12]. While

---

[12] In both 2010 and 2018, the City was well aware that issues such as those mentioned in the City's Status Report (e.g., "a delay in scheduling witnesses" or

compliance with the 180 Day Rule should be the standard to which both parties aspire, Plaintiffs acknowledge that complete and literal compliance is an ideal that is difficult to achieve in the real world. Plaintiffs therefore propose benchmarks for the determination of substantial compliance: The resolution of fewer than 90% of complaints within 180 days, and the resolution of an individual complaint more than 25 days beyond 180 days, shall by definition not be considered "substantial compliance."[13]

B. Sanctions for Providing Inaccurate Information

Accurate information is essential to the effective monitoring and enforcement of the City's compliance, which is why it was specifically mentioned in the 2018 Court Order: "The parties agree that enforcement of this Order is dependent upon the timely, full and accurate production of the records and information required to be provided under this Order." (November 29, 2018 Court Order, Doc. 434, § VIII, p. 16.)

The City's provision of grossly inaccurate information on the monthly spreadsheets provided to Plaintiffs, and especially during the past three months,

---

"a change in personnel") would inevitably arise and the 180 day deadline was agreed upon with those considerations in mind.

[13] The length of a delay beyond 180 days is as significant as the percentage of complaints that exceed the deadline. A file that remains open for a year is much more harmful to the objectives of the 180 Day Rule than a file that exceeds the deadline by just a few weeks, and so the length of time files remain open beyond 180 days should also be considered in determining substantial compliance.

after the Court's explicit September 20, 2022 admonition to provide accurate information, is a serious failure by the City.  However, in line with the primary goal of encouraging future compliance rather than imposing punishment for past misconduct, Plaintiffs again propose the present imposition of moderate financial sanctions combined with the imposition but immediate suspension of more significant sanctions, which would remain suspended as long as the City provides accurate information in the future.[14]

C. <u>Sanctions for Failing to Report Command Complaints</u>

With regard to the City's failure to report Citizen Complaints made at APD Facilities as required by the 2018 Court Order, despite this Court's specific

---

[14] To grant the City more time to review and correct its records before the next monthly production, Plaintiffs propose that the deadline for the City to provide records for the month of January 2023 be extended from February 15, 2023 to February 28, 2023.

Plaintiffs also recognize that a certain number of typographical errors and similar mistakes are inevitable when compiling and presenting information, and Plaintiffs acknowledge that a limited number of understandable mistakes in the future should never result in the imposition of sanctions.

Finally, for clarity and to avoid any possibility of misunderstanding, it should be set forth that the "beginning" date of a Citizen Complaint is the date the complaint is made, and the "ending date" is the date the complainant is notified of the final adjudication.

warning that "failure to report these complaints will constitute noncompliance warranting contempt and/or sanctions," (September 20, 2022 Court Order, Doc. 479, p. 4, fn. 2.), Plaintiffs propose two remedies:

1. The present imposition of moderate financial sanctions;

2. The requirement that each set of monthly records produced by the City in the future include a sworn affidavit, or a declaration under penalty of perjury, by the commander of each APD Zone verifying that all Citizen Complaints made to a member of APD Administration under his or her command have been recorded and reported as required by the November 29, 2018 Court Order.

III.    **CONCLUSION**

The City of Atlanta has now had more than twelve years since the original December 8, 2010 Court Order to develop systems to ensure compliance with the 180 Day Rule the City first agreed to in 2010; and yet, the City is still failing to comply with this simple and unambiguous requirement.

After the City's failure to comply with this and other requirements for the first seven years after the entry of the 2010 Court Order, in 2018 a new Court Order was put into place, again with the consent of the City, in an effort to prompt compliance by providing a meticulous level of detail -- a virtual road map to what compliance requires -- and the City was given a six year monitoring period in

which to demonstrate compliance. Four of those six years have now passed and the City is still not complying with the requirements of the Order.

Even when this Court gave the City yet another 120 days to come into compliance, still it chose not to do so. It is clear that what the City lacks is the desire and will to comply, which is the precise situation in which coercive sanctions are both appropriate and necessary.

Respectfully submitted this 23rd day of January, 2023.[15]

**ATTORNEYS FOR PLAINTIFFS**

**Daniel J. Grossman**
GA State Bar No. 313815
Law Office of Daniel J. Grossman
5101 Old Highway 5, #701
Lebanon, GA 30146
Telephone: (404) 654-0326
Email: Dan@DanGrossmanLaw.com

**Gregory R. Nevins**
GA State Bar No. 539529
Lambda Legal Defense & Education Fund, Inc.
730 Peachtree St. NE
Atlanta, GA 30308
Telephone: (404) 897-1880
Email: GNevins@lambdalegal.org

---

[15] Counsel hereby certifies that this document has been prepared in Book Antiqua font (13 point) in accordance with Local Rule 5.1(C)

**Gerald R. Weber, Jr.**
GA State Bar No. 744878
Southern Center for Human Rights
60 Walton St NW
Atlanta, GA 30303-2149
Telephone: (404) 688-1202
Email: gweber@schr.org


**Clayton Skinner**
GA State Bar No. 360849
The Skinner Law Firm
P.O. Box. 570773
Atlanta, GA 30357
Telephone: (706) 215-5006
Email: clay@vpsouth.com

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

GEOFFREY CALHOUN, et al.          )
                                  )
    Plaintiffs,                   )
                                  )   Civil Action
         v.                       )   File No. 1:09-CV-3286-TCB
                                  )
RICHARD PENNINGTON, et al.        )
                                  )
    Defendants.                   )

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing
PLAINTIFFS' RESPONSE TO THE CITY OF ATLANTA'S
JANUARY 18, 2023 STATUS REPORT TO THE COURT (DOC. 484)
AND SECOND MOTION FOR CONTEMPT to the Clerk of Court using the
CM/ECF system which will automatically send electronic mail notification of
such filing to counsel of record who are on CM/ECF.

    So certified this 23rd day of January, 2023.

                    By:    **Daniel J. Grossman**
                           GA State Bar No. 313815
                           Attorney for Plaintiffs
                           Law Office of Daniel J. Grossman
                           5101 Old Highway 5, #701
                           Lebanon, GA 30146
                           Telephone: (404) 654-0326
                           Email: Dan@DanGrossmanLaw.com