## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| GEOFFREY CALHOUN, et al. | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action |
| v. | ) File No. 1:09-CV-3286-TCB |
| | ) |
| | ) |
| RICHARD PENNINGTON, et al. | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S SUBMISSION OF PROPOSED ORDER
## REGARDING CONTEMPT AND SANCTIONS
## PURSUANT TO THIS COURT'S ORDER (DOC. 488)

COME NOW PLAINTIFFS, who submit the attached Proposed Order

pursuant to the February 8, 2023 Order of this Court (Doc. 488).

Along with the attached Proposed Order, Plaintiffs would like to address

legal and factual questions raised by the City of Atlanta in its Response (Doc.

487); to explain certain features of the Proposed Order; and to alert the Court to

new facts relevant to the Court's decision about sanctions.

1.  **The City of Atlanta has Misconstrued the Relief sought by Plaintiffs**

In asking the Court not to impose sanctions the City has misconstrued the nature of the relief suggested by Plaintiffs. The City of Atlanta asks this Court to "deny any monetary sanctions to the Plaintiffs and/or their counsel as they are already compensated for their monitoring actions and such compensation would not serve to rectify any alleged deficiencies." (Doc. 487, p. 6). The City's factual premise and legal arguments in that statement are mistaken. Nowhere did Plaintiffs suggest that they should be *compensated* for the City of Atlanta's failure to comply with this Court's Orders; to the contrary, Plaintiffs clearly requested *coercive* sanctions which are payable to the Court.[1] Plaintiffs certainly never suggested that any payments be made to Plaintiffs' *counsel*. And the purpose of coercive sanctions is, in fact, precisely "to rectify any alleged deficiencies":

---

[1] Plaintiffs' Second Motion for Contempt made clear that Plaintiffs were suggesting coercive and not compensatory or punitive sanctions:

"It is clear that what the City lacks is the desire and will to comply, which is the precise situation in which coercive sanctions are both appropriate and necessary." (Doc. 485, p. 25).

"At this point, it appears that nothing other than coercive sanctions will motivate the City to comply with its obligations." (Doc. 485, p. 3)

"[Plaintiffs] suggest the following remedial and coercive sanctions and remedies to further compliance." (Doc. 485, p. 20).

Despite the City's argument that such sanctions would serve no purpose, the

prospect of sanctions which the City could avoid simply by complying with the

Court Order would offer the City a very real incentive "to rectify [the] alleged

deficiencies."[2]

### 2. <u>Plaintiffs Seek Civil Sanctions, Not Criminal Sanctions</u>

While coercive sanctions are inherently civil,[3] as opposed to punitive

sanctions which are inherently criminal, to the extent the City could have any

genuine lack of clarity, the Plaintiffs expressly state that they seek coercive

sanctions for civil contempt – i.e., sanctions which are "intended to make the

recalcitrant party comply"[4] -- and not punitive sanctions for criminal contempt.

---

[2] It may be noteworthy that this argument, plus a shallow and unsupported claim about "good faith efforts to comply," are the only defenses to contempt offered by the City. Indeed, the City never even requested an opportunity to provide any evidence of compliance. The City *could* have asked for a hearing to call witnesses and show cause why it should not be held in contempt, but failed to do so. *See*, *Mercer v. Mitchell*, 908 F.2d 763 (11th Cir. 1990).

[3] "It is well settled that '[a] contempt fine ... is considered civil and remedial if it … 'coerce[s] the defendant into compliance with the court's order…" F.T.C. v. Leshin, 618 F.3d 1221, 1239 (11th Cir. 2010), citing Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 829, 114 S.Ct. 2552, 2558 (1994).

