UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

|  |  |
|---|---|
| GEOFFREY CALHOUN, et al. | ) |
|  | ) |
|  | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) Civil Action |
| v. | ) File No. 1:09-CV-3286-TCB |
|  | ) |
|  | ) |
| RICHARD PENNINGTON, et al. | ) |
|  | ) |
| Defendants. | ) |

_____

### PLAINTIFFS' MOTION TO IMPOSE SUSPENDED SANCTIONS AND PREDETERMINED COERCIVE SANCTIONS

COME NOW Plaintiffs, who move this Court to impose certain of the suspended and predetermined coercive sanctions set forth in this Court's Order of March 1, 2023 (Doc. 492, the "Contempt Order") because the City of Atlanta: (1) Failed to finally adjudicate long-overdue Citizen Complaints within the 60-day period provided by this Court in Section I(B) of the Contempt Order (and then submitted false records claiming to have done so); and (2) Submitted massive amounts of inaccurate information to Plaintiffs, including a false complaint date for 72 of 76 Citizen Complaints; a false closing date for at least 48

1

and possibly as many as 80 Citizen Complaints; and dozens of items of inaccurate information regarding the allegations, disposition, and discipline imposed with regard to Citizen Complaints, triggering the sanctions set forth in Sections I(E) and I(F) of the Contempt Order.[1]

I.   The City of Atlanta's non-compliance with the 60-Day complaint resolution deadline imposed by the Court in Section I(B) of the Contempt Order

At the core of this contempt proceeding is the City of Atlanta's longstanding failure to comply with its obligation to finally adjudicate all "Citizen Complaints" of police misconduct within 180 days.[2] Since the City first consented to this obligation in 2010, it has never complied with this requirement, and instead (despite repeated warnings) the City allowed a years-long backlog of unresolved Citizen Complaints to develop, eventually leading to Plaintiffs' motions for contempt.

---

[1] Plaintiffs have reason to believe that the City of Atlanta also violated its obligation to report "Command Complaints," triggering the sanctions set forth in Section I(G) of the Contempt Order, but as those possible violations require additional discovery they are not presented in this motion.

[2] "APD shall investigate and finally adjudicate all citizen complaints of police misconduct of any kind within 180 days of the complaint." 11/29/2018 Court Order, Section III(A)(1).

In response to Plaintiffs' First Motion for Contempt (Doc. 473) this Court gave the City of Atlanta 120 days to clear this backlog. (9/20/2022 Court Order, Doc. 479) When the City failed to comply within this grace period -- and instead submitted false information to the Court regarding compliance -- the Plaintiffs filed their Second Motion for Contempt (Doc. 485) and the Court issued a Contempt Order requiring the City of Atlanta finally to clear the backlog within 60 days, by April 30, 2023 (Doc. 485):

> The City is ordered to finally adjudicate each citizen complaint that has been open more than 120 days as of the date of this Order within the next sixty days. The City shall pay a sanction of $1,000 for each day that each such investigation remains open beyond this deadline.

> 3/1/2023 Contempt Order (Doc. 492), Section I(B).

The Court's Contempt Order effectively sent the City the message, "Get this fixed and get it fixed in 60 days," and by imposing coercive sanctions that begin on day 61 the Court seemed to be telling the City, "60 days means 60 days."

After the end of that 60-day period, on May 15, 2023, the City provided Plaintiffs with a spreadsheet reporting that all overdue investigations had been closed within the 60-day period set by the Court. In other words, the City's produced a spreadsheet that purported to demonstrate full compliance with the

Contempt Order issued by the Court.[3] But the spreadsheet produced by the City of Atlanta contains false information: the City simply lied about the dates that Citizen Complaints were resolved. In fact, very few – and possibly none – of the Citizen Complaints were "fully adjudicated" within the Court's 60-day deadline, as described below.

1.  When is a Citizen Complaint "Finally Adjudicated"?

The date a Citizen Complaint is "finally adjudicated" is the date the Atlanta Police Department notifies the complainant of the final disposition of the complaint and the nature of any discipline imposed.[4]

When a Citizen Complaint investigation is concluded the Atlanta Police Department's Office of Professional Standards ("OPS"), which investigates complaints against Atlanta police officers, sends a notification letter ("Notification Letter") to the complainant by Certified Mail. (See example at Exhibit B). For the purpose of calculating compliance with the 180 Day Rule the

---

[3] Exhibit A is a copy of the spreadsheet produced by the City for Citizen Complaints purportedly closed in April, 2023. The column headed "Inc: Completed date" reported that all Citizen Complaints had been completed before April 30.

