UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

|  |  |
|---|---|
| GEOFFREY CALHOUN, et al. | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) Civil Action |
| v. | ) File No. 1:09-CV-3286-TCB |
|  | ) |
| RICHARD PENNINGTON, et al. | ) |
|  | ) |
| Defendants. | ) |

_____

**PLAINTIFFS' REPLY TO CITY OF ATLANTA'S RESPONSE (DOC. 505) TO PLAINTIFFS' MOTION (DOC. 496) TO IMPOSE SUSPENDED SANCTIONS AND PREDETERMINED COERCIVE SANCTIONS**

The only defenses presented in the City of Atlanta's Response are that (A) The City should be excused for presenting inaccurate information to Plaintiffs on 5/15/2023 because it provided inaccurate information in the past; and (B) The City "did not willfully violate this Court's 60-day deadline." The City's first contention ignores the plain and unambiguous text of this Court's 3/1/2023 Contempt Order (Doc. 492), which prohibits the City from presenting inaccurate information to Plaintiffs, and its second contention both misrepresents the facts and ignores the controlling law established by the Supreme Court and the Eleventh Circuit.

1

I. **The City's provision of inaccurate information in the past does not excuse false information the City presented after the 3/1/2023 Contempt Order**

The City strangely argues that it should be forgiven for producing a spreadsheet continuing to contain inaccurate information on May 15, 2023 (two-and-a-half months after the Court imposed coercive sanctions if the City provided "inaccurate information … in the future") because it had produced some of that same inaccurate information in the past.

Not only does that argument contradict the clear text of the Contempt Order (since May 15 is certainly "in the future" from March 1) it also contradicts the spirit and purpose of the Contempt Order: the point of requiring the City to provide accurate information is for Plaintiffs to receive accurate spreadsheets that can be used to monitor the City's compliance efficiently. The City's monthly spreadsheets should enable Plaintiffs to compare *accurate* information about the date a complaint is made with *accurate* information about the date a complaint is resolved, to determine, with minimal time and effort, whether complaints are being resolved within 180 days. When the City provides false information about dates – whether that false information is "new" or "old" – it obstructs that goal, because spreadsheets that mix-and-match new information with false old information are useless for monitoring; it makes no sense to compare a newly-

provided completion date (even one that is accurate) with a previously-provided complaint date that is false.

The City had months to correct this false information and present an accurate spreadsheet in which new information about complaint completion dates could meaningfully be compared to *accurate* information about complaint filing dates, yet failed to make any effort to correct the false "old" information that is vital to that comparison, despite the Court's clear instruction to provide only accurate information in the future.

But the City's strange We-should-be-allowed-to-repeat-past-falsehoods-with-impunity argument does something more sinister as well; it attempts to distract the Court from the fact that the City's 5/15/2023 spreadsheet also includes hundreds of items of false "new" information that had never previously been provided to Plaintiffs or the Court. The City's claim there are only 25 items of "new" inaccurate information (City Response, Doc. 505, at 4) reveals a lot about the City's attitude toward honesty and accuracy, because that statement is itself false.

As just one small example of that falsity, Exhibit L (Doc. 496-12) of Plaintiffs' Motion includes 86 items of inaccurate information relating to Citizen Complaints purportedly closed in April, 2023 (in the column labeled "Inaccurate Charge, Disposition, or Discipline Reported") all of which is *new* information

(not a repetition of previously-provided false information) provided by the City for the very first time on 5/15/2023, well after the Court's 3/1/2023 Contempt Order.

In addition, the City's 5/15/2023 spreadsheet column labeled "Inc: Completed date" (which purports to list the date Citizen Complaints were closed) has hundreds of inaccurate dates in April, 2023 – a month after the Court's 3/1/2023 Contempt Order. And information recently received by the Plaintiffs in discovery (discussed *infra* at p. 6) demonstrates that *every cell* in that column on the City's spreadsheet – more than 260 entries in that one column alone – contains false dates, all of which are after the date of the 3/15/2023 Contempt Order. (Exhibit N.)[1] In other words, the City's statement to the Court that there are only "twenty-five (25) alleged inaccuracies since the March 1, 2023 Order" (City Response, Doc. 505, at 4) is either knowingly false or, at a minimum, indicative of the City's complete lack of concern with providing truthful information to Plaintiffs and the Court.

