## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| GEOFFREY CALHOUN, et al. | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action |
| v. | ) File No. 1:09-CV-3286-TCB |
| | ) |
| RICHARD PENNINGTON, et al. | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFFS' REPORT TO COURT
## <u>RE CITIZEN COMPLAINT SANCTIONS</u>

Pursuant to this Court's Order of October 3, 2023 (Doc. 512) Plaintiffs present this Report to the Court regarding the calculation of suspended and coercive sanctions payable by Defendant City of Atlanta under the terms of the Court's March 1, 2023 Order (Doc. 492).

## TABLE OF CONTENTS

I.   NOTES ON METHODOLOGY ………………………………….. 5

   A. Determining how long a Citizen Complaint had been open
     on the date of the March 1, 2023 Court Order ………………….. 5

   B. Determining if each Citizen Complaint was
     "finally adjudicated," and if so, the date of
     Final Adjudication ……………………………………………… 6

     1. Determining if any Notification Letter at all was sent to
       the Complainant ……………………………………………  7

     2. Determining if the letter sent to the Complainant
       included the information required to close
       (i.e., "finally adjudicate") each Citizen Complaint ……….  8

     3. Determining the Notification Date for
       each Citizen Complaint …………………………………………9

II.  DETAILS REGARDING CALCULATION OF SANCTIONS .12

   A. Section 1(A) of March 1, 2023 Court Order: Suspended
     Sanction for Failure to Comply with the 180 Day Rule …….. 12

   B. Section 1(B) of March 1, 2023 Court Order: Coercive
     Sanctions Relating to Complaints Open More than
     120 Days on Date of March 1, 2023 Court Order ………..…... 13

     1. Citizen Complaints in which a compliant Notification
       Letter was sent to the Complainant on or before
       April 30, 2023 ………………………………….…………… 14

     2. Citizen Complaints in which a compliant Notification
       Letter was sent to the Complainant after the Court's
       April 30, 2023 deadline ………………………………………... 14

     3. Citizen Complaints in which No Notification Letter *at all*
       was sent to the Complainant ………………………………… 14

**4. Citizen Complaints in which no *compliant* Notification Letter was sent to the Complainant** …………………………. 16

    **a. Category A — Wholly deficient letters that fail to inform the Complainant of the disposition of the Citizen Complaint** …….……………………….. 19

        **i. Letters that contain false information** ………. 20
        **ii. Letters that are internally contradictory and completely meaningless** …………………..… 27
        **iii. Letters that fail to provide any information at all about one or more of the officers who were the subject of the complaint** …………… 29

    **b. Category B — Notification Letters that are deficient *only* because they fail to inform the Complainant of the "nature of any discipline imposed"** ………… 30

**C. Section 1(C) of March 1, 2023 Court Order: Sanctions to Coerce Resolution of Existing Citizen Complaints Open Less than 120 Days** ……………………………………… 31

    **1. Citizen Complaints in which a compliant Notification Letter was sent to the Complainant within 180 days** ……….. 32

    **2. Citizen Complaints in which a compliant Notification Letter was sent to the Complainant after 180 days** ……….. 32

    **3. Citizen Complaints in which no Notification Letter at all was sent to the Complainant ..**……………………….... 33

    **4.** **Citizen Complaints in which no compliant Notification Letter was sent to the Complainant** ……..…….…………. 34

        **a.** **Category A — Wholly deficient letters that fail to inform the Complainant of the disposition of the Citizen Complaint** …………....... 35

        **b.** **Category B — Notification Letters that are deficient *only* because they fail to inform the Complainant of the "nature of any discipline imposed"** ………………….………………………. 35

**D.** **Section 1(E) of March 1, 2023 Court Order: Suspended Sanction Relating to Provision of Inaccurate Information** ……………..… 35

**E.** **Section 1(F) of March 1, 2023 Court Order: Coercive Sanctions Relating to Provision of Inaccurate Information** ……………… 36

**III.** **THE APPROPRIATENESS OF SIGNIFICANT SANCTIONS FOR CITIZEN COMPLAINTS THAT REMAIN OPEN DUE TO NON-COMPLIANT NOTIFICATION LETTERS** ……………………………… 37

**IV.** **RECOMMENDATION FOR REMEDIAL ORDER IN LIEU OF ADDITIONAL FINANCIAL SANCTIONS** ….. 40

**V.** **RECOMMENDATION TO IMPROVE EFFICIENCY AND REDUCE COST OF MONITORING** ……………..… 48

**VI.** **NECESSARY EXTENSION OF SUNSET PERIOD** ………... 49

**VII.** **SANCTIONS CALCULATION** ……………………….. 50

**VIII.** **CONCLUSION** ………………………………………………52

## I.   NOTES ON METHODOLOGY

Plaintiffs understand the seriousness of this Court imposing financial sanctions on the City, especially when those sanctions total a significant amount, and therefore Plaintiffs thought it essential to provide the Court with full, detailed, and even granular information about both the methodology used in making those calculations and the factual bases on which those calculations rely. This Report may be extensive, but Plaintiffs believe that nothing less than a full and transparent explanation of Plaintiffs' methodology, coupled with citations to the factual record, are appropriate when the Court is faced with the imposition of such significant financial sanctions. Simply stated, when a Court must consider imposing millions of dollars of sanctions on a party, Plaintiffs believe that the party seeking such sanctions should explain the bases for those sanctions — both the conceptual and factual basis — in exceptional detail.  Plaintiffs took the following steps to calculate the sanctions presented in this Report.

### A. Determining how long a Citizen Complaint had been open on the date of the March 1, 2023 Court Order

The March 1, 2023 Court Order sets forth a different sanction calculation depending on how long a Citizen Complaint had been open at the time of the Order, so it was first necessary for Plaintiffs to separate complaints that had been

open more than 120 days on that date from those that had been open fewer than

120 days at that time.

To accomplish this, the Plaintiffs first determined the actual date each

complaint had been submitted to the Atlanta Police Department by locating and

reviewing the original complaint document within each OPS investigation file.

The actual date of the complaint was then compared to the date of the Court

Order to determine how many days each Citizen Complaint had been open on

March 1, 2023. Complaints open more than 120 days are listed in Exhibit A.

Complaints open fewer than 120 days are listed in Exhibit B.[1]

**B. <u>Determining if each Citizen Complaint was "finally adjudicated," and if so, the date of Final Adjudication</u>**

To calculate if any sanctions apply to a particular Citizen Complaint it was

necessary to determine if that Citizen Complaint had been "finally adjudicated"

---

[1] A note about references to OPS file numbers:

OPS file numbers are typically written with hyphens between the character groups, such as 22-C-0439-CTSY (where 22 is the year of the complaint, C indicates it is a Citizen Complaint, 0439 is the complaint number, and the suffix indicates the type of complaint, which in this case involves an alleged Courtesy violation.).  However, the spreadsheets produced by the City omit these hyphens, and would therefore present this complaint as 22C0439CTSY. Plaintiffs have left all spreadsheet references in the format originally produced by the City, to avoid the possibility of errors that could be introduced by attempting to convert the City's spreadsheet data into the standard format by adding the hyphens. The standard hyphenated format is used in the text of this Report, while spreadsheet-based exhibits to this Report use the nonstandard un-hyphenated format taken from the City's spreadsheets.

by the sending of a Notification Letter informing the Complainant of the disposition of his or her complaint, and if so, to determine the date the Notification Letter was sent by the City.

This process involved three steps, which are each discussed in greater detail below: (1) determining if any Notification Letter at all was sent to the Complainant; (2) determining if the letter sent to the Complainant accurately informed the Complainant of the results of the APD's investigation and included the specific information required by the Court to represent "final adjudication" of the complaint; and (3) determining the actual date the City sent a compliant Notification Letter to the Complainant for comparison with the deadlines set forth in the March 1, 2023 Court Order.

1. **Determining if any Notification Letter at all was sent to the Complainant**

To determine if any Notification Letter at all was sent to a Complainant, the Plaintiffs first examined all OPS and Citizen Complaint records produced by the City as part of the City's required monthly productions and in response to Plaintiffs' 6/1/2023 Request for Production (requesting OPS Files and Notification Letters that had not been produced as required as part of the monthly productions. (See, Certificate of Service, Doc. 497).

For each Notification Letter that had a USPS Certified Mail tracking number, Plaintiffs used the USPS.com website to track each letter to determine if or when it had been mailed. The result of that process is provided in Exhibit C.

For each Notification Letter that did not have a USPS tracking number, or that indicated it had been sent by email rather than U.S. Mail, Plaintiffs contacted the Complainant to determine if and when the City's Notification Letter had been sent.[2]

## 2. <u>Determining if the letter sent to the Complainant included the information required to close (i.e., "finally adjudicate") each Citizen Complaint</u>

The March 1, 2023 Court Order set forth the information the City needed to provide to the Complainant for a Citizen Complaint to be considered "finally adjudicated" and Plaintiffs examined each Notification Letter to determine if it contained these items:

> To avoid any possibility of misunderstanding …"the date that the complaint was finally adjudicated" is the date the Atlanta Police Department notified the complainant of "the final disposition of the complaint (i.e., whether the complaint was sustained, not sustained, unfounded, or exonerated) and the nature of any discipline imposed (e.g., oral admonishment, written reprimand, the duration of any suspension, dismissal, etc.)."

