# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |  |
|---|---|---|
| **GEOFFREY CALHOUN, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:09-CV-3286-TCB** |
| | ) | |
| **RICHARD PENNINGTON, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>DEFENDANT'S SUR-REPLY TO PLAINTIFFS' REPORT TO COURT RE CITIZEN COMPLAINT SANCTIONS</u>

Thomas E. Reilly, GA Bar No. 600195
tom.reilly@troutman.com
W. Alex Smith, GA Bar No. 532647
alex.smith@troutman.com
**Troutman Pepper Hamilton Sanders LLP**
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Tel: 404.885.3000
Fax: 404.885.3900

*Counsel for Defendant City of Atlanta*

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION .................................................................................................1

ARGUMENT AND CITATIONS TO AUTHORITY .............................................4

**I.**    THE MOST EQUITABLE REMEDY IS FOR THE COURT TO WAIVE
PAYMENT AND REQUIRE THE CITY TO DEDICATE RESOURCES
TO FUTURE *CALHOUN* COMPLIANCE......................................................4

**II.**    PLAINTIFFS INCORRECTLY ARGUE THAT THE CITY INTENDS TO
CONTINUE TO VIOLATE THE COURT'S ORDERS .............................10

**III.**   THE COURT SHOULD NOT CONSIDER PLAINTIFFS' ACCUSATIONS
OF NON-COMPLIANCE WITH OTHER PROVISIONS OF THE 2018
ORDER TO INCREASE THE AMOUNT OF SANCTIONS HERE ..........14

**IV.**   THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO EXTEND
THE MONITORING PROVISIONS OF THE 2018 ORDER .....................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*EEOC v. Guardian Pools, Inc.*,
   828 F.2d 1507 (11th Cir. 1987) .......................................................................5, 7

*FTC v. Leshin*,
   618 F.3d 1221 (11th Cir. 2010) ..................................................................15, 17

*Holland v. N.J. Dep't of Corr.*,
   246 F.3d 267 (3d Cir. 2001) ........................................................................18, 19

*In re McLean*,
   794 F.3d 1313 (11th Cir. 2015) ...........................................................................5

*Reynolds v. Roberts*,
   207 F.3d 1288 (11th Cir. 2000) .........................................................................13

*Taylor v. Teledyne Techs., Inc.*,
   338 F. Supp. 2d 1323 (N.D. Ga. 2004).........................................................15, 16

## **INTRODUCTION**

In its Response to Plaintiffs' Report, the City acknowledged it had made mistakes but showed that it was undertaking substantial and meaningful efforts to bring itself into compliance with the Citizen Complaint provisions of the 2018 Order. Those remedial measures range from dedicating additional City personnel and outside counsel resources to *Calhoun* compliance, to implementing a new electronic records system at a cost of over $90 million to the City.

In their Reply, Plaintiffs claim to champion reforms to "benefit the residents of Atlanta and the police department itself," Dkt. 531 at 43,[1] and they acknowledge the intent of the 2018 Order to promote "future compliance rather than punishment for past misconduct," *id.* at 11. Plaintiffs largely do not dispute that the City's recent efforts to improve compliance with the Citizen Complaint requirements have been successful. But rather than joining the City in its good faith efforts towards enhanced Citizen Complaint compliance and supporting the prudent expenditure of limited fiscal resources in furtherance of such compliance, Plaintiffs ask the Court to impose extraordinary monetary penalties "to punish the City for past violations" and "to encourage the City's future and continuing compliance" with other *Calhoun* provisions not at issue in this contempt proceeding. *Id.* at 4. In their effort to justify such monetary penalties, Plaintiffs incorrectly accuse the City of providing "false"

---

[1] Page citations herein are to the ECF page number.

and "untruthful" evidence regarding the financial impact that sanctions would have on the City, *id.* at 8–9, wrongly contend the City "intends to continue violating the Court's Orders" regarding the investigation and adjudication of Citizen Complaints, *id.* at 20, and inappropriately ask this Court to "consider[ ] when fashioning the Court's determination of sanctions for Citizen Complaints" Plaintiffs' incomplete and erroneous arguments regarding compliance with other *Calhoun* provisions, *id.* at 31–32.

