# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| GEOFFREY CALHOUN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:09-CV-3286-TCB |
| | ) | |
| RICHARD PENNINGTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**[PROPOSED] ORDER**

This matter is before the Court on the Parties' Joint Motion for Approval of Proposed Consent Order and Appointment of Special Master (Dkt. 551) (the "Motion"). Having considered all matters of record, and for good cause shown, the Motion is hereby **GRANTED**. Accordingly, it is hereby **ORDERED**:

## I. TRAINING

**A.     Training**

1.     The City of Atlanta ("the City") shall conduct "*Calhoun* Approved Training" (as defined in Section I(B)(3)) for all sworn Atlanta Police Department ("APD") officers for calendar years 2024 and 2025 by no later than the last day of August of each such year.

**B.** **Continuation of Reform**

1. The requirements of Section I(A)(1) shall not apply to sworn APD officers who work no hours in the month during which training is conducted, or who experience extenuating circumstances making them unavailable to timely complete the training (for example, military duty or hospitalization). The City will require any such officers to complete the *Calhoun* Approved Training within 30 days of their return to active APD duty.

2. The *Calhoun* Approved Training will be presented online rather than in person, and shall instruct about current Fourth Amendment law regarding detentions, arrests, frisks and searches generally, the topics set forth in Exhibit A hereto ("Constitutional Principles"), and the topics set forth in Exhibit B hereto ("Calhoun SOP Topics").

3. Plaintiffs approve the training video (contained on a thumb drive that is Exhibit C to this Order, the "*Calhoun* Approved Training") with the exception of the Assessment Questions. Plaintiffs do not approve the Assessment Questions, but for purposes of compromise Plaintiffs stipulate that: 1) they will not argue that the Assessment Questions in the *Calhoun* Approved Training violate Section I(A)(1) of this Order; and 2) the *Calhoun* Approved Training may be used for full satisfaction of the training and recurrent training requirements of Section I(A)(1) of this Order. The Parties further agree that:

(a)    the "fast forward" function of the *Calhoun* Approved Training will be disabled, so that trainees are unable to fast forward through any portion of the training that they have not yet viewed;

(b)    for each embedded segment of Assessment Questions in the *Calhoun* Approved Training, the segment's order of questions and the questions' order of answer choices will be randomized; and

(c)    APD officers will be required to periodically respond to a prompt during the *Calhoun* Approved Training confirming their attention to the training, via an automated mechanism to be agreed upon by the Parties or, failing such agreement, to be decided by the Special Master (who shall be appointed by this Court pursuant to Fed. R. Civ. P. 53 in a separate written Order entered contemporaneously herewith).

The City shall not change any material element of the structure, format, or content of the *Calhoun* Approved Training or the Assessment Questions unless such changes are presented to and approved by the Special Master in writing prior to implementation; the Special Master's approval shall not be unreasonably withheld, delayed, or conditioned.

3

4.    In addition to the training implemented pursuant to this Section I, the City may implement the *Calhoun* Approved Training at any other time in its sole discretion, without prior consent of Plaintiffs' counsel or the Special Master.

**C.    Monitoring Facilitation**

1.    By September 15, 2024, the City shall provide Plaintiffs' counsel with a roster of all sworn employees of APD as of the final day of August 2024 that shall contain the date that each of those sworn employees completed the *Calhoun* Approved Training for 2024 or the reason why timely completion did not occur (as applicable pursuant to Section I(B)(1)). In addition, the City shall provide a composite analysis for each test question showing the number of officers who initially answered each question correctly, the number who initially answered each question incorrectly, and the average number of attempts needed for officers to correctly respond to each question.

2.    For each sworn officer unable to timely complete the *Calhoun* Approved Training for 2024 for the reasons described in Section I(B)(1), the City will inform Plaintiffs' counsel within 15 days of the sworn officer's completion of the *Calhoun* Approved Training for 2024, indicating the date that the officer returned to active-duty and the date that the training was completed.

3.    By September 15, 2025, the City shall provide the Special Master with a roster of all sworn employees of APD as of the final day of August 2025 that shall

contain the date that each of those sworn employees completed the *Calhoun* Approved Training for 2025 or the reason why timely completion did not occur (as applicable pursuant to Section I(B)(1)). In addition, the City shall provide a composite analysis for each test question showing the number of officers who initially answered each question correctly, the number who initially answered each question incorrectly, and the average number of attempts needed for officers to correctly respond to each question. The City shall provide additional remedial training via the applicable portion(s) of the *Calhoun* Approved Training for each officer who fails to answer at least seventy (70) percent of the Assessment Questions correctly on the first attempt.

4.      For each sworn officer unable to timely complete the *Calhoun* Approved Training for 2025 for the reasons described in Section I(B)(1), the City will inform the Special Master within 15 days of the sworn officer's completion of the *Calhoun* Approved Training for 2025, indicating the date that the officer returned to active-duty and the date that the training was completed.

**D.      Sunset**

1.      The provisions of this Section I shall terminate on January 1, 2026. Thereafter, APD will require all officers to receive comprehensive training on the Fourth Amendment at least annually.

## II.  STANDARD OPERATING PROCEDURES (SOPS)

**A.**     **APD Standard Operating Procedures**

1.     The City shall not maintain, adopt, or revise any APD Standard Operating Procedure ("SOP") inconsistent with any of the Constitutional Principles set forth in Exhibit A hereto.

2.     The City shall not maintain, adopt, or revise any SOP inconsistent with any provision of this Order, any of the Calhoun SOP Topics set forth in Exhibit B hereto, or any of the "Calhoun SOPs" (as defined below), except as set forth in Section II(B)(3).

**B.**     **Continuation of Reform**

1.     As used herein, "Calhoun SOP" shall mean the SOPs listed on the attached Exhibit D and any SOP added to this list pursuant to the process described in this Section II(B).

2.     Except as set forth in this Section II(B), the City shall retain without change the Calhoun SOPs.

3.     The City may modify the SOPs to the extent that a change is made to the applicable legal principle through statutory change or legal interpretation by the United States Supreme Court, United States Court of Appeals for the Eleventh Circuit, the Supreme Court of Georgia, or the Georgia Court of Appeals.

6

4.     If the City modifies any Calhoun SOP for any reason before ten months following the entry of this Order, within five business days (i.e., weekdays except federal holidays) the City shall inform Plaintiffs' counsel and provide a copy of the modified SOP, in clean and blacklined form, to Plaintiffs' counsel. This requirement shall be referred to as the "Five-Day Reporting Requirement."