[4] Sizzler Family Steak Houses v. W. Sizzlin Steak House, Inc., 793 F.2d 1529, 1534 (11th Cir. 1986); Rickard v. Auto Publisher, Inc., 735 F.2d 450, 458 (11th Cir. 1984)

Other than the minimal, symbolic, and remedial amounts suggested as a determinate sanction for past violations, which themselves are suggested by Plaintiffs as a measure to encourage compliance – specifically, "to trigger the attention of the political leadership of the City of Atlanta, who have the ability to influence the City employees who can implement compliance"[5] -- the City has the ability to avoid all other sanctions suggested by Plaintiffs (even the suspended sanctions) simply by complying with the requirements of the November 29, 2018 Court Order. The sanctions proposed by Plaintiffs are thus a classic example of a coercive civil remedy in which the sanctioned party carries "the keys of their prison in their own pockets." *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970, 981 (11th Cir. 1986), citing *Shillitani v. United States*, 384 U.S. 364, 368, 86 S. Ct. 1531, 1534 (1966). "Sanctions are … coercive if the contemnor has the ability to control the extent of the sanction." *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1558 (11th Cir. 1996); *see also, In re McLean*, 794 F.3d 1313, 1323 (11th Cir. 2015) ("[i]n

---

[5] Doc. 485, p. 21. It is within the Court's clear authority to "impose noncompensatory, petty fines for contempts" without such fines being considered criminal in nature. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 839, 114 S. Ct. 2552, 2563, 129 L. Ed. 2d 642 (1994). In light of the City of Atlanta's budget, discussed infra, the $5,000 fines suggested to "to trigger the attention of the political leadership of the City of Atlanta" are merely "petty fines," completely unlike the $52 million fines levied in *Bagwell*.

determining whether a sanction for contempt is coercive [rather than punitive], [we] must ask … whether the contemnor may control the extent of the award.")

### 3.  Prospective Sanctions for Each Future Violation are Appropriate

Prospective, conditional fines are the paradigmatic coercive contempt sanction.[6] As such, they are particularly appropriate in this situation.

The Court may wonder why Plaintiffs' Proposed Order includes a "substantial compliance guideline" for the imposition of the suspended sanctions[7], but suggests prospective sanctions for each day a Citizen Complaint exceeds the 180 Day Rule and for each item of inaccurate information provided by the City.

This is partly for efficiency of drafting, as it would be cumbersome, if not impossible, to anticipate each possible circumstance of delay or mistake that

---

[6] "The paradigmatic coercive, civil contempt sanction… involves confining a contemnor indefinitely until he complies with an affirmative command. … A close analogy to coercive imprisonment is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order. Like civil imprisonment, such fines exert a constant coercive pressure…" *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828-829, 114 S. Ct. 2552, 2557-2558 (1994)

[7] "…as a minimum measure of substantial compliance the resolution of fewer than 90% of complaints within 180 days, or the resolution of any individual complaint more than 25 days beyond 180 days, shall by definition not be considered substantial compliance." Plaintiffs' Proposed Order, Section I(A).

should be forgiven and to draft an order that includes all such possibilities. This approach is also consistent with the requirements of the Court Orders in this action (both the original December 8, 2010 Order and the revised November 29, 2018 Order), both of which were heavily negotiated by the parties and which, after intense negotiation, provide no exception to the 180 Day Rule and require the City of Atlanta to "investigate and finally adjudicate <u>all</u> citizen complaints of police misconduct of any kind within 180 days of the complaint" (emphasis added).

Finally, this approach is supported by both the law and practicality, as it does not *require* the Court actually to penalize each and every violation. "Even if it would be unreasonable for the district court to impose a fine for each and every violation… the prospective fine schedule does not irreversibly commit the court to do so. The schedule lets [contemnor] know that if its efforts are inadequate it may expect to incur a fine. The court, however, retains inherent power to waive the sanction in a particular case." *Sizzler Family Steak Houses v. W. Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1537 (11th Cir. 1986). The approach in *Sizzler* is a perfect parallel to the present situation. For example, if the City of Atlanta presents a piece of information that is inaccurate as the result of an obvious typographical error, such as a transposition of digits, not only is the Court not required to impose a sanction, but Plaintiffs would be foolish to ask

the Court to do so. Similarly, Plaintiffs would be ill advised to ask the Court to order the City pay a fine because an occasional Citizen Complaint takes an extra few days to resolve.