[4] 3/1/2023 Contempt Order (Doc. 492), p. 5, fn. 7.

Plaintiffs have traditionally looked to the date on this Notification Letter to determine when a Citizen Complaint was "finally adjudicated" (with the assumption that the date on the letter generally reflects the date the letter was mailed).[5]

But while the completion dates reported by the City on its spreadsheet indicate that all overdue complaints were resolved before April 30, 2023 – and thus within the 60-day period provided by the Court -- examination of the Notification Letters in the actual OPS files revealed that the City provided false dates for the "completion" of almost all Citizen Complaints reported on its spreadsheet, and possibly all of them.

2.   The City's 5/15/2023 spreadsheet contains false completion dates

The 80 Citizen Complaints the City claimed to have "closed" during April, 2023 are listed on Exhibit C, which indicates (1) the "Completed Date" reported

---

[5] While the Court established the date of final adjudication as "the date the Atlanta Police Department notified the complainant," and this suggests the date the complainant *received* notification, in fairness to the City the Plaintiffs have traditionally considered a Citizen Complaint completed on the date APD mailed the Notification Letter, since APD cannot control the speed with which the United States Postal Service delivers mail. For this motion, therefore, Plaintiffs will focus on the date these letters were mailed rather than on the date they were received by the complainant.

by the City; (2) the date on each Notification Letter; and (3) the date each Notification Letters was accepted for mailing by the United States Postal Service.[6]

For *every single* Citizen Complaint for which the City produced a Notification Letter – 46 Citizen Complaints – the date on the Notification Letters is *after* the "completed date" reported by the City.[7] To make things worse, the actual dates the United States Postal Service received the letters for mailing, according to the USPS tracking information, was between 12 and 37 days later than the false completion date reported by the City; in other words, some Notification Letters were actually mailed more than a month after the "completion date" falsely reported by the City.

As just one example, the City's spreadsheet reports that OPS File # 22-C-0414-MISC (which had been open 132 days on the date of the Contempt Order, and was thus required to be closed by April 30, 2023) was "completed" on

---

[6] For two of the 80 Citizen Complaints the City produced no OPS file at all – in violation of Section III(C)(b) of the 11/29/2018 Court Order – and so no analysis could be performed, and for 32 complaints the OPS file did not contain a Notification Letter, as discussed below.

[7] As seen on Exhibit C, 23 of the Notification Letters were dated about two weeks after the "completion date" reported by the City; five Notification Letters were dated three weeks later; and three Notification Letters were dated almost a full month later (OPS File # 22-C-0073-UAF at 27 days and OPS File # 23-C-0049-MISC at 28 days).

4/26/2023, in compliance with the Court's deadline. But the Notification Letter is dated 5/3/20023, seven days after the completion date falsely reported by the City and after the Court's deadline (Exhibit D). In addition, the USPS tracking information for that letter (Certified Mail Tracking # 70221670000301160695) indicates that it was not received by USPS until May 9, 2023, thirteen days after the completion date falsely reported by the City.

Perhaps even more significantly, the OPS files produced by the City *contain no Notification Letter at all* for 34 of the 80 Citizen Complaints allegedly completed in April 2023 (See Exhibit C), suggesting not only that these Citizen Complaints were not completed before the April 30 deadline, but that they may remain open even today.[8]

---

[8] To determine the extent of the City's non-compliance, and calculate the applicable financial sanction (since the sanctions are calculated on a per day basis), it is necessary to learn when – or if -- these 34 missing Notification Letters were sent, and Plaintiffs will serve discovery requiring the City to produce these letters in their original digital format, with metadata intact, so the date of each Notification Letter can be determined.

In addition, since the City is now aware that Plaintiffs use the Certified Mail tracking number of Notification Letters to confirm when and whether they are mailed, it is conceivable the City may stop sending these letters by Certified Mail and use an untrackable method, such as First Class Mail, to frustrate Plaintiffs' ability to monitor the City's compliance. Plaintiffs therefore ask this Court to order that these Notification Letters continue to be sent by Certified Mail, or by some other trackable means such as Priority Mail, FedEx, UPS, or any other method that provides tracking data.

3. <u>Virtually none of the Notification Letters satisfy the requirements of
Final Adjudication</u>

In addition to being mailed after the deadline imposed by the Court,

almost none of the Notification Letters sent by the City meet the requirements for

a Citizen Complaint to be considered "finally adjudicated."