---

[1] Exhibit N updates Exhibit L by adding information from the records produced by the City in response to Plaintiffs' 6/1/2023 discovery request. The cells highlighted in yellow contain dates from these new records. (For clarity, Plaintiffs are numbering the exhibits to this Reply sequentially to the exhibits to the Motion, thus beginning with Exhibit N.)

### III. The City's attempt to defend its non-compliance with the 60-Day deadline imposed by the Court misrepresents the facts and misstates the law

    a. The City's attempt to minimize its non-compliance with the 60-Day deadline misrepresents the facts

The City attempts to minimize its failure to close Citizen Complaints by April 30, 2023 by implying that just a few complaints were "unintentionally" mailed a little late: the City claims that "**nearly all** [Notification Letters] were sent out in batches on April 25th, 26th and May 3rd." (City Response, Doc. 505, at 7) (emphasis added). This statement to the Court is simply false. As will be shown below, the City sent the majority of these Notification Letters long after May 3, 2023, and some were never sent at all. Indeed, new information recently obtained by Plaintiffs through discovery demonstrates that the City's non-compliance is even more widespread than Plaintiffs were aware at the time the pending motion was filed.

At the time Plaintiffs filed this Sanctions Motion, Plaintiffs were able to demonstrate that 46 of the 80 Citizen Complaints the City claimed to have closed during April 2023 were not actually closed during the month of April 2023.[2] But Plaintiffs were unable to determine when the other the investigations were

---

[2] Plaintiffs' Sanctions Motions (Doc. 496) at 6.

closed because the City failed to produce copies of those files as required. Plaintiffs therefore served discovery on the City to obtain the missing records on June 1, 2023.[3] When the City produced the missing Notification Letters, Plaintiffs discovered that thirty (30) of the missing letters were dated between June 7 and June 21; in other words, these letters were not even created until after Plaintiffs asked to see them. (Exhibit O-1.)[4]

To further confirm when Notification Letters were sent to complainants – and determine if the City's statement to the Court that "nearly all were sent out in batches on April 25th, 26th and May 3rd" was truthful – Plaintiffs contacted complainants to whom the City sent Notification Letters by email, and those citizens' responses demonstrate that the City emailed these notifications long after May 3, 2023, and in some cases never sent them at all.

For example, James Alec Gelin, a retired attorney and law professor, made a complaint to OPS on July 15, 2022 that was assigned OPS File No. 22-C-0267-CTSY. (Decl. of James Alec Gelin, ¶ 3, Exhibit P). Professor Gelin's complaint

---

[3] See, Certificate of Service, Doc. 497.

[4] Exhibit O-1 updates Exhibit C by adding information from the records produced by the City in response to Plaintiffs' 6/1/2023 discovery request. The cells highlighted in yellow contain information from these new records. See, in particular, the column labeled "Date on Notification Letter to Complainant."

6

had been open 229 days on the date of the Court's 3/1/2023 Contempt Order and was thus required to be closed within 60 days (i.e., before April 30, 2023). The City's 5/15/2023 monthly spreadsheet reported that this complaint had been closed on April 11, 2023 (Exhibit A, Rows 154-157) and the City produced a Notification Letter to Professor Gelin dated April 25, 2023, leading Plaintiffs to assume that this complaint had been adjudicated before the deadline imposed by the Court. But Professor Gelin has testified that he was not notified by APD of the resolution of his complaint until May 19, 2023, almost a month after the date reported on the City's spreadsheet of April 25, 2023: "The May 19, 2023 email was the first notification I received from the Atlanta Police Department that my complaint had been resolved." (Decl. of James Alec Gelin, ¶¶ 4, 5 Exhibit P).