---

[2]   Where the Complainant did not respond to Plaintiffs' inquiry, Plaintiffs gave the City the benefit of the doubt and assumed that the Notification Letter was sent on the date printed on the letter, consistent with Plaintiff's approach of always erring on the side of favoring the City (discussed *infra* at 9-11).

March 1, 2023 Court Order (Doc. 492) p. 5, fn. 7.

Plaintiffs then determined if the information in the letter was accurate by comparing it with the information in the actual OPS file for that particular investigation. If what purports to be a "Notification Letter" is deficient because it provides false information, or omits information required by the Court, or fails to inform the Complainant of the disposition of the complaint against one or more of the officers who were the subject of the investigation, that Citizen Complaint has never been "finally adjudicated" and remains open.

### 3.  Determining the Notification Date for each Citizen Complaint

Plaintiffs' next task was to determine the date each compliant Notification Letter was sent to the Complainant by the City (the "Notification Date"), so that it could be compared to the applicable deadline established by the Court to determine if any sanctions apply. The Notification Dates for Citizen Complaints open more than 120 days are listed in Exhibit D; the Notification Dates for Citizen Complaints open fewer than 120 days are listed in Exhibit E; and for each Citizen Complaint that is still open as of the date of this Report, Exhibits D and E also provides the specific reason that Citizen Complaint remains open.

Since this Notification Date is foundational to the determination and calculation of sanctions, Plaintiffs chose to give the City every benefit of the doubt and to err on the side of favoring the City in all cases in which there was

any question about the date a Notification Letter had been sent. For example, where there was no other information to establish the actual date a Notification Letter had been sent (for example, where there was no USPS tracking number, and the Complainant failed to reply to Plaintiffs' inquiries about when the City sent the Notification Letter) the Plaintiffs used the date printed on the Notification Letter as the Notification Date for the purpose of calculating sanctions, even though Plaintiffs have shown that many, if not most, of the dates the City printed on Notification Letters are false.

As another example of how the Plaintiffs erred on the side of favoring the City, the Complainant in OPS File 21-C-0268-SOP informed Plaintiffs that she never received the Notification Letter, which was sent by email rather than US Mail. The Complainant told Plaintiffs: "the Atlanta Police Department did not send me the [Notification Letter] in any form." Exhibit D-5. But Plaintiffs noticed that the email address on the Notification Letter does not match the email address the Complainant provided to APD when she filed her Citizen Complaint at the APD website. While there is no valid excuse for not correctly copying-and-pasting an email address, especially in connection with something as important as notifying a citizen about the resolution of her complaint of police misconduct, treating this Citizen Complaint as still open strikes Plaintiffs as too harsh a penalty for what was basically a clerical error. Since Plaintiffs cannot establish

the date the City might have attempted to email the Notification Letter (if ever),

Plaintiffs used the date printed on the Notification Letter as the Notification

Date, even though it may not be accurate. Had Plaintiffs not done so, this

complaint would still be considered open and the $1,000 per day sanction

through the date of this Report (176 days after the Court's deadline) would result

in a sanction of $176,000. By assuming that the complaint was closed on the June

8, 2023 date printed on the Notification Letter, which was only 39 days later than

the Court's deadline, the sanction for this Citizen Complaint is only $39,000,

which is the amount included in the sanctions total presented below.

Further information about the Plaintiffs' methodology in determining

Notification Dates is presented in the footnotes to Exhibits D and E.

## II.   DETAILS REGARDING CALCULATION OF SANCTIONS

### A. Section 1(A) of March 1, 2023 Court Order: Suspended Sanction for Failure to Comply with the 180 Day Rule

Text of Court Order:

**Sanctions for Violation of the "180-Day Rule"**

For the City's failure to comply with Section III(A)(1) of the consent order (known as the "180-Day Rule"), this Court imposes the following sanctions:

• A sanction of $5,000 to be paid to Plaintiffs' counsel[3] within fifteen days of this Order; and

• A sanction of $50,000 to be paid to Plaintiffs' counsel; this sanction is immediately SUSPENDED and shall remain suspended for so long as the City remains in compliance with the 180-Day Rule. While the Court will not at this time set specific numerical requirements by which the City's compliance will be measured, and full compliance is ultimately expected, the Court notes that as a minimum measure of substantial compliance, the resolution of fewer than 90% of complaints within 180 days, or the resolution of any individual complaint more than 25 days

As set forth in great detail below, the City's widespread failure to cure deficiencies in the sixty-day grace period provided by the Court and the repeated use of false data constitutes a serious failure to comply with the 180 Day Rule, thus triggering the sanction payable to Plaintiffs' counsel under this section of the March 1, 2023 Order.

**B.  Section 1(B) of March 1, 2023 Court Order: Coercive Sanctions Relating to Complaints Open More than 120 Days on Date of March 01. 2023 Court Order**

Text of Court Order:

**Sanctions to Coerce Resolution of Existing Citizen Complaints Open More than 120 Days**

The City is ordered to finally adjudicate each citizen complaint that has been open more than 120 days as of the date of this Order within the next sixty days. The City shall pay a sanction of $1,000 for each day that each such investigation remains open beyond this deadline.

Citizen Complaints that were open more than 120 Days on the date of the March 1, 2023 Court Order fall into four categories for the purpose of determining and calculating sanctions:

(1) If a compliant Notification Letter was sent to the Complainant on or before April 30, 2023, no sanction applies.

(2) If a compliant Notification Letter was sent to the Complainant after April 30, 2023, the $1,000 per day sanction applies for each day between April 30, 2023 and the date the City sent a compliant Notification Letter.

(3) If no Notification Letter at all has ever been sent to the Complainant, the Citizen Complaint is still open and the $1,000 per day sanction applies for each day after April 30, 2023, and continues to accrue.

(4) If no effective and compliant Notification Letter has ever been sent to the Complainant, the Citizen Complaint is still open and the $1,000 per day sanction applies for each day after April 30, 2023, and continues to accrue.

1. **Citizen Complaints in which a compliant Notification Letter was sent to the Complainant on or before April 30, 2023**

The City sent a compliant Notification Letter to the Complainant on or before April 30, 2023 for only two of the Citizen Complaints that had been open more than 120 days on March 1, 2023 (OPS File No. 22-C-0122-UAF and OPS File No. 23-C-0034-SOP).[3] No sanction applies to these complaints, which are listed in Exhibit F.

2. **Citizen Complaints in which a compliant Notification Letter was sent to the Complainant after the Court's April 30, 2023 deadline**

The City sent a compliant Notification Letter to the Complainant after the April 30, 2023 deadline for eleven Citizen Complaints that had been open more than 120 days on March 1, 2023. The $1,000 per day sanction applies for each day that each of these complaints remained open between April 30, 2023 and the date the compliant Notification Letter was sent. These complaints were late by a total of 425 days, for a sanction of $425,000. The details of these Citizen Complaints are presented in Exhibit G.

3. **Citizen Complaints in which No Notification Letter *at all* was sent to the Complainant**

The City has never sent any Notification Letter at all in six of the Citizen Complaints that had been open more than 120 days on March 1, 2023. USPS

---

[3] A compliant Notification Letter is one that contains all the information required by the Court's March 1, 2023 Order and in which all the information provided to the Complainant is accurate and truthful.

tracking data shows that the Notification Letters in OPS File No. 22-C-0138-MISC (Complainant Ansley Jackson) and OPS File No. 22-C-0235-MISC (Complainant Tayler Harrison) were never mailed. The City never produced a Notification Letter to Complainant Pierre Lamartiniere with regard to OPS File No. 22-C-0326-SOP. And three Complainants informed Plaintiffs that they never received a Notification Letter from the City: OPS File No. 21-C-0119-CTSY (Complainant Quadedra Favors), OPS File No. 22-C-0276-SO (Complainant Kanaiza Omondi), and OPS File No. 22-C-0289-CTSY (Complainant Xavier Coombs).[4]

Citizen Complaints in which no Notification Letter was sent to the Complainant remain open, and the $1,000 per day sanction applies from April 30, 2023 and continues to accrue for each day that each complaint remains open. As of the date of the filing of this Report, on October 23, 2023, these complaints have remained open for a total of 880 days beyond the April 30, 2023 deadline for a sanction of $880,000, which continues to accrue. Exhibit H provides the details for each of these complaints.

---

[4] The Notification Letter purportedly sent to Complainant Xavier Coombs by the City is also wholly deficient on its face — since it names the wrong officer and provides an inaccurate disposition  —  but to avoid double counting this Citizen Complaint it is included only in the sanctions calculation for Wholly Deficient Notifications (Exhibit I) and not with the sanctions calculation for complaints with No Notification at all (Exhibit H).