The purpose of civil contempt sanctions in this proceeding is to coerce compliance with the Court's Orders addressing Citizen Complaints. The City has shown that despite earlier missteps, it has adopted and continues to implement meaningful remedial measures to bring itself into compliance with those Orders. The City does not ask the Court to absolve it of all errors but instead to recognize that these remedial measures are working and that the best use of any monetary sanctions to further the purposes of this lawsuit is to order the City to use such amounts to ensure that *Calhoun* compliance efforts continue. A multi-million-dollar sanction would—as Mohamed Balla, the City's Chief Financial Officer, explains in his Supplemental Declaration attached hereto as Exhibit B (and contrary to Plaintiffs' speculation otherwise)—materially and adversely impact APD by depriving it of important financial resources that otherwise could be used to implement enhancements to areas such as police training, police recruitment, and

the ACRB that would promote the goals of this lawsuit.  The Court should reject Plaintiffs' demand to "punish" the City, which is contrary to the purposes of civil contempt, and Plaintiffs' improper invitation to consider assertions of non-compliance with other *Calhoun* provisions that cannot support a Citizen Complaint coercive sanction.

The Court further should disregard Plaintiffs' incorrect suggestion that the City intends to violate the Court's Orders by not investigating all Citizen Complaints.  Plaintiffs misunderstand the City's evidence; the City investigates and adjudicates *all* Citizen Complaints, as Lt. Justina Collins (who oversees City OPS personnel conducting investigations into alleged APD misconduct) explains in her Supplemental Declaration attached hereto as Exhibit A.  The City has been providing information regarding underlying policy directives to complainants for several months now, and the City intends to provide additional information to complainants moving forward regarding the disposition of complaints in which other potential policy violations are identified to attempt to avoid Plaintiffs' misunderstanding regarding the scope of the City's investigations.

The Court also should deny Plaintiffs' misplaced request that the Court extend the 2018 Order's monitoring provisions.  Neither the March 2023 Order nor the October 2023 Order contemplate an extension.  Regardless, evidence of the City's significant efforts over the past several months to enhance compliance with the

Citizen Complaint provisions and its recent substantial compliance with those provisions refutes Plaintiffs' argument that the City has not "develop[ed] either the desire to comply *or* the procedures required to do so" that supposedly justifies an extension.  Dkt. 531 at 39 (emphasis in original).  Plaintiffs have not demonstrated and cannot demonstrate that an extension of the order is "essential," and any such request is unwarranted in any event.  Nor can Plaintiffs justify an extension of *all* monitoring provisions—including those with which Plaintiffs concede the City has complied—with speculation that such compliance "may backslide" without interminable monitoring.  *Id.* at 42.

The City regrets its earlier errors but has demonstrated that it is taking substantial steps towards full compliance—efforts that indisputably have shown significant success.  The City asks the Court, in fashioning an appropriate order, to reject Plaintiffs' Report and instead to consider the important public resources at stake and the meaningful remedial measures that the City has undertaken.

## ARGUMENT AND CITATIONS TO AUTHORITY

## I.   THE MOST EQUITABLE REMEDY IS FOR THE COURT TO WAIVE PAYMENT AND REQUIRE THE CITY TO DEDICATE RESOURCES TO FUTURE *CALHOUN* COMPLIANCE

This Court should exercise its discretion and direct that any sanction must be spent by the City in complying with the requirements of this Court's 2018 Order. Dkt. 523 at 34–36.  Dedicated resources earmarked for such compliance will best

4

serve the purpose of civil contempt "to coerce the defendant into compliance with the court's order" and further the goals of this lawsuit by ensuring future compliance with the *Calhoun* directives for years to come.  *In re McLean*, 794 F.3d 1313, 1323 (11th Cir. 2015) (citation omitted).[2]