5.     Prior to ten months following the entry of this Order, if Plaintiffs reasonably believe that language in any SOP not listed on Exhibit D substantively implicates or is inconsistent with any provision of this Order, any of the Constitutional Principles set forth in Exhibit A, or any of the Calhoun SOP Topics set forth in Exhibit B, or any of the Calhoun SOPs, Plaintiffs may request in writing that the City add such an SOP to the list of Calhoun SOPs, which SOPs are subject to the Five-Day Reporting Requirement.  If the City objects to adding an SOP to the list of Calhoun SOPs, the Parties shall meet and confer.  If a dispute remains, the City will have 15 business days in which to add the SOP to the list of Calhoun SOPs or present the issue to the Special Master for resolution.  If the City does not timely object, the SOP shall be added to the list of Calhoun SOPs.

6.     If the City modifies any Calhoun SOP for any reason between ten months following the entry of this Order and December 31, 2025, within five business days (i.e., weekdays except federal holidays) the City shall inform the

Special Master and provide a copy of the modified SOP, in clean and blacklined form, to the Special Master.

7.     Between ten months following the entry of this Order and December 31, 2025, if the Special Master reasonably believes that language in any SOP not listed on Exhibit D substantively implicates or is inconsistent with any provision of this Order, any of the Constitutional Principles set forth in Exhibit A, or any of the Calhoun SOP Topics set forth in Exhibit B, or any of the Calhoun SOPs, the Special Master may request in writing that the City add such an SOP to the list of Calhoun SOPs, which SOPs are subject to the Five-Day Reporting Requirement.  If the City objects to adding an SOP to the list of Calhoun SOPs, the City and the Special Master shall meet and confer.  If a dispute remains, the City will have 15 business days in which to add the SOP to the list of Calhoun SOPs or present the issue to the Court for resolution.  If the City does not timely object, the SOP shall be added to the list of Calhoun SOPs.

**C.     Monitoring Facilitation**

1.     By no later than midnight on February 28, 2025, the City must provide Plaintiffs' counsel with a copy of every SOP in effect on December 31, 2024, except that the requirements of this Section II(C)(1) shall not apply to Confidential SOPs. The SOPs shall be provided in both Microsoft Word and PDF (Adobe Acrobat)

formats. These files shall be named as follows: [SOP number] [SOP Title] [Year.Month.Day of Last Revision].

2.      By no later than midnight on the fifteenth days of the months of October 2024 and January and April 2025, the City must provide Plaintiffs' counsel with the following information for the immediately preceding quarter. By no later than midnight on the fifteenth days of the months of July and October 2025 (together with the fifteenth days of the months of October 2024 and January and April 2025, the "Reporting Dates"), the City must provide the Special Master with the following information for the immediately preceding quarter. The requirements of this Section II(C)(2) shall not apply to Confidential SOPs.

(a)      A copy of every SOP that is subject to the Five-Day Reporting Requirement, which is in effect on the final day of the immediately preceding quarter. For example, on October 15, 2024 (the Reporting Date), the City must provide copies of all SOPs subject to the Five-Day Reporting Requirement in effect on September 30, 2024. The SOPs shall be provided in both Microsoft Word and Adobe Acrobat formats. The titles of these SOPs shall contain: [SOP number] [SOP Name] [Year.Month.Day of Last Revision].

(b)     As a separate document, a revision list indicating, in separately headed sections: (i) every SOP first implemented during the immediately preceding quarter; (ii) every SOP revoked during the immediately preceding quarter; and (iii) every SOP other than those already identified in (i) or (ii) to which any change whatsoever has been made during the immediately preceding quarter.  The SOPs identified on these lists shall be denoted as follows: [SOP Number] [SOP Name] [Year.Month.Day of Last Revision].  For any category in which there are no applicable SOPs for the immediately preceding quarter, this shall be indicated affirmatively by the word "None."  This document must always be provided, even if no SOPs were implemented, revoked, or changed during the immediately preceding quarter.

(c)     For every SOP identified in Section II(C)(2)(b)(iii), a separate blackline document in Microsoft Word format reflecting every change made to that SOP in the immediately preceding quarter. The Parties agree that this blackline document shall be created by comparing the version of the SOP in effect on the immediately preceding Reporting Date and the version of the SOP in effect on the current Reporting Date using Microsoft Word's blackline

function or the equivalent thereof that is mutually approved by the Parties.

3.      No more than once per calendar year, the City shall be entitled to a four-calendar-day extension of one Reporting Date, if the request for such extension is timely (i.e., communicated to Plaintiffs' counsel or the Special Master, as applicable, prior to midnight on the Reporting Date).

**D.      Sunset**

1.      Except for Section II(A)(1), the provisions of this Section II shall terminate on January 1, 2026.

## III.  CITIZEN COMPLAINTS

**A.      Citizen Complaints**

1.      APD shall investigate and finally adjudicate all Citizen Complaints of police misconduct of any kind within 180 days of the complaint.

**B.      Continuance of Reform**

1.      *Definitions*.  For purposes of Section III, the following definitions shall apply:

> (a)      "Adjudicate" means to rule on judicially, so simply closing citizen complaints without the systematic inquiry and thoughtful consideration generally applied by a court in resolving matters will not constitute substantial compliance with this obligation.

(b)     "APD Administration" means any sworn member of the Atlanta Police Department whose rank is sergeant or higher.

(c)     "APD Facilities" means Atlanta Police zone precincts or mini-precincts, APD Office of Professional Services ("OPS") building, Training Academy, Headquarters, or their functional equivalent.

(d)     "Citizen Complaint" means a complaint that alleges one or more acts of police misconduct performed by a sworn member of APD, which is initiated by any person other than City employees or officials acting in their official capacity.

(1)     in a reasonably legible written communication, including without limitation any signed or unsigned letter, form, electronic communication, or other document using written words, in any format, including hardcopy, electronic, or otherwise, received by:

(i)     the APD Administration;

(ii)     an APD Facility;

(iii)     any sworn or unsworn on-duty OPS employee;

(iv)     the OPS website or functional equivalent; or

(v)     any online communication to APD through its or the City's websites, each of which includes a link

to a webpage through which citizens can make a complaint.

or

(2)    in an audible oral communication, including without limitation those made in person, by telephone, or via OPS hotline, received by:

(i)    a member of the APD Administration at APD Facilities; or

(ii)    any sworn or unsworn on-duty OPS employee.