### 4.  <u>The Sanction Amounts Proposed by Plaintiffs</u>

Since the proposed sanctions are coercive, rather than compensatory, there is no mathematical calculation that can be used to determine what amounts would be appropriate, and District Courts are afforded wide discretion in fashioning an equitable remedy for civil contempt. *McGregor v. Chierico*, 206 F.3d 1378, 1385 (11th Cir. 2000), citing *United States v. City of Miami,* 195 F.3d 1292, 1298 (11th Cir.1999); also *F.T.C. v. Leshin*, 719 F.3d 1227, 1231 (11th Cir. 2013); *Sizzler Family Steak Houses v. W. Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1536 (11th Cir. 1986)("A court has broad discretion in fashioning a contempt sanction.").

In determining possible amounts to recommend as prospective sanctions, Plaintiffs therefore looked toward sanctions imposed by other Courts for guidance. Plaintiffs have also considered the financial condition of the City of Atlanta, since "a court which has returned a conviction for contempt must, in fixing the amount of a fine to be imposed as a punishment or as a means of securing future compliance, consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular

defendant." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304, 67 S. Ct. 677, 701 (1947).

Courts have imposed a wide range of financial sanctions to coerce compliance, ranging from $1,000 per day[8] to $10,000 per day[9] to $15,000 per day[10] to $50,000[11] per day and well beyond.[12]

---

[8] In re Grand Jury Subpoena Duces Tecum, 91-02922, 955 F.2d 670, 673 (11th Cir. 1992). A $1,000 daily fine has sometimes been subject to a cap, as in Acosta v. Jasper Contractors, Inc., 1:16-CV-3845-LMM-JSA, 2017 WL 8186721, at *3 (N.D. Ga. July 24, 2017), and has sometimes been increased after a specified period of continued non-compliance, as in Sec. & Exch. Comm'n v. Lawler, 1:14-CV-2468-MHC, 2016 WL 4157209, at *3 (N.D. Ga. Jan. 26, 2016) (court fined contemnor "one thousand ($1,000) dollars per day beginning on Tuesday, September 29, 2015, until he purged himself of his contempt… Then, if [contemnor] had not fully complied with this Order by Monday, October 5, 2015, the daily fine should increase to two thousand ($2,000) dollars per day")

[9] King v. Allied Vision, Ltd., 65 F.3d 1051, 1063 (2d Cir. 1995); United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 776 F. Supp. 144, 155 (S.D.N.Y. 1991), aff'd, 954 F.2d 801 (2d Cir. 1992)

[10] Citigroup Inc. v. Sayeg, 21 CIV. 10413 (JPC), 2022 WL 1620298, at *4 (S.D.N.Y. May 23, 2022)

[11] Gucci Am., Inc. v. Li, 10-CV-4974 (RJS), 2015 WL 7758872, at *3 (S.D.N.Y. Nov. 30, 2015)

[12] Int'l Bus. Machines Corp. v. United States, 493 F.2d 112 (2d Cir. 1973) ($150,000 per day); Telenor Mobile Commc'ns AS v. Storm LLC, 587 F. Supp. 2d 594, 621 (S.D.N.Y. 2008), aff'd, 351 Fed. Appx. 467 (2d Cir. 2009) ("an initial contempt sanction of $100,000 per day, doubling to $200,000 per day thirty days thereafter, and to $400,000 per day thirty days after that, and continuing to double every thirty days until compliance is achieved.")

A District Court in Alabama imposed a fine of $50,000 per day where – as here -- "the fact that this litigation has already cost the defendants millions of dollars has not hastened and assured their compliance with orders. Moreover, the court's June 2, 1998, order was not the first time that the court had cautioned the parties about noncompliance with orders."[13]

The City of Atlanta's total operating budget for 2023 is $2.28 billion, of which the City's General Fund is $734.2 million,[14] but since Plaintiffs are very sensitive to the fact that the City is a public entity supported by the taxes of residents, and not a private for-profit company, Plaintiffs propose, at this stage, that the Court impose the lowest amount in the range described above: $1,000 for each day a Citizen Complaint takes more than 180 days to resolve and for each item of inaccurate information provided by the City. Should this sanction prove

---

[13] Reynolds v. Alabama Dep't of Transp., 10 F. Supp. 2d 1263, 1282 (M.D. Ala. 1998)("Therefore the court will require the defendants to pay into the registry of this court the sum of $50,000.00 for each day that they fail to comply in full with the May 8 orders after July 24, 1998. This monetary sanction shall continue for up to ten business days. If, after ten business days, the defendants have still not complied in full with the May 8 orders, the court will then consider whether additional sanctions, including higher monetary fines and imprisonment, are appropriate.")