An essential element of "final adjudication" involves the complainant

being notified of the result of the investigation. To make sure the complainant

learns the result of his or her complaint the Court defined what is required for a

Citizen Complaint to be "finally adjudicated":

> To avoid any possibility of misunderstanding …"the
> date that the complaint was finally adjudicated" is the
> date the Atlanta Police Department notified the
> complainant of "the final disposition of the complaint
> (i.e., whether the complaint was sustained, not sustained,
> unfounded, or exonerated) and the nature of any
> discipline imposed (e.g., oral admonishment, written
> reprimand, the duration of any suspension, dismissal,
> etc.)."

> March 1, 2023 Court Order (Doc. 492) p. 5, fn. 7.

Because none of the Notification Letters sent by the City comply with these

requirements, none of them serve to close the Citizen Complaints.

While the Notification Letters do arguably use language from which the

general disposition can be inferred, none explicitly inform the complainant of the

actual disposition of their complaint ("i.e., whether the complaint was sustained,

not sustained, unfounded, or exonerated"), and in some cases the City sent nonsensical Notification Letters that provide no meaningful information to the complainant at all. For example, in the Notification Letter for OPS File # 22-C-0050-SOP (attached as Exhibit E) one paragraph states "Sufficient information was gathered to prove the actions taken by Officer K. Wadsworth was lawful, proper and within the guidelines" while the next paragraph states "The investigation did develop sufficient information to prove the allegation stated in your complaint regarding Officer K. Wadsworth. Therefore, appropriate corrective actions have been taken against these officers." Internally-contradictory letters like these are essentially gibberish to the complainant, and do not communicate the final adjudication of his or her complaint.

Other Notification Letters also fail to effectively close a Citizen Complaint because the information they provide is false. For example, the complainant in OPS File # 22-C-0393-SOP was informed (See Exhibit F) :

> The investigation did not develop sufficient information to prove or disprove the allegation regarding Work Rule 4.2.23 GIVING IDENTIFICATION. Therefore, at this time this allegation is closed.
>
> Your allegation of misconduct regarding work rule 4.2.33 CONFORMANCE TO DIRECTIVES has been investigated. Sufficient information was gathered to prove the action taken by this officer was lawful, proper and within the guidelines. Therefore, at this time the complaint is closed.

In other words, the complainant was informed that the officer was fully cleared and that no action was taken against the officer. But, in fact, one of the charges was Sustained, and the officer was disciplined with an Oral Admonishment (See Exhibit G).

The Notification Letters also never specify the particular allegations that were investigated and so complainants are never told how *their specific complaints* were resolved or *if* they were resolved. This is additionally problematic because OPS frequently investigates and imposes discipline for internal matters that were never raised by the complainant (such as an officer's failure to activate a Body Worn Camera) without resolving the complaint that was actually made by the civilian (e.g., excessive force). For example, the complainant in OPS File # 21-C-0481-SOP alleged that officers used excessive force (Exhibit H). The complainant was sent a Notification Letter that stated, "A preliminary investigation did develop sufficient information to prove the allegation stated in your complaint. Therefore, appropriate corrective actions have been taken against these officers." (Exhibit I). The complainant was therefore led to believe – falsely – that her complaint of excessive force had been sustained and the officers disciplined for it, when in fact none of the officers were investigated or disciplined for excessive force; they were investigated and disciplined for technical SOP violations relating to Extra Job Permits and the use of Body Worn Cameras (See Exhibit J).

In addition, in cases where Citizen Complaints were sustained and discipline was imposed, not a single Notification Letter complied with this Court's requirement to notify the complainant of …"the nature of any discipline imposed (e.g., oral admonishment, written reprimand, the duration of any suspension, dismissal, etc.)." The Notification Letters sent by the Atlanta Police Department (even those sent after the Court issued its Contempt Order clarifying that complainants must be told the specific discipline imposed for a complaint to be considered "fully adjudicated") never say anything more than that "appropriate corrective actions have been taken against these officers and this file is closed." (Exhibit I).

Since the City has failed to send Notification Letters that comply with the explicit requirements set by this Court to qualify as "final adjudication" -- leaving complainants uninformed, and in some cases misinformed, of the result of the complaints -- *none* of the overdue Citizen Complaints have been finally adjudicated as defined by this Court.