Professor Gelin's situation is not unique. Complainant Shannon Fulton made a complaint on July 27, 2021 (OPS File No. 21-C-0339-MISC) that had already been open a shocking 582 days on the date of the Court's 3/1/2023 Contempt Order and was therefore required to be closed within sixty days of that Order. The City's 5/15/2023 monthly records (Exhibit A, Row 247) reported that Ms. Fulton's complaint was resolved on April 13, 2023, in compliance with the Order, and the City produced a Notification Letter (Exhibit Q-1) purportedly emailed to Ms. Fulton on April 26, 2023 (which was later than the date reported on the spreadsheet, but still in compliance with the April 30, 2023 deadline.) But

when Plaintiffs' counsel emailed Ms. Fulton to confirm the date she was notified, Ms. Fulton forwarded a copy of the email and Notification Letter she received from APD on May 19, 2023, almost three weeks after the Court's deadline and well after the April 26, 2023 date claimed by the City. (Exhibit Q-2). Similarly, with regard to another complainant, Zoe Jackson (OPS File No. 22-C-0330-S0P), the City produced what purports to be a Notification Letter to dated April 4, 2023 – well before the Court's April 30, 2023 deadline -- but Ms. Jackson confirmed that her letter was actually emailed to her on May 19, 2023. (Exhibit R).

    Even more astounding, in light of the City's claim that "nearly all" Notification Letters were sent before May 3, is the fact that least thirty (30) Notification Letters were *not even created until June*: the earliest dated June 8 and some dated as late as June 20 and June 21. (Exhibit O-1; *Supra*, at p. 3). As mentioned above, these Notification Letters were created by the City only *after* Plaintiffs filed a discovery request on June 1, 2023 asking for the Notification Letters that were missing from the City's 5/15/2023 monthly records. In other words, it was only after Plaintiffs asked to see these Notification Letters that APD even created them, putting the lie to the City's attempt to blame its non-compliance on a lowly civilian employee who created and mailed Notification Letters in batches in late April and early May.

8

One Citizen Complaint was resolved only after the complainant himself asked OPS about the status of the complaint in late June, just a few days ago. Bill White filed complaint a complaint on August 29, 2022, that was assigned OPS File No. 22-C-0311-MISC. The complaint had been open for 184 days on the date of the 3/1/2023 Contempt Order and was therefore required to be finally adjudicated within 60 days (i.e., before April 30, 2023), and the 5/15/2023 spreadsheet produced by the City claimed that this complaint had been closed on April 14, 2023. (Exhibit A, Rows 104-128). Since there was no Notification Letter in the file produced to Plaintiffs with the City's 5/15/2023 monthly records, Plaintiffs requested it as part of Plaintiffs' 6/1/2023 discovery request and the City produced a Notification Letter purportedly sent to Mr. White by email on June 8, 2023. (Exhibit S). But, according to Mr. White's testimony, as of June 25, 2023 he had not received any communication from the City or APD about whether or not his complaint had been resolved and he contacted OPS to inquire about the status of his complaint. (Decl. of Bill White, ¶¶ 3, 4, Exhibit T).  The next day Mr. White received an email from APD stating: "Good morning, I am providing you with a copy of your internal correspondence close out letter detailing the outcome of our investigation regarding your complaint." But the attached letter was not a copy of the June 8 Notification Letter the City had produced to Plaintiffs; it was a letter dated June 26, 2023. (*Id.*, ¶ 5). What about

9

the June 8 letter allegedly created by APD? Mr. White testified, "The June 8, 2023 letter has my correct email address but I never received it. I have conducted a diligent search of my email inbox, including my "SPAM/Junk" and deleted email folders, and I did not find a copy of this June 8 letter." (*Id.*, ¶ 7)

Not only were many Notification Letters sent much later than time frame the City represented to the Court ("nearly all were sent out in batches on April 25th, 26th and May 3rd"), *some letters have still not been sent at all*. For example, in response to Plaintiffs' inquiry:

- Complainant David Barinowski (OPS File No. 23-C-0121-MISC), for whom the City produced a Notification Letter dated June 20 (Exhibit U), emailed Plaintiffs' counsel on June 26, 2023: "I have not heard a word from them." (Exhibit V).