4.  **Citizen Complaints in which no** *compliant* **Notification Letter was sent to the Complainant**

According to the March 1, 2023 Court Order, the following items of information must be provided to a Complainant for a Citizen Complaint to be considered "finally adjudicated":

> To avoid any possibility of misunderstanding …"the date that the complaint was finally adjudicated" is the date the Atlanta Police Department notified the complainant of "the final disposition of the complaint (i.e., whether the complaint was sustained, not sustained, unfounded, or exonerated) and the nature of any discipline imposed (e.g., oral admonishment, written reprimand, the duration of any suspension, dismissal, etc.)."

> March 1, 2023 Court Order (Doc. 492) p. 5, fn. 7.

Citizen Complaints in which the City failed to send a Notification Letter with the information set forth above have never been "finally adjudicated" and therefore remain open, and the $1,000 per day sanction applies and continues to accrue from April 30, 2023 for each day that each such complaint remains open.

For the purpose of assisting the Court in providing any adjustments for the purpose of leniency, however, should the Court wish to do that, Plaintiffs have divided "Notification Letters" that are not fully compliant into two groups:

> Category A — "Notification Letters" that are so wholly deficient that they fail to inform the Complainant of the actual resolution of his or her complaint; and

> Category B — "Notification Letters" that are deficient *only* because they fail to inform the Complainant of the "nature of any discipline imposed" as required, but otherwise provide accurate information about the disposition of the complaint.

Both categories represent violations of the Court's March 1, 2023 Order that are subject to the $1000 per day penalty, since the Order provides that any Citizen Complaint not closed with a Notification Letter providing the specified information has not been finally adjudicated and therefore remains open. And since the Court's October 3, 2023 Order requires Plaintiffs to calculate the amount of sanctions under the March 1, 2023 Order, Plaintiffs have made that calculation for both categories. But given the magnitude of the sanctions that would be triggered by considering all Citizen Complaints with Notification Letters that omit the Nature of the Discipline imposed on the officer as still remaining open, Plaintiffs chose to provide the necessary data should this Court choose to exercise leniency with regard to complaints where the *only* deficiency was the failure to inform the Complainant of the specific discipline imposed on the officer (Category B).

Plaintiffs therefore present two alternative calculations: One considers all Citizen Complaints with "Notification Letters" that are not fully compliant as still open (i.e. both Category A and Category B complaints are treated as still open); the other calculation considers only those Citizen Complaints with "Notification Letters" that are wholly deficient (and which therefore fail to

inform the Complainant of the actual result of his or her Citizen Complaint) as still open (i.e. just Category A complaints are treated as open; Category B complaints are treated as if they had been closed).

As the Court considers which option to choose, it should be noted that the failure to inform a Complainant of the nature of the discipline imposed as a result of his or her Citizen Complaint is still a significant deficiency, since it conceals from the Complainant how seriously the City took his or her complaint.

For example, OPS File No. 21-C-0481-SOP was a case in which an officer received an 11-day suspension — an exceptionally harsh penalty for APD — but the Complainant was told only that "appropriate corrective actions have been taken." Exhibit D-10. Similarly, OPS File No. 22-C-0358-MISC was a case in which an officer received a 5-day suspension for making an unlawful arrest and an additional 7-day suspension for using excessive force (for a total suspension of 12 days), yet again the Complainant was told only that "appropriate corrective actions have been taken." Exhibit D-31. Conversely, OPS File No. 22-C-0074-UAF was an excessive force complaint in which the officer was found to have struck the complainant in the face while he was handcuffed, but that officer was given only a Written Reprimand; a fact that was never communicated to the Complainant, who was told only that "appropriate corrective actions have been taken." Exhibit D-19.

The APD's decision to discipline an officer with a 12-day suspension versus a Written Reprimand or Oral Admonishment communicates an important message about how seriously APD treated the offense, and is an essential element of the resolution of a Citizen Complaint, and so the City's failure to provide this information, as required by the Court's March 1, 2023 Order, is a serious problem. But Plaintiffs recognize that Courts must balance many factors in imposing sanctions and may understandably wish to extend leniency in certain situations, and so Plaintiffs have chosen to present the Court with the information to implement such a decision should the Court choose to do so.

**a.** **Category A — Wholly deficient letters that fail to inform the Complainant of the disposition of the Citizen Complaint**

Given the significant financial effect of Citizen Complaints that remain open even to this day it is appropriate for Plaintiffs to describe in detail the types of "Notification Letters" that are so wholly deficient that they fail to inform the Complainant of the actual resolution of his or her complaint, and result in a Citizen Complaint remaining open. These include Notification Letters in which: (a) the information in the letter is simply false; (b) the letter is internally contradictory and completely meaningless; or (c) the letter fails to provide any information at all about one or more of the officers who were the subject of the citizen's complaint. Where a Complainant has not been truthfully informed of

the complete and the actual disposition of his complaint, the Citizen Complaint remains open.

### i.   Letters that contain false information

Several of the "Notification Letter[s]" sent by the City provide inaccurate information about the disposition of the complaint. For example, the "Notification Letter" in OPS File # 20-C-0212 falsely informed the Complainant that his complaint against Officer Darvin Diaz-Taylor had been ruled "Unfounded" and that no action had been taken against the officer, when in fact the complaint had been "Sustained" and Officer Darvin Diaz-Taylor had been disciplined. (4/25/2023 Notification Letter; OPS Closeout Report). Exhibit D-1.

Another type of false information is found where a citizen complained about a very specific type of misconduct, such as excessive force, but received a Notification Letter that misleadingly suggests the allegation was sustained when it was not. One example was described in Plaintiffs' Motion to Impose Suspended Sanctions (Doc. 496 at 10-11) with regard to OPS File No. 21-C-0481-SOP, in which a Complainant who alleged excessive force was told that APD had found "sufficient information to prove the allegation stated in your complaint," and was therefore falsely led to believe that her complaint of excessive force had been sustained and the officers disciplined for it, when in fact none of the officers were investigated or disciplined for excessive force; they were investigated and

disciplined for technical SOP violations relating to Extra Job Permits and the use of Body Worn Cameras.[5]

Another example is 23-C-0131-SOP, where the Complainant submitted a "Use of Force Complaint" alleging that an officer "yank[ed] me out of my car":



This Complainant received a Notification Letter stating: "A preliminary investigation did develop sufficient information to prove the allegation stated in your complaint. Therefore, appropriate corrective actions have been taken against these officers." Exhibit E-12. But while the Complainant was misled into believing that her Use of Force complaint was sustained, and the officer disciplined for excessive force, in fact the officer was never even investigated for the use of force.

_____

[5] This Citizen Complaint is also still open because while four officers were investigated, only three were mentioned in "Notification Letter." Exhibit D-10.

The officer was investigated (and disciplined) *only* for failing to activate his Body

Worn Camera in violation of APD SOP 3133.

**ATLANTA POLICE DEPARTMENT**
**PRELIMINARY COMPLAINT FORM**

| OPS INVESTIGATION ☐ | COMMAND INVESTIGATION ☒ | COMPLAINT NUMBER | OPS CONTROL NUMBER 23-C-0131-SOP |
|---|---|---|---|

| DATE & TIME COMPLAINT RECEIVED | | | DATE OF INCIDENT | | | TIME | ADDRESS OF OCCURRENCE |
|---|---|---|---|---|---|---|---|
| MO 03 | DAY 13 | YR. 2023 | TIME 1252 | MO 02 | DAY 15 | YR. 2023 | TIME | 135 ANDREW YOUNG INTL BLVD ATLANTA, GA |

**BRIEFLY DESCRIBE ALLEGATIONS**

| AUDIO AND VIDEO TAPES THAT ARE PART OF THIS FILE | | |
|---|---|---|
| VIDEO TAPES OF INTERVIEWS | AUDIO TAPES OF 911 RADIO | OTHER TAPES ☒ |

THE DEPARTMENT REQUESTS AN INVESTIGATION INTO THE ALLEGATION THAT OFFICER GREGORY CARTER FAILED TO ACTIVATE HIS BWC PRIOR TO INITIATING A TRAFFIC STOP ON 2/15/2023.

APD.SOP.2010/4.2.33     Conformance to Directives
          APD.SOP.3133 - Body Worn Cameras

"C" FOR COMPLAINANT, USE "P" FOR PARENT OR GUARDIAN, USE "W" FOR WITNESS, USE "S" FOR SUPERVISOR

| CODE | NAME (LAST, FIRST, MI) | | | RACE | SEX | DOB |
|---|---|---|---|---|---|---|
| C | HOLLIS, INDIA | | | | | |

| RESIDENT ADDRESS | | HOME PHONE | BUSINESS PHONE |
|---|---|---|---|
| | | | |

| DESCRIBE INJURIES | HOSPITAL TAKEN TO | PHOTO ID # | SUSPECT WEAPON | WEAPON SERIAL # |
|---|---|---|---|---|

**OPS Complaint File Closeout Report**

OPS Control Number: 23C0131SOP          Date Investigation Received: 03/13/2023

Date Investigation Completed: _____     Date Investigation Adjudicated: 04/25/2023

Accused Employee: GREGORY CARTER          R/S: BLACK/MALE   Unique ID: 7853

Accused Employee's Assignment: FOD          ZONE 5
                                        DIVISION          SECTION          WATCH

Investigative Disposition:

| | Work Rule #1 | Work Rule #2 | Work Rule #3 | Work Rule #4 | Work Rule #5 |
|---|---|---|---|---|---|
| Rule Number(s): | 3133 | | | | |
| Disciplinary Action: | S-3 | | | | |
| Modified Action: | S-2 | | | | |
| Disciplinary Category: | B | | | | |
| Date of Action: | 04/25/2023 | | | | |

Waiver:          ☐YES ☐NO     CVSA: ☐YES ☐NO     SAA: ☐YES ☐NO

Reimbursement Payment:     ☐YES ☐NO

Special Conditions and/or Agreement:     Modified by Acting Deputy Chief A. Mitchell.