The City's recent and significant steps towards improved compliance with the Citizen Complaint provisions demonstrate that no "large size of [ ] financial 'wake up call'" is "needed to get the attention of the City's political leadership" to remediate these issues.  Dkt. 531 at 7.  Although these changes regrettably were not implemented to resolve all Citizen Complaint issues within the deadlines set forth in the Court's March 2023 Order, the City has instituted substantial remedial measures over the past many months.  These efforts include internal training, additional staff dedicated to promoting *Calhoun* compliance, an overhauled Notification Letter and mailing process, an electronic system to centralize and standardize Citizen

---

[2] The City respectfully submits that the other purpose of civil contempt—"to compensate the complainant for losses sustained," *In re McLean*, 794 F.3d at 1323 (citation omitted)—already has been sufficiently addressed through the City's $15,000 payment to Plaintiffs' counsel as directed by the Court's March 2023 Order. *See* Dkt. 492 at 2 & n.3, 5, 6.  Payment of sanctions to the United States Treasury does not serve that purpose, and the recovery of monitoring costs of Plaintiffs' counsel, including those associated with this contempt proceeding, already are provided for in Section IX of the 2018 Order and are not the subject of this dispute. *See EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987) (civil contempt compensation "is determined by the extent of the actual loss" to complainant).

Complaint investigation and adjudication (which now is live and being used to process new complaints, *see* Supp. Decl. of Lt. Justina Collins, attached hereto as Ex. A, at ¶ 2), and dedicated outside counsel *Calhoun* compliance review.  Dkt. 523 at 23–28.  The City's recent steps have been resoundingly successful, as approximately 92 percent of Citizen Complaints that the City closed in October 2023 were finally adjudicated within 180 days, *see* Dkt. 523-25, and *all* Citizen Complaints assigned an OPS Complaint number that the City closed in November and December 2023, as well as in January 2024, were finally adjudicated within 180 days.[3]

The significant funding required to implement these changes—including the more than $90 million contract to modernize the City's electronic reporting and investigation system used to process Citizen Complaints, Dkt. 523-3 ¶ 7—has received "the attention of the City's political leadership," Dkt. 531 at 7; indeed, the City Council provided APD "authorization through legislation" in March 2023 to procure that costly system to bring itself into compliance with the Court's Orders,

---

[3] *See* "OPS Monthly Production for Nov. 2023," attached hereto as Ex. C; "OPS Monthly Production for Dec. 2023," attached hereto as Ex. D; and "OPS Monthly Production for Jan. 2024," attached hereto as Ex. E.  The City also finally adjudicated within 180 days nearly all RNO files (recommend not open, which occur in instances such as when the subject of the complaint worked for a different agency during the incident or when body worn camera footage or other evidence clearly disproves a complaint, *see* Dkt. 523-1 ¶ 16 n.5) reported in these months.

Dkt. 523-2 ¶ 9.  A Court Order requiring the City to dedicate funds to continuing such efforts plainly will command the attention of leadership who preside over the City's budget.[4]

Plaintiffs mischaracterize the City's response in contending that the City asks "the Court [to] impose no sanction at all" and that the parties "already tried that idea, and it didn't work." Dkt. 531 at 10.  The Court has not ordered the City to dedicate specific financial resources towards *Calhoun* compliance.[5]  Nor does the City ask the Court to ignore instances of non-compliance with the Citizen Complaint provisions.  Yet the law affords the Court "wide discretion to fashion an equitable remedy for contempt that is appropriate to the circumstances." *Guardian Pools*, 828 F.2d at 1515.  The City's substantial steps towards compliance have generated significant multi-million-dollar costs. Dkt. 523 at 35.  Requiring the City to dedicate

---

[4] Plaintiffs' comments regarding the legal fees that the City has incurred are inapposite.  Dkt. 531 at 5.  While the City has incurred fees in defending itself in good faith in this litigation, the City's recent substantial and costly steps towards Citizen Complaint compliance demonstrate that the City is "spend[ing] tax dollars . . . embracing" compliance rather than "fighting" it.  *Id.*

[5] Plaintiffs' concern that they cannot "trust that the City will use those funds to pay for compliance," Dkt. 531 at 10, is unwarranted; it is undisputed that the City already has spent substantial funds on *Calhoun* compliance, and it is committed to continuing to do so.

amounts to ensure those costly efforts are continued would be "appropriate to the circumstances" in furthering the goals of this lawsuit.[6]

Plaintiffs improperly accuse the City of submitting "false" and "untruthful" evidence to purportedly "actively mislead[ ] the Court" in showing that significant sanctions very likely would materially and adversely impact APD's budget.  Dkt. 531 at 8–10.  Plaintiffs' argument is predicated entirely on their review of other City settlement payments and speculation that because those amounts were "paid from the City of Atlanta's General Fund[,] . . . [t]hose payments had no financial impact at all on the operations of the police department."  *Id.* at 8; *see also* Dkt. 528-5.