(e)    "Investigate" means to inquire into a matter systematically.

2.    *Enhanced Accessibility*:  APD shall enhance accessibility of the OPS complaint process as follows:

(a)    The City shall include a prominent link informing persons "How to Make a Complaint": on the index page (i.e., the "main page," or any functional equivalent) of the City website; the APD section of the City website; the APD general information website; on both the index page and the "Contact Us" page of the APD web site, which link should be functional on all user platforms, including desktops, mobile device platforms and any functional equivalents.  This link shall lead users directly to a

13

page or form (or any functional equivalent) on which a Citizen Complaint can be submitted to APD.

(b)     On-duty uniformed sworn officers at an NPU meeting or city-recognized neighborhood association meeting will have "informational sheets" for distribution to any person alleging APD police misconduct, and the information shall instruct how to submit an OPS complaint via the OPS website and OPS telephone hotline.

(c)     Informational sheets, as described in Section III(B)(2)(b), will be available at all APD Facilities in a visible location that is accessible by the public without assistance from APD personnel.

3.     To compute "within 180 days of the complaint" under Section III(A)(1), the day after the complainant made a complaint in any format described by Section III(B)(1) counts as the first day.  The date that APD transmits notice to the complainant of the final disposition of the complaint and the nature and duration of any discipline imposed by means of a "Notification Letter" complying with the requirements set forth below constitutes the last day.

4.     A Notification Letter will reference each specific complaint raised by the complainant in his or her Citizen Complaint and will identify the final disposition and the nature and duration of any discipline imposed for each such complaint.  If

14

sent in paper form, the Notification Letter shall be sent by publicly trackable means (USPS Certified Mail, UPS Express, or FedEx) and will state the tracking number. If sent in email form, the Notification Letter shall state the email address to which the letter was sent.

5.     If APD references APD Work Rule 4.2.33 Conformance to Directives (or any future equivalent thereof) in a Notification Letter relating to a specific complaint or potential violation, APD will identify all applicable underlying law(s), rule(s), regulation(s), directive(s), and/or SOP(s) that were investigated and adjudicated for that complaint or potential violation.

6.     Within 120 days of the entry of this Order, APD will make publicly available on its website a link to a webpage that includes accurate tracking information regarding the status of APD's investigation into Citizen Complaints. The webpage will provide accurate details for each Citizen Complaint, including (as and when available): (i) the date the complainant made a complaint in any format described by Section III(B)(1); (ii) the last name and first initial of the complainant; (iii) the tracking or file number assigned to the complaint; (iv) the nature of the complaint(s); (v) the status of APD's investigation (i.e., open, closed, or pending); (vi) the date of the Notification Letter; and (vii) the disposition of the complaint.

**C.      Monitoring Facilitation**

1.      Beginning on the entry of this Order and continuing through ten months following the entry of this Order, the City will provide to Plaintiffs' counsel electronically searchable PDF files of all documents created or maintained in the ordinary course of business in conjunction with any of the Citizen Complaints for which the investigation was closed during the previous month.  Each OPS investigation file shall be provided as an individual PDF document.  The City will provide such documents, for each Citizen Complaint closed in a given month, no later than the fifteenth (15th) day of the following month.  Plaintiffs' counsel (and any designee) agrees to keep confidential all information received pursuant to this provision.

2.      After ten months following the entry of this Order and continuing through December 31, 2025, the City will provide to the Special Master the foregoing documentation relating to each Citizen Complaint closed in a given month no later than the fifteenth (15th) day of the following month.  The Special Master (and any designee) agrees to keep confidential all information received pursuant to this provision.

**D.      Sunset**

1.      In the event the Special Master determines that the City has not demonstrated substantial compliance with Section III(A)(1), the Special Master will

petition the Court to extend monitoring by the Special Master pursuant to Section III(C)(2) on or before January 1, 2026.  In any such petition, the Special Master shall bear the burden of proving by a preponderance of the evidence that the City has not substantially complied with Section III(A)(1) and that extension of that provision is warranted under applicable law.  Before filing any such petition, the Special Master will seek the Court's permission to file any materials received pursuant to this provision, as well as any related briefing that discusses the contents of such materials, under seal to preserve confidentiality.  The requirements of Section III(C)(2) shall remain in effect while any such petition is pending before the Court.  If the Special Master does not file a petition in accordance with this provision, Section III(C)(2) shall terminate on January 1, 2026.

## IV.  CONSTITUTIONAL COMPLIANCE

### A.    Constitutional Compliance

1.    APD will conduct periodic audits of body worn camera ("BWC") videos that will include a review for compliance with the Constitutional Principles. The following audits will occur.

(a)    Each APD Section will complete a biweekly audit of at least ten (10) BWC videos from its Section.  The Section audits shall be identified at the discretion of the APD BWC Compliance Administrator or her designee, and to the extent reasonably practicable shall include, but not be limited to,

"drop-ins" or other incidents in which reports identify that a search, seizure, frisk, or ACIC/GCIC/NCIC check occurred.   The review will include watching the entire BWC video for conformance to the Constitutional Principles.

(b)   The BWC Compliance Administrator or her designee shall conduct a random audit of at least fifteen (15) BWC videos on a biweekly basis.   The review will include watching the entire BWC video for conformance to the Constitutional Principles.

APD will use the City's electronic records system to track the results of the audits and identify any observed compliance concerns.  APD will take appropriate action in its discretion (including, without limitation, officer counseling, additional training, and/or referral for disciplinary investigation) when it determines that an officer has failed to comply with the Constitutional Principles.

2.   The Chief of APD will issue an executive order within thirty (30) days of the entry of this Order that emphasizes the seriousness with which APD takes the protection of citizens' Fourth Amendment rights in performing effective policing and that APD intends to monitor and appropriately address noncompliance, including through additional counseling, training, and/or disciplinary action as deemed appropriate by APD for officers who are determined to have violated those rights (in particular, unlawful searches, seizures, frisks, and ID checks), with an

emphasis on addressing repeat offenders.  The executive order will specifically address warrantless searches without individualized reasonable articulable suspicion, including without limitation during "drop-ins."