[14] https://citycouncil.atlantaga.gov/Home/Components/News/News/3004/

https://atlantaciviccircle.org/2022/05/05/atlanta-budget-explainer/

insufficient to coerce compliance, the Court has the authority to increase it if necessary, but Plaintiffs earnestly hope such an increase will not be required.

The City of Atlanta can hardly complain that $1,000 per day is unreasonable as the Eleventh Circuit upheld a daily fine ten times as large -- $10,000 per day (in 1989 dollars) -- imposed on a company with a smaller budget than the City of Atlanta[15], and the imposition in another case of civil contempt sanctions of $283,172.80 (in 2005 dollars) yielding "to the broad discretion enjoyed by district courts in fashioning sanctions for civil contempt."[16]

---

[15] Matter of Trinity Indus., Inc., 876 F.2d 1485, 1494 (11th Cir. 1989) ("Furthermore, the district court's decision to set sanctions at $10,000 per day was entirely reasonable. …. In 1986, Trinity had net sales of $434,326,000 and net assets of $139,989,000. … The sanction amount had to be substantial enough to compel Trinity to comply with the contempt orders. Indeed, the amount imposed was sufficient to incite Trinity to act and was not so excessive and disproportionate to Trinity's economic resources as to be punitive.")

[16] Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Olympia Holding Corp., 140 Fed. Appx. 860, 864 (11th Cir. 2005) ("… Appellants seek to import the lodestar method of calculating attorneys' fees into a district court's calculation of sanctions, but we see no reason to do so. Sanctions for civil contempt are not equivalent with typical payment of attorneys' fees, and civil contempt sanctions do not require the use of the lodestar method. We yield to the broad discretion enjoyed by district courts in fashioning sanctions for civil contempt, and do not find the amount of sanctions unreasonable.")

5.  **Explanation of Certain Features of Plaintiffs' Proposed Order**

The 120 days set forth in Section I(B) of Plaintiffs' Proposed Order is suggested to give the City two extra months to resolve many currently-open complaints; it gives the City 60 days to resolve not only complaints that have already been open more than 180 days, but also complaints that have been open 120 days or more. This is to account for complaints that have been open just under 180 days: Requiring *all* currently-open complaints to be closed within 180 days would give the City, for example, only 10 days to resolve a complaint that has been open 170 days. Plaintiffs recognize that this would not be realistic and so propose an extra two months for the resolution of such complaints. In other words, this provision gives the City a two month extension on any complaint that has already been open for more than 120 days.

Section I(G) includes a two month grace period for the City to train personnel at APD facilities about Citizen Complaints before any sanctions could be applied, and Section II(B) includes a two month grace period before Zone commanders will be required to submit affidavits or declarations verifying compliance.

Section I(H) includes an especially large prospective sanction of $25,000 because of how very difficult it will be for Plaintiffs to become aware of any "Command Complaint" that is not voluntarily disclosed by the City. Given this

reality, only the prospect of an exceptionally high sanction can be expected to incentivize the City to disclose something Plaintiffs would be very unlikely to discover if concealed.

6. **New Information Demonstrates Need and Urgency of Sanctions to Coerce Compliance**

In Plaintiffs' Response to the City's Status Report, Plaintiffs raised a concern that the information the City presented to the Court might not be accurate. Plaintiffs indicated they would serve discovery regarding the actual dates of the Citizen Complaints in the City's Status Report and inform the Court if any of those dates were inaccurate. (Doc. 485, p. 10, fn. 7).