4.  Should the City's failure be excused?

As some of these Citizen Complaints were allegedly "completed" just a few days after the Court's April 30, 2023 deadline, Plaintiffs considered whether it would be appropriate to overlook the City's non-compliance, but several

factors seem to incline against such forgiveness. One factor, naturally, is the clarity of the Court's order requiring the overdue complaints be closed within 60 days, which the Court additionally emphasized by adopting per-day sanctions that begin on day 61. Another factor is the extreme extent of the City's non-compliance; if just a few Citizen Complaints had exceeded the April 30 deadline forgiveness might have seemed appropriate, but of the 80 Citizen Complaints allegedly closed in April the City apparently *did not mail a single Notification Letter* before April 30, 2023. An additional factor is how long many many of these complaints had already been open on April 30, 2023 -- in some cases, years -- and thus how much time the City had already been given to close these complaints (See Exhibit K).

But perhaps the decisive factor weighing in favor of imposing the pre-determined sanctions is the City's choice to deal with its non-compliance with dishonesty, rather than by requesting more time or even just asking forgiveness.

When the Court gave the City 60 days to resolve overdue complaints, if the City believed compliance would be difficult or impossible to accomplish the City could have objected or moved for re-consideration, but the City chose not to do so. And as the end of the 60-day period approached, if the City believed it needed more time to resolve the complaints, the City could have asked Plaintiffs or the Court for an extension, but it chose not to do so. And after the expiration

of the 60-day period, the City could have informed Plaintiffs and the Court that it had diligently attempted compliance but had been unable to complete the task, and such a request for forgiveness would likely have been looked upon sympathetically by both Plaintiffs and the Court. But instead of doing any of those things, the City attempted to cover up its non-compliance by submitting false information.[9]

II.     The City of Atlanta should be sanctioned for providing large amounts of inaccurate information, pursuant to Sections I(E) and I(F) of the Contempt Order

The City Atlanta has a long history of providing inaccurate information regarding Citizen Complaints to the Plaintiffs, resulting in the imposition of a sanction of $25,000 that was suspended "for so long as the City provides accurate information regarding the matters related to the consent order at all times in the future," and prospective sanctions "of $1,000 for each separate item of inaccurate

---

[9] Arguably, by failing to resolve complaints that had been open more than 120 days on the date of the Contempt Order, the City of Atlanta also triggered the suspended sanction set forth in Section I(A) of the Contempt Order. The 60 day period set forth in Section I(B) can be viewed as a grace period for complaints that were months and years past the 180 Day Rule, and by failing to close them within this grace period the City could be said to have forfeited the benefit of this grace period, triggering the suspended sanction for violating the 180 Day Rule.

information provided to Plaintiffs or the Court in the future." (Contempt Order,

to Sections I(E) and I(F)).

Despite the threat of these sanctions, and the specificity of this Court's

expectations as to scrupulous accuracy (see footnote 11, *infra*), the May 15, 2023

spreadsheet produced to the Plaintiffs by the City of Atlanta contains hundreds

of items of inaccurate information.[10]

This false information includes the most important data in these

spreadsheets -- the dates that Citizen Complaints were made, and the dates they

were "finally adjudicated," which are the dates used to calculate compliance

with the 180 Day Rule – and the City also provided inaccurate information about

dozens of allegations, dispositions, and instances of discipline as indicated in

Exhibit L.

In all, there are hundreds of instances of inaccurate information in the

City's spreadsheet, each triggering a $1000 sanction.[11] Exhibit A is a copy of the

---

[10] The Plaintiffs have not analyzed the accuracy of the information provided by
the City on March 15, 2023 and April 15, 2023 because these months fell during
the first two months in which the City was adjusting to the Contempt Order
issued on March 1, 2023.

[11] "By way of example, in the monthly spreadsheets produced by the City, an
incorrect complaint date, an incorrect complaint resolution date, an incorrect
disposition of an individual allegation, and an incorrect disciplinary sanction for

spreadsheet provided by the City for Citizen Complaints (purportedly) closed during April, 2023, and Exhibit L is that same spreadsheet annotated by Plaintiffs; the annotated spreadsheet illustrates each inaccurate piece of information in bold red text, along with the accurate information in green text for comparison.[12]

### 1. False Complaint Dates

The date a Citizen Complaint is presented to the Atlanta Police Department (the date a complaint is "opened") is the day the 180 day clock starts ticking, and so it is essential for this date to be reported correctly to monitor the City's compliance with the 180 Day Rule. Yet in the spreadsheet produced to Plaintiffs on May 15, 2023, at least 95% of the complaint dates were inaccurate: of the 76 Citizen Complaints for which the City produced a copy of the original complaint document, the City's spreadsheet reported a false complaint date for

---

an individual allegation, shall each be considered a separate item of inaccurate information." 3/1/2023 Contempt Order (Doc. 492), p. 6, fn. 8.