- Complainant Quadedra Favors (OPS File No. 21-I-0119-CTSY), whose Notification Letter was dated June 8, 2023 (Exhibit W) emailed Plaintiffs on June 26, 2023: "I haven't heard anything about it at all." (Exhibit X)

- Complainant Kanaiza Omondi (OPS File No. 22-C-0276-SOP), for whom the City produced a Notification Letter dated June 7 (Exhibit Y), emailed Plaintiffs' counsel on June 26, 2023: "I have not be contacted by APD for my complaint AT ALL!" (Exhibit Z) (emphasis in original).

And in addition to the Notification Letters that were never emailed as represented, USPS tracking data demonstrates that many letters allegedly sent by the U.S. Mail were never actually mailed either; for the few Notification Letters for which a Certified Mail tracking number was provided, USPS data indicates that these letters were never mailed, leaving those Citizen Complaints still open despite the Court's Order.[5] (Exhibit O; see USPS tracking data highlighted in yellow).

In short, the City's claim that its non-compliance resulted solely from a "civilian employee's practice of waiting for a batch of files to be completed before creating Notification Letters and taking said Letters to APD Headquarters for mailing" (City Response, Doc. 505, at 7) is not merely an embarrassing abdication of a duty imposed by the Court on the City itself, it is not consistent with the facts. Such a claim cannot explain, for example, why the City failed to create

---

[5] In addition, and exactly as Plaintiffs predicted and feared (see Plaintiffs' Sanctions Motion, Doc. 496, footnote 8), most of these letters were not sent by Certified Mail, making it impossible for Plaintiffs to determine when, or if, they were ever mailed. The City's decision to not use Certified Mail for these letters – for the very first time in the decade Plaintiffs' counsel have been working on this case – would appear to be a deliberate effort by the City to frustrate Plaintiffs' ability to monitor the City's compliance. **Plaintiffs therefore repeat their request that this Court order the City to send Notification Letters by Certified Mail, or some other trackable means such as Priority Mail, FedEx, UPS, or any other method that provides tracking data**.

thirty (30) Notification Letters until Plaintiffs asked to see them with a 6/1/2023 discovery request; or why Notification Letters dated in early April (such as the April 4, 2023 letter to complainant Zoe Jackson) were not emailed until May 19, 2023; or why complainant Bill White's Notification letter was not sent until he inquired about the status of his complaint on June 25, 2023.

The City's failure to comply with a very specific task assigned by this Court to the City of Atlanta – a major municipal entity with numerous high-ranking police commanders, senior political officials, and experienced attorneys – can be neither explained nor excused – either legally or factually – by attempting to place blame on some under-trained and un-supervised low-level civilian employee.

> b. <u>The City's argument that its non-compliance should be excused because it "did not willfully violate this Court's 60-day deadline" – even if were true (it is not) – misstates the law</u>

When a Court issues an order, the party subject to the order is required to put in place a system to assure compliance and make efforts to verify compliance.[6] The City did neither. In fact, until Plaintiffs pointed it out with a

---

[6] *See, PlayNation Play Sys., Inc. v. Velex Corp.*, 939 F.3d 1205 (11th Cir. 2019), in which the Eleventh Circuit upheld contempt sanctions against a party that "failed to promptly implement a system [to assure compliance] and failed to ensure that its employees …complied with that system." *PlayNation Play Sys., Inc. v. Velex Corp.* at 1214.

6/1/2023 discovery request, the City had not even noticed that dozens of Citizen Complaints the City claimed to have closed in April of 2023 had never been closed at all, and until Bill White inquired about the status of his long-overdue Citizen Complaint the City never noticed that it was still open almost two months after the Court's 60-day deadline.

In spite of the City's failure to make any real efforts at all to comply with the Court's very specific 3/1/2023 Contempt Order, the City asks that its failure to comply be excused because it was allegedly the result of "an administrative error, rather than an intent to violate, obfuscate, or frustrate this Court's Order." (City Response, Doc. 505, at 7).