Exhibit E-12.

22

It should be noted that the City's complete failure to investigate the actual complaint made by the Complainant (relating to the use of force) itself violates City's obligation to "*investigate and finally adjudicate* all citizen complaints of police misconduct of any kind…" November 29, 2018 Court Order, Doc. 434, Section III(A)(1) (emphasis added).

This Court specifically reminded the City of what that obligation requires in its March 1, 2023 Court Order:

> The Court reminds the City that the Atlanta Police Department is required to "investigate and finally adjudicate" each citizen complaint. "Investigate" means "to inquire into a matter systematically and "adjudicate" means "to rule on judicially" (Black's Law Dictionary, 11th ed. 2019), and so simply closing citizen complaints without the systematic inquiry and thoughtful consideration generally applied by a court in resolving matters will not constitute compliance or substantial compliance with this obligation.

> March 1, 2023 Court Order (Doc. 492), p. 4, fn. 5.

Yet the OPS file regarding this Citizen Complaint shows the City's complete failure to investigate whether or not the officer used inappropriate force to "yank" the Complainant out of her car, or indeed whether the officer removed the Complainant from her car at all. The OPS files makes no reference at all to that allegation, and in the officer's OPS interview *he was never even asked* if he pulled the Complainant out of her car, or if he used any other force during

Case 1:09-cv-03286-TCB   Document 515   Filed 10/23/23   Page 24 of 55

the encounter: In this "investigation" of a Citizen Complaint alleging "Use of Force," OPS did not ask the officer a single question about the use of force.[6]

Another example is OPS File # 22-C-0392-SOP, in which the Complainant filed an online Citizen Complaint alleging that he had been unlawfully arrested and suggesting a violation of the *Calhoun*-required SOP prohibiting interference with recording a police officer in public. The complaint stated: "Officer J Thacker

---

[6] This is the *entirety* of the OPS interview with Officer Carter (see Exhibit E-12):

> Q: Did you encounter Ms. India Hollis?
> A: Yes
>
> Q: What was the initial call?
> A: I did not have a call. While en route to 200 Ted Turner, I witnessed Ms. Hollis illegally parked at 135 Andrew Young. I stopped to speak with Ms. Hollis, advising that she could not park on the sidewalk.
>
> Q: When did you activate your body camera during the encounter?
> A: After advising Ms. Hollis to remove her vehicle, she failed to do so. Therefore I initiated a traffic stop.
>
> Q: Why was it a delay in activating your body camera?
> A: I was simply conversing with Ms. Hollis while riding past the location, asking her to remove the vehicle from the sidewalk. When she disregarded the warning, I conducted the traffic stop and activated my body camera.
>
> Q: Do you wish to add anything else to your statement?
> A: I was headed to use the restroom at spring street precinct; I did not intend to initiate a traffic stop. I just wanted Ms. Hollis to move off the sidewalk with her vehicle. After she refused, I re-encountered Ms. Hollis and initiated a traffic stop.

unlawful arrest me on public property as I was refuse service at Grady hospital and started recording on a public easement." Exhibit D-37.

**APD Citizen Complaint Details**                                                          Pa

| Report Title: | APD Citizen Complaint Details |
| Run Date and Time: | 10/19/2022 09:43:29 Eastern Daylight Time |
| Run by: | Kai Mitchell |
| Table name: | sn_customerservice_use_of_force |

**APD Citizen Complaint**

| Number: | APD0001956 | State: | Closed |
| Channel: | Citizen Reported | Opened: | 10/17/2022 15:02:05 |
| Anonymous Citizen: | No | Parent: | |
| Complaint Type: | Other | IaPro case#: | |
| First Name: | Antavious | Assignment group: | APD-OPS Non-Integrity Team |
| Last Name: | Carter | Assigned to: | Michael Buckley |

Short description:

Citizen Use of Force Complaint

Description:

Officer J Thacker unlawful arrest me on public property as I was refuse service at Grady hospital and started recording on a public easement

The Notification Letter from the City stated, "A preliminary investigation did develop sufficient information to prove the allegation stated in your complaint." Exhibit D-37. Any normal person would assume that this indicates the complaint of unlawful arrest ("the allegation stated in your complaint") had been sustained, and that the officer had been disciplined for unlawfully arresting the Complainant. In fact, this Notification Letter, like the one discussed above, is misleading to the point of being untruthful: APD did *not* discipline the office for unlawfully arresting the Complainant; APD disciplined the officer *only* for failing to notify his or her supervisor of the Complainant's injuries, in violation

of APD.SOP.3089 (which deals with Supervisor Notification). As with the Citizen

Complaint discussed above, OPS never investigated, let alone resolved, the

Complainant's actual allegations of unlawful arrest and interference with

recording. Exhibit D-37.[7]

Providing misleading or untruthful information to a Complainant does not

close a Citizen Complaint since it misinforms the Complainant of the disposition

---

[7]    Any investigation of unlawful arrest would require consideration and
discussion of the well-developed law of the Fourth Amendment and various
APD SOPs relating to arrests, including APD.SOP.3030 Arrest Procedures (which
specifies the Probable Cause requirement for a lawful arrest) and the
APD.SOP.2010 4.1.5 "Obey the Law" Work Rule (which states: "Employees shall
uphold the Constitutions of the United States and the State of Georgia, obey all
applicable federal, state, and local laws, and comply with all applicable court
decisions and orders of the courts."). And any allegation of interference with
video recording would require consideration of both the applicable law
(including *Smith v. City of Cumming*, 212 F. 3d 1332 (11th Cir. 2000)) and
APD.SOP.2011 Section 4.4.1 which prohibits interference "with a citizen's right to
record police activity by photographic, video, or audio means." Yet none of these
issues were explored or discussed in the OPS investigation.

To be clear, Plaintiffs are not suggesting that an OPS investigation file
should read like an Eleventh Circuit Fourth Amendment brief. But an
investigation of an alleged unlawful arrest that *makes no mention at all* of the legal
standards and APD SOPs relating to unlawful arrests is not an investigation of
that allegation.

Plaintiffs also stress that they are not making any suggestion, one way or
the other, about whether this or any officer has violated the law or APD SOPs.
The issue for Plaintiffs is not whether an OPS investigation comes to the correct
conclusion; the issue for Plaintiffs is whether an OPS investigation addresses the
allegations made in a Citizen Complaint.

of his or her complaint, and these Citizen Complaints remain open. Details about each Citizen Complaint that remains open because false information was provided to the Complainant are presented in Exhibit I.

ii. <u>**Letters that are internally contradictory and completely meaningless**</u>

Nonsensical and internally contradictory "Notification Letters" such as the one sent to the Complainant in OPS File No. 22-C-0459-SOP provide no meaningful information to the Complainant; not only do they fail to include the specific information required by the March 1, 2023 Court Order, they are effectively gibberish and do not inform the Complainant of the final adjudication of his or her complaint, as seen in this typical example:



**CITY OF ATL**

ANDRE DICKENS
MAYOR

226 PEACHTREE STREET, SW
ATLANTA, GEORGIA 30303
404 - 546-6900

April 5, 2023

Kevin Hodge

Re: 22-C-0459-SOP

Dear Kevin Hodge,

Thank you for taking the time to express your concerns regarding the actions of Officer N. Wilder, an employee with the Atlanta Police Department.

A preliminary investigation did develop sufficient information to prove the allegation stated in your complaint. Therefore, appropriate corrective actions have been taken against these officers.

Your allegation of misconduct has been investigated. The investigation did not develop sufficient information to prove or disprove the allegations. Therefore, at this time this file is closed.

Thank you for bringing this matter to our attention and your continued interest in the Atlanta Police Department. If you have any questions concerning this complaint, please contact Lieutenant R. Burks (404) 546-5945.

Sincerely,

Major Carlo Peek, Commander
Office of Professional Standards

CP/se
cc:  File

Details of each Citizen Complaint that remains open because for this reason are presented in Exhibit I.

### iii. Letters that fail to provide any information at all about one or more of the officers who were the subject of the complaint

In several Citizen Complaints, multiple officers were investigated and disciplined but the Notification Letter does not provide any information about the disposition of the complaint with regard of one or more of the officers who were the subject of the complaint.