---

[6] The City similarly disagrees with Plaintiffs' resistance to its request for reductions to account for substantial compliance and certain duplicative information.  Dkt. 531 at 12–15.  The City does not ask the Court to modify its rulings to allow for such issues routinely in the future and instead requests that the Court exercise its equitable discretion in fashioning sanctions that account for the City's recent significant progress in bringing itself into compliance with the Court's Orders.

Plaintiffs' belated request for upward adjustments, *see id.* at 16, likewise fails.  The notification letter was delivered to Sherica Harper on July 17, 2023—167 days after the date of complaint—thereby triggering no sanctions.  *See* Delivery Confirmation, attached hereto as Ex. F; Dkt. 523-8 at 5.  Margaret Kimbrough's notification was received 196 days after the complaint, within the 205-day window supporting substantial compliance with the 180 Day Rule, and the City respectfully submits that it likewise should not generate sanctions in this proceeding.  *See* Dkts. 523 at 37; 531 at 16.  The City further asks that the Court exercise its equitable discretion in finding that the City substantially complied with this Court's March 2023 Order governing the disclosure of Command Complaints, *see* Dkt. 492 at 7, as the May 13, 2023 Command Complaint was registered less than two weeks after the conclusion of the grace period provided by this Court in the March 2023 Order and the City ultimately disclosed the complaint to Plaintiffs (albeit untimely).

Plaintiffs fail to recognize that APD receives all of its funds for operating expenses as allocations from the General Fund; it has no independent source from which it can draw funds.  Supp. Decl. of Mohamed Balla, attached hereto as Ex. B, at ¶ 3. The City is self-insured for general claims against it, and contempt sanctions would be paid out of the taxpayer-funded General Fund and necessarily must be absorbed by the range of services that the City provides to its residents from the General Fund. *Id.* at ¶¶ 3–4.

Millions of dollars in sanctions likely would impact APD's ability to provide some of the enhancements that this litigation seeks to promote.  As Mr. Balla explains, "APD is a prioritized department within the services that receive funds from the General Fund, meaning that APD likely would have been allocated for the purposes of enhancing the services it provides, at least in significant part, any funds that are the subject of sanctions in this action."  *Id*. at ¶ 4.  Over the past several years, the City has prioritized and developed an aggressive agenda for promoting police training, police recruitment, and ACRB review and recommendations that foster many of the very purposes of this litigation.  However, "because the City must continue to ensure that funds are available from the General Fund to provide the wide range of necessary baseline services to its residents," Mr. Balla describes that "the payment of millions of dollars in sanctions likely would have to come at the expense of these types of enhancements in police training, police recruitment, and

the ACRB." *Id.* at ¶ 5. While Plaintiffs nominally are correct that "[s]anctions would reduce the funds available to APD only if the City Council *chooses* to do that," Dkt. 531 at 9 (emphasis in original), the payment of potentially millions of dollars of taxpayer-funded money in sanctions necessarily must come from enhancements such as those that Mr. Balla identifies and that otherwise would further the purposes of this lawsuit because the City must continue to ensure that it provides other necessary services to its residents with its limited available funds.