3.      Beginning on the entry of this Order and continuing until ten months following the entry of this Order, the City will provide to Plaintiffs' counsel and the Special Master, no later than the fifth (5th) day of each month, a spreadsheet that lists all incidents for which an APD Incident Report was created that occurred in the preceding month.  The spreadsheet will include the categories of data, to the extent such data exists and can be collected via an automated process of the City, as reflected in the spreadsheet attached hereto as Exhibit E.  Plaintiffs' counsel will provide written notice to the City that identifies up to thirty (30) incidents listed on the spreadsheet which Plaintiffs' counsel reasonably believes implicate the Constitutional Principles.  Beginning February 1, 2025, such written notice shall be provided jointly by Plaintiffs' counsel and the Special Master, with the Special Master providing input to Plaintiffs' counsel within seven (7) days of receiving the spreadsheet.  Within ten (10) days of receiving such written notice, the City will provide to Plaintiffs' counsel all BWC videos for the incidents identified in the written notice in MP4 format.

4.      Notwithstanding the requirements of Section IV(A)(3), if the City would like to exclude from review by Plaintiffs' counsel a specific BWC video

subject to disclosure under Section IV(A)(3) on the grounds that it is exempt from public disclosure under the Georgia Open Records Act (O.C.G.A. § 50-18-72), the City shall identify each such video and provide a copy to the Special Master for review. If the Special Master determines within seven (7) days that an identified video does not implicate any concern relevant to the Constitutional Principles set forth in Exhibit A, such video may be withheld from Plaintiffs' counsel.

5.      After ten months following the entry of this Order and continuing through December 31, 2025, the City will provide to the Special Master, no later than the fifth (5th) day of each month, a spreadsheet that lists all incidents for which an APD Incident Report was created that occurred in the preceding month.  The spreadsheet will include the categories of data, to the extent such data exists and can be collected via an automated process of the City, as reflected in the spreadsheet attached hereto as Exhibit E.  The Special Master will provide written notice to the City that identifies up to thirty (30) incidents listed on the spreadsheet which the Special Master reasonably believes implicate the Constitutional Principles.  Within ten (10) days of receiving such written notice, the City will provide to the Special Master all BWC videos for the incidents identified in the Special Master's written notice in MP4 format.

6.      In connection with the BWC video review permitted by Section IV(A)(3) above, the City will make available to Plaintiffs' counsel all BWC videos

involving individual officers identified by Plaintiffs' counsel to the City by name, unit number, badge number, and/or unique i.d. number by allowing Plaintiffs' counsel to search for and view videos involving those officers on Evidence.com or future equivalent (with fast forward functionality) upon reasonable advance written notice.  The City may choose whether to require Plaintiffs' counsel to access these videos at City Hall or at a place and manner chosen by Plaintiffs' counsel.

7.     Plaintiffs' counsel and the Special Master are required to limit the charges for review of all BWC videos under this Section IV to twenty (20) hours per month (plus any additional travel time if the City requires review to take place at City Hall) at an hourly rate of $300.00.

8.     Plaintiffs' counsel (and any designee) and the Special Master (and any designee) are hereby **ORDERED** to keep confidential the materials received pursuant to this Section IV.

**B.     Sunset**

1.     In the event the Special Master determines, after review of the BWC videos produced in accordance with Section IV(A)(5), that the City has not demonstrated substantial compliance with its obligation to adhere to the Constitutional Principles, the Special Master will petition the Court to extend Section IV(A)(5) on or before January 1, 2026.  In any such petition, the Special Master shall bear the burden of proving by a preponderance of the evidence that the City has not

21

substantially complied with its obligation to adhere to the Constitutional Principles and that extension of that provision is warranted under applicable law.  Before filing any such petition, the Special Master will seek the Court's permission to file any materials received pursuant to this provision, as well as any related briefing that discusses the contents of such materials, under seal to preserve confidentiality.  The requirements of Section IV(A)(5) shall continue while any such petition is pending before the Court.  If the Special Master does not file a petition in accordance with this provision, Section IV shall terminate on January 1, 2026.

## V.  IDENTIFICATION

### A.  Identification Requirement for APD Officers

1.   The City shall require all APD officers who are in uniform, other than a rain slicker or traffic direction vest, to wear a conspicuously visible nametag, and to require any APD officer who is in uniform or has displayed a badge or other indicia of police authority (such as a police vest) to identify himself or herself by name and unit, badge, or unique i.d. number upon request at some point before the end of an encounter with a civilian.

### B.  Continuation of Reform

1.   APD's Standard Operating Procedure SOP.2130 pertaining to Dress Code (or any future functional equivalent) shall include a section requiring that any APD officer who is in uniform must, at all times, wear a conspicuously visible

nametag, and emphasizing that the only exception to this requirement is a rain slicker or traffic direction vest.  No APD SOP shall supersede or contradict this section of SOP.2130.

2.    APD's Standard Operating Procedure SOP.2010 pertaining to Work Rules (or any future functional equivalent) shall include a section requiring any APD officer who is in uniform or has displayed a badge or other indicia of police authority (such as a police vest, etc.), to identify himself by name and unit, badge, or unique i.d. number upon request at some point before the end of an encounter with a civilian.

3.    APD recruits shall be trained on the name tag and identification requirements.

4.    All APD supervisors who identify a police officer in uniform, whether on duty or off duty, without a conspicuously visible nametag, shall initiate an OPS investigation, discipline, or issue a written reprimand where deemed appropriate.

## C.    Monitoring

1.    Beginning on the entry of this Order and continuing until ten months following the entry of this Order, the City will provide to Plaintiffs' counsel monthly access for no more than eight (8) hours each month to Evidence.com or future equivalent for the sole purpose of reviewing BWC videos (with the audio turned off) for compliance with the requirements of Section V(A)(1).  The review settings will allow for the BWC videos to be reviewed at normal speed and at standard available

23

fast forward speeds at the discretion of the individual performing the review. APD shall have the right to have a representative present for Plaintiffs' counsel's review, but no other representative of the City or APD shall be present. Plaintiffs' counsel's access will be restricted initially by the City to BWC videos of the SWAT and APEX units. However, if Plaintiffs' counsel completes his or her initial review of such BWC videos within the eight (8) hours and desires to review additional BWC videos for the sole purpose of reviewing for compliance with the requirements of Section V(A)(1), the restriction to the SWAT and APEX units will be removed for such additional desired identification monitoring and Plaintiffs' counsel may review any and all APD BWC videos (with the audio turned off) available on Evidence.com or future equivalent (including but not limited to BWC videos of the SWAT and APEX units) up to a maximum of eight (8) hours of total access time under this provision each month.