Pursuant to Section VII of the November 29, 2018 Court Order, Plaintiffs served discovery requesting the investigation files for 104 Citizen Complaints: the 89 complaints listed in the City's Status Report and the 15 complaints missing from the report.[17] Since the City did not object to this discovery request it was required to produce these 104 files on February 13, 2023.

In violation of the November 29, 2018 Court Order, the City produced only 11 of the 104 requested files, frustrating the Plaintiffs' ability to determine if the

_____

[17] Plaintiffs' served a Request for Production on January 23, 2023. Doc. 486 (Certificate of Service).

City had provided misleading information to the Court.[18] But analysis of even just the 11 files produced by the City indicates that the City did, in fact, provide false and misleading information to the Court. In particular:

- For ten of the 11 Citizen Complaint files produced by the City (or 91%), the City provided the Court with a false complaint date. The actual dates of those complaints were earlier than the date reported to the Court by 4 to 93 days.

- Even with only 11 of 104 files to analyze, two of the Citizen Complaints reported to the Court as "on track to close within 180 days" had already been open more than 180 days when calculated using the actual date of the Citizen Complaint rather than the false date provided by the City.

The significance is not simply that the City presented false information to Plaintiffs and the Court -- the City has been presenting false information for years -- but that, given two weeks to check the accuracy of information that had been explicitly challenged by Plaintiffs, the City never corrected the data so the Court would have accurate information on which to base its decision.

To summarize the timeline, on January 18, 2023, the City presented a "Status Report" in which the City represented that 51 of 89 investigations had been open less than 180 days and were thus "on track" for compliance. On January 23, 2023, the Plaintiffs filed a response suggesting that the dates the City

---

[18] Despite Plaintiffs' request to the City to produce the missing 93 files, the City had still not produced any of these files (which were due on February 13, 2023) as of February 21, 2023.

had submitted to the Court were likely false. The City had two full weeks to read the actual Citizen Complaint files and submit an amended Status Report correcting the false information presented to the Court -- and perhaps even apologize for it -- but did not do so.

In other words, (1) even in a contempt proceeding in which the City's compliance was explicitly being questioned; and (2) even after the Plaintiffs suggested that the data in the City's Status Report was likely false; and (3) even knowing that Plaintiffs were going to scrutinize the information (because Plaintiffs announced that intention); and (4) even in the context of a submission to the Court, where the City has an obligation of Candor to the Tribunal -- an even higher standard than the City's obligation to provide accurate information to the Plaintiffs -- the City was so unconcerned with fulfilling its obligations of accuracy and candor that it never bothered to examine the challenged data it had presented to the Court, let alone correct the false information. Since that is the City's attitude toward submitting false information to the Court, the City can hardly be counted on to provide accurate data to the Plaintiffs. The City's casual lack of concern with compliance or candor, even under these circumstances, indicates that nothing less than the prospect of painful coercive sanctions will deter future violations.

7. <u>**Conclusion**</u>

The City of Atlanta's resistance to complying with the requirements of the Court Orders in this action has been years-long, consistent, obstinate, and flagrant.

"[I]n considering the propriety of the sanctions … our focus must be on the flagrancy of [contemnor's] past inadequate enforcement efforts, and the likelihood that absent the fines those efforts would continue to be inadequate. *Sizzler Family Steak Houses v. W. Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1536 (11th Cir. 1986). The "weakness of the [contemnor's] enforcement effort, the ex post evidence of its failure, and the existence of better alternatives all point to the conclusion that [contemnor] was not terribly concerned whether its enforcement efforts succeeded. … We find adequate grounds for the district court to have concluded that [contemnor's] past indifference toward adequate enforcement was flagrant." *Id.* at 1537.