[12] The items in blue are *likely* inaccurate, but this can be determined conclusively only when Plaintiffs receive and examine the "Notification Letter" files requested in discovery.

72 Citizen Complaints, and these false dates undercounted the time these

Complaints remained open by between 1 and 215 days (Exhibit M).[13]

2.  <u>False Completion Dates</u>

In addition to providing inaccurate information about the dates Citizen

Complaints were opened, the City also provided false information for the date

Citizen Complaints were completed as discussed above; the City provided false

completion dates for at least 48 and possibly as many as 80 Citizen Complaints.

3.  <u>False Information about complaint allegations, dispositions, and discipline</u>

The City's spreadsheet also includes dozens of items of false information

about the allegations, dispositions, and discipline imposed with regard to

numerous Citizen Complaints; these are indicated in bold red text on Exhibit L.

---

[13] The City claims to have closed 80 Citizen Complaints in April, 2023. For two of these complaints, no OPS file at all was produced, and for two other complaints, the OPS file did not contain the original complaint document, so the complaint dates could not be established; for four complaints, the City accurately reported the date the complaint was made; for the remaining 72 complaints, the City's spreadsheet reported a false complaint date.

III.    <u>Conclusion</u>

This Court has given the City chance after chance. After Plaintiffs' First

Motion for Contempt the Court gave the City 120 days to clean up its act

(9/20/22 Court Order, Doc. 479) and the City did not do so. Then the Court's

Contempt Order suspended sanctions for past contempt if the City would simply

comply in the future, effectively forgiving past misconduct with the admonition,

"Go and sin no more." And yet here we are.

Clearly only a painful penalty will get the City's attention, and so

Plaintiffs close this motion with the same words we used to close our Submission

of Proposed Order on Contempt (Doc. 490, at p. 17): "Plaintiffs ask the Court to

be guided by the following thought in determining sanctions: This has gone on

long enough."

Respectfully submitted this 31st day of May, 2023.[14]

**<u>ATTORNEYS FOR PLAINTIFFS</u>**

**<u>Daniel J. Grossman</u>**
GA State Bar No. 313815
Law Office of Daniel J. Grossman
5101 Old Highway 5, #701
Lebanon, GA 30146
Telephone: (404) 654-0326
Email: Dan@DanGrossmanLaw.com

---

[14] Counsel hereby certifies that this document has been prepared in Book
Antiqua font (13 point) in accordance with Local Rule 5.1(C)

**Gregory R. Nevins**
GA State Bar No. 539529
Lambda Legal Defense & Education Fund, Inc.
730 Peachtree St. NE
Atlanta, GA 30308
Telephone: (404) 897-1880
Email: GNevins@lambdalegal.org


**Gerald R. Weber, Jr.**
GA State Bar No. 744878
Southern Center for Human Rights
60 Walton St NW
Atlanta, GA 30303-2149
Telephone: (404) 688-1202
Email: gweber@schr.org

**Clayton Skinner**
GA State Bar No. 360849
The Skinner Law Firm
P.O. Box. 570773
Atlanta, GA 30357
Telephone: (706) 215-5006
Email: clay@vpsouth.com

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

GEOFFREY CALHOUN, et al.          )
                                  )
        Plaintiffs,               )
                                  )  Civil Action
             v.                   )  File No. 1:09-CV-3286-TCB
                                  )
RICHARD PENNINGTON, et al.        )
                                  )
        Defendants.               )

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing
PLAINTIFFS' MOTION TO IMPOSE SUSPENDED SANCTIONS
AND PREDETERMINED COERCIVE SANCTIONS to the Clerk of Court using
the CM/ECF system which will automatically send electronic mail notification of
such filing to counsel of record who are on CM/ECF.

So certified this 31st day of May, 2023.

By:     **Daniel J. Grossman**
        GA State Bar No. 313815
        Attorney for Plaintiffs
        Law Office of Daniel J. Grossman
        5101 Old Highway 5, #701
        Lebanon, GA 30146
        Telephone: (404) 654-0326
        Email: Dan@DanGrossmanLaw.com