The City's attempt to defend its non-compliance by claiming that it did not willfully violate the Court's 3/1/2023 Order ignores the controlling law: "The Supreme Court has made clear that the absence of willfulness is not a defense to a charge of civil contempt." *F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010), *citing McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949). As the Eleventh Circuit explained in *Leshin*:

> The decisions of our Court and our predecessor court have held that substantial, diligent, or good faith efforts are not enough; the only issue is compliance. *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 984 (11th Cir.1986); *see also Newman v. Alabama*, 683 F.2d 1312, 1318 n. 16 (11th Cir.1982); *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*, 609 F.2d 165, 168 (5th Cir.1980) ("[I]n civil contempt proceedings the question is not one of intent but whether the alleged contemnors

13

> have complied with the court's order." (alteration in original) (internal quotation marks omitted)). We do not focus "on the subjective beliefs or intent of the alleged contemners in complying with the order, but whether in fact their conduct complied with the order at issue." *Ga. Power Co.*, 484 F.3d at 1291 (internal quotation marks omitted).

F.T.C. v. Leshin, 618 F.3d 1221, 1232–33 (11th Cir. 2010)

As the Supreme Court has explained, "The absence of willfulness does not relieve from civil contempt. … Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S. Ct. 497, 499, 93 L. Ed. 599 (1949); *cited by Newman v. State of Ala.*, 683 F.2d 1312, 1318 (11th Cir. 1982).

The only excuse for the failure to comply with a court order is an inability to comply, and once the "party seeking the contempt citation … makes out a prima facie case, the burden … shifts to the alleged contemnor, who must then come forward with evidence to show a present inability to comply that goes 'beyond a mere assertion of inability and satisf[ies] his burden of production on the point by introducing evidence in support of his claim.'" *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970, 984 (11th Cir. 1986).

The City cannot show any inability to comply with the Court's 3/1/2023 Contempt Order and does not even try. Nor could the City have succeeded on such a claim, if made, since "parties subject to a court's order demonstrate an

inability to comply only by showing that they have made 'in good faith all reasonable efforts to comply.'" *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991), *citing United States v. Ryan*, 402 U.S. 530, 534, 91 S.Ct. 1580, 1583, 29 L.Ed.2d 85 (1971).

This "all reasonable efforts to comply" standard is construed strictly[7] and yet here the City made no meaningful effort at all, let alone substantial or diligent effort, and certainly not "all reasonable efforts." To the contrary, the only explanation offered by the City for its failure to close Citizen Complaints in compliance with the Court's 60-day deadline is the (factually doubtful) claim that a civilian APD employee was responsible for the failure to mail Notification Letters and "has since been retrained." (City Response, Doc. 505, at 7).

The fact that this employee has been "retrained" demonstrates that he or she could have been "trained" properly in the first place, but evidently was not. Even putting aside the unavoidable question of whether compliance with this Court's Order should have been placed entirely on the shoulders of an apparently under-trained civilian employee (rather than the commander of OPS,

---

[7] "We construe this requirement strictly. Even if the efforts he did make were 'substantial,' 'diligent' or 'in good faith,' ... the fact that he did not make 'all reasonable efforts' establishes that [respondent] did not sufficiently rebut the ... prima facie showing of contempt." *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970, 984 (11th Cir. 1986)

or at least some reasonably senior sworn APD officer, or perhaps an attorney with the City of Atlanta's Law Department). It would have would have taken little effort to instruct this apparently low-level individual about what was required to comply with this Court's Order, yet the City apparently never took the trouble to tell this employee what he or she was supposed to do. Nor did the City make even a minimal effort to supervise that employee's work.

And to make things worse, it appears that this employee was never "retrained" at all. The City's Response, claiming that this employee "has since been retrained," was filed on June 23, 2023, yet a Notification Letter dated June 20, 2023 (in OPS File No. 23-C-0122-SOP) with Certified Mail tracking number 70150640000728212801 *has still never been mailed*. (Exhibit O-2). Indeed, *none of the (overdue) Notification Letters that were created by the APD in June, 2023 have been mailed*. (Exhibit O-1). If this employee had actually been "retrained," these letters would have been mailed; mailed late, for sure, but mailed. The fact that *not a single one of these letters was placed in the U.S. Mail* demonstrates that the City never trained or retrained anyone at all about compliance with this Court's Order.