For example, OPS File No. 22-C-0074-UAF is an excessive force complaint involving three officers (Officers Khatib, Crump, and Young). The Notification Letter informs the Complainant that Officer Young had been disciplined but makes no mention at all of the two other officers who were also investigated and disciplined. Exhibit D-19. The letter even fails to mention the one officer whose name the Complainant knew and specifically mentioned in his complaint. The OPS Summary of this Citizen Complaint begins, "Mr. Orlando Pitts came to the Office of Professional Standards to make a complaint on Officer S. Khatib." But while OPS sustained and imposed discipline on all three officers, including Officer Khatib, the "Notification Letter" sent to the Complainant makes no mention of Officer Khatib. In other words, even though the Complainant submitted a Citizen Complaint about Officer Khatib by name he has still not been informed of the disposition of his complaint against Officer Khatib.

29

OPS File No. 22-C-0244-MISC is a case in which the Complainant identified by name five officers he believed mistreated him (Officers Sheldon Irving, Malik Shields, Demaitre Wickenson, Demond Reynolds, and Terkaa Iye) in the Citizen Complaint he filed online at the APD website. But the "Notification Letter" sent by the City mentions only one officer — Officer Iye (and provided false information, stating that the complaint against Officer Iye had been Sustained and the officer disciplined, when in fact the complaint was Exceptionally Closed). Exhibit D-28. The four other officers named in the complaint were each disciplined, but the Complainant has never been informed of those key outcomes.

Details of each such Citizen Complaint are provided in Exhibit I.

**b.** <u>**Category B — Notification Letters that are deficient *only* because they fail to inform the Complainant of the "nature of any discipline imposed"**</u>

As cited above, for a Citizen Complaint to be considered "fully adjudicated" the City must notify the Complainant of "the nature of any discipline imposed (e.g., oral admonishment, written reprimand, the duration of any suspension, dismissal, etc.)." March 1, 2023 Court Order (Doc. 492) p. 5, fn. 7. Notification Letters that fail to include this information, therefore, do not comply with the requirements of "final adjudication" and those Citizen Complaints remain open. As stated above, however, the Court may wish to grant leniency to

the City for those instances where the City sent a Notification Letter that was

deficient *only* in failing to inform the Complainant of the nature of the discipline

imposed, but was otherwise accurate and complete. Plaintiffs have listed these

Citizen Complaints in Exhibit J, which treats them as still open, and Exhibit K,

which treats them as closed.

**C.  Section 1(C) of March 1, 2023 Court Order: Sanctions to Coerce Resolution of Existing Citizen Complaints Open Less than 120 Days**

Text of Court Order:

**Sanctions to Coerce Resolution of Existing Citizen Complaints Open Less than 120 Days**

The City shall pay a sanction of $1,000 for each day that an existing citizen complaint open less than 120 days—as of the date of this Order—remains open beyond 180 days.

As with the Citizen Complaints discussed above, complaints that were

open *less than* 120 Days on the date of the March 1, 2023 Court Order fall into

four categories for the purpose of determining and calculating sanctions:

(1) If a compliant Notification Letter was sent to the Complainant within 180 days of the date the Citizen Complaint was submitted to APD, no sanction applies.

(2) If a compliant Notification Letter was sent to the Complainant more 180 days after the date the Citizen Complaint was submitted to APD, the $1,000 per day sanction applies for each day over 180 that the complaint remained open.

(3) If no Notification Letter at all has ever been sent to the Complainant, the Citizen Complaint is still open and the $1,000 per day sanction applies for each day beyond 180 days from the date the Citizen Complaint was submitted to APD and continues to accrue.

(4) If no effective and compliant Notification Letter has ever been sent to the Complainant, the Citizen Complaint is still open and the $1,000 per day sanction applies for each day beyond 180 days from the date the Citizen Complaint was submitted to APD and continues to accrue.

1. **Citizen Complaints in which a compliant Notification Letter was sent to the Complainant within 180 days**

The City sent a compliant Notification Letter to the Complainant within 180 days of the date the Citizen Complaint was submitted for at least twelve Citizen Complaints that had been open fewer than 120 days on March 1, 2023, and therefore no sanction applies to these complaints. These complaints are listed in Exhibit L.

2. **Citizen Complaints in which a compliant Notification Letter was sent to the Complainant after 180 days**

The City sent a compliant Notification Letter to the Complainant more than 180 days after the complaint date for four Citizen Complaints that had been open fewer than 120 days on March 1, 2023. The $1,000 per day sanction applies for each day that these complaints remained open longer than 180 days, and totals $92,000. Details of these Citizen Complaints are presented in Exhibit M.

**3.** <u>**Citizen Complaints in which no Notification Letter at all was sent to the**</u>
<u>**Complainant**</u>

The City never sent any Notification Letter for one Citizen Complaint that

had been open fewer than 120 days on March 1, 2023. This is especially shocking

because the City's previous failure to notify this particular Complainant (David

Barinowski) was specifically discussed in the Reply Brief that Plaintiffs filed on

July 5, 2023, and so the City was on clear notice of the need to close this

particular complaint.

As reported in Plaintiffs Reply Brief, the City had never sent a Notification

Letter to Complainant David Barinowski with regard to OPS File No. 23-C-0121-

MISC. Plaintiffs' Reply Brief, Doc. 508, at 10. After the Court ordered Plaintiffs to

calculate sanctions on October 3, 2023 (Doc. 512), Plaintiffs contacted Mr.

Barinowski again to ask if the Atlanta Police Department had yet notified him of

the disposition of his Citizen Complaint. Mr. Barinowski replied on October 5,

2023: "I still have not heard anything from them…….."  Exhibit E-14. Perhaps

nothing better illustrates how little the City of Atlanta cares about complying

with its Court-ordered obligations than the failure to remedy a deficiency about

which the City was explicitly informed in the course of a proceeding about

contempt and sanctions.

A Citizen Complaint for which no Notification Letter was sent to the

Complainant remains open and the $1,000 per day sanction applies for each day

beyond 180 days, and continues to accrue as long as the complaint remains open. As of the date of the filing of this Report, Mr. Barinowski's complaint has remained open for 56 days beyond 180 days, for a sanction of $56,000, which continues to accrue. Exhibit N provides details for this Citizen Complaint.

4. **Citizen Complaints in which no compliant Notification Letter was sent to the Complainant**

Citizen Complaints in which the City failed to send a compliant Notification Letter have never been "finally adjudicated" and therefore remain open, and the $1,000 per day sanction applies for each day beyond 180 days and continues to accrue as long as the complaint remains open.

As with the Citizen Complaints discussed above, Plaintiffs have divided this group of Citizen Complaints into two groups:

Category A — "Notification Letters" that are so wholly deficient that they fail to inform the Complainant of the actual resolution of his or her complaint; and

Category B — "Notification Letters" that are deficient *only* because they fail to inform the Complainant of the "nature of any discipline imposed" as required, but otherwise provide accurate information about the disposition of the complaint.

### a. <u>Category A — Wholly deficient letters that fail to inform the Complainant of the disposition of the Citizen Complaint</u>

Four Citizen Complaints remain open because the City sent a wholly deficient "Notification Letter." As of the date of this report, these four complaints have been open a total of 414 days beyond 180 days, for a total sanction of $414,000, which continues to accrue. A list and details of these complaints are presented in Exhibit O.

### b. <u>Category B — Notification Letters that are deficient *only* because they fail to inform the Complainant of the "nature of any discipline imposed"</u>

Details of the eight Citizen Complaints that remain open only because the City's "Notification Letter" fails to include of the nature of the discipline imposed on the officer are presented in Exhibit P, which treats them as still open, and Exhibit Q, which treats them as closed.

### D. <u>Section 1(E) of March 1, 2023 Court Order: Suspended Sanction Relating to Provision of Inaccurate Information</u>

Text of Court Order:

**Sanctions for Providing Inaccurate Information**

Accurate information is essential to the effective monitoring and enforcement of the City's compliance with its obligations under the consent order. With regard to the City's provision of inaccurate information to Plaintiffs and this Court in the past, the Court imposes the following sanctions:

- A sanction of $5,000 to be paid within fifteen days of this Order;
- A sanction of $25,000; this sanction is immediately SUSPENDED and shall remain suspended for so long as the City provides accurate information regarding the matters related to the consent order at all times in the future.

The Court imposed a suspended sanction of $25,000 to "remain suspended for so long as the City provides accurate information regarding the matters related to the consent order at all times in the future." As demonstrated in Plaintiffs' Motion to Impose Suspended Sanctions (Doc. 496 at 13-16), and in the following section of this Report, the City has provided Plaintiffs with hundreds of items of inaccurate information after the date of the March 1, 2023 Court Order, and some of the City's statements to the Court in its Response in Opposition to Plaintiffs' Motion to Impose Suspended Sanctions (Doc. 505) were apparently false as well, such as the City's claim that "nearly all [Notification Letters] were sent out in batches on April 25th, 26th and May 3rd." (See City Response, Doc. 505, at 7, discussed in Plaintiffs' Reply, Doc. 508, at 5-12.) These inaccurate statements trigger the imposition of the $25,000 sanction that was previously suspended by the Court.