## II.  PLAINTIFFS INCORRECTLY ARGUE THAT THE CITY INTENDS TO CONTINUE TO VIOLATE THE COURT'S ORDERS

In their Report, Plaintiffs asked this Court to modify the 2018 Order to require the City "to report to Plaintiffs and Complainants the underlying law, rule, or SOP that was investigated whenever an allegation or disposition regarding 'Conformance to Directives' or 'Appropriate Action Required' is presented to a Complainant or the Plaintiffs in any form." Dkt. 515 at 47–48. The City responded, showing that imposing burdensome heightened reporting requirements was unwarranted because Plaintiffs failed to prove a change necessitating modification of the 2018 Order and, regardless, that the City had begun to provide such information. Dkt. 523 at 43–47. Rather than address these issues, Plaintiffs misconstrue the City's Response and construct a strawman to attack in wrongly contending the City intends to "not investigat[e] the actual complaint made by some complainants." Dkt. 531 at 21.

The City investigates and finally adjudicates *all* Citizen Complaints, and the Court should reject Plaintiffs' misdirection to attempt to sway the Court into modifying the 2018 Order.  As Lieutenant Collins, who is directly involved in APD's *Calhoun* compliance efforts and oversees OPS personnel conducting investigations into APD misconduct, *see* Dkt. 523-2 ¶ 3, affirms in her Supplemental Declaration, "OPS reviews and investigates all complaints raised by all complainants, which includes each and every allegation raised in those complaints."  Ex. A ¶ 5.[7]  When OPS identifies "other potential policy violations" in investigating a Citizen Complaint, "[t]he investigation into the other potential policy violation is in addition to, and not in lieu of, the investigation into the particular complaint raised by the complainant."  *Id.* at ¶ 5.[8]  This holds true for each of the complaints that Plaintiffs

---

[7] Plaintiffs incorrectly contend that the City argues that "a Citizen Complaint alleging the violation of a specific APD SOP does not require adjudication if the SOP does not also neatly correspond to a 'Work Rule.'"  Dkt. 531 at 23.  APD's Disciplinary Process SOP mandates the investigation and appropriate discipline for "Work Rules or City ordinance violations."  Dkt. 523-1 at 17.  Because certain directives do not have specific Work Rules (such as the use of body worn cameras for public interactions with law enforcement), OPS cites APD Work Rule 4.2.33 Conformance to Directives pursuant to APD's Disciplinary Process SOP.  OPS does, however, investigate all such complaints regardless of whether they neatly fall within a Work Rule or City ordinance violation, Ex. A ¶ 5, and APD now provides underlying policy directive information to complainants, *id.* at ¶ 3.

[8] Lieutenant Collins explains that this also is true as to the excessive force example that she describes in Paragraph 21 of her original Declaration, Ex. A ¶ 7; *see also* Dkt. 523-2 ¶ 21, which Plaintiffs misconstrue in arguing that "OPS will investigate the reporting violation *rather* than the Complainant's actual complaint about excessive force," Dkt. 531 at 25 (emphasis in original).

cite in their reply brief in contending that the City is *"not investigating the actual complaint made by the Complainant*," *see* Dkt. 531 at 26–28, 26 n.9 (emphasis in original), as Lieutenant Collins details in her Supplemental Declaration.  Ex. A ¶¶ 6—8.

For example, in OPS File No. 23-C-0537-SOP, Plaintiffs wrongly contend that "APD made no inquiry into whether the citizen had been falsely arrested" and investigated "*only* whether the officer activated her Body Worn Camera" ("BWC"). Dkt. 531 at 27 (emphasis in original).  OPS conducted a preliminary investigation and determined that the officer had received information on the officer's mobile data terminal regarding a warrant of a fugitive from justice.  Ex. A ¶ 8(e).  The preliminary investigation showed that the warrant instructed that the warrant and its extradition status must be verified, which provided the officer with reasonable articulable suspicion to conduct the traffic stop and lawfully detain the citizen.  *Id.* The citizen was released when the jurisdiction advised that it did not wish to extradite the citizen.  *Id.*  OPS deemed the citizen's complaint to be unfounded, but OPS opened an investigation into the potential BWC policy violation.  *Id.*  The City thus investigated and finally adjudicated both the actual complaint of the complainant *and* another potential policy violation identified during the investigation.