2.      Notwithstanding the requirements of Section V(C)(1), if the City would like to exclude from review by Plaintiffs' counsel a specific BWC video subject to disclosure under Section V(C)(1) on the grounds that it is exempt from public disclosure under the Georgia Open Records Act (O.C.G.A. § 50-18-72), the City shall identify each such video and provide a copy to the Special Master for review, and the City shall make reasonable efforts to make such identification in advance of Plaintiffs' counsel's review. During Plaintiffs' counsel's review of BWC videos

pursuant to Section V(C)(1), APD's representative may discontinue (pending Special Master review) the review of any video he or she reasonably believes reflects highly sensitive material, such as any sex-related offense, police misconduct other than types of misconduct addressed in Section V(A)(1), or ongoing investigation under the jurisdiction of another government agency (e.g., Georgia Bureau of Investigation, District Attorney's office). If the Special Master determines within seven (7) days that an identified video is not relevant to the Identification concerns at issue in this Section V, such video may be withheld from Plaintiffs' counsel.

3.     After ten months following the entry of this Order and continuing through December 31, 2025, the City will provide to the Special Master monthly access for no more than eight (8) hours each month to Evidence.com or future equivalent for the sole purpose of reviewing BWC videos (with the audio turned off) for compliance with the provisions of Section V(A)(1). The review settings will allow for the BWC videos to be reviewed at normal speed and at standard available fast forward speeds at the discretion of the individual performing the review. APD shall have the right to have a representative present for the Special Master's review, but no other representative of the City or APD shall be present. The Special Master's access will be restricted by the City initially to BWC videos of the SWAT and APEX units. However, if the Special Master completes his initial review of such BWC videos within the eight (8) hours and desires to review additional BWC videos for

the sole purpose of reviewing for compliance with the provisions of Section V(A)(1), the restriction to the SWAT and APEX units will be removed for such additional desired identification monitoring and the Special Master may review any and all APD BWC videos (with the audio turned off) available on Evidence.com or future equivalent (including but not limited to BWC videos of the SWAT and APEX units) up to a maximum of eight (8) hours of total access time under this provision each month.

4.     Plaintiffs' counsel and the Special Master are required to limit the charges for review of all BWC videos under this Section V to eight (8) hours per month at an hourly rate of $300.00.

5.     Plaintiffs' counsel and the Special Master are hereby **ORDERED** to keep confidential the materials received pursuant to this Section V.

**D.     Sunset**

1.     Except for the provisions of Section V(A)(1), the provisions of this Section V will terminate on January 1, 2026.

## VI.  NO INTERFERENCE WITH AUDIO OR VIDEO RECORDINGS

The City shall prohibit APD officers from interfering in any way with a citizen's right to make video, audio, or photographic recordings of police activity, as long as such recording does not physically interfere with the performance of an officer's duty.

## VII.  DISCOVERY

Plaintiffs may conduct post-judgment discovery to monitor compliance with this Order in accordance with and as permitted by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of Georgia, and all Standing Orders of this Court, except as modified by this provision.  Along with any discovery request, Plaintiffs' counsel shall include a written explanation of the reason(s) the requested information or documents are reasonably necessary to monitor the City's compliance with this Order.  The City shall provide its written responses and objections to Plaintiffs' discovery requests within ten (10) business days of receipt thereof, and the Parties shall meet and confer in good faith in an effort to resolve any disputes concerning such discovery within ten (10) days after Plaintiffs' counsel's receipt of the City's written responses and objections.  Thereafter, the Parties agree that any remaining dispute concerning such discovery will be decided by the Special Master and that either Party may request expedited review of any such dispute.  The special discovery procedures in this Section VII set forth above shall terminate on January 1, 2026.

## VIII.  ATTORNEY FEES

1.     The City shall pay Plaintiffs' counsel their reasonable attorney fees and costs reasonably incurred in ensuring compliance with this Order.  The City shall

pay these sums directly to Plaintiffs' counsel upon receipt (i.e., within thirty calendar days) of each itemized accounting of reasonable time and expenses.

2.     If the City believes any element of such itemized accounting to be unreasonable, the City shall present such objections, including the specific bases for each objection, in writing to Plaintiffs' counsel within 5 business days of receipt of such accounting.  Within 5 business days thereafter, the Parties shall meet and confer and attempt to resolve the dispute.  If a dispute remains, the City must, within 10 business days of the date it raised its objections, do one of the following: (1) pay Plaintiffs' counsel's accounting as presented; or (2) present the dispute, in a writing served on Plaintiffs' counsel, to the Special Master for resolution.

3.     The provisions of this Section VIII shall terminate on ten months from the entry of this Order; provided, however, that nothing herein shall preclude Plaintiffs' counsel from seeking recovery of its reasonable attorney's fees reasonably incurred thereafter in connection with this Order.  Plaintiffs' counsel shall make any such request by written motion presented to the Special Master, and all Parties reserve all of their rights under applicable law in connection with any such motion.

## IX.   STATEMENT OF INTENT

This Order represents the desire and agreement of the Parties to focus on ensuring the City's compliance with the obligations set forth above, public safety, and respect for citizens' constitutional rights in the future.  In consideration of the

Parties' agreement and the obligations and associated expenditures undertaken by the City as set forth herein, Plaintiffs agree to not file any motion with or request for relief from the Court or the Special Master relating to any conduct or actions of the City or APD that occurred before the entry of this Order.

## X.  SUPERSEDING OF PRIOR ORDERS

This Order shall supersede all orders previously entered by the Court in this action, including without limitation this Court's November 29, 2018 Order (Dkt. 434) and this Court's October 3, 2023 Order (Dkt. 512), except that all obligations set forth in any previous order obligating the City to pay outstanding attorneys' fees accrued prior to the entry of this Order shall remain in place.

## XI.  IMPOSITION OF SANCTION BY THE COURT

The City acknowledges that it did not comply with certain Citizen Complaint adjudication requirements set forth in the Court's November 29, 2018 Order, and that such noncompliance subjects the City to sanctions under previous orders entered by the Court. In consideration of these acknowledgements, as well as the City's agreement to the future compliance and monitoring obligations set forth herein, the Court imposes a sanction of $2,000,000.00 against the City for its prior noncompliance.