The attitude of the contemnor in *Sizzler* is directly analogous to the attitude of the City of Atlanta here. The City has been ignoring this Court's orders since this action was settled in 2010, more than 12 years ago. The City's failure to comply with the 2010 settlement during the subsequent 12 months caused this

Court to convert that settlement agreement into a Court Order in 2011.[19] The City's failure to comply with that 2011 Court Order impelled this Court to find the City in contempt and impose sanctions in 2015.[20] The City's continuing compliance issues caused this Court to appoint a Special Master and then issue an Order in 2016 imposing a number of specific requirements upon the City designed to encourage compliance.[21] When those requirements, and the close monitoring provided by the Special Master, still failed to prompt compliance, in 2017 the Court ordered the City to show cause why it should not be held in contempt.[22] In 2018 the City's non-compliance was addressed by the entry, with the consent of the City, of a revised Order on November 29, 2018 that set forth definitions and procedures in such specific detail that the City could not possibly claim confusion about the requirements of compliance, and yet the City still failed to comply, even with as specific and unambiguous a mandate as to "investigate and finally adjudicate all citizen complaints of police misconduct of any kind within 180 days of the complaint."

---

[19] December 15, 2011 Order, Doc. 280.

[20] May 19, 2015 Order, Doc. 289.

[21] September 23, 2016 Order, Doc. 323

[22] July 25, 2017 Orders, Doc. 347 and Doc. 348.

Finally, when given one last chance to come into compliance during a 120 day grace period granted by this Court, the City still failed to do so, and the City's attempt to "defend itself" against sanctions for that non-compliance was to submit false data to the Court.

Whether the Court chooses to adopt the attached proposal or craft some other formulation, Plaintiffs ask the Court to be guided by the following thought in determining sanctions: This has gone on long enough.

Respectfully submitted this 22nd day of February, 2023.[23]

**ATTORNEYS FOR PLAINTIFFS**

**Daniel J. Grossman**
GA State Bar No. 313815
Law Office of Daniel J. Grossman
5101 Old Highway 5, #701
Lebanon, GA 30146
Telephone: (404) 654-0326
Email: Dan@DanGrossmanLaw.com

**Gregory R. Nevins**
GA State Bar No. 539529
Lambda Legal Defense & Education Fund, Inc.
730 Peachtree St. NE
Atlanta, GA 30308
Telephone: (404) 897-1880
Email: GNevins@lambdalegal.org

---

[23] Counsel hereby certifies that this document has been prepared in Book Antiqua font (13 point) in accordance with Local Rule 5.1(C)

**Gerald R. Weber, Jr.**
GA State Bar No. 744878
Southern Center for Human Rights
60 Walton St NW
Atlanta, GA 30303-2149
Telephone: (404) 688-1202
Email: gweber@schr.org


**Clayton Skinner**
GA State Bar No. 360849
The Skinner Law Firm
P.O. Box. 570773
Atlanta, GA 30357
Telephone: (706) 215-5006
Email: clay@vpsouth.com

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

| | |
|---|---|
| GEOFFREY CALHOUN, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action |
| v. | ) File No. 1:09-CV-3286-TCB |
| | ) |
| RICHARD PENNINGTON, et al. | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing
PLAINTIFF'S SUBMISSION OF PROPOSED ORDER REGARDING CONTEMPT
AND SANCTIONS PURSUANT TO THIS COURT'S ORDER (DOC. 488) via the
ECF system which will automatically send electronic mail notification of such
filing to counsel of record who are on CM/ECF.

So certified this 22nd day of February, 2023.


By:     **Daniel J. Grossman**
GA State Bar No. 313815
Attorney for Plaintiffs
Law Office of Daniel J. Grossman
5101 Old Highway 5, #701
Lebanon, GA 30146
Telephone: (404) 654-0326
Email: Dan@DanGrossmanLaw.com

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

|  |  |
|---|---|
| GEOFFREY CALHOUN, et al. | ) |
|  | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) Civil Action |
| v. | ) File No. 1:09-CV-3286-TCB |
|  | ) |
|  | ) |
| RICHARD PENNINGTON, et al. | ) |
|  | ) |
| Defendants. | ) |

_____

**[PLAINTIFFS' PROPOSED] ORDER ON PLAINTIFFS' FIRST AND SECOND MOTIONS FOR CONTEMPT PURSUANT TO DOC. 488**

Having carefully considered the facts and legal arguments presented by

Plaintiffs and Defendant City of Atlanta with regard to Plaintiffs' First and

Second Motions for Contempt (Doc. 473 and Doc. 485) this Court finds that

Defendant City of Atlanta has violated Section III (regarding "Citizen

Complaints") of this Court's Order of November 29, 2018 (Doc 434)[1]; holds the

---

[1] This Section requires that "APD shall investigate and finally adjudicate all citizen complaints of police misconduct of any kind within 180 days of the complaint**."** November 29, 2018 Order (Doc. 424) Section III(A)(1).