In other words, the City has not shown that it made "all reasonable efforts" to ensure that these Citizen Complaints were "finally adjudicated" by mailing a compliant Notification Letter to each complainant, and even if the City

16

*had* made "some effort" that would not save the City from sanctions, as the Eleventh Circuit has held that a "some effort standard" is not the test to be applied, and utilizing that lesser standard is an abuse of discretion. *United States v. Hayes*, 722 F.2d 723(11th Cir. 1984).[8]

Indeed, the fact that some Notification Letters *were never sent at all* demonstrates that, at least with regard to some Citizen Complaints subject to this Court's Order, the City made *no effort* close them at all, and as a result they remain open even now.

Because the City has not shown, and cannot show, that it made "all reasonable efforts," to comply, it cannot be excused from continued non-compliance.

---

[8] "[T]he IRS met its prima facie burden by showing that Hayes had not complied with the August 12, 1981 order to produce. The district court, however, improperly held that Hayes could not be found guilty of contempt because "the evidence indicate[d] that he made some effort to comply with the summons." Even if the efforts he did make were "substantial," "diligent" or "in good faith," as the court so characterized them in other sections of its order, the fact that he did not make "all reasonable efforts," *United States v. Rizzo*, 539 F.2d at 465, establishes that Hayes did not sufficiently rebut the IRS' prima facie showing of contempt. The court's use of a "some effort" standard for measuring the strength of Hayes' defense was, therefore, an abuse of discretion."

*United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984).

## III. Conclusion

Even at this late date -- after a series of admonitions, orders, and opportunities from the Court -- the City of Atlanta continues to approach its compliance obligation with an attitude that ranges from disregard to outright dishonesty. The Court has given the City chance after chance to mend its ways, and yet the City's attitude and actions persist. Even a Contempt Order Court backed by pre-determined coercive sanctions had little effect; the City could easily have avoided those sanctions yet made barely any effort to comply with that Order, and now offers as excuses or defenses claims that are factually not credible and legally not supportable.

Enough is enough. Plaintiffs ask this Court to impose the pre-determined coercive sanctions about which the City was so clearly warned (Doc. 492, the "Contempt Order"), and any additional sanctions the Court might find appropriate, in the hope of *finally* persuading the City to comply with obligations that were first imposed over a decade ago.

Respectfully submitted this 5th day of July, 2023.[9]

ATTORNEYS FOR PLAINTIFFS

/s/ Daniel J. Grossman
GA State Bar No. 313815
Law Office of Daniel J. Grossman
5101 Old Highway 5, #701
Lebanon, GA 30146
Telephone: (404) 654-0326
Email: Dan@DanGrossmanLaw.com

/s/ Gregory R. Nevins
GA State Bar No. 539529
Lambda Legal Defense & Education Fund, Inc.
730 Peachtree St. NE
Atlanta, GA 30308
Telephone: (404) 897-1880
Email: GNevins@lambdalegal.org

/s/ Gerald R. Weber, Jr.
GA State Bar No. 744878
Southern Center for Human Rights
60 Walton St NW
Atlanta, GA 30303-2149
Telephone: (404) 688-1202
Email: gweber@schr.org

/s/ Clayton Skinner
GA State Bar No. 360849
The Skinner Law Firm
P.O. Box. 570773
Atlanta, GA 30357
Telephone: (706) 215-5006
Email: clay@vpsouth.com

---

[9] Counsel hereby certifies that this document has been prepared in Book Antiqua font (13 point) in accordance with Local Rule 5.1(C)

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

_____

| | |
|---|---|
| GEOFFREY CALHOUN, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action |
| v. | ) File No. 1:09-CV-3286-TCB |
| | ) |
| RICHARD PENNINGTON, et al. | ) |
| | ) |
| Defendants. | ) |

_____

CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing PLAINTIFFS' REPLY TO CITY OF ATLANTA'S RESPONSE (DOC. 505) TO PLAINTIFFS' MOTION (DOC. 496) TO IMPOSE SUSPENDED SANCTIONS AND PREDETERMINED COERCIVE SANCTIONS to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are on CM/ECF.

    So certified this 5th day of July, 2023.

                   By:    /s/ Clayton Skinner
                            GA State Bar No. 360849
                            The Skinner Law Firm
                            P.O. Box. 570773
                            Atlanta, GA 30357
                            Telephone: (706) 215-5006
                            Email: clay@vpsouth.com