**E. Section 1(F) of March 1, 2023 Court Order: Coercive Sanctions Relating to Provision of Inaccurate Information**

Text of Court Order:

**Sanctions to Coerce the Provision of Accurate Information**

The City shall pay the United States Treasury a sanction of $1,000 for each separate item of inaccurate information provided to Plaintiffs or the Court in the future.

The Court imposed a coercive sanction of $1,000 for each separate item of inaccurate information provided to Plaintiffs or the Court after the date of the March 1, 2023 Court Order and defined how those items would be counted:

> By way of example, in the monthly spreadsheets produced by the City, an incorrect complaint date, an incorrect complaint resolution date, an incorrect disposition of an individual allegation, and an incorrect disciplinary sanction for an individual allegation, shall each be considered a separate item of inaccurate information. However, the Court recognizes that a certain number of typographical errors may occur when compiling and presenting information. A limited number of such mistakes (such as an obvious mistyping or transposition of digits) shall not result in the imposition of this sanction.
>
> March 1, 2023 Court Order, Doc. 492, p. 6, fn. 8.

Exhibit R is the Worksheet the City provided Plaintiffs on May 15, 2023, amended by Plaintiffs to display each item of inaccurate information printed in red. Exhibit S separately lists each of the 602 items of inaccurate information on that Worksheet, which trigger a sanction of $602,000.

## III.   THE APPROPRIATENESS OF SIGNIFICANT SANCTIONS FOR CITIZEN COMPLAINTS THAT REMAIN OPEN DUE TO NON-COMPLIANT NOTIFICATION LETTERS

Given how severe is the sanction for Citizen Complaints that remain open to this day because the City failed to send a truthful, meaningful, complete, and/or compliant Notification Letter to the Complainant, it is important to note

that this problem was completely avoidable by the City and that the City cannot possibly claim to be surprised that so many Citizen Complaints remain open.

The Court's March 1, 2023 Contempt Order told the City exactly what information it needed to provide a Complainant for a Citizen Complaint to be "finally adjudicated," and had the City simply complied with the explicit language of that Court Order it would not now be facing significant sanctions for this problem.

In addition, the City's problems with ineffective, inaccurate, and meaningless Notification Letters have been endemic throughout the past decade and the Plaintiffs have repeatedly advised and warned the City to address this issue and to send accurate and informative Notification Letters to complainants. Even more pointedly, an entire section of Plaintiffs' Motion to Impose Suspended Sanctions was expressly dedicated to warning the City that "almost none of the Notification Letters sent by the City meet the requirements for a Citizen Complaint to be considered 'finally adjudicated'," and that "[b]ecause none of the Notification Letters sent by the City comply with these requirements, none of them serve to close the Citizen Complaints." Plaintiffs' Motion (Doc. 496) at 8.

Four full pages (pages 8-11) of Plaintiffs' Motion described for the City in detail, and with specific examples, the several ways in which many of the City's purported "Notification Letters" failed to comply with the requirements set by

the Court, and concluded with an unmistakable notice to the City that these

Citizen Complaints remained open:

> Since the City has failed to send Notification Letters that
> comply with the explicit requirements set by this Court to
> qualify as "final adjudication" -- leaving complainants
> uninformed, and in some cases misinformed, of the result of
> the complaints -- *none* of the overdue Citizen Complaints have
> been finally adjudicated as defined by this Court.

> Plaintiffs' Motion (Doc. 496) at 11.

The City could have taken this warning to heart and ensured that all

Citizen Complaints were closed by the sending of a meaningful, complete, and

accurate Notification Letter. The City was told exactly what it needed to do —

both by the text of the Court's Orders and by the specific warnings provided by

Plaintiffs — but the City chose not to take the steps that had so clearly been

outlined. While the amount of the sanction resulting from this failure is large, it

was completely avoidable, and solely the result of the City's flagrant failure to

take its Court-ordered obligations seriously, even under the threat of pre-

determined sanctions. That the City failed to close numerous Citizen Complaints,

despite being explicitly ordered to do so by the Court, and warned to do so by

the Plaintiffs, demonstrates what Plaintiffs have experienced for years: The City

does not take this Court's Orders seriously and does not care very much about

complying with them.

## IV.   RECOMMENDATION FOR REMEDIAL ORDER IN LIEU OF ADDITIONAL FINANCIAL SANCTIONS

There is another type of defective Notification Letter that leaves a Citizen Complaint unresolved: Those that conceal the actual disposition of the Complainant's specific allegations through the use of catch-all concepts (such as "Conformance to Directives" or "Appropriate Action Required") that do not communicate meaningful information.

The City has long used APD Work Rule 4.2.33 Conformance to Directives, in particular, to conceal and obscure the disposition of Citizen Complaints. This Work Rule requires officers to "…conform to, the rules, regulations, directives, and standard operating procedures of the Department." Naturally, if an officer violates an SOP (such as SOP 3030 Arrest Procedures, prohibiting excessive force during an arrest) that officer has also violated Work Rule 4.2.33 Conformance to Directives. But APD knows that "Conformance to Directives" is not a stand-alone offense that can be investigated or reported by itself — it is necessary to identify the underlying "rules, regulations, directives, and standard operating procedures" the officer was alleged to have violated to determine whether or not the officer conformed to them, which is exactly what APD does in its internal investigations. The City is fully aware that sustaining (or not sustaining) a violation of Work Rule 4.2.33 Conformance to Directives communicates nothing about the violation that was alleged and investigated, which is why APD's

internal records identify the actual underlying violation. But when communicating with Complainants and the Plaintiffs, the City often hides the underlying violation by mentioning *only* Work Rule 4.2.33 Conformance to Directives, thus concealing the disposition of the Complainant's actual complaint.

For example, the Citizen Complaint in OPS File No. 23-C-0087-SOP alleges an unlawful use of excessive force in connection with an arrest. The Complainant stated:

> Officer Strutt badge 7899 forcefully "detained me" without stating why and aggressively grabbed my upper left arm. I explained to him at least 3 times that he was hurting my arm where my birth control implant is. …  After me asking him to move his arm down he refused and gripped tighter which resulted in my arm and implant being injured. This is unacceptable as I was walking freely and did not require such force.

> Exhibit D-29.

APD investigated and reached a disposition about the allegation concerning the use of force in connection with an arrest, which is covered by APD.SOP.3030 Arrest Procedures:  APD decided to "Not Sustain" the allegation regarding SOP 3030.[8]

---

[8] APD.SOP.3030 Arrest Procedures, Section 4.1.6(1), states: "Employees will use only that force which is reasonable and necessary to affect an arrest or restraint, and to ensure the safety of the arrestee, the officers, and others."

OPS also investigated (and disciplined) the officer for an internal issue not raised by the Complainant; a violation of SOP 3089 Supervisor Notification, concerning the obligation to notify a supervisor if a person complains of an injury. Exhibit D-19.

The City's *internal* records accurately indicate that the officer was investigated with regard to SOP 3030 Arrest Procedures and SOP 3089 Supervisor Notification, and included the disposition of those specific charges (SOP 3030 was Not Sustained, and SOP 3089 was Sustained and the officer was disciplined with an Oral Admonishment):

### OPS Complaint File Closeout Report

OPS Control Number: __23C0087SOP__    Date Investigation Received: __02/15/2023__

Date Investigation Completed: _____    Date Investigation Adjudicated: __04/13/2023__

Accused Employee: __ANDREW STRUTT__    R/S: **WHITE/MALE**    Unique ID: __7899__

Accused Employee's Assignment: __FOD__    __ZONE 2__    _____
DIVISION    SECTION    WATCH

Investigative Disposition:

| | Work Rule #1 | Work Rule #2 | Work Rule #3 | Work Rule #4 | Work Rule #5 |
|---|---|---|---|---|---|
| Rule Number(s): | 3089 | 3030 | | | |
| Disciplinary Action: | OA | NS | | | |
| Modified Action: | | | | | |
| Disciplinary Category: | A | | | | |
| Date of Action: | 04/13/2023 | 04/13/2023 | | | |

Waiver:    ☐YES ☐NO    CVSA: ☐YES ☐NO    SAA: ☐YES ☐ NO

Reimbursement Payment:    ☐YES    ☐NO

Special Conditions and/or Agreement: _____

But rather than send the Complainant an *accurate* Notification Letter that notified her that APD had "Not Sustained" her allegation of excessive force (SOP 3030 Arrest Procedures), and "Sustained" a violation of SOP 3089 Supervisor

Notification, as reflected in the City's internal records, the City sent her a

Notification Letter that conceals this information by meaninglessly referring only

to APD Work Rule 4.2.33 Conformance to Directives with regard to both charges,

leaving the Complainant with no idea how her complaint of excessive force had

been resolved:[9]



CITY OF ATLANTA

| Andre Dickens<br>Mayor | 226 Peachtree Street, SW<br>Atlanta, Georgia 30303<br>(404) 546-6900 | Atlanta Police Department<br>Darin Schierbaum<br>Chief of Police |
|---|---|---|

June 8, 2023

Citizen Name                  Asanti Boone
Citizen Street
Citizen City, State Zip        ██████████████
RE:   File Number              23-C-0087-SOP
Dear    Asanti Boone,

Thank you for taking the time to express your concerns regarding the actions of
Officer A. Strutt, Officer K. Kimbrough, and Officer R. Miranda.