With regard to Plaintiffs' request for modification of the 2018 Order as to the Conformance to Directives and Appropriate Action Required categories, the Court's Orders do not require the level of specificity that Plaintiffs demand, which would impose a burdensome manual review and notification process to identify the underlying policy directive in each Notification Letter when the City already identifies the relevant Work Rule or City ordinance.[9]   Regardless, the City began identifying the underlying policy directive in its Notification Letters several months ago, Ex. A ¶ 3, which Plaintiffs do not dispute.   OPS also intends to provide additional information in its Notification Letters moving forward to attempt to avoid Plaintiffs' misunderstanding regarding whether OPS investigates all complaints.   In particular, "[i]n situations in which OPS determines the complainant's allegation is unsupported during its preliminary investigation but identifies and investigates another potential policy violation, OPS intends to identify in an initial notification

---

[9] In this regard, the 2018 Order requires only that the City indicate, for complaints that are assigned an OPS Complaint number, "the law, rule, or SOP the officer was alleged to have violated."   Dkt. 434 § III(C)(1)(a)(v).   "[L]ong standing precedent evinces a strong public policy against judicial rewriting of consent decrees.   [A] district court may not impose obligations . . . that are not *unambiguously mandated* by the decree itself."   *Reynolds v. Roberts*, 207 F.3d 1288, 1300 (11th Cir. 2000) (second alteration in original) (emphasis added) (citation omitted).   The City's citation to APD Work Rule 4.2.33 (Conformance to Directives) and APD Work Rule 4.1.1 (Appropriate Action Required) complies with the 2018 Order's directive, and the 2018 Order does not "unambiguously mandate[ ]" that the City also must describe underlying policy violations, *Reynolds*, 207 F.3d at 1300.

letter to the complainant that (a) OPS determined the original allegation was unsupported, and (b) another potential policy violation was identified and will be investigated.   OPS will inform the complainant of the disposition of that investigation in a separate notification letter that closes out the investigation."  Ex. A. at ¶ 9.[10]

Plaintiffs thus wrongly argue that "the City is unwilling to fully, truthfully, and accurately disclose to Complainants how . . . investigations were resolved."  Dkt. 531 at 21.  No modification of the Court's Orders is warranted.

## III.   THE COURT SHOULD NOT CONSIDER PLAINTIFFS' ACCUSATIONS OF NON-COMPLIANCE WITH OTHER PROVISIONS OF THE 2018 ORDER TO INCREASE THE AMOUNT OF SANCTIONS HERE

Plaintiffs improperly ask the Court to consider "broader non-compliance issues" with other aspects of the 2018 Order "when fashioning the Court's determination of sanctions for Citizen Complaints."  Dkt. 531 at 31–32.  The only requirements at issue in this contempt proceeding relate to Citizen Complaints.  If the Court decides to impose sanctions, it should do so only in an amount necessary to coerce compliance with the Citizen Complaint provisions, and Plaintiffs'

---

[10] The City also has notified and will continue to notify complainants of their right to inspect the investigation file and ask questions to an OPS Lieutenant regarding the disposition.  Dkt. 523-2 ¶ 24.

accusations regarding the City's compliance with other provisions of the 2018 Order cannot support increased sanctions in this proceeding.

Contempt sanctions must be tailored to coerce compliance with specific provisions of an order.  If a party is found to be in contempt, "a court cannot punish the subject of the action for his past violations of the order; instead, it must create prospective sanctions to induce obedience by the contemnor in the future." *Taylor v. Teledyne Techs., Inc.*, 338 F. Supp. 2d 1323, 1346 (N.D. Ga. 2004).  "This is so because civil contempt is remedial in nature." *Id.*  "Accordingly, before issuing a civil contempt citation, a court must be able to *identify the specific action that the contemnor is being directed to take or forego* and then coerce compliance by setting out the sanctions that will befall the subject should he continue not to follow the court's order." *Id.* at 1347 (emphasis added).  The contemnor must "be afforded the opportunity to purge his sanction of a fine, in the civil context, where a fine is not compensatory." *FTC v. Leshin*, 618 F.3d 1221, 1239 (11th Cir. 2010).