Up to $500,000.00 of the imposed $2,000,000.00 sanction may be spent by the City on documented expenses directed towards future compliance with the

requirements of this Order, including the creation and maintenance of a webpage described in Section III(B)(6). The remainder of the $2,000,000.00 sanction shall be given to an entity approved by the Special Master in consultation with Plaintiffs' counsel for the specific purpose of educating citizens about their Fourth Amendment rights.

## XII.  APPOINTMENT OF SPECIAL MASTER

The Parties agree that, contemporaneously with the entry of this Order, the Court shall appoint a Special Master pursuant to Fed. R. Civ. P. 53 with the duty and authority to enforce and resolve any disputes between the Parties concerning the provisions of this Order.

Plaintiffs' counsel may bring a motion to impose sanctions against the City for "substantial noncompliance"[1] with the requirements of Section III(A)(1) to the Special Master, who is authorized in his discretion to impose monetary sanctions for any such substantial noncompliance. However, no sanction shall be imposed for noncompliance with Section III(A)(1) for conduct occurring prior to October 31, 2024.

The Parties hereby consent to the appointment of Joe D. Whitley as the Special Master and agree that any motion relating to this Order will be brought before the

---

[1] While the Court is not inclined to specifically define "substantial noncompliance," it should be noted that anything below a 75% compliance rate will certainly be considered inadequate.

Special Master for resolution.  In addition, the Parties agree to meet and confer in good faith in an effort to resolve any dispute hereunder before bringing any motion for relief before the Special Master, and further agree that no such motion shall be brought during the first ninety (90) days after the entry of this Order.

**IT IS SO ORDERED** this ___ day of _____, 2024.

_____
Timothy C. Batten, Sr.
Chief Judge, United States District Court

# EXHIBIT A
## Constitutional Principles

a) Police officers may not lawfully detain any individual without reasonable articulable suspicion, particularized to the person being detained (i.e., a "particularized and objective basis for suspecting the particular person") that the individual is involved in specific and identifiable criminal activity.

A police officer may conduct a brief, investigatory stop of a person when the officer has a reasonable, articulable suspicion that that person is involved in criminal activity (A "Terry stop").  While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the Terry stop.  The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity by the person.  *Illinois v. Warlaw*, 528 U.S. 119, 122 (2000) (citations omitted).  The officer must have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.  *Brown v. Texas*, 443 U.S. 47, 51 (1979).  Also, the officer's action must be "'justified at its inception, and . . . reasonably related in scope to the circumstances which justified the interference in the first place.'"  *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).

b) Police officers may not lawfully take or demand identification, or require an individual to identify himself, without reasonable suspicion, based on objective criteria, that the individual is engaged or had engaged in criminal conduct.

When a police officer is conducting a Terry stop on the basis of reasonable articulable suspicion that a person is engaged or has engaged in criminal activity, the officer may demand that a person identify himself or display identification.  *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177 (2004); *Brown v. Texas,* 443 U.S. 47 (1979).  In the absence of a lawful Terry stop, a police officer may not lawfully take identification or demand an individual to identify himself.

c) Police officers may not lawfully frisk an individual for weapons without a reasonable belief, directed at the particular person to be frisked, that the person is both armed and presently dangerous.

During a lawful Terry stop, a police officer for his own protection and safety may conduct a patdown of a person to find weapons that he reasonably believes or suspects are then in the possession of the person he has stopped. Police may not conduct a generalized "cursory search for weapons" or any search whatever for anything but weapons. The "narrow scope" of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place. *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979).

d) A warrantless arrest is constitutionally valid only when there is probable cause to arrest. *United States v. Watson*, 423 U.S. 411, 417 (1976). Probable cause exists if, "at the moment the arrest was made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the suspect] had committed or was committing an offense." *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002); *United States v. Gonzalez,* 969 F.2d 999, 1002 (11th Cir. 1992). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). "[P]robable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

e) An arrest requiring probable cause is defined using an objective standard: whether the suspect is "'subjected to restraints comparable to those associated with a formal arrest.'" *United States v. Acosta*, 363 F.3d 1141, 1149 (11th Cir. 2004) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 441 (1984)).

f) In the absence of a lawful arrest, voluntary consent, or the exception commonly known as "the plain feel exception," a police officer may not lawfully search an individual for anything other than weapons without either a search warrant or probable cause plus exigent circumstances.

As to the "plain feel exception," if in conducting a lawful Terry patdown for weapons a police officer in lawfully patting down a suspect's outer clothing feels an object whose contour or mass makes its identity immediately apparent as contraband, it may be seized without a warrant. *Minnesota v. Dickerson*, 508 U.S. 366, 37-376 (1993).

g) Police officers may not lawfully arrest an individual in his or her home without either an arrest warrant or probable cause plus exigent circumstances. *Payton v. New York*, 445 U.S. 573 (1980).

h) A police officer may not enter a suspect's home without a search warrant or voluntary consent unless probable cause and exigent circumstances exist, and any resulting search and seizure is prohibited under the Fourth Amendment. *Payton v. New York*, 445 U.S. 573, 586 (1980).  Exigent circumstances exist "when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *United States v. Satterfield,* 743 F.2d 827, 844 (11th Cir. 1984).  Situations in which exigent circumstances exist include: "danger of flight or escape; danger of [physical] harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and 'hot pursuit' of a fleeing suspect." *United States v. Blasco*, 702 F.2d 1315, 1325 (11th Cir. 1983).  "The mere presence of contraband, however, does not give rise to exigent circumstances." *United States v. Lynch*, 934 F.2d 1226, 1232 (11th Cir. 1991).  Rather, "the appropriate inquiry is whether the facts ... would lead a reasonable, experienced [officer] to believe that evidence might be destroyed before a warrant could be secured." *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991).

**EXHIBIT B**
**Calhoun SOP Topics**

*a) Identification Requirement.*

All Atlanta police officers who are in uniform, other than a rain slicker or traffic direction vest, must wear a conspicuously visible nametag, and to require any Atlanta police officer who is in uniform or has displayed a badge or other indicia of police authority (such as a police vest, etc.), to identify himself by name and badge number upon request at some point before the end of an encounter with a civilian.

*b) Interference with Audio and Video Recordings.*

The City shall prohibit Atlanta police officers from interfering in any way with a citizen's right to make video, audio, or photographic recordings of police activity, as long as such recording does not physically interfere with the performance of an officer's duty.

*c) Citizen Complaints.*

APD shall investigate and finally adjudicate all citizen complaints of police misconduct of any kind within 180 days of the complaint.