City of Atlanta in Contempt of Court for such violations; and imposes the

sanctions and remedial orders set forth below.

I.     <u>SANCTIONS</u>

A. <u>Sanctions for Violations of the "180 Day Rule"</u>

For Defendant City of Atlanta's failure to comply with Section III(A)(1) of

the November 29, 2018 Order (known as the "180 Day Rule") this Court imposes

the following sanctions:

A sanction of $5,000 to be paid to the United States Treasury within 15

days of this Order;

A sanction of $50,000 to be paid to the United States Treasury; this sanction

is immediately SUSPENDED and shall remain suspended for so long as

Defendant City of Atlanta remains in compliance with the 180 Day Rule. While

the Court will not at this time set specific numerical requirements by which the

City's compliance will be measured, and full compliance is ultimately expected,

the Court notes that as a minimum measure of substantial compliance the

resolution of fewer than 90% of complaints within 180 days, or the resolution of

any individual complaint more than 25 days beyond 180 days, shall by definition

not be considered substantial compliance.

B.  <u>Sanctions to Coerce Resolution of Existing Citizen Complaints</u>
<u>Open more than 120 Days</u>

The City of Atlanta is hereby ordered to finally adjudicate each Citizen

Complaint that has been open more than 120 days as of the date of this Order

within the next sixty (60) days. The City of Atlanta shall pay the United States

Treasury a sanction of $1,000 for each day that each such investigation remains

open beyond this deadline.[2]

C.  <u>Sanctions to Coerce Resolution of Existing Citizen Complaints</u>
<u>Open less than 120 Days</u>

The City of Atlanta shall pay the United States Treasury a sanction of

$1,000 for each day that an existing Citizen Complaint open less than 120 days

investigation remains open beyond 180 days.

---

[2] With regard to the obligation to resolve Citizen Complaints, the Court reminds
the City of Atlanta that the Atlanta Police Department is required to "investigate
and finally adjudicate" each Citizen Complaint. "Investigate" means "to inquire
into a matter systematically and "adjudicate" means "to rule on judicially"
(Black's Law Dictionary, 11th ed. 2019) and so simply closing Citizen Complaints
without the systematic inquiry and thoughtful consideration generally applied
by a court in resolving matters will not constitute compliance or substantial
compliance with this obligation.

D. <u>Sanctions to Coerce Resolution of Future Citizen Complaints within 180 Days</u>

The City of Atlanta shall pay the United States Treasury a sanction of $1,000 for each day that a future Citizen Complaint remains open beyond 180 Days.

E. <u>Sanctions for Providing Inaccurate Information</u>

Accurate information is essential to the effective monitoring and enforcement of the City's compliance with its obligations under the November 29, 2018 Court Order.[3] With regard to the Defendant City of Atlanta's provision of inaccurate information to Plaintiffs and this Court in the past, this Court imposes the following sanctions:

A sanction of $5,000 to be paid to the United States Treasury within 15 days of this Order;

A sanction of $25,000 to be paid to the United States Treasury; this sanction is immediately SUSPENDED and shall remain suspended for so long as

---

[3] "The parties agree that enforcement of this Order is dependent upon the timely, full and accurate production of the records and information required to be provided under this Order." (November 29, 2018 Court Order, Doc. 434, § VIII, p. 16.)