The findings for each allegation are below:

| Employee Name | | Disposition | Rule | | Discipline Issued |
|---|---|---|---|---|---|
| Officer | R. Miranda | Not Sustained | 4.1.1 | APPROPRIATE ACTION REQUIRED | Choose an item. |
| Officer | A. Strutt | Not Sustained | 4.2.33 | CONFORMANCE TO DIRECTIVES | Choose an item. |
| Officer | A. Strutt | Sustained | 4.2.33 | CONFORMANCE TO DIRECTIVES | Oral Admonishment |
| Officer | K. Kimbrough | Sustained | 4.2.21 | SUBMITTING REPORTS | Oral Admonishment |
| Officer | K. Kimbrough | Sustained | 4.2.33 | CONFORMANCE TO DIRECTIVES | Oral Admonishment |
| Choose an item. | | Choose an item. | | | Choose an item. |
| Choose an item. | | Choose an item. | | | Choose an item. |
| Choose an item. | | Choose an item. | | | Choose an item. |

Exhibit D-29.

---

[9] This was probably especially confusing to the Complainant since the officer's
failure to notify a supervisor of her injuries was something about which the
Complainant had not complained, and was probably not even aware.

Plaintiffs have complained to the City for years about APD's policy of concealing the disposition of the actual allegation in Citizen Complaints by using a catch-all like "Conformance to Directives" and not telling either the Plaintiffs (in the City's required monthly spreadsheets) or Complainants (in Notification Letters) *with which directive* the officer failed to conform. There is a big difference between failing to conform to the directive requiring an officer to activate his Body Worn Camera and failing to conform to the directive requiring an officer to refrain from using excessive force, yet for years the City has used catch-all concepts such as "Conformance to Directive" when providing information to the Plaintiffs and Complainants, even though APD's internal files mention the actual rule allegedly violated.[10]

---

[10]    The City sometimes also uses the Work Rule 4.1.1  Appropriate Action Required to conceal how a specific complaint was resolved. To be clear, unlike Conformance to Directives, there *are* situations in which a violation of the Appropriate Action Required Work Rule can itself be a stand-alone violation, since several of its provisions directly regulate conduct:

1.  4.1.1  Appropriate Action Required

    Employees shall respond in an appropriate manner to all situations by:

    1.  Being considerate of the rights, feelings, and interests of all persons;
    2.  Taking action in each situation to provide the necessary and appropriate service and insuring the proper notification of supervisors when appropriate;

The City naturally records the underlying violation when it investigates an officer for "Conformance to Directives" because the City could not investigate these cases if it did not. For example, the investigation files in OPS File No. 23-C-0110-MISC contain multiple references to the directive with which that officer failed to conform (the SOP 3133 requirement to activate a Body Worn Camera). References to SOP 3133 appear throughout the file:

Accused Employee: **Travis Threewitts**_____   R/S: **Black/Male**_____ Unique ID:_ 7672_____
Accused Employee's Assignment:_____ FOD____       Z1____     _____
                                      DIVISION              SECTION              WATCH

Investigative Disposition:

| | Work Rule #1 | Work Rule #2 | Work Rule #3 | Work Rule #4 | Work Rule #5 |
|---|---|---|---|---|---|
| Rule Number(s): | 3133 | 1.01 | | | |
| Disciplinary Action: | S-4 | EX | | | |
| Modified Action: | WR | | | | |
| Disciplinary Category: | C | | | | |
| Date of Action: | 04/26/2023 | 04/26/2023 | | | |

Waiver:                    ☐YES ☐NO           CVSA: ☐YES ☐NO        SAA:    ☐YES ☐ NO

---

3. Requesting the assistance of supervisors when the appropriate action required is unclear, not possible given circumstances, or not within the scope of authority of the employee of whom such action was requested; and

4. Performing official acts in a lawful, restrained, dignified, impartial, and reasonable manner.

But where the alleged violation of "Appropriate Action Required" arises from an officer's failure to "[perform] official acts in a lawful … manner," the law that the officer is alleged to have violated must be disclosed for the Notification Letter, or Plaintiff's monthly spreadsheets, to be meaningful.

**ATLANTA POLICE DEPARTMENT**
**NOTICE OF PROPOSED ADVERSE ACTION (NPAA)**
**OPS CONTROL #: 23-C-0110-MISC**

| NAME (LAST, FIRST, MI) | | 4 DIGIT ID | POSITION # | CLASSIFICATION | DIVISION | SECTION | WATCH |
|---|---|---|---|---|---|---|---|
| Threewitts, Travis | | 7672 | 47425 | Officer | FOD | Z-1 | MW |

| EMPLOYEE STATUS | | | | PERSONNEL ORDER # | DISTRIBUTION | EMERGENCY ACTION? | |
|---|---|---|---|---|---|---|---|
| PERMANENT [X] | PROBATION [ ] | OTHER [ ] | | APD.PO.23.102 | 7 | YES [ ]   NO [X] | |

| XXX | Suspension without pay for __4__ working days. | Date NPAA Issued |
|---|---|---|
| | Suspension without pay pending adjudication of criminal charges. | 2-24-23 |
| | Demotion from _____ to _____ | |
| | Dismissal | Effective Date of Action |
| | Other _____ | 4-26-23 |

**NARRATIVE (Reasons for Adverse/Emergency Action)**
The specific disciplinary action proposed for each Departmental work rule or other violation you are charged with is as follows:

| RULE VIOLATION | DISCIPLINARY ACTION |
|---|---|
| Work Rule 4.2.33 Conformance to Directives (APD.SOP.3133 Body Worn Cameras) | 4 DAY SUSPENSION |

---

**ATLANTA POLICE DEPARTMENT**
**ADVERSE ACTION CONTINUATION**
**NOTICE OF FINAL ADVERSE ACTION    OPS CONTROL #: 23-C-0110-MISC**

| NAME (LAST, FIRST, MI) | 4 DIGIT ID | POSITION # | CLASSIFICATION |
|---|---|---|---|
| Threewitts, Travis | 7672 | 47425 | Officer |

**NARRATIVE (REASONS FOR EMERGENCY ACTION)**

**GENERALLY:** You are charged with violating Rule 4.2.33 of the Employee Work Rules of this Department. Said Rules states:

<u>Conformance to Directives</u>

Employees are required to familiarize themselves with, and conform to, the rules, regulations, directives, and standard operating procedures of the Department.

**Specifically: The administrative investigation revealed that on February 21, 2023 at 2601 Brooke Terr NW you did not conform to APD.SOP.3133 by not placing your body worn camera in event recording mode when responding to a call for service at this location.**

**APD.SOP.3133/4.4.4(1): Sworn employees shall place their BWC into event recording mode for the following circumstances listed to include; but not limited to: 1. Officers will turn on their BWC into event recording mode at the moment they are dispatched to a call or initiate a call for service;**

Your actions as described above are a violation of said listed work rule.

But while the City treated this internally as a violation of SOP 3133 concerning Body Worn Cameras, the City's Notification Letter to the Complainant mentioned only Work Rule 4.2.33 Conformance to Directives. Since the Complainant had complained about something completely unrelated the officer's Body Worn Camera — and was likely unaware of whether it had been activated or not — the Notification Letter she received would have been meaningless to her (and it falsely reported the results of the investigation in any case).[11] Exhibit E-13.

As these Notification Letters do not communicate how a Complainant's actual complaint was resolved, these Citizen Complaints are still open and it would be appropriate for the Court to impose the $1,000 per day sanction until the City closes these investigations by telling the Complainant the actual disposition of his or her specific actual complaint. But since doing so would add significant additional dollars to an already large sanction, as an alternative to financial sanctions the Plaintiffs instead recommend and request that this Court order the City accurately to report to Plaintiffs and Complainants the underlying law, rule, or SOP that was investigated whenever an allegation or disposition

---

[11] The Notification Letter falsely stated that Officer Threewitts had been exonerated of the charge of violating Work Rule 4.2.33 Conformance to Directives, when in fact the officer had been disciplined for violating it. Exhibit E-13.

regarding "Conformance to Directives" or "Appropriate Action Required" is

presented to a Complainant or the Plaintiffs in any form.[12]

## V.     RECOMMENDATION TO IMPROVE EFFICIENCY AND REDUCE COST OF MONITORING

The failure of the City to provide a tracking number in connection with

certain Notifications Letters has frustrated Plaintiffs' ability to monitor whether

the City is resolving Citizen Complaints within 180 days as required. To improve

the efficiency and reduce the cost of monitoring the City's compliance, Plaintiffs

ask the Court to order the City to send all future Notification Letters that are sent

in paper form by a service that provides tracking (e.g., USPS Certified Mail or

Priority Mail, FedEx, or UPS) and to provide that tracking number to Plaintiffs

when the OPS file is produced as part of the City's monthly obligation, and to

---

[12] **Plaintiffs propose the following language for an Order from this Court:**

"In any information provided to a Complainant or Plaintiffs in any form, and specifically including the monthly spreadsheets provided to the Plaintiffs and Notification Letters sent to Complainants, where there is any reference to the APD Work Rules regarding "Conformance to Directives" or "Appropriate Action Required" the City shall also indicate all of the applicable underlying law(s), rule(s), regulation(s), directive(s) and SOP(s)."