This contempt proceeding relates solely to the City's compliance with the Citizen Complaint provisions of the 2018 Order.  Plaintiffs' motion triggering this proceeding requested an order "to address and correct . . . non-compliance with the 'Citizen Complaint' requirements of Section III of the November 29, 2018, Order." Dkt. 473 at 1; *see also* Dkt. 485 (Second Motion for Contempt relating to same issues).  The Court's March 2023 Order identified coercive sanctions that could be

imposed if the City did not comply with Citizen Complaint requirements, Dkt. 492 at 2–7, and the Court subsequently ordered Plaintiff to calculate sanctions under the March 2023 Order "to ensure the City's compliance with this Court's repeated orders," Dkt. 512 at 2.

Any coercive sanction that the Court may impose must relate to "the specific action" that the March 2023 Order "directed [the City] to take," *Taylor*, 338 F. Supp. 2d at 1347, which related solely to the Citizen Complaint requirements of the 2018 Order, Dkt. 492 at 2–7. Consideration of other conduct to increase the amount of sanctions would not be sufficiently tethered to the Court's "prospective sanctions to induce obedience by the contemnor in the future" relating to Citizen Complaints and thus would not be "remedial in nature." *Taylor*, 338 F. Supp. 2d at 1346. If Plaintiffs wanted the Court to consider alleged violations of other *Calhoun* provisions, they should have moved the Court to issue a show cause order as to those specific requirements and then proved any such claimed violation by clear and convincing evidence; if the Court finds a violation,[11] the Court "must create prospective

_____

[11] To be clear, the City disputes Plaintiffs' accusation that there are "serious problems" regarding the City's compliance with other provisions of the 2018 Order, including but not limited to Stop and Think Forms. Dkt. 531 at 30. Plaintiffs rely on unsupported allegations that fail to demonstrate non-compliance. The City provides training regarding Stop and Think Forms as contemplated by the 2018 Order. The City will continue to respond to and work in good faith with Plaintiffs if they raise concerns regarding the City's compliance with other *Calhoun* provisions

sanctions to induce obedience by the contemnor in the future" as it relates to the proven "past violations of the order." *Id.* at 1345–46. The City then must "be afforded the opportunity to purge his sanction of a fine." *Leshin*, 618 F.3d at 1239. Plaintiffs have not done so, and the Court has not issued prospective sanctions relating to other *Calhoun* provisions. The Court should reject Plaintiffs' inappropriate request to consider alleged non-compliance with other provisions in issuing a remedial sanction relating to Citizen Complaints.[12]

## IV. THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO EXTEND THE MONITORING PROVISIONS OF THE 2018 ORDER

Plaintiffs' request to extend the monitoring provisions of the 2018 Order is premature and unwarranted. Dkt. 531 at 38–43.

Plaintiffs fail to explain why it would be appropriate for the Court to ignore the significant efforts of the City over the past several months to enhance compliance with the Citizen Complaint requirements, as well as the City's forthcoming efforts

---

and, if Plaintiffs do bring such issues to the Court for review, the City will respond fully to such allegations at the appropriate time.

[12] Plaintiffs again erroneously accuse the City of making "false" statements, this time supposedly by "clearly suggesting that there are no other compliance issues" with other *Calhoun* provisions. Dkt. 531 at 30. The City correctly noted in its Response that it has reviewed and addressed issues that Plaintiffs have raised and that "[t]hough the parties have differing perspectives on the application of relevant policies, no such incidents have necessitated the Court's intervention." Dkt. 523 at 32. The City referenced other *Calhoun* provisions in its Response to underscore that the amount of sanctions should be commensurate with the Citizen Complaint provisions, which are but one aspect of the 2018 Order.

during the remaining nine months under the 2018 Order's monitoring provisions, in deciding whether to extend the Citizen Complaint monitoring provision (or any monitoring provision) of the 2018 Order. The monitoring provisions do not sunset until November 29, 2024. Dkt. 434 §§ II(D), III(D), IV(C), V(D), VII(D), IX(4). The Court "may use its compliance enforcement power to extend one or more provisions of a decree *only if such compliance enforcement is essential to remedy the violation* and thus provide the parties with the relief originally bargained for in the consent order." *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 283 (3d Cir. 2001) (emphasis added). That determination can be reached only where "time and experience have demonstrated that the decree has failed to accomplish the result that it was specifically designed to achieve." *Id.* (citation omitted). Evidence regarding whether the City has complied with the 2018 Order in the year prior to the expiration of the monitoring provisions plainly bears upon whether "the decree has failed to accomplish the result that it was specifically designed to achieve." *Id.* (citation omitted). Indeed, evidence showing that the City has substantially complied with the Citizen Complaint provisions over the past several months demonstrates that the City's significant efforts to enhance compliance are working and that no modification "is essential" to remedy alleged violations. Continued compliance in the coming months would weigh even more strongly against any such modification.