*d) Aiming Weapon.*

An officer is prohibited from pointing or aiming a weapon at a person unless the discharge of the weapon would be justifiable.

*e) Greenberg Traurig LLP Report*

The results of the "Investigation of Officer Conduct" as reflected in "Greenberg Traurig, LLP's APD.SOP 20.20 § 3.4.1 Final Report Regarding The Planning, Execution, And Subsequent Conduct Related To The 'Eagle Raid'" presented on June 27, 2011.

# **EXHIBIT C**
## **Video:  *Calhoun* Approved Training**

***See* Dkt. 433**

## EXHIBIT D
## Calhoun SOPs
## All SOP Sections below refer to the Sections in effect on the date of this Order's entry

## SOP 2010 – Work Rules

Section 4.2.22 (3) – Nametags

Section 4.2.23 (1) – Giving Identification

Section 4.6.9 (2) – Pointing of firearms

## SOP 2011– General Conduct

Section 4.4.1 – Interfering with citizen's right to record

## SOP 2130 – Dress Code

Section 4.1.2 – Nametags

## SOP 3020 – Search and Seizure

Section 4.1.6 –Taking or demanding identification

Section 4.3.1 (1) – Constitutional preference for searches pursuant to warrant

Section 4.3.1 (2) – Justification for warrantless search

Section 4.3.1 (3) – Warrantless search, plain view doctrine

Section 4.3.4 – Stop and frisk

Section 4.3.5 – Exigent circumstances

## **SOP 3020 – Search and Seizure**

Section 5.9 – Definition of "probable cause"

Section 5.10 – Definition of "reasonable articulable suspicion to detain"

Section 5.11– Definition of "reasonable articulable suspicion to frisk"

Section 5.15 – Definition of "stop and frisk"

## **SOP 3030 – Arrest Procedures**

Section 4.1.3 (1)(a-e) – Arrest without a warrant

Section 5.4 – Definition of "probable cause"

## **SOP 3065 – Field Interviews**

Section 4.1.1 – Stops
Section 4.3.4 – De-escalation after stop

# **EXHIBIT E**

**Three-page Spreadsheet (attached)**

EXHIBIT E

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Case # | Report ID | Primary Agency | Report Type | Report Subtype | Report Author | Assisting Officer | All Assisting Officers and Assist Types | Report Date / Time | Event Classification Code |
| Event Classification | Offense Score | Offense Score 2 | Offense Status | Offense Status 2 | UCR Offense Classification | UCR Offense Classification 2 | Stat Reporting | Street Crime? | Incident Type I |
| Incident Type II | Incident Type III | Weapon / Force Involved | Weapon Involved? | Narrative | Event Location Location Alias | Event Location Street Address | Event Location Cross Street 1 | Event Location Cross Street 2 | Event Location City |
| Event Location State | Event Location Location Category | Event Location Lat | Event Location Long | Event Location Neighborhood | Offense Location Location Alias | Offense Location Street Address | Offense Location Cross Street 1 | Offense Location Cross Street 2 | Offense Location City |
| Offense Location State | Offense Location Location Category | Offense Location Lat | Offense Location Long | Offense Location Neighborhood | DATE | Time | Hour Group | Month | Day of Week |
| Event District | Event Sector | Event Grid | Offense District | Offense Sector | Offense Grid | Event Neighborhood | Suspect Count | Suspect 1 | Suspect 1 DOB |
| Suspect 1 Home Address Location Alias | Suspect 1 Home Address Street Address | Suspect 1 Home Address Cross Street 1 | Suspect 1 Home Address Cross Street 2 | Suspect 1 Home Address City | Suspect 1 Home Address State | Suspect 1 Home Address Location Category | Suspect 1 Home Address Lat | Suspect 1 Home Address Long | Suspect 1 Home Address Neighborhood |
| Suspect 1 Sex | Suspect 1 Race | Suspect 1 Ethnicity | Suspect 2 | Suspect 2 DOB | Suspect 2 Home Address Location Alias | Suspect 2 Home Address Street Address | Suspect 2 Home Address Cross Street 1 | Suspect 2 Home Address Cross Street 2 | Suspect 2 Home Address City |
| Suspect 2 Home Address State | Suspect 2 Home Address Location Category | Suspect 2 Home Address Lat | Suspect 2 Home Address Long | Suspect 2 Home Address Neighborhood | Suspect 2 Sex | Suspect 2 Race | Suspect 2 Ethnicity | Victim Count | Victim 1 |
| Victim 1 DOB | Victim 1 Home Address Location Alias | Victim 1 Home Address Street Address | Victim 1 Home Address Cross Street 1 | Victim 1 Home Address Cross Street 2 | Victim 1 Home Address City | Victim 1 Home Address State | Victim 1 Home Address Location Category | Victim 1 Home Address Lat | Victim 1 Home Address Long |
| Victim 1 Home Address Neighborhood | Victim 1 Sex | Victim 1 Race | Victim 1 Ethnicity | Victim 2 | Victim 2 DOB | Victim 2 Home Address Location Alias | Victim 2 Home Address Street Address | Victim 2 Home Address Cross Street 1 | Victim 2 Home Address Cross Street 2 |
| Victim 2 Home Address City | Victim 2 Home Address State | Victim 2 Home Address Location Category | Victim 2 Home Address Lat | Victim 2 Home Address Long | Victim 2 Home Address Neighborhood | Victim 2 Sex | Victim 2 Race | Victim 2 Ethnicity | Witness |
| Witness DOB | Witness Home Address Location Alias | Witness Home Address Street Address | Witness Home Address Cross Street 1 | Witness Home Address Cross Street 2 | Witness Home Address City | Witness Home Address State | Witness Home Address Location Category | Witness Home Address Lat | Witness Home Address Long |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Witness Home Address Neighborhood | Witness Sex | Witness Race | Witness Ethnicity | Arrested Count | Arrested Person | Arrested Person DOB | Arrested Person Home Address Location Alias | Arrested Person Home Address Street Address | Arrested Person Home Address Cross Street 1 |
| Arrested Person Home Address Cross Street 2 | Arrested Person Home Address City | Arrested Person Home Address State | Arrested Person Home Address Location Category | Arrested Person Home Address Lat | Arrested Person Home Address Long | Arrested Person Home Address Neighborhood | Arrested Person Sex | Arrested Person Race | Arrested Person Ethnicity |
| Arrestee was Armed With | Total Charges | Charge I | Charge II | Charge III | Bail Amount ($) | Total Warrants | Warrants (Y/N) | Warrant Number (Warrant 1) | Warrant Description (Warrant 1) |
| External Agency (Y/N) (Warrant 1) | Warrant Number (Warrant 2) | Warrant Description (Warrant 2) | External Agency (Y/N) (Warrant 2) | Warrant Number (Warrant 3) | Warrant Description (Warrant 3) | External Agency (Y/N) (Warrant 3) | Total FCC Individuals | Total FCC Individuals Frisked | FCC Type |
| FCC Disposition | FCC Subject 1 | FCC Subject 1 Frisk Involved | FCC Subject 1 Involvement Type A | FCC Subject 1 DOB | FCC Subject 1 Home Address Location Alias | FCC Subject 1 Home Address Street Address | FCC Subject 1 Home Address Cross Street 1 | FCC Subject 1 Home Address Cross Street 2 | FCC Subject 1 Home Address City |
| FCC Subject 1 Home Address State | FCC Subject 1 Home Address Location Category | FCC Subject 1 Home Address Lat | FCC Subject 1 Home Address Long | FCC Subject 1 Home Address Neighborhood | FCC Subject 1 Sex | FCC Subject 1 Race | FCC Subject 1 Ethnicity | FCC Subject 2 | FCC Subject 2 Frisk Involved |
| FCC Subject 2 Involvement Type A | FCC Subject 2 DOB | FCC Subject 2 Home Address Location Alias | FCC Subject 2 Home Address Street Address | FCC Subject 2 Home Address Cross Street 1 | FCC Subject 2 Home Address Cross Street 2 | FCC Subject 2 Home Address City | FCC Subject 2 Home Address State | FCC Subject 2 Home Address Location Category | FCC Subject 2 Home Address Lat |
| FCC Subject 2 Home Address Long | FCC Subject 2 Home Address Neighborhood | FCC Subject 2 Sex | FCC Subject 2 Race | FCC Subject 2 Ethnicity | Year of Manufacture | Make | Model | Tag State | License Plate / Registration # |
| VIN # | Vehicle Color | Recovered Location Location Alias | Recovered Location Street Address | Recovered Location Cross Street 1 | Recovered Location Cross Street 2 | Recovered Location City | Recovered Location State | Recovered Location Location Category | Recovered Location Lat |
| Recovered Location Long | Recovered Location Neighborhood | Vehicle Property Status | Vehicle Property Status Date | Value | CIR reason | CIR disposition | CIR Type of Information | CIR Information Obtained from | CIR Subject 1 |
| CIR Subject 1 DOB | CIR Subject 1 Physical Address | CIR Subject 1 Home Address Location Alias | CIR Subject 1 Home Address Street Address | CIR Subject 1 Home Address Cross Street 1 | CIR Subject 1 Home Address Cross Street 2 | CIR Subject 1 Home Address City | CIR Subject 1 Home Address State | CIR Subject 1 Home Address Location Category | CIR Subject 1 Home Address Lat |
| CIR Subject 1 Home Address Long | CIR Subject 1 Home Address Neighborhood | CIR Subject 1 Sex | CIR Subject 1 Race | CIR Subject 1 Ethnicity | Total Value of Stolen Property | Total Value of Recovered Property | Property 1 Description | Property 1 Status (Stolen, Recovered etc.) | Property 1 Status Date |