Defendant City of Atlanta provides accurate information regarding matters relating to the November 29, 2018 Court Order at all times in the future.[4]

F.  <u>Sanctions to Coerce Provision of Accurate Information</u>

The City of Atlanta shall pay the United States Treasury a sanction of $1,000 for each separate item of inaccurate information provided to Plaintiffs or the Court in the future.[5]

---

[4] To avoid any possibility of misunderstanding with regard to the reporting requirements set forth in the Sections III(C)(1)(a) and III(C)(2)(a) of the November 29, 2018 Court Order concerning monthly spreadsheets, the Court notes that "the date the complaint was made" is the date a complainant made a complaint in any format described by Section III(B) ("Definitions") of the November 29, 2018 Court Order, and that "the date that the complaint was finally adjudicated" is the date the Atlanta Police Department notified the complainant of "the final disposition of the complaint (i.e., whether the complaint was sustained, not sustained, unfounded, or exonerated) and the nature of any discipline imposed (e.g.,oral admonishment, written reprimand, the duration of any suspension, dismissal, etc.)."

[5] By way of example, in the monthly spreadsheets produced by the City of Atlanta an incorrect complaint date, an incorrect complaint resolution date, an incorrect disposition of an individual allegation, and an incorrect disciplinary sanction for an individual allegation, shall each be considered a separate item of inaccurate information. However, the Court recognizes that a certain number of typographical errors may occur when compiling and presenting information. A limited number of such mistakes (such as an obvious mistyping or transposition of digits) shall not result in the imposition of this sanction.

G. <u>Sanctions for Failing to Report Command Complaints</u>

With regard to the City's failure to report Citizen Complaints made at APD Facilities as required by the 2018 Court Order, this Court imposes the following sanctions:

A sanction of $5,000 to be paid to the United States Treasury within 15 days of this Order;

A sanction of $25,000 to be paid to the United States Treasury; this sanction is immediately SUSPENDED and shall remain suspended for so long as Defendant City of Atlanta reports all Citizen Complaints made to a member of APD Administration and at APD Facilities, as defined in the Section III(B) of the November 29, 2018 Court Order. The City of Atlanta shall have a grace period of sixty (60) days from the date of this Order to inform and train all members of APD Administration who work at APD Facilities about the obligation to record and report "Command Complaints" and Plaintiffs should not seek sanctions for any violations of that obligation that may occur within this grace period.

H. <u>Sanctions to Coerce Reporting of Future Command Complaints</u>

The City of Atlanta shall pay the United States Treasury a sanction of $25,000 for each Citizen Complaint made to a member of APD Administration at an APD Facility that is not reported to Plaintiffs on the 15th of the following

calendar month. The City of Atlanta shall have a grace period of sixty (60) days
from the date of this Order to inform and train all members of APD
Administration who work at APD Facilities about the obligation to record and
report "Command Complaints" and Plaintiffs should not seek sanctions for any
violations of that obligation that may occur within this grace period.

II.     REMEDIAL ORDERS

For the purpose of encouraging the City of Atlanta's compliance with the
Citizen Complaint provisions of the November 29, 2018 Order this Court hereby
orders the following:

A. Monthly Production of Citizen Complaint Documents

The City is ordered to produce to Plaintiffs, along with the other records
required to be produced on the 15th of every month pursuant to the November
29, 2018 Court Order, beginning with the next monthly production that is due
after entry of this Order, a copy all Citizen Complaints made during the previous
calendar month in whatever form the complaint was made (e.g., a copy of a
website submission, email, letter, or any records documenting a Citizen
Complaint made by telephone call or walk-in contact).

B.  <u>Monthly Production of APD Facility Verifications</u>

The City is ordered to produce to Plaintiffs, along with the other records required to be produced on the 15th of every month pursuant to the November 29, 2018 Court Order, a sworn affidavit, or a declaration under penalty of perjury, by the commander of each APD Zone verifying that all Citizen Complaints made at any APD Facility under his or her command, or to any member of APD Administration under his or her command, have been recorded and reported to Plaintiffs as required by the November 29, 2018 Court Order. This obligation shall not take effect for sixty (60) days from the date of this Order.

**III.**   <u>CONCLUSION</u>

To effectuate this Court's Order of Contempt [Doc. 488], and for the reasons stated herein and based upon the submissions of the parties, this Court hereby holds Defendant City of Atlanta in CONTEMPT and ORDERS the sanction contained herein.  If the Plaintiffs believe that the sanctions provided herein have failed to render compliance, they should file an additional Motion for Contempt with additional sanctions to render compliance.