send Plaintiffs' counsel a "blind carbon copy" of all Notification Letters sent by email to allow Plaintiffs' counsel to confirm the date the email was sent.[13]

## VI.    NECESSARY EXTENSION OF SUNSET PERIOD

Because the Plaintiffs are still far from obtaining the relief they bargained for over a dozen years ago in resolving this case with a Settlement and specific Consent Order, an extension of the sunset date for a period of three years is requested.  The Court's November 29, 2018 Consent Order was designed to monitor and ensure compliance by the City, and the sunset provision anticipated that after six years of *compliance* such close monitoring would no longer be needed. It was not anticipated that the City would ignore major components of that Order for nearly the entirety of the six-year monitoring process. Instead of

---

[13] **Plaintiffs also suggest the following language for an Order from this Court:**

> All "Notification Letters" sent by the City (or any other communication sent by the City to a Complainant regarding the disposition of his or her Citizen Complaint) shall: (A) if sent in paper form, be sent via a service that provides tracking (e.g., USPS Certified Mail or Priority Mail, FedEx, or UPS) and the City shall provide the tracking number to Plaintiffs when the applicable records for that Citizen Complaint are produced to Plaintiffs as part of the City's monthly obligation; or (B) if sent by email, the City shall simultaneously send a "blind carbon copy" to an email address designated by Plaintiffs' counsel, to allow Plaintiffs' counsel to confirm the date the notification email was sent.

six years of compliance, justifying the termination of monitoring, there has been five years of widespread non-compliance.

With barely more than one year left until the Consent Order sunsets, the City has managed to kick-the-can down the road for most of the monitoring period. With the significant sanctions requested here, it is hoped that the City will be energized to commit to full compliance with all its obligations under the Consent Order, but in light of the City's poor attitude to compliance, in the absence of an extension of the sunset date the Plaintiffs fear that compliance will slip (at best) and that key portions of the Consent Order will be nothing more than aspirations never realized.

## VII.   SANCTIONS CALCULATION

The total sanctions calculated with the methodology described above are set forth on the following page:

|  | Option 1 Category A + Category B Open | | Option 2 Category A Open, Category B Closed | |
|---|---|---|---|---|
|  | Total Number of Days Late | Sanction | Total Number of Days Late | Sanction |
| **Section 1(A) of March 1, 2023 Court Order: Suspended Sanction for Failure to Comply with the 180 Day Rule (Payable to Plaintiffs' Counsel)** | N/A | $25,000 | N/A | $25,000 |
| **Section 1(B) of March 1, 2023 Court Order: Coercive Sanctions Relating to Complaints Open More than 120 Days on Date of 3/1/2023 Court Order (Payable to United States Treasury)** |  |  |  |  |
| Notification Compliant and Timely (Exhibit F) | 0 | $0 | 0 | $0 |
| Notification Compliant but After Court's Deadline (Exhibit G) | 425 | $425,000 | 425 | $425,000 |
| No Notification Letter to Complainant (Exhibit H) | 880 | $880,000 | 880 | $880,000 |
| Notification Letters that are Wholly Deficient (Exhibit I) | 2640 | $2,640,000 | 2640 | $2,640,000 |
| Notification Letters Missing Nature of Discipline Only: Treated as Open (Exhibit J) | 2992 | $2,992,000 | N/A | N/A |
| Notification Letters Missing Nature of Discipline Only: Treated as Closed (Exhibit K) | N/A | N/A | 157 | $157,000 |
|  | 6937 | $6,937,000 | 4102 | $4,102,000 |
| **Section 1(C) of March 1, 2023 Court Order: Coercive Sanctions Relating to Complaints Open Fewer than 120 Days on Date of March 1, 2023 Court Order (Payable to United States Treasury)** |  |  |  |  |
| Notification Compliant and Timely (Exhibit L) | 0 | $0 | 0 | $0 |
| Notification Compliant but Closed After More Than 180 Days (Exhibit M) | 92 | $92,000 | 92 | $92,000 |
| No Notification Letter to Complainant (Exhibit N) | 56 | $56,000 | 56 | $56,000 |
| Notification Letters that are Wholly Deficient (Exhibit O) | 414 | $414,000 | 414 | $414,000 |
| Notification Letters Missing Nature of Discipline Only: Treated as Open (Exhibit P) | 1009 | $1,009,000 | N/A | N/A |
| Notification Letters Missing Nature of Discipline Only: Treated as Closed (Exhibit Q) | N/A | N/A | 22 | $22,000 |
|  | 1571 | $1,571,000 | 0  584 | $584,000 |
| **Section 1(E) of March 1, 2023 Court Order: Suspended Sanction Relating to Provision of Inaccurate Information (Payable to Plaintiffs' Counsel)** | N/A | $25,000 | N/A | $25,000 |
| **Section 1(F) of March 1, 2023 Court Order: Coercive Sanctions Relating to Provision of Inaccurate Information - [601] Items (Payable to United States Treasury)** | N/A | $602,000 | N/A | $602,000 |
| **Total Sanctions Payable to Plaintiffs' Counsel:** |  | **$50,000** |  | **$50,000** |
| **Total Sanctions Payable to United States Treasury:** |  | $9,110,000 |  | $5,288,000 |

## <u>CONCLUSION</u>

In return for finally adjudicating all Citizen Complaints in a timely and compliant manner, and providing only truthful and accurate information, the Court's March 1, 2023 Order effectively offered forgiveness for the City's previous 12+ years of non-compliance with multiple Court Orders. Had the City simply followed the Court's clear roadmap — if the City had simply sent Notification Letters to complainants containing the information described by the Court to let complainants fully and accurately know how their complaints had been resolved on the timetable set by the Court, and if the City had simply refrained from providing inaccurate information after March 1, 2023 — the City would have suffered no more than the relatively trivial $15,000 of sanctions set forth in the March 1, 2023 Court Order. But the City did neither.

The Court's expectations were clear, the rules to be followed were clear, and the sanctions for non-compliance were clear. Nothing was hidden from the City. The City was told exactly what to do, and what would happen if it did not.

The sanctions triggered by the City's conduct in response to the March 1, 2023 Court Order are significant, but all were avoidable. The City's failure to comply with these clear instructions demonstrates more clearly than ever the essential problem in this case: After more than 12 years of non-compliance, the City still just doesn't care very much about following the Orders of this Court.

This Court asked Plaintiffs to "calculate the exact amount of sanctions required" by this Court's previous orders.  Plaintiffs have done so, and hope that after 12 years of non-compliance an order of this magnitude will finally shift the City of Atlanta's attitude toward compliance. After more than 12 years of non-compliance, that attitude must be made to change.

  Respectfully submitted this 23rd day of October 2023.[14]

**ATTORNEYS FOR PLAINTIFFS**

**Daniel J. Grossman**
GA State Bar No. 313815
Law Office of Daniel J. Grossman
5101 Old Highway 5, #701
Lebanon, GA 30146
Telephone: (404) 654-0326
Email: Dan@DanGrossmanLaw.com

**Gregory R. Nevins**
GA State Bar No. 539529
Lambda Legal Defense & Education Fund, Inc.
730 Peachtree St. NE
Atlanta, GA 30308
Telephone: (404) 897-1880
Email: GNevins@lambdalegal.org

---

[14] Counsel hereby certifies that this Report is filed in Book Antiqua, 13 point type.

**Gerald R. Weber, Jr.**
GA State Bar No. 744878
Southern Center for Human Rights
60 Walton St NW
Atlanta, GA 30303-2149
Telephone: (404) 688-1202
Email: gweber@schr.org

**Clayton Skinner**
GA State Bar No. 360849
The Skinner Law Firm
P.O. Box. 570773
Atlanta, GA 30357
Telephone: (706) 215-5006
Email: clay@vpsouth.com

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

_____

| | |
|---|---|
| GEOFFREY CALHOUN, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action |
| v. | ) File No. 1:09-CV-3286-TCB |
| | ) |
| RICHARD PENNINGTON, et al. | ) |
| | ) |
| Defendants. | ) |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have this day electronically submitted the foregoing **PLAINTIFFS' REPORT TO COURT RE CITIZEN COMPLAINT SANCTIONS** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are on CM/ECF.

So certified this 23rd day of October 2023.

By:  **<u>Daniel J. Grossman</u>**
GA State Bar No. 313815
Attorney for Plaintiffs
Law Office of Daniel J. Grossman
5101 Old Highway 5, #701
Lebanon, GA 30146
Telephone: (404) 654-0326
Email: Dan@DanGrossmanLaw.com