18

Plaintiffs also fail to provide evidence to support their broad-brushed request to extend the monitoring provisions for the other requirements of the 2018 Order. "[A]n unadjudicated allegation by one party is not a proper basis for extending a consent decree." *Holland*, 246 F.3d at 285.  The Court instead must make "specific findings" of "changed circumstances that thwarted the basic purpose behind the Decree such that the Decree failed to accomplish its designed result," and the Court must do so for each provision that it considers whether to extend.  *Id.* at 285–86. The Court plainly cannot do so on the current record as to the City's compliance with the other provisions of the 2018 Order.[13]  Plaintiffs' speculation that areas of "great progress . . . may backslide" without an extension of all monitoring provisions (which apparently includes even those provisions with which Plaintiffs concede the City has complied), Dkt. 531 at 42, plainly does not support a broad-based extension that may be permissible only if Plaintiffs first prove it is "essential to remedy" a violation.  *Holland*, 246 F.3d at 283; *see also id.* at 286 (emphasizing

---

[13] Plaintiffs request to extend *any* monitoring provision is procedurally improper. The March 2023 Order did not address or contemplate a potential extension of those provisions.  The October 2023 Order similarly ordered Plaintiffs only "to calculate the exact amount of sanctions required [under the March 2023 Order] and submit the figure to the Court within 14 days of this order for review." Dkt. 512 at 2.

that "extension of the entire Decree based on [the defendant's] non-compliance with only one minor part of it would not be reasonable").[14]

The Court should reject Plaintiffs' premature and improper request to extend the 2018 Order's sunset provisions.


Respectfully submitted this 29th day of February, 2024.

/s/ Thomas E. Reilly
Thomas E. Reilly, GA Bar No. 600195
tom.reilly@troutman.com
W. Alex Smith, GA Bar No. 532647
alex.smith@troutman.com
**Troutman Pepper Hamilton Sanders LLP**
600 Peachtree Street, NE, Suite 3000
Atlanta, GA 30308
Tel: 404.885.3000
Fax: 404.885.3900

*Counsel for Defendant City of Atlanta*

---

[14] Plaintiffs erroneously contend that "[t]he only argument against extending monitoring is the administrative burden" imposed on the City. Dkt. 531 at 39. "[A] court may use its compliance enforcement power to extend one or more provisions of a decree *only if such compliance enforcement is essential to remedy the violation*." *Holland*, 246 F.3d at 283 (emphasis added). Regardless of the substantial costs of ongoing monitoring for three more years, Plaintiffs have failed to prove an extension of the monitoring provisions is "essential."

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **GEOFFREY CALHOUN, et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Case No. 1:09-CV-3286-TCB** |
| | ) |
| **RICHARD PENNINGTON, et al.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## FONT CERTIFICATION

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that this filing complies with the type and font requirements set forth in Local Rule 5.1.

Respectfully submitted this 29th day of February, 2024.

*/s/ Thomas E. Reilly*
Thomas E. Reilly

21

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **GEOFFREY CALHOUN, et al.** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Case No. 1:09-CV-3286-TCB** |
| | ) |
| **RICHARD PENNINGTON, et al.** | ) |
| | ) |
| **Defendants.** | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2024, I served the foregoing *DEFENDANT'S SUR-REPLY TO PLAINTIFFS' REPORT TO COURT RE CITIZEN COMPLAINT SANCTIONS* on all counsel of record in this matter via this Court's CM/ECF e-filing system.

Respectfully submitted this 29th day of February, 2024.

*/s/ Thomas E. Reilly*
Thomas E. Reilly

22