EXHIBIT E

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Property 1 Value | Property 1 Serial Number | Property 1 Category | Property 1 Reason for Police Custody | Property 1 Recovered Location Location Alias | Property 1 Recovered Location Street Address | Property 1 Recovered Location Cross Street 1 | Property 1 Recovered Location Cross Street 2 | Property 1 Recovered Location City | Property 1 Recovered Location State |
| Property 1 Recovered Location Location Category | Property 1 Recovered Location Lat | Property 1 Recovered Location Long | Property 1 Recovered Location Neighborhood | Property 2 Description | Property 2 Status (Stolen, Recovered etc.) | Property 2 Status Date | Property 2 Value | Property 2 Serial Number | Property 2 Category |
| Property 2 Reason for Police Custody | Property 2 Recovered Location Location Alias | Property 2 Recovered Location Street Address | Property 2 Recovered Location Cross Street 1 | Property 2 Recovered Location Cross Street 2 | Property 2 Recovered Location City | Property 2 Recovered Location State | Property 2 Recovered Location Location Category | Property 2 Recovered Location Lat | Property 2 Recovered Location Long |
| Property 2 Recovered Location Neighborhood | Property 3 Description | Property 3 Status (Stolen, Recovered etc.) | Property 3 Status Date | Property 3 Value | Property 3 Serial Number | Property 3 Category | Property 3 Reason for Police Custody | Property 3 Recovered Location Location Alias | Property 3 Recovered Location Street Address |
| Property 3 Recovered Location Cross Street 1 | Property 3 Recovered Location Cross Street 2 | Property 3 Recovered Location City | Property 3 Recovered Location State | Property 3 Recovered Location Location Category | Property 3 Recovered Location Lat | Property 3 Recovered Location Long | Property 3 Recovered Location Neighborhood | Missing Person Last Known Location Location Alias | Missing Person Last Known Location Street Address |
| Missing Person Last Known Location Cross Street 1 | Missing Person Last Known Location Cross Street 2 | Missing Person Last Known Location City | Missing Person Last Known Location State | Missing Person Last Known Location Location Category | Missing Person Last Known Location Lat | Missing Person Last Known Location Long | Missing Person Last Known Location Neighborhood | Missing Person Date of Last Contact | Missing Person Last Person Contacted |
| Missing Person Location Located Location Alias | Missing Person Location Located Street Address | Missing Person Location Located Cross Street 1 | Missing Person Location Located Cross Street 2 | Missing Person Location Located City | Missing Person Location Located State | Missing Person Location Located Location Category | Missing Person Location Located Lat | Missing Person Location Located Long | Missing Person Location Located Neighborhood |
| Missing Person | Missing Person DOB | Missing Person Home Address Location Alias | Missing Person Home Address Street Address | Missing Person Home Address Cross Street 1 | Missing Person Home Address Cross Street 2 | Missing Person Home Address City | Missing Person Home Address State | Missing Person Home Address Location Category | Missing Person Home Address Lat |
| Missing Person Home Address Long | Missing Person Home Address Neighborhood | Missing Person Sex | Missing Person Race | Missing Person Ethnicity | Is Imported Report? | Supplement Type | | | |